**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   16-cr-00054-WJM-1

UNITED STATES OF AMERICA,

   Plaintiff,

v.

1. HEATHER CARR,

   Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR VARIANT SENTENCE AND SENTENCING STATEMENT [ECF No. 247].**

---

The defendant seeks a variant sentence of 24 months in prison, over a 50% reduction from the estimated guideline range as anticipated by the parties in the plea agreement and approximately a 65% reduction from the 70-month sentence recommended by the probation office.   Such an extreme variance in this case would represent a manifest injustice.   It would reward the defendant's deceit and encourage guile.   The defendant deceived her employer, using their database to steal the identities of vulnerable victims.   She deceived the Department of Education (the "Department") and several community colleges by submitting fake financial aid documents that allowed her and her coconspirators to steal hundreds of thousands of dollars.   And then she deceived the Department of Justice, promising she would testify at trial and then breaking that promise at the moment of maximum damage.   Because the grounds advanced by the defendant do not warrant such a lenient sentence, the

1

United States of America, by Robert C. Troyer, United States Attorney for the District of Colorado, through Martha A. Paluch and Bryan D. Fields, Assistant United States Attorneys, hereby objects to the sentence requested in the Defendant's Motion for Variant Sentence and Sentencing Statement. ECF No. 247.  At sentencing, the government will request that the Court impose a sentence of 63 months' imprisonment, followed by three years of supervised release, an order of restitution in the amount of $562,487.85, and a special assessment of $100.

## I. Defendant's Arguments in Support of the Requested Variance

Notably, the probation department could not identify "any factors that would warrant a variance from the applicable sentencing guideline range."  ECF 250 at 19. Defendant's attempts to provide the Court with any such factor fall far short.  Her request for a 24-month variant sentence is based upon 1) her alleged cooperation; 2) her history; and 3) the consequences she will face as a convicted felon.  None of these grounds supports the requested sentence.

### A. Defendant's Alleged Cooperation

The defendant begins by noting that the government's decision not to file a motion pursuant to U.S.S.G. § 5K1.1 was well within the government's discretion pursuant to the clear terms of the plea agreement.  ECF 247 at 2.  However, the defendant disputes the government's assertion that the defendant's refusal to testify at the last minute placed the prosecution of Tramell Thomas at risk.  The defendant claims any such risk "could have been easily mitigated if a subpoena had been issued for [the defendant] to appear."  *Id.*  This argument completely misses the point.  The entire

basis for a *cooperation* agreement is that the defendant agreed to testify *without* being compelled. Having demonstrated that she was no longer cooperating, a subpoena would simply have compelled testimony from a recalcitrant witness who, having decided to renege on her promises, just as easily could have retracted her prior statements. In that event, while the government could have attempted to impeach the defendant with those prior statements, the jury would have been left to determine which set of statements of the defendant to believe. Having the defendant under subpoena would not have cured the problem of the defendant refusing to provide trial testimony consistent with what she had previously told the government.

Support for this claim is found in the fact the government did not request that a trial subpoena issue for Mercedes Diaz.[1] The government decided not to call Ms. Diaz based upon the limited direct interaction she had with Thomas. Once Thomas's counsel was informed that the government would not call Ms. Diaz to the stand, they listed Ms. Diaz as a witness on their witness list and attempted (without success) to serve her with a subpoena. Had Ms. Diaz been under a court-issued subpoena to appear at trial, Thomas have called her to the stand. This defendant cannot attempt to excuse her behavior by blaming the government for not seeking a trial subpoena and instead, understandably relying on her assurances she would testify after numerous meetings prior to trial affirming she would do just that.

Next, the defendant claims that any risk suffered by the government "was

---

[1] Nor did government counsel request that a subpoena issue for Marcelle Green, but rather, relied upon assurances from Green's counsel and Green herself that in fact Green would appear at trial.

evidently small because the government indicted Mr. Thomas well before Ms. Carr's cooperation and secured a conviction against him without her testimony." ECF 247 at 2. Defendant's claim of "no harm, no foul" because Thomas was indicted and ultimately convicted should be rejected outright. The defendant conveniently ignores the gaps left in the government's case once the defendant chose to ignore her cooperation obligations – evidence against Thomas that only she could provide. The government told the jury as much; it based the majority of its opening statement on evidence that it had every right to believe this defendant would provide. Instead, it was left trying to admit certain of that evidence through other witnesses, and was then forced to explain in closing argument that the jury would not hear from the main witness in the case as promised.

