IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1
(Civil Action No. 18-cv-01681-WJM)

**UNITED STATES OF AMERICA**,

    Plaintiff-Respondent,

v.

**HEATHER CARR,**

    Defendant-Movant.

_____

**RESPONSE TO MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE**

_____

Pursuant to the Court's Order, the government responds to Carr's motion for relief under 28 U.S.C. § 2255. Doc. 423. The motion should be denied.

**STATED GROUNDS FOR RELIEF**

The Motion to Vacate presents four claims: (1) Carr's trial counsel was ineffective for leading Carr to sign a Plea Agreement permitting Carr to receive a sentence greater than 24 months; (2) prosecutors "withheld information [Carr] told them" and "lied in a sentencing statement" regarding Carr's previous criminal activity; (3) relatedly, "the prosecution knowingly and maliciously lied in a sentencing statement" that Carr was involved in a 2011 arrest relating to prostitution; and (4) she did not knowingly and

1

voluntarily enter into the Plea Agreement, because Carr "would have never signed a deal with no promised number and the possibility of a 57 month sentence[.]" Doc. 423 at 4-6 (emphasis in original)

For relief, Carr seeks to be resentenced to a term of 24 months. She does not seek to have her Plea Agreement set aside, nor does she wish to go to trial on the charges originally presented in the Indictment. Doc. 423 at 8.

## RULE 5 STATEMENT

Pursuant to Rule 5(b) of the Rules Governing § 2255 Proceedings, the government states that (1) it is aware of no other post-conviction motion filed by the Defendant; (2) no evidentiary hearing has been held on the allegations made in the Motion to Vacate; and (3) the Motion is timely.

A § 2255 motion ordinarily must be filed within one year after judgment becomes final. 28 U.S.C. § 2255(f). The Amended Judgment was entered on January 18, 2018. Doc. 313. Carr filed a timely Notice of Appeal, Doc. 298, but the Court of Appeals subsequently dismissed the case on the basis of the appellate waiver in Carr's Plea Agreement. *See United States v. Carr*, No. 18-1021 (10th Cir. Apr. 5, 2018) (Attachment C). Carr filed the instant motion on June 29, 2018. Doc. 423.

"Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). The circuit courts squarely addressing the question have concluded that *Clay* applies even where a defendant's

direct appeal was dismissed based upon an appellate waiver.  *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009) (citing *Clay*); *Latham v. United States*, 527 F.3d 651, 653 (7th Cir. 2008) (following *Clay*); *see also Stewart v. United States*, 646 F.3d 856, 857 (11th Cir. 2011) (concluding no finality until the time to petition for certiorari had expired).  *Cf. Mark v. Thaler*, 646 F.3d 191, 196 (5th Cir. 2011) (holding that state prisoner's time runs from the end of the time permitted to seek discretionary review in state court).

The Tenth Circuit has not definitively ruled upon the question, but two panels seem to have assumed without deciding that finality occurs earlier, when an appeal is dismissed. *See United States v. Rojas-Alvarado*, 707 F. App'x 525, 526 (10th Cir. 2017) (unpublished); *United States v. Shine*, 173 F.3d 865 (Table), 1999 WL 157433, *2 (10th Cir. Mar. 23, 1999) (unpublished).  But under either approach, Carr's § 2255 motion is timely.

## BACKGROUND

From August 2010 until October 2012, Carr and her co-conspirators, Mercedes Diaz, Marcelle Green, and Tramel Thomas, conspired to defraud the U.S. Department of Education.  Doc. 94 at 8.  With the assistance of her co-conspirators, Carr accessed databases through her employment to obtain names, birth dates, and social security numbers of more than 150 inmates.  *Id.* at 9-11.  Carr and her co-conspirators then used this information to submit more than 150 false Free Applications for Federal Student Aid (FASFA) to the Department, seeking approximately $1.3 million in federal financial aid funds.  *Id.*  The conspirators then recruited people to receive mail in the names of the inmates, while others collected the mail, which included debit cards loaded with financial aid.

*Id.* at 9-10. The Department disbursed $562,487.85 as a result of the false claims, of which Carr and her co-conspirators received $418,672.05. *Id.* at 11.

Carr entered into a Plea Agreement, in which she agreed to: (1) plead guilty to one count of conspiracy to defraud the government, in violation of 18 U.S.C. § 286; (2) waive appellate and collateral review, with certain exceptions; (3) pay restitution; (4) admit the forfeiture allegation in the Indictment; (5) provide complete and truthful information; and (6) not seek a sentence of less than 24 months. Doc. 94 at 1-2.

