Judge William J Martinez
Clerk of the Court
901 19th St Room A105
Denver, CO 80294

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO
APR -1 2019
JEFFREY P. COLWELL
CLERK

Re: Case #: 1:16-CR-00054-WJM-1

Dear Judge Martinez,

Hello, my name is Heather Carr and I am writing this letter as a follow up to my 2255 motion filed June 29th, 2018. While awaiting the next step forward in my appeal process I would like to update the court on current and factual events and allow this letter to be taken into consideration. To date I have served 14 months of my 51 month sentence being served at the Phoenix Federal Prison Camp. Since being here I have completed over 30 Re-Entry preperation and continued education classes. I have had a lead role and been productive in my work detail. I work on myself everyday and exhaust all of my opportunities

while here and attempt daily to make the absolute best of my circumstances.

The last 14 months have been a transition since I have never experienced any jail or prison before and since I had never spent a single day without my children. I understand that my time here is a needed deterrent to my past actions that I strongly regret. I am truly focused on being a productive member of this institution and a positive example through leadership and steady progression.

My unstable family dynamics are what consumed my thoughts and is heartbreaking. My children are now wards of the court and my oldest daughter Ayanna has temporary custody of Tru (age 4) and Mila (age 8). My daughter has done the best that she can holding our family together for the past 14 months but has come to the end of her emotional and financial means. My son Tru has autism and a sensory processing

disorder. He is severely developmentally delayed and is still non-verbal. He has not progressed at all in the 14 months I have been here and has actually regressed. He has been kicked out of 10 daycares in the past year due to him escaping out of the daycares and other issues associated with his autism. Daycares will no longer take him due to the liability unless he has a full-time aid with him. The State of Arizona will not approve an aid for him because he is not "medically fragile". My daughter has missed so much work because of the daycare situation that she is now in danger of losing her job. Without a daycare she can't work and without work she can not take care of her siblings or bills.

  According to the State of Arizona, children must be adopted if parental reunification is not possible within 24 months. My daughter does not want them in a foster home because

They will be adopted, birth certificates will be changed and I will lose all parental rights. But unfortunately this is what we are facing since she can no longer take care of them and we have absolutely no other family.

 I respectfully ask that you reconsider my sentence. At the time of my sentencing my family and I was led to believe I would be doing 24 months of incarceration. We were terribly unprepared for a sentence over that. My children are trying their best to stick together while I am in here but they are facing challenges far beyond my reach and aid. Their fragile stability and all of the issues with my son has been an unforeseen conflict. My daughter does not want to fail her young siblings by giving them to a system that will inherently cause more damage and separation that I have already caused. Writing these words are heartbreaking in itself and I am humbly reaching

out to the court to plead for consideration.

I feel very strongly that I have more to offer my community by once again becoming a productive citizen. I am involved with the Dress for Success program and look forward to volunteering there upon my release. I have now seen first hand how incarceration effects children and family and all of the challenges we face in here and when we re-enter society. I strongly feel I can be an asset to organizations focused on re-entry efforts and I look forward to the opportunity to serve my community, be back with my children, fulfill my obligation to the court and become a committed, active and productive citizen and mother. Any happiness or future I will have will now be enhanced by this experience and by being able to look beyond myself and to the well-being of others.

In closing, I humbly ask for

true consideration on my 2255 motion. Please reconsider my sentence and impose a sentence that is sufficient but not greater than necessary. Please consider my history and all of the factors in this case and find a remedy that will be graciously bestowed upon me and my family that will save further suffering. I have included a letter from my daughter also and several documents regarding my son. Thank you so much for your time in reading this.

Respectfully,

Heather Carr
inmate # 89751-083

To whom it may concern;

     I am writing to you regarding my mother Heather Carr who is currently incarcerated at FPC-Phoenix. My name is Ayanna Brown and I am the oldest out of her four children. I took custody of my youngest siblings, Milani (age 8) and Tru (age 4). We have no other family members or people willing to care for my brother and sister. Therefore, I stepped up and quit going to college. I was supposed to start at Midwestern University in June of 2018 to begin their 4-year program to obtain my doctorate of pharmacy degree, but there were more pressing issues to take care of. Thus, I took a job as pharmacy technician at the VA hospital to support them and I have had them since February 2018. Their father is my mother's co-defendant and is in federal custody as well. He gets sentenced ~~January 14th~~ April 3rd and is facing 10 years in prison. My mother was sentenced 57 months and she is almost at the year mark since she has been incarcerated. My mother has never been in trouble before, has never done drugs, and has always provided a nurturing, loving and stable environment and life for all of us. Without her here our family has been in a downward spiral.

