FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 12 2019

JEFFREY P. COLWELL
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

UNITED STATES OF AMERICA,                    :

      Plaintiff,                             :

                                             :   CASE NUMBER: 1:16-CR-00054-WJM-1

vs.                                          :

                                             :   JUDGE WILLIAM J. MARTINEZ
                                             :   U.S. MAGISTRATE JUDGE

HEATHER CARR                                 :

      Defendant.                             :

## DEFENDANT'S MOTION REQUESTING RELIEF UNDER COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582 (c)(1)(A)

Pursuant To 18 U.S.C. 3582(C)(1)(A), Defendant Heather Carr hereby moves this Court for an order both releasing her from custody of the Bureau of Prisons and allowing her to complete the balance of her 57 month sentence on home confinement.

### MEMORANDUM

### I. Procedural Background

On January 4, 2018, Heather Carr was sentenced to serve 57 months of imprisonment for her conviction of Conspiracy to Defraud the U.S. Government in a violation of 18 U.S.C. 286. Heather self-surrendered and reported to the Federal Correctional Institute Phoenix Camp on February 8, 2018. Restitution in the amount of $562,487.85 was also imposed to be paid joint and several by Heather Carr and her co-defendants Tramell Thomas, Mercedes Diaz, and Marcelle Green. Three (3) years of supervised release was also imposed.

As of the date of this pro se motion, Heather has served 19 months in federal custody at the Phoenix Federal Prison Camp. Her projected release date is March 28, 2022 with a projected home confinement date of October 7, 2021 (see Exhibit A-1, Computation Data Sheet).

1

## II. Application of the Liberal Construction Doctrine

As a pro se inmate, Heather Carr has no benefit of formal training as an attorney and no access to a proper law library or computer. As the result of her pro se status, this motion must be held to less stringent standards than those drafted by attorneys. (Haines v. Kerner, 404 U.S. 519 (1972)).

## III. Compassionate Release Eligibility

For decades only the Bureau of Prisons (BOP) Director and the United States Attorney's Office could seek a sentence reduction after criminal judgement was filed. However, that changed with the passage of the First Step Act of 2018. In addition to the BOP Director and the United States Attorney's Office, after December 21, 2018 the defendant in limited circumstances , also has a voice in reducing her sentence based on Compassionate Release 18 U.S.C. 3582 (c)(1)(A).

The First Step Act sets forth the following eligibility criteria for an inmate seeking compassionate release: (1) Seek BOP assistance in filing a motion, (2) set forth the relevant 3553 (a) factors to support the motion and demonstrate why the reduction is "consistent" with the applicable policy statements issued by the Sentencing Commission; and (3) set forth the "extraordinary and compelling" reasons warranting the reduction.

### (a) Heather Carr fully exhausted her administrative rights

Title 18 U.S.C. 3582 (c)(1)(A) requires Heather to exhaust her "administrative rights" with the BOP before she files a motion. Consistent with this requirement, Heather sought compassionate release from the Warden at the Phoenix Camp which was denied on February 8, 2019, the Regional Director denied on March 14, 2019, and the final denial from the Central Office on June 15, 2019. Pursuant to the First Step Act of 2018 section 603 (b) as it pertains to the request for Compassionate Release, inmates may file directly to the Court of Jurisdiction after exhaustion of all administrative appeals (see Exhibit A-2, Exhausted Administrative Appeals).

2

Under the new and expanded policy for Compassionate Release, Heather brings forth extraordinary and compelling circumstances that warrant consideration. The original request for Compassionate Release was denied by the Warden William Lothrop. Noted in the denial was that Heather's adult daughter can no longer care for her minor children. Heather requested relief based on "Non-Medical Circumstances - Death or Incapacitation of the Family Member Caregiver". (See #5 of Exhibit A-3, Federal Bureau of Prisons Compassionate Release/Reduction in Sentence Procedures for Implementation of 18 U.S.C. 3582 and 4205 (g)). But because the Bureau of Prisons interprets "incapacitation" as only "death, an auto accident or cancer", Heather's request was denied. However, according to Merriam Webster's Dictionary the word incapacitation means " the lack of sufficient ability, power or means." Incapacitation would then apply to the family circumstances of Heathers young children and their caregiver.

Heather's adult daughter (Ayanna Brown-age 23) took temporary custody of Heather's younger children (Milani, age 8 and Tru, age 4) when their father Tramell Thomas (Heather's co-defendant on this case) was arrested for a bond violation, in March of 2018, Heather had already started her prison sentence and was incarcerated at the time. (See Exhibit A-4, Social Services Case Report). This was a huge responsibility for Ayanna because Heather's son Tru has severe autism, is non-verbal and has a sensory processing disorder. (See Exhibit A-5, Tru's psychiatric evaluation). Tru has been through 8 daycares in the the past year. No daycare will keep him without a full-time nurses aid. The State of Arizona won't approve a full-time aid because he is not "medically fragile." (See Exhibit A-6, Letters and Notes from several of the daycares that Tru has been kicked out of). Ayanna has missed so much work having to constantly pick him up early and is continuously faced with the problem of what to do with Tru while she goes to work. (see Exhibit A-7 Letter from Ayanna Brown). Due to the enormous pressures and responsibilities regarding Tru, Ayanna is now seperated from her husband and is getting a divorce. Ayanna's husband, DeMarcus

3

Brown, kicked her, Milani and Tru out of the home they shared in July 2019. Ayanna was forced to get a small apartment for herself, Milani and Tru. To make matters even more incapacitating, the state assisted daycare payments will stop at the end of the year going from a $0 co-pay to a $1,000 a month for Tru's care. The end of the state assisted daycare coupled with being a single family home means Ayanna will not be able to afford daycare for Tru. She has limited income as a pharmacy technician.

Ayanna has to work and with no other family to help or other options will have to put the children in foster care. Heather was always the sole provider and caretaker of the children. Since Heather's sentencing, her co-defendant and children's father Tramell Thomas, was also sentenced to a lengthy prison term and is unable to care for the children. As verified in Heathers PSI there are no other family members available. There is just Heather and her children.

Prior to Heather's incarceration, her history and characteristics were exemplary. She had long-term employment with no prior criminal history. Heather never had any issues with drugs or alcohol, was involved in her community and was an active and engaged single parent of 4 children. The case Heather is incarcerated for is from 2010, before her young children were born. When Heather was sentenced she was a true first time offender having never been in any trouble. She was sentenced to the maximum of her guideline range even though based on all the monograms prepared by the Sentencing Commissions she posed a low risk of recidivism and thus a below guideline range would not pose any danger to the public.

The Sentencing Commission has also found those benefiting from retroactive sentence reductions as well as sentence reductions due to the Compassionate Release Program do not pose a higher risk of recidivism. (United States v. Beck, No. 1:13-CR-186-6). Consequently, if a term of home confinement that Heather serves and/or supervised release were substituted for the imprisonment that Heather still faces she would not pose a danger to the public.

4

The First Step Act gives Courts independent authority to grant motions for Compassionate Release and says nothing about deference to the BOP, thus establishing that Congress wants Courts to take a de novo look at Compassionate Release motions.

### (b) Sentencing Commission Policy Statements

There are no policy statements the Sentencing Commission has promulgated to apply to inmate generated Compassionate Release motions. Additionally this guidance is unlikely to come anytime soon as the Commission does not have a quorum to conduct it's business. Consequently, there will be no guideline amendments promulgated for the November 1, 2019 amendment cycle.

However, Courts confronting inmate generated Compassionate Release motions have found that applying the USSG 1B1.13, which was drafted to guide the motions filed by the Warden, would be inappropriate. Instead the Courts should consider the 1B1.13 policy statement, it's application notes as well as 3553(a) factors in the adjudicating motions. The application notes to 1B1.13 read as a whole, suggest, "flexible approach which considers all relevant circumstances."

### (c) Extraordinary and Compelling Reasons and 3553 (a) Factors

Under 18 U.S.C. 3553 (a), the key requirement is that the sentence in each case be "sufficient, but not greater than necessary".

(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,

(b) to afford adequate deterrence to criminal conduct,

(c) to protect the public from further crimes of the defendant; and

(d) to provide the defendant with needed education or vocational training; medical care or other correctional treatment in the most effective manner.

Heather's education, treatment and medical needs would be better served by a sentence that permits the offender to remain in the community.

Title 18 U.S.C. 3553 (a)(7) directs the Courts to consider "the need to provide the restitution to any victims of the offense." Imposing a sentence of no or only

a short term of imprisonment will best accomplish this goal by allowing Heather to
work so that she can begin to pay back the Department of Education, the victim in
this case.

In one of the earliest post-Booker decisions, Judge Lynn Adelman of the Eastern
District of Wisconsin noted that in cases in which a defendant's history and characteristics
are positive, consideration of all the 3553 (a) factors might call for a sentence
outside the guideline range. Judge Adelman concluded in that case that a sentence
below the sentencing guidelines was justified. The defendant, a bank employee, had
pleaded guilty to misapplication of bank funds by a bank officer. The defendants
guideline range range was 37-46 months, after upward adjustments for loss, more than
minimum planning and abuse of position of trust. However, after considering all of
the relevant factors, Judge Adelman imposed a sentence of one year and one day. In
concluding that such a sentence was appropriate, Judge Adelman considered the defendant's
motive for offense, his responsibility for providing care of his elderly parents,
and his history and character, which were exemplary before the offense conduct. Also
in cases in which a defendants history and character are positive or where the defendant's
history contains significant mitigating factors, such as abusive relationships and
chaotic and neglectful childhood, an appropriate sentence may be one outside the
guideline range.

## IV. Nature and Circumstances of Heather's Offense

The nature and circumstances of the offenses implicated in this case are serious.
The essence of the scheme was that during a two-year period from 2010 to 2012, Heather
Carr, Tramell Thomas, Marcelle Green and Mercedes Diaz submitted approximately 181
student loan applications (FAFSA's) resulting in an actual loss amount of $562,487.85.
The FAFSA's were submitted by using personal identification information (dates of
birth, names and social security numbers) of individuals in prison. When the conspiracy
was formed in 2010, Heather was a single parent, pregnant, behind on all of her bills
and her vehicle had just broken down. Marcelle Green, who was a friend at the time,

6

said she would give her half of the proceeds from student loans from people in prison if she would help Marcelle get information, submit FAFSA's and help do homework. Heather's other co-defendants were brought on as well to help with the scheme. The breadth of the conspiracy, as well as the loss amount, grew to an amount Heather was unaware of. Marcelle Green did not inform Heather of how many loans were being submitted. However, Heather takes full responsibility for the total amount and expressed great remorse at sentencing.

