# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**HEATHER CARR,**

      Defendant.

---

## RESPONSE TO MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

## INTRODUCTION

Heather Carr, Reg. No. 89751-083, pleaded guilty to one count of Conspiracy to Defraud the Government with Respect to Claims in violation of 18 U.S.C. § 286, and the Court sentenced her to 57 months, the bottom of the applicable advisory Sentencing Guideline range.  Doc. 313.  She is currently incarcerated at the Federal Correctional Institution at Phoenix, Arizona, with a projected release date of February 23, 2022.  *See* Federal Bureau of Prisons, *Inmate Locator*,

1

https://www.bop.gov/inmateloc/ (last visited Oct. 9, 2019).

Carr alleges that her adult daughter, who has been acting as caregiver for her younger siblings since both parents are currently incarcerated, is no longer able to care for them. Doc. 508 at 3-4, 10. She now moves to "complete the balance of the custodial sentence under home confinement after which she will be subject to a three (3) year term of supervised release." Doc. 508 at 13. The Motion should be denied, as the Court cannot grant Carr the relief requested. Separately, the BOP properly determined that she does not qualify for compassionate release under U.S.S.G. § 1B1.13, Application Note 1.

## ARGUMENT

The First Step Act, Pub. L. 115 Pub. L. 391, 132 Stat. 5194 (Dec. 21, 2018), amended an array of federal criminal justice provisions. As relevant here, § 602 amended 18 U.S.C. § 3624(c)(2) with respect to home confinement for low-risk prisoners, while § 603(b) amended 18 U.S.C. § 3582(c)(1)(A) with respect to compassionate release. These provisions act independently, apply to different segments of the prison population, and are subject to distinct legal processes.

2

I.    **THE COURT CANNOT GRANT CARR'S REQUEST FOR HOME CONFINEMENT UNDER § 602 OF THE FIRST STEP ACT.**

Section 602 of the First Step Act added a sentence at the end of 18 U.S.C. § 3624(c)(2), so that it now provides:

> (1) In general.  – The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.  – The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

By its terms, § 3624(c)(2) doesn't authorize a modification or reduction of a sentence; rather, it directs the BOP, "to the extent practicable," to place low-risk prisoners in home confinement for 10% of the term of incarceration, or the last six months, whoever is less.  Carr has three obstacles.

*First*, it is well-established that an inmate must exhaust all administrative remedies that are available to her before seeking judicial review of the decision.  *See*, *e.g.*, *United States v. Wilson*, 503 U.S. 329, 335-36 (1992); *Simmat v. U.S. Bureau of Prisons*,

3

413 F.3d 1225, 1236-37 (10th Cir. 2005). The exhaustion requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). *See also* 28 C.F.R. § 542.10(a) (A federal prisoner must "seek formal review of an issue which relates to any aspect of" her imprisonment.).

Indeed, the Supreme Court has unambiguously said that "unexhausted claims cannot be brought into court." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little*, 607 F.3d at 1249 (citing *Jones*, 549 U.S. at 218, and *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)) (citation omitted). The burden of showing exhaustion rests on the prisoner. *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981).

The BOP has established a four-tiered administrative process to address inmate grievances, codified at 28 C.F.R. §§ 542.10-542.16. First, "an inmate shall ... present an issue of concern informally to staff." *Id.* § 542.13(a). If this fails to satisfy the inmate, she must submit her complaint, using Form BP-9, to the Warden within 20 days of the occurrence giving rise to the complaint. *Id.* § 542.14(a). If she is

4

dissatisfied with the response at that level, within 20 days of the Warden's response, she must appeal to the Regional Director of the Bureau of Prisons, using Form BP-10. *Id.* § 542.15(a). Finally, within 30 days of the Regional Director's response, the inmate may file a final administrative appeal to the General Counsel of the Bureau of Prisons, using Form BP-11. *Id.*

Here, Carr did not mention home confinement in her request to the warden. *See* Doc. 508 at 18 (BP-9 request dated Feb. 6, 2019). Consequently, the warden construed the request as one for compassionate release, and denied it because the unavailability of daycare doesn't qualify as an "incapacitation" of a family caregiver. *See* Doc. 508 at 17 (BP-9 decision dated Feb. 8, 2019). Carr didn't take issue with the warden's characterization of her request as one for compassionate release, and thus didn't mention home confinement in her appeal to the regional office. *See* Doc. 508 at 20 (BP-10 appeal dated Feb. 15, 2019). The regional director affirmed the warden's determination that Carr failed to meet the criteria under "Incapacitation of a Family Member Caregiver," and denied the appeal. *See* Doc. 508 at 19 (BP-10 decision dated Mar. 14, 2019).