Finally, the defendant suggests that the government's remedy should be limited to simply not filing the § 5K1.1 motion. She is incorrect. The defendant ignores the harm her actions caused. She could have decided in advance of trial not to fly to Denver. She did not have to get on the plane the morning of trial, but she did, leaving the government to believe she would fulfill her obligations under her plea agreement. There must be some sanction for the defendant's last minute reneging on her promise to testify, at a moment that caused maximum disruption to the government's case against her codefendant.

An example of the harm caused is found in the fact the government anticipated its direct examination of the defendant would last two hours, and the defense anticipated cross-examining her for three hours. At the end of the first day of trial, the

4

government notified Thomas's counsel it planned to call the defendant to the stand first thing the next morning. On Monday evening, when notified that the defendant refused to testify, the government realized it was faced with a five-hour gap in trial testimony. The government then called other witnesses that evening to move up their travel to Denver and scheduled appearances in court. The defendant's decision on Monday evening not to honor her agreement inconvenienced not only the government, as she suggests; it inconvenienced witnesses, the Court, defense counsel, and the jury, who were required to wait during delays in the presentation of the government's case.

The defendant then claims she is entitled to credit for the Superseding Indictment charging Ms. Green and Ms. Green's ultimate conviction. ECF 247 at 3. Notably, the defendant did not agree to cooperate and provide evidence against Ms. Green until *after* Ms. Diaz had debriefed and fully explained the extent of Ms. Green's involvement in the scheme. As to assistance she claims to have provided to the government, almost all of the information she had about Thomas's involvement in the scheme was useless without her trial testimony.

As noted by the defendant, the government fulfilled its obligations as set forth in the plea agreement: it moved 1) to dismiss all remaining counts in the indictment (to include aggravated identity charges); 2) for the defendant to receive all three points for acceptance of responsibility; and 3) it did not seek further charges against this defendant, even though the government believes the defendant's failure to fulfill her obligations under the plea agreement would have allowed it to withdraw from the plea agreement and seek to reinstate all charges from the original indictment. *See* Plea

Agreement, ECF 94 at 4 (the "defendant specifically waives any statute of limitations defense in the event she violates the terms of the Plea Agreement so the government could pursue the Aggravated Identity theft and all other counts dismissed")).[2]  In addition, while the defendant admitted to the forfeiture allegation, no order of forfeiture can issue on a conviction for Count 1 to which the defendant pled, a violation of Title 18, United States Code, Section 286, and therefore, unlike her co-conspirator Tramell Thomas, she will not be subject to an order of forfeiture.   Finally, pursuant to the calculations set forth in the plea agreement, the government will not seek or advocate in favor of an abuse of trust enhancement or two additional levels for 10 or more victims, as argued by the probation office.   In sum, the defendant received all of the benefits of the plea agreement, and at the last possible moment reneged on her obligation to testify truthfully at Thomas's trial, thereby inflicting the maximum amount of harm.   It is entirely appropriate for the Court to consider this defendant's conduct in fashioning a just sentence.   *See United States v. Turner,* 864 F.2d 1394, 1399 (7th Cir. 1989) (affirming district court's consideration of defendant's refusal to testify as required by plea agreement, noting that the defendant had not "merely" refused to testify; "he had promised to testify and then balked.   Reneging on one's promise is a basis of punishment independent of the assertion of the privilege [not to testify], a basis on which the sentence legitimately may be augmented").

---

[2]  In the interests of judicial economy, the government elected to not move to withdraw from the plea agreement, and instead proceed with sentencing and argue that the Court take into account the defendant's conduct at sentencing.

### B. Defendant's History

Apparently making $26 an hour working for Wells Fargo was not enough for this defendant. ECF 250 at 15, ¶ 76. Instead of showing her children the value of honest work, the defendant indulged her worst instincts and turned to the one course of action that could inflict the most amount of harm on them: a life of crime with the risk of prison time that would take her away from them. Despite the fact that she was "single-handedly" raising four children, she chose to engage in this scheme and risk imprisonment. The hardship her children now face does not warrant the sentence requested. If this defendant had truly been concerned about her children, she would not have engaged in the scheme to begin with.[3] Indeed, the "families of incarcerated defendants are commonly the ones who suffer most." *United States v. Sherrills,* 432 F. App'x 476, 488-89 (6th Cir. 2011); *see United States v. McClatchey,* 316 F.3d 1122, 1131 (10th Cir. 2003) ("[d]isruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration"); *United States v. Baylor,* No. 06-40090-01-RDR, 2007 WL 2407280, at *1 (D. Kan. Aug. 21, 2007) ("[t]here is little question that every family suffers when a member is incarcerated").