With respect to the disclosure of information, Carr committed to fully cooperating with the government. Doc. 94 at 3. In particular, she agreed "to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government," and to "fully and truthfully disclose all information with respect to the activities of herself and others concerning all matters about which the government inquires." *Id.* at 4. "Moreover, the defendant shall not be entitled to withdraw her plea if the government determines that she has not fully cooperated." *Id.* at 5. And, "[t]he government has not promised a reduction or the amount of any reduction. Again, the defendant understands she will not receive any reduction if she refuses to provide complete and true information to the government and to testify truthfully in any proceeding." *Id.* at 6. In return, the government agreed to dismiss 28 other felony counts against Carr, and provisionally agreed to recommend the maximum reduction for acceptance of responsibility. Doc. 94 at 2.

The Plea Agreement noted that the statutory penalty for a violation of 18 U.S.C. § 286 is not more than 10 years of imprisonment, while the offense level under the

4

Sentencing Guidelines was estimated to be 26, with the possibility of a reduction of up to three additional levels to 23. Doc. 94 at 7, 12. With a total offense level of 23 and a criminal history category of I, the estimated sentencing range was 46 to 57 months. *Id.* at 13. But "[t]he parties recognize that any sentence requested by the government will be a recommendation to the Court and that the defendant's ultimate sentence will rest solely within the discretion of the sentencing Court." *Id.* at 6.

Carr agreed to testify on the second day of the trial of her co-conspirator Tramel Thomas. Tr., Sentencing Hearing (Jan. 4, 2018) at 46 (Attachment B). But when prosecutors returned to their office after the first day, they learned that she had suddenly decided *not* to testify. *Id.* at 23. The Court found that "Carr received all the benefits of the plea agreement and at the last possible moment she reneged on her obligation to testify truthfully at Mr. Thomas' jury trial. And that by doing so, she inflicted the maximum amount of potential harm to the Government's case against Mr. Thomas." *Id.* at 48. The Court explained, "reneging on one's promise is a basis of punishment independent of the assertion of the privilege not to testify and is a basis on which the sentence legitimately may be augmented." *Id.* (citing *United States v. Turner*, 864 F.2d 1394, 1399 (7th Cir. 1989)).

In addition to the offense level of 23 estimated in the Plea Agreement, the probation office believed that two additional enhancements applied. First, two levels were added under U.S.S.G. § 3A1.1(b)(2), because the offense involved a large number of vulnerable victims. Doc. 222 at 11. The defense did not object to this because there was "no reasonable argument against it." Doc. 423 at 18. Second, two levels were added under U.S.S.G. § 3B1.3

5

(abuse of a position of public or private trust, or use of a special skill). Doc. 222 at 11. Carr objected to this enhancement, saying that the proper offense level was 25, Doc. 243, and the Court sustained that objection. Tr., Sentencing Hearing (Jan. 4, 2018) at 7.

With a total offense level of 25 and a criminal history category of I, the result was an advisory guideline sentencing range of 57 to 71 months. *Id.* at 9. The Court sentenced Carr at the bottom of the range. *Id.* at 54, 57; Doc. 313.

## ARGUMENT

### I. CARR PROCEDURALLY DEFAULTED HER CHALLENGE TO HER PLEA AGREEMENT.

Carr claims that her guilty plea "was unlawfully induced or not made voluntarily with the understanding of the nature of the change or consequences of the plea." Doc. 423 at 6. She insists that she "would have never signed a deal with no promised number and the possibility of a 57 month sentence and 3 years probation." *Id.* (emphasis in original). Such assertions are both procedurally defaulted and belied by the record.

Carr has never before suggested her guilty plea was not knowing and voluntary. But "a § 2255 petition is not an appropriate vehicle to raise issues that should have been raised on direct appeal." *United States v. Bolden*, 472 F.3d 750, 751 (10th Cir. 2006) (citation omitted). *See also Bousley v. United States*, 523 U.S. 614, 621 (1998) (relief under § 2255 "will not be allowed to do service for an appeal"). "Not having raised such a claim on direct appeal, it is procedurally defaulted unless [the defendant] can show cause and prejudice, or a fundamental miscarriage of justice." *United States v. Tisdale*, 127 F. App'x 438, 440 (10th Cir.

2005) (unpublished) (citing *Bousley*, 523 U.S. at 621-22).  In this regard, that her appeal was dismissed on account of the appellate waiver in her Plea Agreement is of no moment.  *See Ellis v. Mullin*, 56 F. App'x 858, 864 (10th Cir. 2003) (unpublished).

Carr does not argue cause and prejudice, but the record forecloses any claim that either her attorney or the Court misled her regarding her potential sentence under the Plea Agreement.  The document itself began by noting that the maximum statutory sentence was 10 years.  Doc. 94 at 7.  Then it estimated the advisory Guideline range to be 46-57 months, but cautioned that, "in order to be as accurate as possible, … the estimated offense level could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI)."  *Id.* at 13.  Finally, the agreement stressed that, "[t]here are no other promises, agreements (or 'side agreements'), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement."  *Id.* at 14.

Carr's Statement in Advance of Plea reiterated her understanding that she could receive up to 10 years to imprisonment.  Doc. 95 at 2.  She averred that, "[n]o agreements have been reached and no representations have been made to me as to what the sentence in this case will be, except those which are explicitly detailed in the document entitled 'Plea Agreement' which I and the government have signed."  *Id.* at 5.  She elaborated that "no promises and no threats of any sort have been made to me by anyone to induce me or to persuade me to enter my plea(s) in this case", and "[n]o one has promised me that I will

7

receive probation, home confinement or any other specific sentence desired by me because of my plea(s) of guilty." *Id.* at 6.

Carr also asserted that "I have had sufficient opportunity to discuss this case and my intended plea(s) of guilty with my attorney", "I am satisfied with my attorney", and "I believe that I have been represented effectively and competently in this case." *Id.* at 7.  Carr summarized that her "decision to enter the plea(s) of guilty is made after full and careful thought, with the advice of my attorney, and with full understanding of my rights, the facts and circumstances of the case, and the potential consequences of my plea(s) of guilty." *Id.*

At the Change of Plea hearing, the Court thoroughly explained the Plea Agreement to Carr, who affirmed that she well understood the document and its consequences:

> THE COURT:  …  Ms. Carr, do you understand that I can impose a sentence that is more severe or less severe than that set forth in your plea agreement?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Do you understand that if your – even if you're disappointed with the sentence that I do impose, that will not be a basis for you to withdraw your guilty plea?
>
> THE DEFENDANT:  Yes, sir.
>
> \* \* \*
>
> THE COURT:  Having in mind all that we have discussed regarding your plea of guilty, your rights you will be giving up, and the maximum sentence you may receive, do you still wish to plead guilty?
>
> THE DEFENDANT:  Yes, sir.

Tr., Change of Plea Hearing (Dec. 5, 2016) at 18, 20 (Attachment A).

When a defendant pleads guilty, her "statements on the record, 'as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.'" *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). *See also United States v. Gauger*, 534 F. App'x 758, 762 (10th Cir. 2013) (unpublished) ("At the plea hearing the court questioned Mr. Gauger as to his willingness to enter his plea and had the opportunity to observe his demeanor."). Thus, the Supreme Court views after-the-fact claims of lack of understanding with a jaundiced eye. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Here, the Court ensured that Carr's attorney had fully reviewed and discussed her plea, answering all of her questions. Tr., Change of Plea Hearing (Dec. 5, 2016) at 8-9. Carr told the Court she was "absolutely" satisfied with her attorney and that she freely and voluntarily signed the Plea Agreement. *Id.* at 8-9, 20.

Based upon its inquiry and Carr's own representations, the Court found and concluded that "the defendant's fully competent of entering an informed plea and she's aware of the nature of the charge and the consequences of that plea." Tr., Change of Plea Hearing (Dec. 5, 2016) at 21. Specifically, the Court found that Carr had read and understood each term of her plea agreement, and knowingly and voluntarily signed both that agreement and the Statement in Advance of Plea. *Id.* at 22. Furthermore:

9

> The defendant's guilty plea is not the result of mistake or coercion. The defendant's guilty plea is not the result of any representations or promises made to her by anyone except as to those matters disclosed in open court or included in her plea agreement. The defendant understands each of her legal rights in this case. The defendant understands that the Court is not bound by any sentence recommended in the plea agreement and that if the Court does not follow any such recommendation, the defendant may not withdraw her guilty plea.
>
> The defendant understands the maximum sentence of imprisonment, maximum fine, and terms of supervised release the Court may impose under the terms of her plea agreement.

*Id.* at 22-23.

Carr's unsupported allegations fail to overcome these findings, and are at odds with her own sworn statements before the Court. Moreover, although she claims her guilty plea was unknowing and involuntary, she does not ask for the Plea Agreement to be set aside. Indeed, if it were, she would face trial and the possibility of conviction not just on the one count to which she pled, but also on the *twenty-eight* other felony counts that were dismissed. *See* Doc. 94 at 4 ("[S]hould the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to re-charge her on any and all counts which were dismissed as part of this Plea Agreement or which the government agreed not to pursue based on this Plea Agreement." *Accord* Tr., Sentencing Hearing (Jan. 4, 2018) at 47 ("[I]in my view the defendant's failure to fulfill her obligations under the plea agreement gave the Government the option, had it chosen to exercise it, to withdraw from the plea agreement and seek to reinstate all the charges from the original indictment against Ms. Carr.").

Instead, Carr wants to have her cake as well as eat it – keeping all of the benefits of

10

the agreement while jettisoning the rest. *But see*, *e.g.*, *United States v. Bunner*, 134 F.3d 1000, 1005 (10th Cir. 1998) ("[A]lthough the parties were technically able to perform according to the letter of the agreement, Defendant's performance, for all practical purposes, became worthless to the government. … Therefore, no obligation remained which prohibited the government from reinstating the previously dismissed charges."); *United States v. Lewis*, 138 F.3d 840, 843 (10th Cir. 1998) (It is appropriate "to put [the defendant] in the position he was in before he entered into the plea agreement" … "where the government agreed to drop some charges brought in the original indictment in exchange for the petitioner's agreement to plead to others.") (internal quotation and citation omitted).

Carr has procedurally defaulted her claim that she did not knowingly and voluntarily enter her plea of guilty. Moreover, she has not argued, much less shown, cause and prejudice excusing her default.

## II. CARR PROCEDURALLY DEFAULTED HER PROSECUTORIAL MISCONDUCT CLAIMS.

Carr claims that "[t]he prosecution withheld information that I told them," and didn't document her statements in a memorandum of interview (MOI). Doc. 423 at 5-6. Specifically, she alleges that the Court wasn't told that Christine Duncan, a witness in her co-conspirator's trial, had stolen her identity, and that under that guise, Duncan had submitted one or more FAFSAs. *Id.* This was never raised before this Court or the Tenth Circuit, and therefore has been procedurally defaulted. *See United States v. Zander*, 723 F. App'x, 617, 619-20 (10th Cir. 2018) (unpublished). As with Carr's challenge to her Plea Agreement, she has

11

not asserted cause and prejudice that could excuse her default. And, as before, the record demonstrates that any such assertion would be meritless.

Carr's complaint surrounds the Sentencing Statement the government filed, not in her case, but that of one of her co-conspirators. *See United States v. Thomas*, No. 16-cr-00054-WJM-2 (Dec. 29, 2017), Doc. 262. That document asserted, in part, that "while defrauding the Department, the defendant [Thomas] worked on the side as a pimp who used manipulation and force to profit from a commercial sex business and to rob its customers." *Id.* at 8. The government related a November 2010 incident in which "Victim 1 (a 'john') awoke to find Victim 2 (a woman prostituted by the defendant) texting on her phone." About 20 minutes later, the defendant arrived, robbed Victim 1 at gunpoint, and yelled at Victim 2 to pack up her things; then they left. *Id.* at 8-9. In January 2011, an undercover Colorado Springs Police Department detective arrested Victim 2 at a Motel 6. *Id.* at 9.

Carr's complaint appears focused upon a single passage:

> Two other women were found by CSPD in the hotel room next to Victim 2's. One of those women was Heather Carr. Just as in this case, Carr refused to testify against the defendant. Victim 2, and others, also refused to testify. As a result, the charges against the defendant were dropped.

*Id.* at 10.

Carr offers no authority requiring prosecutors to either commemorate or disclose information provided directly to them by the defendant. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (There is no *Brady* violation "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or

12

where the evidence is available ... from another source," because in such cases there is really nothing for the government to disclose). [*]

Nor does she explain how one paragraph in a 16-page document filed in connection with another defendant's sentencing in any way affected her case. *See* Doc. 423 at 6 (expressing concern that it might have "sway[ed] the judge's sentencing"). *But see* Tr., Change of Plea Hearing (Dec. 5, 2016) at 34-35 ("It's really going to be very unhelpful and of little use for you to go into discussions you had with the Government's attorneys prior to trial because that's not what you were indicted for."). There is no indication that the *Thomas* Sentencing Statement had any effect upon Carr's sentence – to the contrary, the Court credited Carr in that "this is her first felony conviction and that she has no substantial criminal history and that those are legitimate factors in mitigation." *Id.* at 54. Moreover, that Carr made no mention of the statement during her lengthy allocution or at any other time before her case became final, simply underscores her procedural default.

### III. CARR HAS FAILED TO DEMONSTRATE THAT HER COUNSEL WAS INEFFECTIVE.

A claim for ineffective assistance of counsel requires a defendant to show that: (1) her attorney's performance was unreasonable under prevailing professional norms and (2) there is a reasonable probability that the attorney's deficient performance prejudiced the

---

[*] This Court has previously discounted Carr's unsubstantiated and irrelevant allegations of isolated intemperance. *See* Tr., Change of Plea Hearing (Dec. 5, 2016) at 35 ("I have now seen Mr. Fields on at least a couple of trials, Ms. Paluch on one. I find it hard to believe that they would be abusive on the phone to you").

defendant. *Strickland v. Washington*, 466 U.S. 668, 687-97 (1984). "This court may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is the petitioner's burden to show that the alleged errors were not sound strategy under the circumstances. *Id.*

Carr's ineffective assistance claim boils down to a single point of contention: "I would never have signed the plea unless it was 24 months – this was the number I was told all along"; her counsel "could not now guarantee or put in writing anything about 24 months guaranteed if I testify as she had promised for the past year." Doc. 423 at 4-5. Carr's allegations fail both prongs of *Strickland*. The allegations that her counsel misled her regarding the content and effect of the Plea Agreement are simply belied by the document itself, the Statement in Advance of Plea, and this Court's change of plea colloquy. *See* pp. 8-12, *supra*. In particular, the record establishes that Carr's counsel ensured that she knew that 24 months was the floor, and not the ceiling, of the range of possible sentences.

Nor can Carr show prejudice, especially after she breached the Plea Agreement at the eleventh hour. Carr has the burden of showing that "but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even now, Carr doesn't claim she'd rather go to trial. *See, e.g.*, *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) ("Mr. Viera has not shown that, absent counsel's

alleged failure to advise him that he would be deported, he would have gone to trial."); *United States v. Peppers*, 273 F. App'x 155, 159 (3d Cir. 2008) (unpublished) ("Peppers has made no contention that he would not have entered his plea and would have insisted on going to trial if his counsel had advised him that the ACCA arguably may not have applied."). And for good reason: if she wants to undo her Plea Agreement, Carr will face trial on 29 felony counts, with the prospect of a great deal more than 24 months of imprisonment. *See, e.g., United States v. Noble*, 350 F. App'x 305, 306-07 (10th Cir. 2009) (unpublished) (There was no prejudice because "[i]f Appellant had gone to trial and been convicted, he would have faced a guideline range of 262-327 months' imprisonment, a significant increase from the 188 month guideline sentence he actually received. Moreover, Appellant pled guilty after being informed by the court that its final calculation of his sentence might differ from any calculation made by his attorney.").

Carr's claim "plainly founders" "for failure to demonstrate a 'reasonable probability' – or indeed, *any* probability – 'that, but for counsel's unprofessional error(s), the result of the proceeding … would have been different." *United States v. Peña*, 566 F. App'x 645, 650 (10th Cir. 2014) (unpublished) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)) (emphasis in original). She does not explain how a different course of conduct might have led her to (1) not plead guilty; (2) be acquitted rather than convicted at trial; or (3) receive a less onerous sentence. *Id.* "Ultimately, it is beyond cavil that conclusory allegations" such as we have here fall far short of the necessary showing. *Id.*

## CONCLUSION

The Motion to Vacate should be denied.

> Respectfully Submitted,
> Robert C. Troyer
> Acting United States Attorney
>
> *s/ Paul Farley*
> Paul Farley
> Assistant U.S. Attorney
> 1801 California Street, Suite 1600
> Denver, Colorado 80202
> Telephone:  303.454.0100
> USACO.ECFAppellate@usdoj.gov
> Attorneys for Plaintiff-Respondent

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### CERTIFICATE OF SERVICE (CM/Colorado)

I hereby certify that on July 23, 2018, I electronically filed the foregoing document with Clerk of Court using the CM/ECF system and certify that a copy will be placed in the U.S. Mail, postage pre-paid and addressed to the following:

Heather Carr
#89751-083
Federal Prisoner Satelite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

*s/ Amanda Bell*
Amanda Bell
United States Attorney's Office
Denver, Colorado