     My now 4-year-old brother Tru has been diagnosed with autism and is non-verbal. He also has been diagnosed with SPD (Sensory Processing Disorder), and is not potty trained due to difficulties communicating. With all these circumstances comes several challenges. Due to his sensory issues he can't process the environment or his surroundings properly. When there is too much noise he constantly tries to escape to find a quiet place. We have put a "band aid" on this situation at home by installing higher locks that he cannot reach so he won't escape. On the other hand, he still tries to run out at daycare and they legally cannot lock the kids in the classrooms, so now he is getting kicked out of daycares because they cannot properly care for him while trying to attend to the other children. He has been through 5 daycares in the past 11 months. I keep having to leave work because they are constantly calling me to come pick him up, and now my job is on the line because I'm on a year probation until June because I'm still a new employee until then. I was able to talk one of the daycares into letting him stay but they said they would accept him only if he has an AID with him. I cannot afford to get him an aid and I'm having a really hard time to get the state of Arizona's developmental disability program to accept him into the program to provide these services for him.

     As much as it pains me to say this, I can no longer be the guardian of my siblings because I have no way to properly care for my brother to get him all the help he most definitely needs. Without daycare I cannot work, and without working I cannot pay the bills. We need our mother home or the children will be adopted and the court will sever my mother's parental rights. I am the temporary guardian but the children will be going into foster care and since my mother's sentence is over 24 months Department of child safety said they will need to be adopted this year, and the odds of someone adopting them in pairs is very low. I cannot care for them any longer.

     I do not want to lose my siblings to a random family because we are all we have. Please let my mother out on compassionate release or home confinement, she will be able to work

and then come home to take care of my siblings so we don't lose them to adoption. Please take her history and character under consideration and please review all documents included in this letter. I have included a letter from the most recent daycare that won't take my brother without an aid, as well as court documents about severing parental rights as well as my brother's psychiatric evaluation regarding his autism diagnosis. Thank you for your time and consideration.

Sincerely,

Ayanna Brown

You can contact me at 480-720-9055 with any questions and/or write to:

        Ayanna Brown

        4101 S. 183rd Dr.

        Goodyear, AZ 85338



**Jewish Family & Children's Service**

# PSYCHIATRIC EVALUATION

| | |
|---|---|
| **PATIENT:** | Tru Thomas |
| **DATE OF BIRTH:** | 12/27/2014 |
| **MRN:** | 000000042617 |
| **ENCOUNTER DATE:** | 8/24/2018 |
| **PROGRAM:** | Behavioral Health |

## Individuals Present
**Contact Type:** Onsite meeting
Individual present
**Others present:** Sister and brother in- law

## General
New Patient
**Historian:** sister and brother in Law

## Reason for Visit
This 3 year 7 month old male presents for ASD and ADHD.

**History of Present Illness:**
1. ASD
   The symptoms are reported as being moderate. He states the symptoms are chronic and are poorly controlled. He is non verbal.  He does not make eye contact.   school reports indicates he plays by himself. Most of the time he does not have any facial expression. He does not start any communication. He never points at things he needs. He does not like to show and tell.
   He lines up the cars and if they do not line up he takes away the tires of the cars to line them up. They have to be in a straight line.
   He covers his eras when it is loud. He escapes from the daycare if it is too loud. Guardian says he has hyposensitivity to pain.  he runs on the rocks barefoot. He runs to the street in summer wwhen the pavement is hot and does not feel it.
   He does not like change in routine. If they go through the front door, not the garage door ( they usually go through garage door ) he gets upset.   he watches the same moves or same part of the movie again and again. The favorite part of a movie is credits.
   he spins sometimes and keeps on spinning. He also rocks from  side to side.  He likes rotating lights from his night light.
   If another kid wants to play with him he moves away.
    He goes to other people's drink and drink that. He does not care for meat. He loves granola bars.
2. ADHD
   Quality of life: behaviors create problems at home and behaviors create problems at school.  The problem is with no change.  Context: behaviors persist > 6 months and behaviors began before age 7.  Associated symptoms include fidgeting/squirming, restlessness, short attention span and unable to follow directions.

Sunrise Preschools **PARENT COMMUNICATION FORM** Friday

Date: 11/30/18   Time: _____   Parent's Name _____

Child's name  Tru Thomas

Regarding

Tru ran out of the classroom at different times during the day.

| | | |
|---|---|---|
| 9:30 a.m | 11:45 a.m | 3:00 p.m |
| 9:40 a.m | 12:30 p.m | 5:10 p.m |
| 9:50 a.m | 12:45 p.m | 5:20 p.m |
| 11:10 a.m | 2:00 p.m | 5:25 p.m |
| 11:30 a.m | 2:30 p.m | 5:30 p.m |

**Sunrise Preschools**

## PARENT COMMUNICATION FORM

Date: 12/6/18  Time: 5:00PM  Parent's Name: MR & MRS Thomas.

Child's name: Tru Thomas.

Regarding

Today In the afternoon Tru was having a rough moment attempting to run out of his classroom. I came to assist the teachers. Tru did run out of the classroom and made it to the SchoolAge playground. I brought Tru to the front desk with me, he was still trying to run out the front door. I feed him thinking he was hungry and maybe he wand calm down. He ate and still run down the hallway, I chased him, and brought him with me again. I was really afraid he could run out.

Ms Elizabeth
Assistant Director.

 **PARENT COMMUNICATION FORM** 

Date: 12/7/18   Time:   Parent's Name: Mom or Dad

Child's name: Tru Thomas

Regarding

Tru ran/attempted to run out the classroom 8 times today. Myself and other teachers were with him throughout the day.

Miss Aaliyah



12/11/2018

Aubrey Richardson

RE: Tru Thomas

Dear Aubrey,

Thank you for your interest and patience in working with us to enroll Tru in our Ahwatukee KinderCare.

After discussing Tru's individual care needs with you and as well as caring for Tru during a free trial day, we welcome Tru's enrollment with the provision of a 1-to-1 Personal Care Assistant, either at your own cost or through community resources that may be available to you, to provide Tru with the 1-to-1 care that we feel he needs. The fundamental nature of our center is that of a group program, and we believe we are unable to safely care for Tru in our group care ratio of 1-to-8 at this time.

Feel free to contact me with questions at 480 759 9879. If you choose not to provide a Personal Care Assistant for Tru at this time, we wish you well in finding the care he needs.

Sincerely,

Yvonne Berkhoff
Center Director

cc:
Tyreca Sylvester, Inclusion Services

CT04400 (1/16)

# PROGRESS REPORT TO THE JUVENILE COURT

**Court Case Number**   JD35718              **Date of Report**   10/03/2018

**Case Name**            CARR, HEATHER **ID:** 587802

**A.   Name and Date of Birth for Each Child Subject to This Court Case Number:**

3729505 THOMAS, TRU            12/27/2014
3729504 THOMAS, MILANI         12/25/2010

**B.   Child or Children Subject to This Report If Different From Above.**

Not applicable.

**I.   REASON FOR DCS INVOLVEMENT**

**A.   Brief statement of grounds for petition.**

On 04/13/2018 at 2:07 PM, the Department of Child Safety (DCS) took custody of Tru Thomas and Milani Thomas due to concerns pertaining to incarceration and no caregiver willing and/or able to parent.

On or about 01/05/2018, mother Ms. Heather Carr signed a Power of Attorney (POA) titled Temporary Guardianship Agreement for the children to be in the custody of adult sister and her significant other, Mrs. Ayanna Brown and Mr. Demarcus Brown for 'as long as necessary' beginning on 01/05/2018. This agreement will expire on 07/05/2018 as a POA cannot last for longer than six months under Arizona law.

Ms. Carr became incarcerated in 02/2018 and it is unknown how long she will be incarcerated, but could be up to five years.

Father, Mr. Tramell Thomas dropped Tru and Milani off with Mrs. Brown and Mr. Demarcus on 03/11/2018. Mrs. Brown reports that she attempted to contact Mr. Thomas about the children, but he ignored her phone calls. Mr. Thomas was arrested on a parole violation on or about 03/18/2018 and is in federal custody.

Although Ms. Carr made temporary arrangements for the children, she has not ensured that their mental and behavioral health needs are met as Mrs. Brown is unable to provide for medical or behavioral health services for the children as she is unable to add them to her insurance.

**B.   Additional safety threats or risk factors that prevent family reunification, if applicable.**

Both parents remain incarcerated.

## II. SERVICES AND SUPPORTS

**A. If applicable, describe efforts made to locate missing parent.**

Not applicable.

**B. Describe the behavioral changes the parent or guardian must demonstrate in order to eliminate the safety threats and risk factors identified in the case plan.**

Ms. Carr is encouraged to take part in any family related services while she is incarcerated. (Counseling, Parenting, Employment, Cards, Letters). Ms. Carr will be assessed for additional needs upon release.

Mr. Tramell is encouraged to take part in any family related services while he is incarcerated. (Counseling, Parenting, Employment, Cards, Letters) He will be assessed for additional needs upon release.

**C. Services and supports provided to eliminate the need for continued out-of-home placement and the outcome and participation in those services and supports.**

Not applicable, the removal was not preventable as there was no caregiver willing or able to care for the children. No documentation has been provided to the Department of any participating or completion of services while incarcerated.

**D. Describe coordination with RBHA Behavioral Health Services.**

The children both received a Rapid Response and were referred to Jewish Family and Children Services.
Tru receives case management and a birth to five assessment. Tru was assessed and qualified with DDD. Tru will be receiving Occupational Therapy.
Milani receives case management.

## III. CASE PLAN

**A. Case plan goal and target date (attach case plan).**

Guardianship 4/03/2019

**B. Describe efforts (including services and supports) necessary to accomplish case plan goal.**

The Department will continue to provide monthly contact. Parents are encouraged to participate in any services offered to them while incarcerated.

**C. Concurrent plan and target date (describe what activities have been initiated to implement the concurrent plan).**

Severance and Adoption 4/03/2019

D. Recommended permanent case plan goal and target date, if different than stated in subsection A above.

E. Reason for change in case plan goal, if applicable.

The parents will be incarcerated for 5-15 years and Family Reunification is not a realistic goal.

## IV. CHILD'S PLACEMENT

A. Identify and describe type of current placement and whether this placement is consistent with the Department's placement preferences. (State whether this placement is temporary or permanent).

At this time, Tru and Milani are in an unlicensed kinship foster home and is consistent with the Departments placement preferences. This placement is willing to be permanent as well.

B. Describe efforts to identify and assess placement with the following: all adult grandparents, all parents of a sibling of the child, where parent has legal custody of such sibling, other adult relatives of the child (including any other adult relatives suggested by the parents), or a person who has a significant relationship with the child, including the child's and/or parent's tribe if the child is or may be Native American. If the child is not placed in the home of a relative or person who has a significant relationship with the child, explain why such a placement has not been identified or is contrary to the child's best interests.

The children are placed with their adult sister.

C. Explain how the current placement ensures the safety of the child, that the child's needs are met and is the least restrictive placement.

Placement makes sure that the children are always supervised and they are able to meet all behavioral, physical and financial needs of the children. This placement is the least restrictive placement that is available for the Department.

D. Describe child's overall functioning (include medical, social and educational status).

Tru is 4 years old. Tru is nonverbal and placement has been teaching the child sign language to say "Please" and "Thank you". Tru was attending the predevelopmental program at Liberty Elementary School, however once the school learned that it was requested that he be transported to his daycare, the school was not able to accommodate this request as it was two miles outside of their boundaries. Tru was not able to attend a closer daycare as the copay was too high even with partial DES coverage. As an alternative, Tru attends the program at Sunrise Preschool. Tru was assessed and qualifies with DDD. Tru will receive Occupational Therapy. Placement applied Tru for ALTCS but was denied and

placement is currently appealing the denial. Tru loves to play games on his tablet. Placement is potty training Tru.

Milani is 7 years old and enrolled at the school in her neighborhood. Milani is a happy and content child. Milani loves to talk and play with her friends. Milani likes to watch YouTube videos of slime. Milani interacts great with Tru, she is able to interact and play with him.

E. **Describe how the reasonable and prudent parent standard is being implemented to allow the child to participate in age and developmentally appropriate extracurricular, enrichment, cultural, and social activities.**

The children are able to participate in activities should the occasion arise and placement is willing to facilitate.

F. **If the child has a sibling in out-of-home placement, describe what efforts have been made to place siblings together and, if not placed together, state the specific reason why this did not occur or reasons why this would be contrary to the child's or sibling's safety or wellbeing.**

Not applicable as Tru and Milani are placed together.

G. **Describe results of visits with the parents/guardians/custodians which have occurred since removal (include proposed visitation in the case plan).**

Placement takes the children to visit their mother frequently, Ms. Carr and they write letter to each other. Mr. Tramell is incarcerated in a different state so placement is not able to provide frequent contact. Mr. Tramell has wrote the children letters, however Milani has not wrote back.

H. **If placement with sibling(s) is not possible, describe efforts to facilitate frequent visitation or contact with siblings. If frequent visitation or contact with siblings is not recommended, state reasons why this would be contrary to the child's or a sibling's safety or wellbeing.**

Not applicable.

I. **Describe contact and any reason for restricted contact between the child and child's parents, family members, relatives, friends, and any former foster parents. State whether contact is in the child's best interest.**

There is restricted contact with both parents due to incarceration. Ms. Carr is incarcerated in Arizona and placement is willing and able to facilitate frequent visits. Mr. Tramell is incarcerated out of state which prevents placements from providing any visitation with the children.

J. **History of placements (include the length of time the child has been in out-of-home care, the number of placements, and the length of each placement).**

Tru Thomas

Page 5   Progress Report to Juvenile Court

        4/13/2018-Present: Unlicensed kinship, adult sibling

        Milani Thomas
        4/13/2018-Present: Unlicensed kinship, adult sibling

**K.** **Services and supports provided to address the child's placement/special needs and to support the out-of-home caregiver (include in the case plan).**

    CMDP, Standard Allowances, CFT's with RHBA provider, monthly contacts.

**L.** **If applicable, state why the out-of-state placement continues to be appropriate and in the best interest of the child (include ICPC and/or out-of-state visitation status).**

    Not applicable.

**M.** **If the child is 16 or older with a case plan goal of Independent Living, describe services and supports provided to prepare the child for Independent Living.**

    Not applicable.

**N.** **If the child is an Indian Child, describe active efforts to provide culturally appropriate remedial services and rehabilitative programs, and efforts to place the child within the placement preferences.**

    Not applicable.

## V.   CHILD SAFETY SPECIALIST'S CONCLUSIONS

It is the conclusion of this case manager that temporary custody is necessary due to the incarceration of both parents, however, it should be noted that the children did not disclose any type of maltreatment or neglect while in their parents' care. It should also be noted that Ms. Carr signed a POA allowing the children to be cared for by Mrs. Brown for 'as long as necessary', but it expired on 07/05/2018 due to Arizona law.

It is recommended the change of case plan in order to provide permanency and stability for the children.

## VI.   RECOMMENDATIONS

### A.   Agency

**It is respectfully recommended that** <u>Tru and Milani Thomas</u> **remain a ward(s) of the court, committed to the care, custody and control of the Arizona Department of Child Safety.**

**It is further respectfully recommended that** <u>Tru and Milani</u> **be placed in the physical custody of** <u>Ayanna Brown</u> **with appropriate medical, social, and educational authorizations.**



Aletcher Cos? #a75403
Womens Federal Prison
3930 N. 45th Ave
Phoenix, AZ 85084

Judge William J Martinez
Clerk of the Court
901 19th St Room A105
Denver, CO 80294

CERTIFIED MAIL
7001 0320 0004 1447 3009