Even though the offenses are very serious, at the time this motion is filed Heather has served 19 months of a 57 month imposed sentence. This is a sufficient punishment for a person like Heather who has never been in trouble before. (United States v. Beck, No. 1:13-CR-186-6). Heather's history and characteristics demonstrate that Compassionate Release would not pose a danger to the community. She has no disciplinary history while housed at the Phoenix Camp. Also noteworthy, she has been enrolled in all educational programs available and has completed over 40 classes including Parenting, Life Skills, Beating the Odds, Assert Yourself, Foundations for Women, Small Business and every class offered at the Phoenix Camp. (See Exhibit A-8 Certificates of Completion and Sentry Class Credit Printout). She has also completed the "Dress for Success" program where she was invited back to volunteer upon her release. She has also done community service projects while incarcerated such as making mats for homeless veterans and crocheting baby blankets for the Children's Hospital.

United States Attorney General, William Barr, was quoted in an article after touring a Federal Prison. He said,"...he felt the time was right to identify and free inmates who no longer constituted a safety risk." He told the New York Times in a July 20, 2019 interview, "after someone has been in prison for a substantial period of time, and you can really access whether they continue to pose a threat to the community. Then obviously you're more inclined to modify the sentence or strike the balance in favor of some kind of monitoring that doesn't involve heavy cost and

the isolation of this kind of prison system." According to both the BOP and the new initial PATTERN Assessment, Heather poses no risks.

Heather is in custody at a minimum level camp with no fences. She has a 0 risk rating which is the lowest rating possible. (see Exhibit A-9, Custody Classification Form). The BOPs rating of Heather is a status that is earned. Further based on the initial draft of new PATTERN Assessment Tool created for the First Step Act of 2018 to determine risk and recidivism levels for earning time credits for home confinement or supervised release as currently posted on the Department of Justice site, Heather has a -24 rating. (See Exhibit A-12 PATTERN Assessment Draft).

Heather has never used drugs and because there was no mention of alcohol or drug abuse to the probation officer Matthew Gil on Heather's PSR, she does not qualify for the Residential Drug Abuse Program (RDAP). (See Exhibit A-10, Notice of RDAP Qualification Denial). If Heather would have qualified for the RDAP program, she would have received a year off of her sentence and would have been released on home confinement in June 2020. Heather would like the same opportunity and consideration as a RDAP participant for the significant recidivism reduction programming she has taken and be able to go home and care for her children. There are no additional programs Heather qualifies for.

Ultimately in this instant case, Heather has received punishment for her crimes via 19 months on imprisonment. She has received rehabilitation through diligence and exhausting available programming. Now she is being warehoused which is one of the core themes of the narrative behind Criminal Justice reform. Not only does Heather's warehousing cost taxpayers unduly, sending her children to foster care further exacerbates those costs today and with high probability in the future.

On August 3, 2017 12 United States Senators wrote a letter to then Acting Director of the BOP Dr. Thomas R. Kane. The Letter expressed concern over the BOPs use of Compassionate Release. They commented on the intent of Compassionate Release set by the Commissions which allows the BOP to, "seek the release of certain elderly

8

and terminally ill inmates, as well as those with special family circumstances, before the end of their prison sentences rather than keep those inmates in prison when they are no longer a significant risk to the community and they ~~they~~ are draining away substantial and valuable BOP resources." The BOP's budget request for FY 2018 represented 29.9% of the DOJ's overall budget.

In 28 U.S.C. 994 (j), Congress gave the Sentencing Commission the following directive:

"the Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than the imprisonment in cases in which the defendant is a first-time offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in a serious bodily injury."

Additionally, under section 602 of the First Step Act of 2018, Congress amended 18 U.S.C. 3624 (c)(2) to direct the Bureau of Prisons: "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."

Thus 994 (j) embodies Congress' judgment that individuals convicted of non-predatory offenses presenting a low-risk of recidivism, like Heather, should be sentenced to alternatives to incarceration. For those defendants who are already serving a term of imprisonment but also exhibit a low likelihood of recidivating, the First Step Act directs the BOP to place them in an alternative to incarceration for the maximum amount of time possible.

There are multiple reasons for this policy changes in the First Step Act of 2018. These policy changes include: the targeted defendants don't pose a risk of danger to the public, home confinement with location monitoring is an effective method of punishment, and home confinement with location monitoring is a more cost effective means of punishment than simply incarcerating those who don't present a danger to the public.

Further evidence of this shift in policy by congress and the Sentencing Commission is evident in the November 1, 2018 amendment to USSG 5f1.2, comment, (n.1) (amendment 811). In the commentary to this guideline, the Commission noted that "electronic monitoring is an appropriate means of surveillance for home detention." After holding the requisite public hearings on this proposed amendment, the Commission articulated the following reason for the amendment to 5F1.2: "The goal of this change is to increase the use of probation with home detention as an alternative to incarceration." Alternatives to Incarceration for Non-Violent First Offenders, April 30, 2018, https://www.USSG.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/ 20180430RF.pdf p.74)

Heather's minor children, Milani and Tru Thomas, have both their parents incarcerated because of this case. The children's father Tramell Thomas, is Heather's co-defendant. Tramell is serving a 120 month sentence at the FCI Victorville in California. The children have never been without Heather and their father was an active parent in their lives. Children of incarcerated parents face profound and complex threats to their emotional, physical, educational and financial well-being. Family members of incarcerated individuals are often referred to as "hidden victims", victims of the criminal justice system who are neither acknowledged nor given a platform to be heard. A study found that children of incarcerated parents systemically face a host of disadvantages if the parent(s) were a strong support in the child's life, which Heather was. The disruption of the child-parent relationship will lead to or exacerbate many of the issues, risk factors and threats mentioned above. (https://www.nij.gov/journals/278/pages/impact-of-incarceration-on-dependant-children.aspx.)

Heather is a great mother who needs to be home with her children for the greater benefit of all. Her children are suffering mentally, developmentally, emotionally, physically and financially. This suffering has ripple effects beyond Heather and her family. Heather has been held in a trusted status while incarcerated and has showcased that institutional standards can be met and followed inside and outside

of the facility. Heather obtained her inmate drivers license and was trusted driving all vehicles alone on the federal compound including the Warden's vehicle. Heather has never had any issues while incarcerated or on her 2 years of pre-trial release. The only issue Heather has ever had was this federal case that is 9 years old. Heather is not a risk to her community and just needs to work and take care of her children, rebuild her life and start paying back her restitution. In accordance with 18 U.S.C. 3582 (c)(1)(a), Heather has included a proposed release plan. (see Exhibit A-11, Proposed Release Plan).

### V. CONCLUSION

Heather Carr understands the Court has to consider the need for the sentence to reflect the seriousness of her offense and is not requesting a lower sentence. She is requesting the Court to order home confinement for the remainder of her sentence. In exacting this alternative, it would not absolve Heather from her crimes or any other portions of her imposed punishments. This alternative would specifically adhere to its intent as a viable alternative for low risk offenders. Heather would be allowed to work, support her children, start paying restitution all while adhering to the strict rules of home confinement. Heather's special needs son would receive that attention, love, care and therapy he desperately needs from her, versus placing him in foster care, creating various ripple affects on all. She would also be afforded the opportunity to take him to speech and occupational therapy and his special needs preschool.

Georgetown Law Professor Shon Hopwood published an article recently arguing that, "there is a viable argument for why federal district court judges can use the compassionate release statute as amended by the First Step Act of 2018, as a second look provision to reduce a sentence for people in prison if 'extraordinary and compelling' reasons are present." His article also argues why federal judges can and should give sentence reductions in cases where people in federal prisons have demonstrated a record of rehabilitation in addition to compelling reasons why they were sentenced too harshly.

Since the passage of the First Step Act last December, 18 U.S.C. 3582 (c)(1)(a), it is a critical and valuable new mechanism to reduce prison sentences in a case where a defendant presents "extraordinary and compelling" reasons supporting reductions. In June 2019 there were two notable examples of judges finding reasons sufficient to reduce a sentence. These cases make it clear that the new First Step Act allows a judge broad authority to determine whether any extraordinary or compelling reasons justified a reduction in prison term even when the BOP fails to bring forth the motion on the defendants behalf. (See United States v. Cantu No. 1:05-CR-458-1 S.D. Texas June 17, 2019) - finding where government urged release to home confinement. (see also United States v. Beck No 1:13-CR-186-6) - where 3553 (a) factors supported a sentence reduction to time served and the motion for compassionate release was granted. There is another case this month where compassionate release was granted for the remainder of the sentence to be served on home confinement - (see United States v. Jones No 2:16 CR-166) - (S.D. Ohio Eastern Division).

Further, based on the current criminal justice reform pursuant to the First Step Act of 2018, sentence reduction programs are planned for low-risk inmates. Based on the ability to earn time credits these low-risk inmates could serve less than 50% of their sentences in normal circumstances. It is understandable that deterrence is a key factor in 3553 (a). When considering both 3553 (a) and the First Step Act act in this instant case the relief that Heather requesting this honorable Court to exact is reasonable. For illustrative purposes, if Jane Doe inmate committed Heather's crime and was sentenced to 57 months like Heather, since the First Step Act was implemented, with no extinuating circumstances Jane would serve approximately 28 months. The net ask for Heather's extinuating circumstances that are extraordinary and compelling are reasonable thus affording adequate deterrance and respect for the law.

The Court is in a unique position to determine whether Heather's other circumstances warrant a reduction (and if so, the amount and manner of the reduction) after considering

the factors set forth by U.S.C. 3553 (a) and the criteria set forth in the policy statement such as Heather's family circumstances and whether Heather is a danger to the safety of any other person or the community.

Based on Heather's circumstances, she humbly presents to the Court this motion that's within reasonable standard to impose the remainder of her sentence to be served on home confinement. In granting Heather's request for Compassionate Release, she can assure the Court that jeopardizing her freedom, leaving her children in this horrible situation again, and having the huge responsibility of having anyone else raise them will never be a factor again. Heather is seeking an order from this Court granting her Compassionate Release so that she will complete the balance of the custodial sentence under home confinement after which she will be subject to a three (3) year term of supervised release.

Respectfully submitted,

Heather Carr
FCI Phoenix Camp
37930 N. 45th Ave
Phoenix, AZ 85086

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document has been mailed this ____ day of September, 2019.

Heather Carr

## EXHIBITS

**A-1:**  Computation Data Sheet

**A-2:**  All Exhausted Administrative Requests

**A-3:**  FBOP Compassionate Release/Reduction in Sentence Procedures
for Implementation of 18 U.S.C. 3582 and 4205 (g).

**A-4:**  Social Services Case Report

**A-5:**  Tru Thomas' Psychiatric Evaluation

**A-6:**  Letters and notes from several daycares Tru has been kicked out of

**A-7:**  Letter from Ayanna Brown

**A-8:**  Certificates of Completion and Sentry Class Credit Printouts

**A-9:**  Custody Classification Form

**A-10:**  Notice of RDAP Qualification Denial

**A-11:**  Release Plan

**A-12:**  Initial PATTERN Assessment Criteria

*Pg. 1*

*Exhibit A-1 (12 pgs)*

```
    PHXBD   540*23 *              SENTENCE MONITORING         *      08-28-2019
  PAGE 001          *             COMPUTATION DATA            *      13:26:45
                                   AS OF 08-28-2019

  REGNO..: 89751-083 NAME: CARR, HEATHER

  FBI NO..........: 72302EB7           DATE OF BIRTH: 10-25-1977  AGE:  41
  ARS1............: PHX/A-DES
  UNIT............: HOPI                QUARTERS.....: C02-029L
  DETAINERS.......: NO                  NOTIFICATIONS: NO

  HOME DETENTION ELIGIBILITY DATE: 10-07-2021

  THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
  THE INMATE IS PROJECTED FOR RELEASE:  03-28-2022 VIA GCT REL


  ---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

  COURT OF JURISDICTION...........: COLORADO
  DOCKET NUMBER............ ......: 1:16-CR-00054-WJM-01
  JUDGE...........................: MARTINEZ
  DATE SENTENCED/PROBATION IMPOSED: 01-04-2018
  DATE COMMITTED..................: 02-08-2018
  HOW COMMITTED............ ......: US DISTRICT COURT COMMITMENT
  PROBATION IMPOSED...............: NO

                   FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
  NON-COMMITTED.: $100.00         $00.00          $00.00       $00.00

  RESTITUTION...: PROPERTY: NO  SERVICES:  NO         AMOUNT:  $562,487.85

  ------------------------CURRENT OBLIGATION NO: 010 ------------------------
  OFFENSE CODE....: 153     18:286,371 FRAUD, OTHER
  OFF/CHG: 18:286 CONSPIRACY TO DEFRAUD THE GOVERNMENT WITH RESPECT TO
           CLAIMS

    SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
    SENTENCE IMPOSED/TIME TO SERVE.:    57 MONTHS
    TERM OF SUPERVISION............:     3 YEARS
    DATE OF OFFENSE........ ......: 10-01-2012




  G0002       MORE PAGES TO FOLLOW . . .
```

```
   PHXBD  540*23 *          SENTENCE MONITORING      *     08-28-2019
   PAGE 002 OF 002 *         COMPUTATION DATA         *     13:26:45
                              AS OF 08-28-2019
```

*Pg. 2*

*Exhibit A-1*

REGNO..: 89751-083 NAME: CARR, HEATHER

------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-13-2018 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-08-2018 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 02-08-2018
TOTAL TERM IN EFFECT............:    57 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    4 YEARS       9 MONTHS
EARLIEST DATE OF OFFENSE........: 10-01-2012

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                     03-07-2016    03-07-2016

TOTAL PRIOR CREDIT TIME.........: 1
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 223
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 03-28-2022
EXPIRATION FULL TERM DATE.......: 11-06-2022
TIME SERVED.....................:    1 YEARS       6 MONTHS      22 DAYS
PERCENTAGE OF FULL TERM SERVED..: 32.7

PROJECTED SATISFACTION DATE.....: 03-28-2022
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: V/S TO PHX 2-8-18
```

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

*Exhibit A-2 (99)*
*6 pages*

CARR, Heather      Reg. No. 89751-083      Remedy #967243-F1

This is in response to your Request for Administrative Remedy, received on February 7, 2019. You are requesting consideration for a Reduction in Sentence/Compassionate Release.

*BP 9.*
*Denial*

Consideration for your request for release, under the provisions of Title 18, United States Code, Section 3582 (c)(1)(A), and Bureau of Prisons' Program Statement 5050.50, was given careful review, which included updated case summary information. Our review indicates your request was properly denied.

Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence</u>, authorizes the Bureau of Prisons to seek Compassionate Release on behalf of an inmate "whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation." "For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child."

You state that your adult daughter can no longer care for your minor children because of difficulties obtaining daycare. Unfortunately, the loss of daycare is not a sufficient reason for the Bureau of Prisons to seek compassionate release on your behalf.

In addition, 18 U.S.C. § 3582(c)(1)(A) was amended by the First Step Act to allow an inmate to present a request for compassionate release directly to the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Accordingly, your Request for Administrative Remedy is <u>denied.</u>

If dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, 7338 Shoreline Drive, Stockton, California 95219. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_____           _____
William W. Lothrop, Warden                 Date   2|8|19

DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Exhibit A-2  pg 2*

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: *Carr Heather E.*    *89751-083*    *H01-A*    *FPC-PHX*
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST–** I submitted a RIS request on 4/22 and it was denied on 4/29. I am a non-violent first time offender with a point calculation of 8 and camp status. My 93 year old daughter has temporary custody of my 8 year old and 4 year old since we have no other family. Their father is my co-defendant and is in custody as well. My 4 year old son has autism, is non-verbal and has a sensory processing disorder. There are no daycares that will accept him any longer because he escaped and has bowel issues where he needs a full-time aid with him that the State has denied to provide my daughter can no longer care for my son due to not being able to work without him being in daycare. The State of Arizona will be severing my parental rights and putting him with an adoptive family since my sentence is over 24 months. I will lose my children if I am not put in 24 months. I have submitted letters from the daycares, a letter from my daughter, my son's IEP and psychiatric evaluation regarding his disorders and court paperwork regarding the juvenile court and custody issue. I have no disciplinary issues, have completed 24 classes all FRP payments I are current, I have a home to go to and have a previous job of 15 years and should have no issues obtaining employment right away. Please consider my request there is no one else to care for my children and they are all that I have. Thank you!

*2/6/2019*            *Heather Carr*
DATE            SIGNATURE OF REQUESTER

**Part B– RESPONSE**

*BP-9*


**RECEIVED**
FEB - 7 2019
BY:

---

DATE                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE        CASE NUMBER: _____

                                     CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN        PRINTED ON RECYCLED PAPER        BP–229(13)
                                               APRIL 1982

*Exhibit A-2*
*page 3*

967243-R1
FCI Phoenix

This is in response to your Regional Administrative Remedy Appeal of the Warden's decision
dated February 8, 2019.   You request to be considered for Compassionate Release.
Specifically, you state you meet the criteria for Incapacitation of a Family Member Caregiver.

A thorough review of your request was completed.   Utilizing Program Statement 5050.49,
CN-1, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18
U.S.C. 3582(c)(1)(A) and 4205(g), dated March 25, 2015, the Warden determined that you do
meet the criteria under "Incapacitation of a Family Member Caregiver."   We concur with the
Warden's response.

Therefore, your request for Regional Administrative Remedy Appeal is denied.   If
dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of
Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the
General Counsel's Office within 30 calendar days of the date of this response.

_3/14/19_
Date

J. Baltazar, Regional Director

*BP-10*

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

*Exhibit A-2 page 4*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Carr Heather E    89751-083    Hopi-A    FPC-PHX

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL** My 23 year old daughter has temporary custody of my 8 year old and 4 year old since we have no other family. Their father is my co-defendant and is in custody as well. My 4 year old son has autism is non verbal and has a sensory processing disorder. There are no daycares that will accept him because of his issues and disorders. He escapes and requires a full time aid that we can't afford and the State has denied to provide. My daughter can no longer care for my son due to his autism and special needs. The State of AZ will be severing my parental rights and putting him with an adoptive family since my sentence is over 24 months. I will lose my children if I'm not out. I have previously submitted letters from my daughter, daycare providers, my son's IEP and psychiatric evaluation regarding his disorders and court paperwork regarding family court and custody issue Ms. Wastell the CMC at FPC-PHX has scanned these in. I have no disciplinary issues, I am a non-violent first time offender with a point calculation of 0 and I am camp status. I have completed 14 classes all FRP payments are current. I have a home to go to and have a prior 15 year job stability so obtaining employment will not be an issue. Please consider my RIS request there to no one else to care for my children and they are all I have.

2-15-2019     Thank you!     _Heather Carr_

DATE                                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

MAR - 4 2019

BP-10

_____           _____

DATE                                         REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE           CASE NUMBER: 967243-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____           _____

DATE                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN        PRINTED ON RECYCLED PAPER        BP-230(13)

JUNE 2002

*Exhibit A-2 pages*

*BP11 Denial*

**Administrative Remedy No. 967243-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you challenge the denial of your request for a Reduction in Sentence (RIS) based on the inability of your adult daughter to care for your minor children, due to daycare challenges.  For relief, you request a RIS to care for your minor children.

Title 18 of the United States Code, § 3582(c)(1)(A), allows a sentencing court to reduce a term of imprisonment for extraordinary and compelling reasons.  Pursuant to Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, Section 5, consideration for a RIS may be given to inmates whose family member caregiver for an inmate's child is suddenly unavailable due to that caregiver's death or incapacitation.  "Incapacitation" means the family member caregiver suffered a severe injury or suffers from a severe illness that renders the caregiver incapable of caring for the child.

We have carefully reviewed your request and determined that you do not meet the criteria for the death or incapacitation of the family member caregiver under the criteria set for in the aforementioned Program Statement.  As noted by the Warden, the loss of daycare and challenges identifying other daycare options are not valid bases for the Bureau of Prisons to seek a reduction in sentence on your behalf.  Additionally, we note that there was a clerical error in the BP-10 response provided by the Regional Director; while you note that the response stated that you "do" meet the criteria, our review reflects that such was a typographic error and the response should have stated that you "do not" meet the criteria.

Accordingly, your appeal is denied.


_____
Date    6 15 19

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

*Exhibit A-2 page 6*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Carr Heather F.     89751-083     Hopi-A     FPC-Phoenix
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL** I received my BP-10 back and it says I do meet the criteria under "Incapacitation of a family member" for Compassionate Release but Regional concurred with the wardens decline instead. I have no family but my 23 year old daughter to care for my 8 & 4 year old children. She can no longer care for them due to many issues with my son's autism + sensory processing disorder. My co-defendant is the children's father and is in custody as well. I received the maximum of my guideline range + had no prior criminal history. I don't qualify for RDAP since I've never done drugs. My parent level is 0 and I am respectfully asking you to grant home confinement for the remainder of my sentence bc I will not lose my children to foster care. My parental rights would be severed and I won't be able to get my children back if I am not out this year. I am submitting copies of my son's psych evaluation letters, notes from daycares that have kicked him out for swapping, court paperwork regarding the children and a letter from my daughter. I am a good mom and am a very active parent and my kids need me - I can not lose them to a foster family. I will be much more useful in the community having a job and caring for my children. I have completed over 30 classes, no disciplinary issues, a steady job history, no substance abuse issues and a home to go to for home confinement. Please consider my request for Compassionate Release/Home Confinement. Thank you for your time.

4-3-19
DATE                                      SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
APR 15 2019
Administrative Remedy Section
Federal Bureau of Prisons

BP-11 Denial

DATE                                      GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 967243-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN          Printed on Recycled Paper                    BP-231(13)
                                                              APRIL 1982

*Exhibit A-3*
*pg. 1*
*14 pages*



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI          OGC/LCI
NUMBER       5050.50
DATE         January 17, 2019

# Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)

/s/
*Approved*: Hugh J. Hurwitz
Acting Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

**§571.60  Purpose and scope.**

**Under 18 U.S.C. 4205(g), a sentencing court, on motion of the Bureau of Prisons, may make an inmate with a minimum term sentence immediately eligible for parole by reducing the minimum term of the sentence to time served. Under 18 U.S.C. 3582(c)(1)(A), a sentencing court, on motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Control Act of 1984.**

**The Bureau uses 18 U.S.C. 4205(g) and 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.**

18 U.S.C. 3582 was amended by the First Step Act of 2018, revisions noted below in Summary of Changes.

For the purposes of this Program Statement, the terms "compassionate release" and "reduction in sentence" are used interchangeably.

**Federal Regulations from 28 CFR are in this type.**
Implementing information is in this type.

*Exhibit A-3* pg. 2

In deciding whether to file a motion under either 18 U.S.C. 4205(g) or 18 U.S.C. 3582, the Bureau of Prisons (BOP) should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

Under 18 USC 3582 (d)(2)(3), the Bureau ensures that all facilities regularly and visibly post, including in prisoner handbooks, staff training materials, and facility law libraries and medical and hospice facilities, and make available to prisoners upon demand, notice of—

(i) a defendant's ability to request a sentence reduction pursuant to subsection (c)(1)(A);

(ii) the procedures and timelines for initiating and resolving requests described in clause (i); and

(iii) the right to appeal a denial of a request described in clause (i) after all administrative rights to appeal within the Bureau of Prisons have been exhausted.

### §572.40  Compassionate release under 18 U.S.C. 4205(g).

**18 U.S.C. 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date.  For inmates whose offenses occurred on or after November 1, 1987, the applicable statute is 18 U.S.C. 3582(c)(1)(A).  Procedures for compassionate release of an inmate under either provision are contained in 28 CFR part 571, subpart G.**

a. **Program Objectives.**  The expected results of this program are:

- A motion for a modification of a sentence will be made to the sentencing court only in particularly extraordinary or compelling circumstances that could not reasonably have been foreseen by the court at the time of sentencing.
- The public will be protected from undue risk by careful review of each compassionate release request.
- Compassionate release motions will be filed with the sentencing judge in accordance with the statutory requirements of 18 U.S.C. 3582 or 4205(g).

b. **Summary of Changes**

*Policy Rescinded*

P 5050.49 CN-1  Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)

*Exhibit A-3*
*pg 3*

The following have been added to this version of the Program Statement:

- Requirements of section 603(b) of the First Step Act, codified at 18 USC § 3582:
  - ➤ Requiring inmates be informed of reduction in sentence availability and process;
  - ➤ Modifying definition of "terminally ill;"
  - ➤ Requiring notice and assistance for terminally ill offenders;
  - ➤ Requiring requests from terminally ill offenders to be processed within 14 days;
  - ➤ Requiring notice and assistance for debilitated offenders; and
  - ➤ Specifying inmates may file directly to court after exhaustion of administrative remedies, or 30 days from receipt of a request by the Warden's Office.

## 2. INITIATION OF REQUEST – EXTRAORDINARY OR COMPELLING CIRCUMSTANCES

**§ 571.61  Initiation of request – extraordinary or compelling circumstances.**

**a.  A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden.  Ordinarily, the request shall be in writing, and submitted by the inmate.  An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.  The inmate's request shall at a minimum contain the following information:**

**(1)  The extraordinary or compelling circumstances that the inmate believes warrant consideration.**

**(2)  Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.**

**b.  The Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request.  Staff shall refer a request received at the Central Office to the Warden of the institution where the inmate is confined.**

A request for a RIS is considered "submitted" for the purposes of 18 USC §3582 (c)(1), when received by the Warden in accordance with this section.

CARR, HEATHER 39751063



*Exhibit A-3*
*pg. 4*

## 3. REQUESTS BASED ON MEDICAL CIRCUMSTANCES

The criteria for a reduction in sentence (RIS) request may include the following:

a. **Terminal Medical Condition**. RIS consideration may be given to inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1). The BOP's consideration should include assessment of the primary (terminal) disease, prognosis, impact of other serious medical conditions of the inmate, and degree of functional impairment (if any). Functional impairment (e.g., limitations on activities of daily living such as feeding and dressing oneself) is not required for inmates diagnosed with terminal medical conditions; however, functional impairment may be a factor when considering the inmate's ability or inability to reoffend.

Pursuant to 18 U.S.C. § 3582(d)(2)(A), in the case of a diagnosis of a terminal illness, the Bureau of Prisons shall, subject to confidentiality requirements:

> (i) not later than 72 hours after the diagnosis notify the defendant's attorney, partner, and family members of the defendant's condition and inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A);

> (ii) not later than 7 days after the date of the diagnosis, provide the defendant's partner and family members (including extended family) with an opportunity to visit the defendant in person;

> (iii) upon request from the defendant or his attorney, partner, or a family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A); and

> (iv) not later than 14 days of receipt of a request for a sentence reduction submitted on the defendant's behalf by the defendant or the defendant's attorney, partner, or family member, process the request.

The statutory time frames of section 3582(d)(2)(A), begin once the Clinical Director of an institution makes a terminal diagnosis. Once the diagnosis is made, the Clinical Director will inform the Warden and the appropriate Unit Manager as soon as possible so as to ensure requirements are met.

CARR HEATHER 20751083

*Exhibit A-3*
*pg 5*

If the inmate is physically/psychologically able, the inmate should consent to notifications above using Form BP-A0192, Release of Information Consent, or equivalent written authorization.

If a visit is denied for security concerns, as reflected in 18 U.S.C. § 3582(d)(3)(J), the reasons should be documented.

The Warden will forward the information indicated in Section 8 of this policy, below, to Central Office within 14 days.

b. **Debilitated Medical Condition**. RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:

- Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
- Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function). A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

Pursuant to 18 U.S.C. § 3582(d)(2)(B), in the case of an inmate unable to submit a request for a RIS BOP institution staff shall:

> (i) inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A)

> (ii) accept and process a request for sentence reduction that has been prepared and submitted on the defendant's behalf by the defendant's attorney, partner, or family member under clause (i); and

> (iii) upon request from the defendant or his attorney, partner, or family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A).

All RIS requests should be assessed using the factors outlined in Section 7.



## 4. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – ELDERLY INMATES

The criteria for a RIS request may include the following:

a. **"New Law" Elderly Inmates.** Inmates sentenced for an offense that occurred on or after November 1, 1987 (e.g., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment.[1]

b. **Elderly Inmates with Medical Conditions.** Inmates who fit the following criteria:

- Age 65 and older.
- Suffer from chronic or serious medical conditions related to the aging process.
- Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
- Conventional treatment promises no substantial improvement to their mental or physical condition.
- Have served at least 50% of their sentence.

Additionally, for inmates in this category, the BOP should consider the following factors when evaluating the risk that an elderly inmate may reoffend:

- The age at which the inmate committed the current offense.
- Whether the inmate suffered from these medical conditions at the time the inmate committed the offense.
- Whether the inmate suffered from these medical conditions at the time of sentencing and whether the Presentence Investigation Report (PSR) mentions these conditions.

The BOP Medical Director will develop and issue medical criteria to help evaluate the inmate's suitability for consideration under this RIS category.

c. **Other Elderly Inmates.** Inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced.

---

[1] These criteria are different from those provided in 18 U.S.C 3582(c)(1)(a)(ii), which states that a court, upon motion of the BOP Director, may reduce a sentence term if it finds that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

CARR, HEATHER 89751059

*Exhibit A-3*
*page 7*

Elderly inmates who were age 60 or older at the time they were sentenced ordinarily should not be considered for RIS if their current conviction is listed in the Categorization of Offenses Program Statement.

All RIS requests should be assessed using the factors outlined in Section 7.

## 5. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – DEATH OR INCAPACITATION OF THE FAMILY MEMBER CAREGIVER.

The criteria for a RIS request may include the death or incapacitation of the family member caregiver of an inmate's child, e.g., RIS requests from inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation.

For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.

In reviewing these requests, BOP should assess, based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.

a. **First Stage of the Warden's Review.** The following information should be provided by the inmate to the Warden in writing for RIS requests based on the death or incapacitation of the family member caregiver:

- A statement that explains that the inmate's family member caregiver has died or become incapacitated and that person was the caregiver for the inmate's biological or legally adopted child.
- A statement that this person was the only family member capable of caring for the inmate's child.
- The name of the deceased or incapacitated family member caregiver and the relationship of that person to the inmate (e.g., spouse, common-law spouse, mother, sister) and statement that the caregiver is a family member of the child.
- For requests based on a deceased family member caregiver, an official copy of the family member caregiver's death certificate.
- For requests based on an incapacitated family member caregiver, verifiable medical documentation of the incapacitation.
- Verifiable documentation that the inmate is the parent of the child. Acceptable documentation includes birth certificates, adoption papers, or verification of the inmate's paternity.

*Exhibit A-3*
*page 8*

- Verifiable documentation providing the name and age of the child.
- A clear statement and documentation that the inmate has a release plan, including housing, and the financial means to care for the child immediately upon the inmate's release.
- Authorization from the inmate for the BOP to obtain any information or documents from any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child.

The Warden may deny the inmate's request at the institution level of review if the Warden finds that the inmate has not provided adequate information and documentation as set forth above.

b. **Second Stage of the Warden's Review.**  Even if the inmate provides adequate and sufficient information and documentation set forth above regarding the RIS request, further investigation is appropriate.  At this stage, the Warden should convene a committee consisting of the inmate's unit manager, correctional counselor, and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to review supporting letters and documents before the Warden makes a recommendation to approve or deny the RIS request.  The additional information and supporting documentation gathered by the committee for the Warden's review should include:

- A general description of the child's physical and mental condition.
- A description of the nature of the child's care both during the inmate's pre-arrest and pre-sentence period, and during the inmate's current incarceration.
- Letters or documentation that the deceased/incapacitated family member was and still is the only family member caregiver capable of caring for the inmate's minor child.  These letters or documentation should include:

  > Information indicating whether this family member was, in fact, caring for the child during the inmate's incarceration and immediately prior to the family member's death or incapacitation.
  > An explanation of who has been caring for the child since the family member's death or incapacitation.
  > If the child is in foster care, documentation verifying that the inmate will be able to immediately obtain custody of the child.

All RIS requests should be assessed using the factors outlined in Section 7 as well as the following factors.

- Has the inmate committed violent acts before or during the period of incarceration as reflected in the PSR, institutional disciplinary records, or other appropriate documentation?
- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child prior to incarceration?

*Exhibit A-3*
*page 9*

- To what degree has the inmate had contact with or cared for the child prior to arrest, pretrial or pre-sentence, and during incarceration? Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
- Is there any evidence of child abuse, neglect, or exploitation in the PSR or other documents?
- Are there any documents regarding the inmate's parenting skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse, registered partner or children, certificates for classes in anger management or other types of counseling, removal of child from the home for any reasons)?
- Are there records regarding the termination of parental rights or loss of custody of the inmate's (other) child?
- Does the inmate have a detainer as a deportable alien to a country other than where the child resides?
- Has the inmate received public funding or had a job with a living wage for any period of time prior to incarceration?
- Has the inmate engaged in programming (e.g., parenting, anger management) during incarceration that would indicate efforts to improve parenting skills or that would indicate a commitment to caring for the child upon release?

Wardens should also consider any additional reliable documentation (e.g., letters of support from family members, neighbors, doctors, hospitals, and state or local agencies). Documentation may be obtained with the assistance of the Office of Probation and Pretrial Services. Wardens should also consider whether the inmate participated in the Inmate Financial Responsibility Program and any information relating to the inmate's substance abuse treatment, physical/mental/ emotional health, and work evaluations during incarceration.

The care of a child may be requested to be a condition of the inmate's release to a supervised release term. Thus, failure to care for the child may result in a finding of a supervised release violation and return to custody.

## 6. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – INCAPACITATION OF A SPOUSE OR REGISTERED PARTNER

The criteria for a RIS request may include the incapacitation of an inmate's spouse or registered partner when the inmate would be the only available caregiver for the spouse or registered partner.

For these requests, "spouse" means an individual in a relationship with the inmate, where that relationship has been legally recognized as a marriage, including a legally-recognized common-law marriage. "Registered partner" means an individual in a relationship with the inmate, where that relationship has been legally recognized as a civil union or registered domestic partnership.

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type. Implementing information: this type.**    9

*Exhibit A-3*
*page 10*

The relationship should have been established before the inmate's offense date of arrest, and should be verified by information in the PSR or other administratively acceptable documentation (e.g. marriage certificate).

For these requests, "incapacitation" means the inmate's spouse or registered partner has:

- Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
- A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

a. **First Stage of the Warden's Review.** The following information should be provided by the inmate to the Warden in writing for RIS requests based on the incapacitation of the spouse or registered partner:

- Statement that explains that the inmate's spouse or registered partner has become incapacitated.
- Statement that the inmate is the only family member capable of caring for the spouse or registered partner.
- Verifiable medical documentation of the incapacitation of the spouse or registered partner.
- A clear statement and documentation of the inmate's release plan, including housing, and the financial means to care for the spouse or registered partner immediately upon release.
- Written authorization from the inmate and others (as needed) for the BOP to obtain any information or documents from any individual, medical entity or doctor, or any government agency about the inmate, the spouse or registered partner, or other family members.

The Warden may deny the inmate's request at the institution level of review if the Warden finds that the inmate has not provided adequate information and documentation as set forth above.

b. **Second Stage of the Warden's Review.** Even if the inmate provides adequate and sufficient information and documentation set forth above regarding the RIS request, further investigation is appropriate. At this stage, the Warden should convene a committee consisting of the inmate's unit manager, correctional counselor and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to

CARR, HEATHER  85751083

*Exhibit A-3 page 11*

review supporting letters and documents before the Warden makes a recommendation to approve or deny the RIS request.  The information and supporting documentation gathered by the committee for the Warden's review should include:

- A general description of the spouse's or registered partner's physical and mental condition.
- A description of the nature of the spouse's or registered partner's care, as relevant, during the inmate's pre-arrest and pre-sentence period, and during the inmate's current incarceration.
- Letters or documentation indicating whether the inmate is the only family member caregiver capable of caring for the spouse or registered partner.  This should include an explanation of who has been caring for the spouse or registered partner during the inmate's period of incarceration, as relevant.
- Letters or documentation indicating the spouse or registered partner is, or would be, supportive of the inmate's release, and of the inmate assuming the role of the primary caregiver.

All RIS requests should be assessed using the factors outlined in Section 7 as well as the following factors.

- Has the inmate committed violent acts before or during the period of incarceration, as reflected in the PSR, institution disciplinary records, or other appropriate documentation?
- To what extent would the inmate and spouse or registered partner be relying on publicly available resources (e.g., financial or medical) to provide care to the spouse or registered partner?
- Has the inmate ever been charged with, or convicted of, a crime of domestic violence?
- Did the inmate share a residence with the spouse or registered partner prior to the period of incarceration?
- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home shared with the spouse or registered partner prior to incarceration?
- To what degree has the inmate had contact with (or cared for) the spouse or registered partner prior to arrest, pretrial or pre-sentence, and during incarceration?  Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
- Is there any evidence of abuse or neglect involving the spouse or registered partner in the PSR or other documents?
- Are there any documents regarding the inmate's custodial skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse or registered partner or children, certificates for classes in anger management or other types of counseling, removal of children from the home for any reasons)?
- Does the inmate have a detainer as a deportable alien to a country other than where the spouse or registered partner resides?
- Has the inmate received public funding or had a job with a living wage for any period of time prior to incarceration?

*Exhibit A-3*
*page 12*

- Has the inmate engaged in programming (e.g., anger management, financial responsibility program) during incarceration that would indicate efforts to improve custodial skills and/or that would indicate a commitment to the inmate's spouse or registered partner upon release?

Wardens should also consider any additional reliable documentation (e.g., letters of support from family members, neighbors, doctors, hospitals, and state or local agencies). Documentation may be obtained with the assistance of the Office of Probation and Pretrial Services.

The care of the spouse or registered partner may be requested to be a condition of the inmate's release to a supervised release term. Thus, failure to care for the spouse or registered partner may result in a finding of a supervised release violation and return to custody.

## 7. FACTORS AND EVALUATION OF CIRCUMSTANCES IN RIS REQUESTS

For all RIS requests, the following factors should be considered:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. This factor is considered with respect to proximity to release date or Residential Reentry Center (RRC) or home confinement date.
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

When reviewing RIS requests, these factors are neither exclusive nor weighted. These factors should be considered to assess whether the RIS request presents particularly extraordinary and compelling circumstances.

Overall, for each RIS request, the BOP should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

## 8. APPROVAL OF REQUEST

### §571.62  Approval of request.

CARR, HEATHER 89751083

*Exhibit A3*
*page 13*

**a.  The Bureau of Prisons makes a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only after review of the request by the Warden, the General Counsel, and either the Medical Director for medical referrals or the Assistant Director, Correctional Programs Division for non-medical referrals, and with the approval of the Director, Bureau of Prisons.**

**(1)  The Warden shall promptly review a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A).  If the Warden, upon an investigation of the request determines that the request warrants approval, the Warden shall refer the matter in writing with recommendation to the Office of General Counsel.**

The Warden's referral at a minimum must include the following:

a. The Warden's written recommendation as well as any other pertinent written recommendations or comments made by staff during the institution review of the request.

b.  A complete copy of Judgment and Commitment Order or Judgment in a Criminal Case and sentence computation data.

c.  A progress report that is not more than 30 days old.  All detainers and holds should be resolved prior to the Warden's submission of a case under 18 U.S.C. 3582 (c)(1)(A) or 4205(g).  If a pending charge or detainer cannot be resolved, an explanation of the charge or conviction status is needed.

d.  *All* pertinent medical records if the reason for the request involves the inmate's health.  Pertinent records include, at a minimum, a Comprehensive Medical Summary by the attending physician, which should also include an estimate of life expectancy, and all relevant test results, consultations, and referral reports/opinions.

e.  The referral packet must include, when available, a copy of the Presentence Investigation and Form U.S.A. 792, Report on Convicted Offender by U.S. Attorney, Custody Classification form, Notice of Action forms, Probation form 7a, information on fines, CIM Case Information Summary (BP-A0339), and any other documented information that is pertinent to the request.  In the absence of a Form U.S.A. 792, the views of the prosecuting Assistant U.S. Attorney may be solicited; those views should be made part of the Warden's referral memo.

f.  If the inmate is subject to the Victim and Witness Protection Act of 1982 (VWPA), confirmation of notification to the appropriate victim(s) or witness(es) must be incorporated into the Warden's referral.  A summary of any comments received must also be incorporated into the referral.  If the inmate is not subject to the VWPA, a statement to that effect must be in the referral.

*Exhibit A-3*
*page 14*

g.  For a request under 18 U.S.C. 3582(c)(1)(A), when a term of supervised release follows the term of imprisonment, confirmation that release plans have been approved by the appropriate U.S. Probation Office must be included in the referral.   If the inmate will be released to an area outside the sentencing district, the U.S. Probation Office assuming supervision must be contacted. If no supervision follows the term of imprisonment, release plans must still be developed.

h.  The development of release plans must include, at a minimum, a place of residence and the method of financial support, and may require coordination with various segments of the community, such as hospices, the Department of Veterans Affairs or veterans' groups, Social Security Administration, welfare agencies, local medical organizations, or the inmate's family.

i.  Because there is no final agency decision until the Director has reviewed the request, staff at any level may not contact the sentencing judge or solicit the judge's opinion through other officers of the court.

**(2)  If the General Counsel determines that the request warrants approval, the General Counsel shall solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending upon the nature of the basis for the request.  With this opinion, the General Counsel shall forward the entire matter to the Director, Bureau of Prisons, for final decision.**

**(3)  If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 4205(g), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Bureau of Prisons to reduce the minimum term of the inmate's sentence to time served.  If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 3582(c)(1)(A), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Director of the Bureau of Prisons to reduce the inmate's term of imprisonment to time served.**

**b.  Upon receipt of notice that the sentencing court has entered an order granting the motion under 18 U.S.C. 4205(g), the Warden of the institution where the inmate is confined shall schedule the inmate for hearing on the earliest Parole Commission docket.**

Institution staff prepare an amended Sentence Data Summary for use at this hearing. Staff provide a copy of the most recent progress report to the Parole Commission.

**Upon receipt of notice that the sentencing court has entered an order granting the motion under 18 U.S.C. 3582(c)(1)(A), the Warden of the institution where the inmate is confined shall release the inmate forthwith.**

*Pg. 1*

CT04400 (1/16)

# PROGRESS REPORT TO THE JUVENILE COURT

*Exhibit A-4*
*(5 pages)*

**Court Case Number**   JD35718

**Date of Report**   10/03/2018

**Case Name**   CARR, HEATHER   ID: 587802

**A.** **Name and Date of Birth for Each Child Subject to This Court Case Number:**

3729505 THOMAS, TRU                  12/27/2014
3729504 THOMAS, MILANI               12/25/2010

**B.** **Child or Children Subject to This Report If Different From Above.**

Not applicable.

**I.** **REASON FOR DCS INVOLVEMENT**

    **A.** **Brief statement of grounds for petition.**

On 04/13/2018 at 2:07 PM, the Department of Child Safety (DCS) took custody of Tru Thomas and Milani Thomas due to concerns pertaining to incarceration and no caregiver willing and/or able to parent.

On or about 01/05/2018, mother Ms. Heather Carr signed a Power of Attorney (POA) titled Temporary Guardianship Agreement for the children to be in the custody of adult sister and her significant other, Mrs. Ayanna Brown and Mr. Demarcus Brown for 'as long as necessary' beginning on 01/05/2018. This agreement will expire on 07/05/2018 as a POA cannot last for longer than six months under Arizona law.

Ms. Carr became incarcerated in 02/2018 and it is unknown how long she will be incarcerated, but could be up to five years.

Father, Mr. Tramell Thomas dropped Tru and Milani off with Mrs. Brown and Mr. Demarcus on 03/11/2018. Mrs. Brown reports that she attempted to contact Mr. Thomas about the children, but he ignored her phone calls. Mr. Thomas was arrested on a parole violation on or about 03/18/2018 and is in federal custody.

Although Ms. Carr made temporary arrangements for the children, she has not ensured that their mental and behavioral health needs are met as Mrs. Brown is unable to provide for medical or behavioral health services for the children as she is unable to add them to her insurance.

    **B.** **Additional safety threats or risk factors that prevent family reunification, if applicable.**

Both parents remain incarcerated.

*Page 2*

*Exhibit A4*

**II.    SERVICES AND SUPPORTS**

**A.    If applicable, describe efforts made to locate missing parent.**

Not applicable.

**B.    Describe the behavioral changes the parent or guardian must demonstrate in order to eliminate the safety threats and risk factors identified in the case plan.**

Ms. Carr is encouraged to take part in any family related services while she is incarcerated. (Counseling, Parenting, Employment, Cards, Letters). Ms. Carr will be assessed for additional needs upon release.

Mr. Tramell is encouraged to take part in any family related services while he is incarcerated. (Counseling, Parenting, Employment, Cards, Letters) He will be assessed for additional needs upon release.

**C.    Services and supports provided to eliminate the need for continued out-of-home placement and the outcome and participation in those services and supports.**

Not applicable, the removal was not preventable as there was no caregiver willing or able to care for the children. No documentation has been provided to the Department of any participating or completion of services while incarcerated.

**D.    Describe coordination with RBHA Behavioral Health Services.**

The children both received a Rapid Response and were referred to Jewish Family and Children Services.
Tru receives case management and a birth to five assessment. Tru was assessed and qualified with DDD. Tru will be receiving Occupational Therapy.
Milani receives case management.

**III.    CASE PLAN**

**A.    Case plan goal and target date (attach case plan).**

Guardianship 4/03/2019

**B.    Describe efforts (including services and supports) necessary to accomplish case plan goal.**

The Department will continue to provide monthly contact. Parents are encouraged to participate in any services offered to them while incarcerated.

**C.    Concurrent plan and target date (describe what activities have been initiated to implement the concurrent plan).**

Severance and Adoption 4/03/2019

*Exhibit A-4 page 3*

D.    **Recommended permanent case plan goal and target date, if different than stated in subsection A above.**

E.    **Reason for change in case plan goal, if applicable.**

The parents will be incarcerated for 5-15 years and Family Reunification is not a realistic goal.

## IV.    CHILD'S PLACEMENT

A.    **Identify and describe type of current placement and whether this placement is consistent with the Department's placement preferences.  (State whether this placement is temporary or permanent).**

At this time, Tru and Milani are in an unlicensed kinship foster home and is consistent with the Departments placement preferences. This placement is willing to be permanent as well.

B.    **Describe efforts to identify and assess placement with the following: all adult grandparents, all parents of a sibling of the child, where parent has legal custody of such sibling, other adult relatives of the child (including any other adult relatives suggested by the parents), or a person who has a significant relationship with the child, including the child's and/or parent's tribe if the child is or may be Native American. If the child is not placed in the home of a relative or person who has a significant relationship with the child, explain why such a placement has not been identified or is contrary to the child's best interests.**

The children are placed with their adult sister.

C.    **Explain how the current placement ensures the safety of the child, that the child's needs are met and is the least restrictive placement.**

Placement makes sure that the children are always supervised and they are able to meet all behavioral, physical and financial needs of the children. This placement is the least restrictive placement that is available for the Department.

D.    **Describe child's overall functioning (include medical, social and educational status).**

Tru is 4 years old. Tru is nonverbal and placement has been teaching the child sign language to say "Please" and "Thank you". Tru was attending the predevelopmental program at Liberty Elementary School, however once the school learned that it was requested that he be transported to his daycare, the school was not able to accommodate this request as it was two miles outside of their boundaries. Tru was not able to attend a closer daycare as the copay was too high even with partial DES coverage. As an alternative, Tru attends the program at Sunrise Preschool. Tru was assessed and qualifies with DDD. Tru will receive Occupational Therapy. Placement applied Tru for ALTCS but was denied and

placement is currently appealing the denial. Tru loves to play games on his tablet. Placement is potty training Tru.

Milani is 7 years old and enrolled at the school in her neighborhood. Milani is a happy and content child. Milani loves to talk and play with her friends. Milani likes to watch YouTube videos of slime. Milani interacts great with Tru, she is able to interact and play with him.

**E.   Describe how the reasonable and prudent parent standard is being implemented to allow the child to participate in age and developmentally appropriate extracurricular, enrichment, cultural, and social activities.**

The children are able to participate in activities should the occasion arise and placement is willing to facilitate.

**F.   If the child has a sibling in out-of-home placement, describe what efforts have been made to place siblings together and, if not placed together, state the specific reason why this did not occur or reasons why this would be contrary to the child's or sibling's safety or wellbeing.**

Not applicable as Tru and Milani are placed together.

**G.   Describe results of visits with the parents/guardians/custodians which have occurred since removal (include proposed visitation in the case plan).**

Placement takes the children to visit their mother frequently, Ms. Carr and they write letter to each other. Mr. Tramell is incarcerated in a different state so placement is not able to provide frequent contact. Mr. Tramell has wrote the children letters, however Milani has not wrote back.

**H.   If placement with sibling(s) is not possible, describe efforts to facilitate frequent visitation or contact with siblings. If frequent visitation or contact with siblings is not recommended, state reasons why this would be contrary to the child's or a sibling's safety or wellbeing.**

Not applicable.

**I.   Describe contact and any reason for restricted contact between the child and child's parents, family members, relatives, friends, and any former foster parents. State whether contact is in the child's best interest.**

There is restricted contact with both parents due to incarceration. Ms. Carr is incarcerated in Arizona and placement is willing and able to facilitate frequent visits. Mr. Tramell is incarcerated out of state which prevents placements from providing any visitation with the children.

**J.   History of placements (include the length of time the child has been in out-of-home care, the number of placements, and the length of each placement).**

Tru Thomas

*Exhibit A-4 page 5*

Page 5    Progress Report to Juvenile Court

4/13/2018-Present: Unlicensed kinship, adult sibling

Mllani Thomas
4/13/2018-Present: Unlicensed kinship, adult sibling

**K.    Services and supports provided to address the child's placement/special needs and to support the out-of-home caregiver (include in the case plan).**

CMDP, Standard Allowances, CFT's with RHBA provider, monthly contacts.

**L.    If applicable, state why the out-of-state placement continues to be appropriate and in the best interest of the child (include ICPC and/or out-of-state visitation status).**

Not applicable.

**M.    If the child is 16 or older with a case plan goal of Independent Living, describe services and supports provided to prepare the child for Independent Living.**

Not applicable.

**N.    If the child is an Indian Child, describe active efforts to provide culturally appropriate remedial services and rehabilitative programs, and efforts to place the child within the placement preferences.**

Not applicable.

**V.    CHILD SAFETY SPECIALIST'S CONCLUSIONS**

It is the conclusion of this case manager that temporary custody is necessary due to the incarceration of both parents, however, it should be noted that the children did not disclose any type of maltreatment or neglect while in their parents' care. It should also be noted that Ms. Carr signed a POA allowing the children to be cared for by Mrs. Brown for 'as long as necessary', but it expired on 07/05/2018 due to Arizona law.

It is recommended the change of case plan in order to provide permanency and stability for the children.

**VI.    RECOMMENDATIONS**

**A.    Agency**

It is respectfully recommended that <u>Tru and Milani Thomas</u> **remain a ward(s) of the court, committed to the care, custody and control of the Arizona Department of Child Safety.**

It is further respectfully recommended that <u>Tru and Milani</u> **be placed in the physical custody of** <u>Ayanna Brown</u> **with appropriate medical, social, and educational authorizations.**

*Exhibit A-5*

*1 page*

**Jewish Family & Children's Service**

## PSYCHIATRIC EVALUATION

**PATIENT:** Tru Thomas
**DATE OF BIRTH:** 12/27/2014
**MRN:** 000000042617
**ENCOUNTER DATE:** 8/24/2018
**PROGRAM:** Behavioral Health

## Individuals Present

**Contact Type:** Onsite meeting
Individual present
**Others present:** Sister and brother in-law

## General

New Patient
**Historian:** sister and brother in Law

## Reason for Visit

This 3 year 7 month old male presents for ASD and ADHD.

## History of Present Illness:

1. ASD  — *autism*

The symptoms are reported as being moderate. He states the symptoms are chronic and are poorly controlled. He is non verbal. He does not make eye contact. school reports indicates he plays by himself. Most of the time he does not have any facial expression. He does not start any communication. He never points at things he needs. He does not like to show and tell.
He lines up the cars and if they do not line up he takes away the tires of the cars to line them up. They have to be in a straight line.
He covers his eras when it is loud. He escapes from the daycare if it is too loud. Guardian says he has hyposensitivity to pain. he runs on the rocks barefoot. He runs to the street in summer wwhen the pavement is hot and does not feel it.
He does not like change in routine. If they go through the front door, not the garage door ( they usually go through garage door ) he gets upset. he watches the same moves or same part of the movie again and again. The favorite part of a movie is credits.
he spins sometimes and keeps on spinning. He also rocks from side to side. He likes rotating lights from his night light.
If another kid wants to play with him he moves away.
He goes to other people's drink and drink that. He does not care for meat. He loves granola bars.

2. ADHD

Quality of life: behaviors create problems at home and behaviors create problems at school. The problem is with no change. Context: behaviors persist > 6 months and behaviors began before age 7. Associated symptoms include fidgeting/squirming, restlessness, short attention span and unable to follow directions.



*Exhibit A-6*
*pg-1*
*4 pages*

12/11/2018

Aubrey Richardson

RE: Tru Thomas

Dear Aubrey,

Thank you for your interest and patience in working with us to enroll Tru in our Ahwatukee KinderCare.

After discussing Tru's individual care needs with you and as well as caring for Tru during a free trial day, we welcome Tru's enrollment with the provision of a 1-to-1 Personal Care Assistant, either at your own cost or through community resources that may be available to you, to provide Tru with the 1-to-1 care that we feel he needs. The fundamental nature of our center  is that of a group program, and we believe we are unable to safely care for Tru  in our group care ratio of 1-to-8 at this time.

Feel free to contact me with questions at 480 759 9879.  If you choose not to provide a Personal Care Assistant for Tru at this time, we wish you well in finding the care he needs.

Sincerely,

Yvonne Berkhoff
Center Director


cc:
Tyreca Sylvester, Inclusion Services

Sunrise Preschools

**PARENT COMMUNICATION FORM**

*Exhibit A6*
*pg. 2*

Date: 12/6/18   Time: 5:00PM   Parent's Name   MR & MRS Thomas.

Child's name   Tru Thomas.

Regarding

Today In the afternoon Tru was having a rough moment attempting to run out of his classroom. I came to assist the teachers. Tru did run out of the classroom and made it to the SchoolAge playground. I brought Tru to the front desk with me, he was still trying to run out the front door. I feed him thinking he was hungry and maybe he would calm down. He ate and still run down the hallway, I chased him, and brought him with me again. I was really afraid he could run out.

Ms Elizabeth
Assistant Director.

*Exhibit HB*
*page 3*

Sunrise
Preschools

## PARENT COMMUNICATION FORM

Date: 12/7/18   Time: _____   Parent's Name   Mom or Dad

Child's name   Tru Thomas

Regarding

Tru ran/attempted to run out the
classroom 8 times today. Myself
and other teachers were with him
throughout the day.

Miss Aaliyah

Sunrise Preschools

## PARENT COMMUNICATION FORM

Friday

Exhibit A6
pg.4

Date: 11/30/18    Time:    Parent's Name

Child's name   Tru Thomas

Regarding

Tru ran out of the classroom at different times during the day.

| | | |
|---|---|---|
| 9:30 a.m | 11:45 a.m | 3:00 p.m |
| 9:40 a.m | 12:30 p.m | 5:10 p.m |
| 9:50 a.m | 12:45 p.m | 5:20 p.m |
| 11:10 a.m | 2:00 p.m | 5:25 p.m |
| 11:30 a.m | 2:30 p.m | 5:30 p.m |

*Exhibit A-7 (2pages) pg.1*

Dear Judge Martinez,

I am writing to you in regards to my mother, Heather Carr, who is currently incarcerated at FCI Phoenix Camp. My name is Ayanna Brown, I am 23 years old and I have custody of my younger siblings Milani (age 8) and Tru (age 4). The past 18 months that my mom has been incarcerated has been a complete nightmare. My mom was the sole person that held our family together and without her here our whole world has fallen apart. My husband Demarcus couldn't stand the pressure of having my siblings live with us and the responsibilities that come with caring for my brother who has special needs so he forced us out the home and I had to get a small apartment for myself and my siblings. I am getting a divorce now and am trying my hardest to support all of us on my limited income as a pharmacy technician.

My brother Tru will be 5 years old in December and he has never spoken a word. He has autism, is completely non-verbal and has a sensory processing disorder. With his sensory issues he cannot process the environment appropriately when there is any type of noise. In a daycare setting he constantly is trying to hide or run to a quiet place. With the student to teacher ratio requirements at daycare they are not able to chase after him or give him the 1 on 1 attention he needs. The daycares kept requiring that he have an aide to go along with him at daycare but the state of Arizona denied him because he is not "medically fragile". We are constantly changing daycares since he is continually getting kicked out of daycares. Since the children were wards of the court a daycare subsidy was approved through the end of the year so right now there is a $0 copay. Once that ends, constantly changing daycares wont be the only issue-I wont be able to afford it! I am struggling as it is now there is no way I can afford another $1000 per month for daycare for my brother. My brother will have to go into foster care if my mom isn't home and will be adopted since he is younger than 6. I took custody of my siblings because the state of Arizona would split them up in separate foster care homes and would have been adopted out. I thought I could handle this, but I am in way over my head and there is no way I can do this on my own any longer.

Without my mother here it has caused such an enormous void in our lives. She is all that my siblings and I have. There is absolutely no one else to help us- we

*Exhibit A-7 Page 2*

have no other family. Without my mom here I feel so alone and I am completely overwhelmed and drained emotionally, physically and financially.

I have tried finding autism specific schools and they are all either at capacity or my brother would have to be 5 years old before September 1st. Since my brother won't be 5 until December, he cannot start kindergarten until august of 2020 and even then will still require daycare since I work Monday through Friday from 9am to 6 pm.

My brother was finally approved after 18 months for intensive speech and occupational therapy through DDD (department of developmental disabilities) and now I also have to start taking him to therapy 30-40 hours per week. I feel like I am drowning in all of this responsibility and I am begging the court to allow my mom out on home confinement so she can take my brother to his therapy appointments and take care of my siblings. My mother has always worked, always been responsible, and took care of us. She has never been on drugs or been in trouble with the law before. We don't just want our mom home with us; we NEED her home with us! She is an amazing person and an even better mom and I hope you can take her character and past into consideration.

If you will please allow her to serve her remaining sentence on home confinement so she can work, take care of my siblings, take my brother to therapy, pay her restitution and be at home. Our family is falling apart and I have no idea what we are going to do. Please send our mom home!

Respectfully,

Ayanna Brown

P.S. Please feel free to contact me at 480-720-9055, or AyannaxBrown@gmail.com

*PB·1*

```
  PHXFO          *        INMATE EDUCATION DATA      *    08-28-2019
PAGE 001 OF 001 *            TRANSCRIPT             *    13:57:08

REGISTER NO: 89751-083     NAME..: CARR                  FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: PHX-PHOENIX FCI
```

*Exhibit A-8*

```
-------------------------- EDUCATION INFORMATION --------------------
FACL ASSIGNMENT DESCRIPTION               START DATE/TIME STOP DATE/TIME
PHX  ESL HAS    ENGLISH PROFICIENT        02-27-2018 0948 CURRENT
PHX  GED HAS    COMPLETED GED OR HS DIPLOMA 02-27-2018 0948 CURRENT
```

*5pages*

```
-------------------------- EDUCATION COURSES --------------------------
SUB-FACL  DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
PHX SCP   ASSERT YOURSELF FEMALE OFFENDE 07-17-2019 CURRENT
PHX SCP   GREAT MONUMENTS              06-24-2019 CURRENT
PHX SCP   SMALL BUSINESS               06-24-2019 CURRENT
PHX SCP   NFPT WELLNESS                08-19-2019 CURRENT
PHX SCP   CERAMIC CLASS                06-12-2019 07-21-2019  P  C  P    8
PHX SCP   BASIC WATER COLOR CLASS      06-20-2019 07-21-2019  P  C  P    8
PHX SCP   MANAGING MONEY 01            04-01-2019 06-07-2019  P  C  P   10
PHX SCP   CARD DESIGN CLASS            04-03-2019 06-05-2019  P  C  P    8
PHX SCP   DIABETES WELLNESS CLASS      02-06-2019 04-15-2019  P  C  P    8
PHX SCP   BASIC SPANISH                02-11-2019 03-15-2019  P  C  P   10
PHX SCP   THE STATES                   01-07-2019 03-15-2019  P  C  P   10
PHX SCP   ACCOUNTING BASIC             01-07-2019 03-15-2019  P  C  P   10
PHX SCP   WOMEN'S 21ST CENT WRKPLC IMPC 02-11-2018 03-15-2019 P  C  P   10
PHX SCP   NATIONAL GEOGRAPHIC          01-07-2019 03-15-2019  P  C  P   10
PHX SCP   LIFE SKILLS 1                01-07-2019 03-15-2019  P  C  P   10
PHX SCP   WOMEN'S REST BASED FITNESS   11-04-2018 01-29-2019  P  C  P    8
PHX SCP   BEATING THE ODDS             10-15-2018 12-21-2018  P  C  P   10
PHX SCP   WILD WEST                    10-15-2018 12-21-2018  P  C  P   10
PHX SCP   CREDIT 101                   10-15-2018 12-21-2018  P  C  P   10
PHX SCP   MONEY SMARTS                 10-15-2018 12-21-2018  P  C  P   10
PHX SCP   CAMP INDEPENDENT ANGER MANAGE 10-01-2018 10-31-2018 P  C  P   10
PHX SCP   7 HABITS OF HIGHLY EFFECTIVE P 07-23-2018 09-28-2018 P C  P   10
PHX SCP   CAMP INDEPENDENT MANAGE CAREER 09-01-2018 09-30-2018 P C  P   10
PHX SCP   PARENTING CAMP               07-23-2018 09-28-2018  P  C  P   10
PHX SCP   CAMP INDEPENDENT FIND A JOB  08-01-2018 08-31-2018  P  C  P   10
PHX SCP   BLUE PLANET                  04-23-2018 06-29-2018  P  C  P   10
PHX SCP   EVENT PLANNING               04-23-2018 06-29-2018  P  C  P   10
PHX SCP   ICONS OF POWER               04-23-2018 06-29-2018  P  C  P   10
PHX SCP   NUTRITION WELLNESS           03-28-2018 04-26-2018  P  C  P    8
PHX SCP   HUMAN ANATOMY WELLNESS       04-09-2018 05-15-2018  P  C  P    8
PHX SCP   LOST WORLD                   04-23-2018 05-25-2018  P  C  P   10
PHX SCP   CP INDEPENDENT FINANCIAL PLANN 04-01-2018 04-30-2018 P C  P   10
```

```
G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

Exhibit A-8
pg 2

# Certificate of Completion

*is hereby awarded to*

Heather Carr

*for completing FPC Phoenix Parenting*

This certificate is presented by
FPC Phoenix Education Department
September 28, 2018

_____
D. McAnally, FPC Education Coordinator



CERTIFICATE OF COMPLETION

*Exhibit A-8 page 3*

AWARDED TO

# Heather Carr

For completing 50 plus hours in the FPC Phoenix Community Service Project:

Homeless Veteran Sleeping Mat Project

Awarded April 4, 2018

W. Klewer, Unit Manager



Exhibit A-8 pg. 4

# CERTIFICATE OF ACHIEVEMENT

THIS CERTIFIES THAT

## HEATHER CARR

HAS SUCCESSFULLY COMPLETED THE FOUNDATION PROGRAM.
AND IS THEREFORE AWARDED THIS

**CERTIFICATE OF COMPLETION**

GIVEN THIS MOTNH OF APRIL 2019

_____
C. WILKINSON
FACILITATOR

_____
4-16-2019
DATE

Exhibit A-8 5 pg

FAST TRACK TO SUCCESS
YOU GOT THE JOB!

THIS CERTIFIES THAT

Heather Carr

has successfully completed the required curriculum approved by
Dress for Success® Phoenix, and is therefore awarded this

CERTIFICATE OF COMPLETION

Given this 27th day of June 2019

*Lisa Doronal*
CEO/Founder

*Mary Crawford*
Director Women Service's

PPG6

*Exhibit A-9 (1 page)*

PHXFO  606.00 *      FEMALE CUSTODY CLASSIFICATION FORM      *      08-28-2019
PAGE 001 OF 001                                                   13:56:59

                          (A) IDENTIFYING DATA

REG NO..: 89751-083           FORM DATE: 07-31-2019        ORG: PHX
NAME....: CARR, HEATHER

                                   MGTV: NONE
PUB SFTY: NONE                     MVED:

                          (B) BASE SCORING

DETAINER: (0) NONE            SEVERITY.......: (3) MODERATE
MOS REL.: 31                  CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE            VIOLENCE.......: (2) > 15 YRS SERIOUS
VOL SURR: (3) VOL SURR        AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS

                          (C) CUSTODY SCORING

TIME SERVED....: (4) 26-75%   PROG PARTICIPAT: (2) GOOD
LIVING SKILLS..: (2) GOOD     TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT: (3) NONE     FAMILY/COMMUN..: (4) GOOD

                   --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY CONSIDER
+4   +20     -8       0        MINIMUM    N/A             OUT     DECREASE

G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

*I score a -8 so its considered a $ risk rating since thats the lowest possible score*

BP-A0941
JUN 10                    **Notice of RDAP Qualification** CDFRM   *Exhibit A-10*

**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

## SECTION 1 - RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION

YOU HAVE REQUESTED PARTICIPATION IN THE BUREAU'S RESIDENTIAL DRUG ABUSE
TREATMENT PROGRAM.  MY REVIEW OF YOUR CASE INDICATES __ **DO** ✓ **DO NOT** QUALIFY
FOR THE RESIDENTIAL DRUG ABUSE PROGRAM.(comment on documentation and clinical
interview).

Comments:
You do not appear to meet the criteria for participation in RDAP based on a lack of
documentation supporting a pattern of substance abuse in the year prior to arrest.

If inmate does not qualify for the RDAP no offense review is required.

## SECTION 2 - OFFENSE REVIEW

___ A DSCC OFFENSE REVIEW HAS BEEN REQUESTED.

___ A DSCC OFFENSE REVIEW HAS **NOT** BEEN REQUESTED:

     ____ (a)   you have received a prior early release under §3621(e);

     ____ (b)   you are a contract boarder (e.g., state or military inmate);

     ____ (c)   you were sentenced under other law.

My signature indicates I have been informed of my RDAP qualification status.

| | |
|---|---|
| Inmate Name Printed<br>Carr, Heather | Staff Name Printed<br>K. Sullivan, Psy.D. |
| Inmate/Signature | Staff Signature |
| Register Number<br>89751-083 | Staff Title<br>Drug Abuse Program Coordinator |
| Date  4-3-19 | Date |

Refused to sign
   __ Yes    __ No

cc: Drug Abuse Treatment File Unit Team
    Unit Team (place in section 4 of inmate central file)

*PDF*                          Prescribed by P5331

_Exhibit A-11_
_1 page_

## PROPOSED RELEASE PLAN

Heather Carr has always had a stable and loving home environment with her children. She would be back home living with her children if this Court orders Heather's release pursuant to 3582 (c)(1)(A)(ii). Heather has the following plan in place:

1. Residence – 909 East Camelback Rd. #2103 Phoenix, AZ 85014

2. Other Occupants of Residence – Ayanna Brown (adult daughter), Milani Thomas (minor daughter), and Tru Thomas (minor son).

3. Employment – Phoenix, AZ has a vibrant job market and Heather is currently enrolled in a job search program at Dress for Success in downtown Phoenix where Heather visited last month with the Warden, Unit Manager and several other inmates. There are currently 8,000 job postings in Phoenix, with a majority of those being "felon-friendly." Heather has an active updated resume on file and is working with Mary Crawford, Director of Dress for Success, to find immediate employment upon release.

TRULINCS 89751083 - CARR, HEATHER - Unit: PHX-C-H

*Exhibit A-12*

*1 page*

---

FROM: Against Mm, Families
TO: 89751083
SUBJECT: update
DATE: 08/12/2019 03:21:51 PM

Dear FAMMily,

Many of you have asked over the past couple of weeks for the chart detailing point totals for the new risk and needs assessment tool, PATTERN. I apologize for not including it in my earlier email   Corrlinks does not allow the same formatting capabilities as our other email services so I was not able to include the chart in our last message. However, we have reformatted the chart into list form so that it can be shared with you. Please see below. Again, I apologize for the miscommunication and the confusion from the last email but I hope this will answer some questions!
Thank you,
Daniel Landsman
FAMM Director of Federal Legislative Affairs

FACTOR POINT TOTALS

Male General Recidivism:

Age at conviction. Less than 18: 12; 18 - less than 25: 8; 25 - less than 35: 4; 35 or older: 0.
Age at assessment. Less than 18 - 25: 30; 26 - 29: 24; 30 - 40: 18; 41 - 50: 12; 51 - 60: 6; 60+: 0.
Infraction convictions (any). More than 2: 9; 2 convictions: 6; 1 conviction: 3; 0 convictions: 0.
Infraction convictions (violent and serious). More than 2: 6; 2 convictions 4; 1 conviction: 2; 0 convictions: 0.
Number of programs completed (any). More than 10: -12; 4 - 10: -9; 1 - 3: -6; 1: -3; 0: 0.
Number of technical or vocational courses. More than 1: 0; 1 course: -1; 0 courses: -2.
Federal Industry Employment (UNICOR). N/A.
Drug treatment while incarcerated. No need indicated: -6; Completed RDAP: -4; Completed drug treatment during incarceration: -2; Need indicated but no treatment during incarceration: 0.
Drug education while incarcerated. No: 0; Yes: -1.
Non-compliance with financial responsibility. N/A.
Instant offense violent. No: 0; Yes: 4.
Sex offender. No: 0; Yes: 1.
Criminal history points. 0 - 1 points: 0; 2 - 3 points: 6; 4 - 6 points: 12; 7 - 9 points: 18; 10 - 12 points: 24; 13+ points: 30.
History of violence. None: 0; >10 years minor: 1; >15 years serious: 2; 5-10 years minor: 3; 10-15 years serious: 4; <5 years minor: 5; 5-10 years serious: 6; <5 years serious: 7.
History of escapes. None: 0; >10 years minor: 2; 5-10 years minor: 4; <5 years minor or any serious: 6.
Voluntary surrender. Yes: -12; No: 0.

Female General Recidivism:

Age at conviction. Less than 18: 15; 18 - less than 25: 10; 25 - less than 35: 5; 35 or older: 0.
Age at assessment. Less than 18 - 25: 15; 26 - 29: 12; 30 - 40: 9; 41 - 50: 6; 51 - 60: 3; 60+: 0.
Infraction convictions (any). More than 2: 6; 2 convictions: 4; 1 conviction: 2; 0 convictions: 0.
Infraction convictions (violent and serious). More than 2: 6; 2 convictions: 4; 1 conviction: 2; 0 convictions: 0.
Number of programs completed (any). More than 10: -8; 4 - 10: -6; 1 - 3: -4; 1: -2; 0: 0.
Number of Technical or Vocational Courses. More than 1: 0; 1 course: -2; 0 courses: -4.
Federal industry employment (UNICOR) Yes: -1; No: 0.
Drug treatment while incarcerated. No need indicated: -9; Completed RDAP: -6; Completed drug treatment during incarceration: -3; Need indicated but no treatment during incarceration: 0.
Drug education while incarcerated. N/A.
Non-compliance with financial responsibility. No: 0; Yes: 3.
Instant offense violent. N/A.
Sex offender. N/A.
Criminal history points. 0 - 1 points: 0; 2 - 3 points: 6; 4 - 6 points: 12; 7 - 9 points: 18; 10 - 12 points: 24; 13+ points: 30.
History of violence. None: 0; >10 years minor: 1; >15 years serious: 2; 5-10 years minor: 3; 10-15 years serious: 4; <5 years minor: 5; 5-10 years serious: 6; <5 years serious: 7.
History of escapes. None: 0; >10 years minor: 2; 5-10 years minor: 4; <5 years minor or any serious: 6.
Voluntary surrender. Yes: -9; No: 0.

Heather Carr #99751-083
Coreperic Federal Prison
37910 N 45th Ave
Phoenix, AZ
85086

Judge William J Martinez
Clerk of the Court
Alfred A Arraj U.S Courthouse
901 19th St. Room A105
Denver, CO
80294-3589

CERTIFIED MAIL

7001 0320 0004 3682 2450