It was only when she appealed to the national office that Carr characterized the issue as "my request for Compassionate Release/Home Confinement." *See* Doc. 508

at 22 (BP-11 appeal dated Apr. 3, 2019).  The administrator of national inmate appeals affirmed, again because Carr didn't "meet the criteria for the death or incapacitation of the family member caregiver under the criteria" established in BOP policy.  *See* Doc. 508 at 21 (BP-11 decision dated June 5, 2019).

To properly exhaust her administrative remedies, an inmate must raise her claim at each level of the BOP process, and may not raise an issue on appeal that was not raised in the lower filings.  28 C.F. R. § 542.15(b)(2).  Here, Carr didn't raise home confinement until her final appeal, and thus failed to exhaust that claim.  Her claim should be dismissed without reaching the merits.

*Second*, home confinement isn't a function of a *reduction* of a prisoner's sentence; it's an alternative manner and location of *serving* the existing sentence.  That is, a prisoner's claim that she should receive more time in a halfway house or home confinement is a challenge to the execution of her sentence.  *Rizzolo v. Puentes*, No. 19-CV-00290-SKOHC, 2019 WL 1229772, *2 (E.D. Cal. Mar. 15, 2019) (unpublished).  *Accord Kraft v. Cruz*, No. 09-CV-1526-M, 2010 WL 882993, *2 (N.D. Tex. Mar. 9, 2010) (unpublished) (collecting cases).

As such, a home confinement claim isn't a compassionate release claim.  A home confinement claim isn't cognizable under 18 U.S.C. § 3582(c)(1)(A), which

6

applies to the modification of criminal sentences, with jurisdiction in the court that imposed the sentence. *Braswell v. Gallegos*, 82 F. App'x 633, 635 (10th Cir. 2003) (unpublished). *See also Moresco v. United States*, 982 F.2d 529, 1992 WL 372399, *2 (10th Cir. 1992) (Table) (unpublished) (18 U.S.C. § 3621(b) "authorizes the Bureau of Prisons 'to designate the place of a prisoner's imprisonment.' The term 'imprisonment' refers to any type of custody, including custody in a correctional facility or home confinement program."). Rather, the custody status of a prisoner is a civil matter subject to review under 28 U.S.C. § 2241, with jurisdiction in the district of incarceration. *Braswell*, 82 F. App'x at 635 (quoting *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)). Thus, while home confinement must be raised via § 2241, compassionate release falls under § 3582. *See Boals v. Quintana*, No. CV 5:15-335-JMH, 2015 WL 8665404, *3 (E.D. Ky. Dec. 11, 2015) (unpublished). The home confinement claim is not justiciable in this criminal proceeding.

*Third*, even if Carr had properly exhausted her home confinement claim, it's not ripe. The statute specifically limits the availability of home confinement to "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Carr's sentence is 57 months, meaning that her maximum eligibility for home confinement would be in the last five months and three weeks of

her sentence – at the end of August 2021.  *See* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Oct. 9, 2019) (noting Carr's projected release date is February 23, 2022).  The home confinement claim should be dismissed.

## II.   CARR'S REQUEST FOR COMPASSIONATE RELEASE UNDER § 603(B) OF THE FIRST STEP ACT HAS BEEN ABANDONED, IS UNEXHAUSTED, AND IS MERITLESS.

If the Court were to construe Carr's claim as a true claim for compassionate release under § 603(b) of the First Step Act, she has now abandoned it before the Court by seeking only home confinement for relief.  *See Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 17-3569, 2018 WL 2539418, *3 (6th Cir. May 23, 2018) (unpublished); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202 n.4 (10th Cir. 2003) ("even issues designated for review are lost if they are not actually argued in the party's brief").  Even liberally construing her motion, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Shelby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotations, citations, and brackets omitted).

If a compassionate release claim hasn't been abandoned, it fails because Carr

8

did not properly exhaust her administrative remedies with respect to it.  For requests based on death or incapacity of a family member caregiver, the BOP requires the inmate, among other things, to submit to the warden "verifiable medical documentation of the incapacitation," as well as "[v]erifiable documentation that the inmate is the parent of the child"; "[v]erifiable documentation providing the name and age of the child"; and "[a]uthorization from the inmate for the BOP to obtain information or documents from any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child."  Program Statement 5050.50 § 5(a), at 7-8. [1]

The record contains no indication that Carr provided any of these materials to the warden.  Accordingly, she hasn't properly exhausted her administrative remedies.

------

[1] A program statement is an internal agency guideline, which is not the same as "published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment."  *Reno v. Koray*, 515 U.S. 50, 61 (1995) (internal citations omitted).  Although not entitled to sweeping deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), a program statement warrants "some deference" "given the 'specialized experience and broader investigations and information' available to the agency."  *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944)).  *See also Martinez v. Flowers*, 164 F.3d 1257, 1261 (10th Cir. 1998) ("[W]e consider whether the program statement is a well reasoned interpretation of the statute which has the "'power to persuade."') (quoting *Skidmore*, 323 U.S. at 140).

Moreover, without such materials, this Court would be unable to properly consider her request for compassionate release.  *See United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, *2 (M.D. Fla. June 7, 2019)(unpublished), *appeal filed*, No. 19-13405 (11th Cir. Sept. 3, 2019); *United States v. Gutierrez*, No. CR 05-0217-RB, 2019 WL 1472320, *2 (D. N.M. Apr. 3, 2019) (unpublished).  Carr is ineligible for compassionate release until such time as she properly exhausts her administrative remedies.

Even if the Court were to reach the merits, Carr's compassionate release claim would fall short.  Under prior law, only the Director of the BOP could file a motion for compassionate release.  Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A), so that now a court also may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf...."  Congress's intent with § 603(b) was "increasing the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

But aside from allowing prisoners to bring motions directly, the First Step Act did not change the substance for compassionate release.  The decision to grant or

deny remains discretionary.  *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442

U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to

be conditionally released before the expiration of a valid sentence.").  A proposed

sentence reduction must be: (1) warranted by "extraordinary and compelling reasons";

and (2) consistent with "the factors set forth in section 3553(a)."  Section

3582(c)(1)(A) and (A)(i).

     The implementing regulation provides, in turn, that compassionate release may

be applied "in particularly extraordinary or compelling circumstances which could not

reasonably have been foreseen by the court at the time of sentencing."  28 C.F.R. §

571.60.  Although neither the statute nor the regulation provide further guidance,

Congress has directed the Sentencing Commission to "describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the

criteria to be applied and a list of specific examples.  Rehabilitation of the defendant

alone shall not be considered an extraordinary and compelling reason."  28 U.S.C.

§ 994(t).

     The Application Notes to U.S.S.G. § 1B1.13, "Reduction in Term of

Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)," define

"extraordinary and compelling reasons."  Note 1(A) concerns the medical condition

11

of the defendant, not relevant here.  Note 1(B) concerns defendants who are 65 years or older, also not relevant here.  To the extent Carr's motion actually seeks compassionate release, it is governed by Note 1(C):

> (C) Family Circumstances.
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. [2]

The crux of Carr's claim is that the BOP has incorrectly applied Note 1(C)(i) to her because the Merriam-Webster Dictionary defines "incapacitation" as "the lack of sufficient ability, power or means."  Doc. 508 at 3.  Thus, she argues, her adult daughter has become "incapacitated" in her ability to care for the minor children.

But in response to the passage of the First Step Act, the BOP adopted detailed guidance concerning compassionate release.  Program Statement 5050.50,

---

[2]  Note 1(D) is a general catch-all provision for situations where there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  But this provision can only apply if the Director of the BOP makes such a determination, which did not occur in this case. *See*, *e.g.*, *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, *3 (S.D. Ala. Aug. 13, 2019) (unpublished), *appeal filed*, No. 19-13239 (11th Cir. Aug 21, 2019).

*Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.*

*§§ 3582 and 4205(g)* (Jan. 17, 2019). [3]  The Program Statement defines "incapacitation" as "the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *Id.* § 5, at 7.

Given the deference due to the BOP's responsibility and expertise, *see Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 35 n.26 (11th Cir. 2011), the Program Statement is clearly a reasonable exercise of the BOP's authority.  The BOP is responsible for administering the sentences of federal offenders, and specifically for evaluating claims of compassionate release.  Its definition limiting "incapacitation" to severe injury or severe illness is well within the realm of reasonable interpretations of the Application Note.

For example, in *Watson v. Solis*, No. 09-CV-131, 2010 WL 3781710, *6-*8 (E.D. Tenn. Sept. 21, 2010), *aff'd*, 693 F.3d 620 (6th Cir. 2012), the Department of Labor interpreted "incapable of self-support" as used in Part E of the Energy Employees

---

[3] The Program Statement is available online at the Bureau of Prisons web site, www.bop.gov/policy/progstat/5050_050_EN.pdf.  It is also attached to Carr's motion, Doc. 508 as Exh. A-3.

Occupational Illness Compensation Program Act of 2000, to mean "physically or mentally incapable of self-support." 2010 WL 3781710 at *6-*8. Relying on the Merriam-Webster Online Dictionary, the claimant contended that "incapable" would include considerations such as her age, lack of education, and domestic situation. *Id.* at *2, *5-*6. The court concluded that "[t]here are too many conflicting definitions for the Court to definitively conclude that 'incapable' has an inherent mental or physical component," but "[u]nder *Skidmore,* all the Court must do is determine whether the DOL has provided a well-reasoned, persuasive justification for its interpretation," and "it is reasonable to construe the word as having such meaning." *Id.* at *6-*8.

Beyond this, compassionate release is appropriate "in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." 28 C.F.R. § 571.60. *Accord* Program Statement § 5050.50 § 1, at 1. Carr does not explain how her circumstances "could not reasonably have been foreseen by the court at the time of sentencing." She argued that "[t]his sentence will remove Ms. Carr from her young children for a significant portion of their lives; this separation will be horribly difficult for their family but is a just punishment for her actions." Doc. 247 at 3-4.

14

Although acknowledging that at the time her adult daughter would be caring for the children, this Court's response was –

> a very simple one: Ms. Carr should have paused to consider the effect on her two young children of her possible incarceration before she embarked on her course of criminal conduct and not just afterwards. … [T]his was not just a one-time crime like a single bank robbery, but instead it's a sustained series of criminal actions and fraudulent conduct undertaken 181 times and repeatedly over the course of 26 months, that if Ms. Carr's maternal instincts had truly triggered authentic concern for the future welfare of her children, Ms. Carr had ample and multiple opportunities during her protracted crime spree to bring her crimes to a swift end; but she did not.

Tr., Sentencing Hearing (Jan. 4, 2018), Doc. 321 at 52-53. That the daycare situation might subsequently change was reasonably foreseeable, and provides no basis for compassionate release. *Compare United States v. Casey*, No. 06-CR-00071, 2019 WL 1987311, *1-*2 (W.D. Va. May 6, 2019) (unpublished) (Prisoner suffering from multiple sclerosis, neuropathy, and diverticulitis alleged a need for medical care: "she cannot function properly, has limited mobility, and must use a walker. She alleges that the prison elevators do not operate, and she cannot climb stairs. She also alleges that her condition is worsening and will further deteriorate without additional medical care. … Although I regret that she suffers from a number of medical conditions, I find that she has not alleged facts showing that they are sufficiently serious to warrant a reduction.").

15

What remains, then, is the application of the 18 U.S.C. § 3553(a) factors.  18

U.S.C. § 3582(c)(1)(A)(i).  Carr refers to her rehabilitation efforts while in prison.

Doc. 508 at 7, 10-11.  But "rehabilitation of the defendant is not, by itself, an

extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G.

§ 1B1.13, Application Note 3.  Otherwise, she reasserts arguments she made at

sentencing regarding her limited criminal history, employment history, and lack of

substance abuse, while attempting to minimize her culpability in the offense of

conviction.  Doc. 508 at 4, 6-8.  So there's nothing new there.

She further contends that "individuals convicted of non-predatory offenses

presenting a low-risk of recidivism, like Heather, should be sentenced to alternatives

to incarceration."  Doc. 508 at 9 (citing 28 U.S.C. § 994(j)).  But again, as this Court

has observed:

> I have previously categorically rejected this line of reasoning, especially
> in cases of so-called white-collar financial crimes prosecutions like the
> one before me today.  Taken to its extreme, the argument would
> countenance very light sentences to sentences like Bernie Madoff, who
> engaged in egregious and protracted fraud and caused vast human and
> financial damages merely because they were first-time offenders.
>
> … [W]e as federal judges must not apply one set of sentencing
> factors to white-collar fraud defendants and a different set to the so-
> called drug and gun class of defendants.

Tr., Sentencing Hearing (Jan. 4, 2018), Doc. 321 at 49-51 (discussing with approval

16

*United States v. Musgrave*, 761 F.3d 602 (6th Cir. 2014) and *United States v. Stefonek*, 179

F.3d 1030 (7th Cir. 1999)).  Accord *United States v. Sample*, 901 F.3d 1196, 1200 (10th

Cir. 2018) ("In imposing minimal sentences on white-collar criminals, courts raise

concerns of sentencing disparities according to socio-economic status.") (internal

quotation and citation omitted), *cert. denied*, 139 S. Ct. 1545 (2019).

What Carr doesn't address are the two lynchpins of the Court's sentencing

decision.  First, she "received all the benefits of the plea agreement and at the last

possible moment she reneged on her obligation to testify truthfully at Mr. Thomas'

jury trial.  And that by doing so, she inflicted the maximum amount of potential harm

to the Government's case against Mr. Thomas."  Tr., Sentencing Hearing (Jan. 4,

2018), Doc. 321 at 47-48.  Second, with respect to the victims, the Court had –

> read about the previous damages done to these individuals' credit history
> and how some of their files have been red flagged and worse, and that
> such -- and the odds that they will be facing when they are released to
> obtain credit or loans or educational or housing – for educational or
> housing purposes or for trying to get a job, and that all those
> opportunities have now been significantly diminished.
>
> For a societal group which already faces severe impediments to
> transitioning to law-abiding lives with gainful employment, this added
> personal damage done to them is, in my view, especially cruel.

17

*Id.* at 53-54. [4]

In exercising discretion under § 3553(a) and the First Step Act, most courts regard compassionate release as "a rare event." *White v. United States*, 378 F.Supp.3d 784, 787 (W.D. Mo. 2019). Prisoners typically only obtain relief after serving a significant term of incarceration. *See, e.g., United States v. McGraw*, No. 02-CR-00018-LJM-CMM, 2019 WL 2059488, *5 (S.D. Ind. May 9, 2019) (unpublished) (granting the motion and noting defendant already served "nearly 17 years, a significant sanction"). Here, Carr has served 20 months – a little more than one-third of her 57-month sentence. Both the shortness of her total term, and the fraction of it served to date, weigh against early release. "[T]he length of the sentence should reflect the harm done and the gravity of the defendant's conduct." *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017) (internal quotations and citation omitted). Releasing Carr at this point would minimize both the impact on her victims and the extent of her fraud. *See, e.g., Rodriguez-Aguirre v. Hudgins*, 739 F. App'x 489 (10th Cir. 2018)

---

[4] Carr's assertion that releasing her now will lead to restitution for her victims, Doc. 508 at 6, is at best a red herring. Based upon her own submissions, she would have to either be a full-time caregiver, or devote the lion's share of her income to a personal care assistant for her son. Doc. 508 at 3-4, 43, 47-48.

18

(affirming the denial of compassionate release motion based on the "seriousness of defendant's offense").

Even if Carr hasn't abandoned her compassionate release claim, and has properly exhausted her administrative remedies with respect to that claim, the BOP reasonably interpreted and applied the Sentencing Guideline Application Note.  If the Court reaches the merits, it should deny the motion.

## CONCLUSION

The motion should be dismissed without prejudice, or in the alternative denied on the merits.

Dated this 10th day of October, 2019.

> Respectfully submitted,
>
> JASON R. DUNN
> United States Attorney
>
> *s/ Paul Farley*
> PAUL FARLEY
> MARTHA A. PALUCH
> BRYAN D. FIELDS
> Assistant U.S. Attorneys
> 1801 California Street, Suite 1600
> Denver, Colorado  80202
> (303) 454-0100
> FAX: (303) 454-0402
> Email: paul.farley@usdoj.gov
> Martha.paluch@usdoj.gov
> Bryan.fields3@usdoj.gov
> Attorneys for the government

**CERTIFICATE OF SERVICE**

I certify that on this 10th day of October, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.  I also placed a

copy of the foregoing in the United States Mail addressed to:

Heather Carr
#89751-083
96 Federal Prisoner Satellite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

                                        s/ *Erin Prall*
                                        Erin Prall
                                        U.S. Attorney's Office
                                        1801 California Street, Suite 1600
                                        Denver, CO 80202
                                        Telephone 303-454-0100
                                        Facsimile 303-454-0402

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing

    (1) all required privacy redactions have been made;

    (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    (3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Agent, Version 5.6.1.308, dated 10/10/19, and according to the program are free of viruses.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

            /s/ Erin Prall
            Erin Prall
            U.S. Attorney's Office