### C. Consequences of a Felony Conviction

Finally, the defendant cites to the consequences she will face as a convicted

---

[3] The defendant's stated concern for her family is hard to take seriously when the evidence shows that she recruited Mercedes Diaz into the scheme, despite the fact that Diaz considered Carr to be a mother figure. Furthermore, evidence gathered during the investigation showed that Carr involved at least one of her children in certain aspects of the scheme.

felon in support of her request for a 24-month sentence. The defendant properly notes she will no longer be able to work in a bank or a financial institution.   This is the logical result of the choice she made to steal the identities of other individuals through her employment at Wells Fargo.   Without her access to the Accurint database, neither she nor her coconspirators had access to the necessary social security numbers to commit the crime.   *Cf. United States v. Chichitz-Martin*, 461 F. Supp. 2d 731, 735 (N.D. Ill. 2006) (noting, in a drug case, that the defendant's "key organizational role" helped to justify a guidelines sentence).   She used her employment to target those she knew would not readily complain:   prison inmates, and this fact should be taken into account in fashioning an appropriate sentence.

The defendant then lists the standard collateral consequences of a felony conviction: loss of her right to possess a firearm, to vote, serve on a jury and access to subsidized housing options.   These are consequences each person convicted of a felony faces and they certainly do not warrant the variant sentence requested here.

In sum, none of the grounds advanced by the defendant supports her request for a variant sentence of 24 months.   Each ground, in fact, lends support for the 63-month sentence sought by the government.

### D.  Deterrence Requires the Sentence Recommended by the Government

The need for deterrence also counsels in favor of a significant sentence. Notably, this defendant was not deterred from continuing to commit the instant offenses after Tramell Thomas was arrested and found in possession of the debit cards, nor was the search of her home enough to cause her to stop.   Green testified at trial that the

scheme continued because they were waiting on delivery of certain debit cards.   *See also* ECF 94 (plea agreement referencing Thomas's arrest and the search of their home).   A significant sentence is therefore warranted to deter this defendant from future financial crimes as well as others contemplating a similar scheme.   This is all the more true when the potential rewards for would-be criminals who are *not* caught can be tens of thousands of dollars per month.   Here, this defendant and her conspirators netted over $419,000 in a short period of time.   "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment."   *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).   These are not easy schemes to uncover, investigate, or prosecute.   Here, the defendant picked victims who were unlikely to report the fraud, and worked closely with people who she didn't think would ever be willing to testify against her.   She thought she wouldn't' get caught, but was, and should receive a sentence that deters her from taking that risk again.

## II. CONCLUSION

The 63-month sentence sought by the government is six months more than the top of the guideline range as calculated by the parties in the plea agreement.   ECF 94 at 13, and *see id.* at 2 (the "government is not bound to seek any particular sentence") and 14 (neither party is precluded from "asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors").   This sentence takes into account all of the sentencing directives of § 3553 as well as the multi-faceted harms caused by the defendant's scheme – the

identity theft, the large number of vulnerable victims, and the financial harm.   It also addresses the defendant's conduct in refusing to testify, in violation of her plea agreement, the night before she was scheduled to do so.

WHEREFORE, the Government will request at sentencing that the Court impose a sentence of 63 months in prison.

Dated this 2nd day of January, 2018.

> Respectfully submitted,
>
> ROBERT C. TROYER
> United States Attorney
>
> *s/ Martha A. Paluch*
> MARTHA A. PALUCH
> BRYAN D. FIELDS
> Assistant U.S. Attorneys
> 1801 California Street, Suite 1600
> Denver, Colorado   80202
> (303) 454-0100
> FAX: (303) 454-0402
> Email: Martha.paluch@usdoj.gov
> Bryan.fields3@usdoj.gov
> Attorneys for the government

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record in this case.

    s/ *Martha A. Paluch*
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov