**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  HEATHER CARR,

      Defendant.

---

**REPLY TO RESPONSE TO MOTION FOR COMPASSIONATE RELEASE**

---

TO THE HONORABLE WILLIAM J. MARTINEZ, UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF COLORADO:

      In its Response to Defendant's Motion for Compassionate Release ("Response"), the government disputes Ms. Carr's eligibility for compassionate release relief under the First Step Act and maintains, in the alternative, that if the Court finds Ms. Carr is eligible, it should exercise its discretion to deny Ms. Carr the relief sought. Ms. Carr, however, has completed the administrative requirements necessary to seek relief from this Court, and her Motion is ripe for consideration. For the reasons stated in this Reply and Ms. Carr's Motion for Compassionate Release ("Motion"), the Court should grant Ms. Carr a hearing and find that her circumstances present "extraordinary and compelling reasons" that, when considered in light of the 18 U.S.C. § 3553(a) sentencing factors, support a modification of her sentence.

**I.      Legal Background**

      On September 12, 2019, the U.S. District Clerk received and filed Ms. Carr's Motion titled "Defendant's Motion Requesting Relief Under Compassionate Release

Pursuant to 18 U.S.C. § 3582(c)(1)(A)." Ms. Carr researched, drafted, and filed her Motion without the benefit of legal counsel.[1] Ms. Carr has no legal training herself. Despite these limitations and an admittedly complicated bureaucratic process, Ms. Carr's Motion is complete, if overly inclusive – "everything but the kitchen sink" – in the style typical of such filings. It its Response, the government addressed each of the issues raised by Ms. Carr. As discussed in this Reply, however, the issues before the Court are relatively narrow: Did Ms. Carr sufficiently exhaust her administrative rights such that the Court can now hear her Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)? And, if so, do her circumstances present "extraordinary and compelling reasons" that, when considered in light of the 18 U.S.C. § 3553(a) sentencing factors, compel a modification of her sentence?

## II.     Factual Background

On January 4, 2018, Ms. Carr appeared before this Court on bond for sentencing. In fashioning sentence, the Court noted that Ms. Carr's oldest daughter, Ms. Ayanna Brown, would take custody of Ms. Carr's three minor children while Ms. Carr was incarcerated. *See* Doc. No. 321, Sentencing Transcript, p. 30 at lines 13-17 and p. 41 at lines 9-13. In her allocution, Ms. Carr recognized the burden she was placing on her oldest daughter by asking that she care for her autistic half-brother while his parents are incarcerated: "[S]he has to be [in] a position of a mom because of my greed, because of my friend's greed. It's horrible. Like I'm a horrible person. And that's – that's

---

[1] Undersigned counsel was appointed to represent Ms. Carr with respect to this Reply and any subsequent hearings before the Court.

not that what – this is just like completely spiraled out of control. It's just a horrible situation. And I am sorry." *Id*. at 45, lines 20-25.

After considering the 18 U.S.C. § 3553(a) sentencing factors, including Ms. Carr's plea that her children would be strongly and adversely affected if a lengthy term of incarceration were imposed (*id*. at 52, lines 5-19), the Court denied her motion for a variance and sentenced Ms. Carr to 57 months imprisonment to be followed by a three-year term of supervised release. In considering its sentence, the Court noted: "I am not unsympathetic that during – that two young children in this case will be without their mother for a period of years. At least in this case, they will apparently be well taken care of by Ms. Carr's adult daughter and son-in-law." *Id*. at 53, lines 5-9.

III.    **The First Step Act**

On December 21, 2018, President Donald Trump signed the First Step Act ("FSA") into law. Pub. L. 115 Pub. L. 391, 132 Stat. 5194. Among its many provisions, § 603(b) of the FSA amended the existing procedure whereby a federal prisoner could seek "compassionate release." 18 U.S.C. § 3582(c)(1)(A). Whereas before the Bureau of Prisons' ("BOP") decision on an inmate's request was not cognizable by a district court, the FSA allows a district court to consider modification of an inmate's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id. See also United States v. Walker*, 11-CR-00270, Doc. No. 75 at p. 1 (N.D. Ohio, October 17, 2019) (Order of J. Nugent), *citing* Program Statement 1330.18 and 28 C.F.R. 542(B). As applicable here, this provision

empowers the district court to "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). The statute does not provide further guidance as to what constitutes an "extraordinary and compelling reason," but the existing Sentencing Guidelines, devised to guide the courts upon the BOP's filing of a motion of a defendant's behalf, do.

The text of 18 U.S.C. § 3582(c)(1)(A) tracks that of a Policy Statement found at § 1B1.13 of the Sentencing Guidelines. In its Response, the government incorrectly asserts that Ms. Carr's Motion is necessarily governed by Note 1(C), applicable to "Family Circumstances" (*See* U.S.S.G. § 1B1.13, comment. (n. 1(C).) While this may have been true of her administrative review, Ms. Carr had little choice but to argue as much in her Request because the BOP's available administrative remedies *are not as broad* as § 1B1.13 of the Sentencing Guidelines, which includes in Note 1(D), "Other Reasons":

> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id*. at n. 1(D). *See also* Program Statement 50.50 §§ 2-6, Motion at Exhibit A-3, pgs. 25-34. Prior to the FSA, which is when the most recent Sentencing Guidelines Manual was adopted (effective November 1, 2018), it was up to the Director of the BOP to determine and present such reasons. Now that the Court can hear the motion of defendants

directly, however, it is clear that Congress intended for that determination to rest with the district court.

## IV.   Argument

### 1. Ms. Carr has exhausted the administrative remedies available to her through the Bureau of Prisons.

The Bureau of Prisons has established a four-tiered administrative process for requests such as Ms. Carr's. *See* 28 C.F.R. §§ 542.10-542.16. First, an inmate must "present an issue of concern informally to staff." *Id*. at § 542.13(a). Ms. Carr did this on January 22, 2019, and it was denied on January 29, 2019. *See* form BP-9, Motion at Exhibit A-2. p. 19.

Second, the inmate must submit her complaint, using Form BP-9, to the warden of her facility within 20 days. 28 C.F.R. § 542.14(a). Ms. Carr submitted her Request for Administrative Remedy ("Request") to her warden on February 7, 2019. *See* Motion at Exhibit A-2, p. 18. The Request was denied in writing by Warden William W. Lothrop the following day. *Id*. at 17.

Third, within 20 days of the warden's response, the inmate must appeal to the Regional Director of the BOP using Form BP-10. 28 C.F.R. § 542.15(a). Ms. Carr submitted her appeal to the BOP's Regional Director on February 15, 2019. Motion at Exhibit A-2, p.20. On March 14, 2019, this appeal was denied. *Id*. at 19.

Finally, within 30 days of the Regional Director's response, an inmate may file a final administrative appeal to the General Counsel of the BOP using form BP-11. 28 C.F.R. § 542.15(a). Ms. Carr signed and submitter her "Central Office Administrative Remedy Appeal" on April 3, 2019. Motion at Exhibit A-2, p. 22. This final administrative appeal was denied on June 5, 2019. *Id*. at 21.

Having been denied relief at each and every level of the BOP review process, Ms. Carr filed her Motion on September 12, 2019.

In its Response, the government cites Ms. Carr's failure to provide certain evidence throughout the BOP administrative review process as a basis for procedurally denying her Motion, effectively revoking the Court's broader authority under the FSA. Response at 8-14. By closing the courthouse door, the government's reading would effectively erase compassionate release for "extraordinary and compelling reasons" from the FSA unless the Bureau of Prisons specifically approved of the reason in its regulations. Yet this was the way things were *prior to* the First Step Act. What's more, the government's reading of U.S.S.G. § 1B1.13 Note 1(D), "Other Reasons," dismissed in a footnote (Response at 12, n. 2), robs the Court of its discretionary power to interpret what "extraordinary and compelling reasons" are in light of the FSA. This cannot be what Congress intended.

Even if the Court believes Ms. Carr's Request was properly rejected by the BOP under its regulations, the Court alone has the authority to interpret the FSA and determine whether Ms. Carr's circumstances satisfy the "extraordinary and compelling reasons" standard. Where regulations are in conflict with congressional intent, the Court is bound by the statute. *See, e.g., Wedelstedy v. Wiley*, 477 F.3d 1160 (10th Cir. 2007) ("[A]n agency's authority to promulgate categorical rules is limited by clear congressional intent to the contrary").

Because Ms. Carr exhausted her administrative remedies within the Bureau of Prisons, the Court must consider the facts supporting her Motion for Compassionate Release on the merits. Should the Court agree and grant Ms. Carr a hearing on her

Motion, the defendant asks that the Court set the hearing at such a time as to allow Ms.

Carr and her adult daughter, Ms. Brown, to provide testimony in support of the Motion.

### 2. Ms. Carr's circumstances present "extraordinary and compelling reasons" unknown at the time of sentencing that justify a modification of her sentence.

At the time of sentencing, Ms. Carr expressed remorse about the burden she

was imposing on her adult daughter. Her regret was not based upon a belief that her

daughter and her then husband were not up for the task, but upon her own guilt in

putting her family in that situation. At that time, the younger children's father, co-

defendant Trammel Thomas, was on bond pending sentencing in his case. Mr. Thomas

had been successfully on pre-trial release for just under *22 months* – April 6, 2016 to

January 4, 2018. Like her own case, Ms. Carr believed that Mr. Thomas would remain

on bond until sentencing or his self-report date, allowing time for him to transition the

children to Ms. Brown while Ms. Carr began serving her sentence. Ms. Carr reported to

FCI Phoenix Satellite Camp on February 8, 2018 to begin serving her sentence. The

plan was working.

On March 11, 2018, Mr. Thomas dropped the children off with Ms. Brown, and

then proceeded to ignore Ms. Brown's attempts to contact him. Mr. Thomas was

arrested and detained for violating the terms of his pre-sentencing release soon

thereafter, and on May 31, 2018 he was ordered detained pending sentencing. Doc. No.

431.[2] Ms. Brown, thrust into the role of primary caregiver much sooner than anticipated,

tread water as long as she could, but the sudden impact of minor children in the home,

---

[2] On June 5, 2019, Mr. Thomas was sentenced to 120 months imprisonment and remanded to custody. (Doc. No. 480.)

including one with special needs, caused a rift with her husband and he kicked them out of the house. *See* Letter of Ayanna Brown, Motion at Exhibit A-7, p. 47. On April 13, 2018, the Arizona Department of Child Safety intervened. *See* Progress Report to the Juvenile Court, Motion at Exhibit A-4, p. 37. Although the children were eventually allowed to remain temporarily with Ms. Brown, they became wards of the court. Ms. Brown is now seeking a divorce and living with the children in a small apartment. *See* Letter of Ayanna Brown, Motion at Exhibit A-7, p. 47.

As wards of the court, the children's situation remains fluid. Practically speaking, Ms. Brown will be unable to meet the children's needs once the day-care subsidy she receives concludes at the end of the calendar year. If Ms. Brown cannot make ends meet, the children will be taken from her, separated, and placed into foster care. *Id*. at 48. Once removed to foster care, the children's connection to their family will be severed and it is conceivable, if not likely, that the foster parents will seek to terminate Ms. Carr's parental rights. In Arizona, one factor a court must consider in determining whether or not to terminate parental rights is whether that parent is serving a sentence "of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). It is inarguable that Ms. Carr's children already lacked a "normal home" since April 2018.

Contrary to the government's characterization of her circumstances as a change in "daycare situation" (Response at 15), Ms. Carr sees this as the potential, if not inevitable, loss of her children. For a parent, nothing could be more "extraordinary and compelling." Ms. Carr acknowledges that her claim for relief would be stronger if her children had already been placed into foster care and parental termination proceedings

8

initiated, but the fact that her situation could be even worse does not diminish the compelling circumstances in which Ms. Carr currently finds herself.

None of this was reasonably foreseeable at sentencing. 28 C.F.R. § 571.60. Though perhaps taboo to say, the clearest indication of this is Ms. Carr's decision prior to sentencing to not testify in Mr. Thomas' trial. Had the loss of her children been reasonable foreseeable then, it is hard to believe that Ms. Carr's actions – and potential sentence – would not have been different.

Also at the time of sentencing, the depth of Ms. Carr's son's special needs was not entirely clear. While Ms. Carr noted at the time that her 3-year-old son was autistic, had never said a word, and attended speech therapy three times per week (Sentencing Transcript, p. 45, lines 17-19), the issues that his care would later present were incomprehensible to a family without special needs experience, much less a then 22-year old soon-to-be guardian, Ms. Brown.

### 3.   Analysis of the 18 U.S.C. § 3553(a) Sentencing Factors.

Having already sentenced her once, the Court is familiar with the application of the 18 U.S.C. § 3553(a) sentencing factors in Ms. Carr's case. While the factors related to Ms. Carr's criminal conduct have not changed, there are several major differences for the Court to consider anew.

First, Ms. Carr has served a significant prison term already. As of the date of this filing, Ms. Carr has completed just over 21.5 months of her 57 month sentence. If she continues to receive full credit for good time, Ms. Carr will expect to serve 4 years and 17 days upon a sentence of 57 months, making for a potential estimated overall release

date of February 23, 2022.[3] Effectively, Ms. Carr has already served 44% of her overall

sentence, and well over half of her period of incarceration if release to a halfway house

and home confinement are also considered. Without modification of her sentence, Ms.

Carr will become eligible for home confinement during the final 5.7 months of her

sentence.[4] By both parties calculations, this means that, as is, Ms. Carr will likely be

released to home confinement as early as August 2021. Response at 8. Prior to home

confinement, however, Ms. Carr will likely be eligible for reintroduction to the community

in a halfway house in the first half of 2021. What Ms. Carr is asking then is not that the

Court dramatically reduce her sentence, but simply to accelerate and extend her period

of home confinement to include time that which would otherwise be spent in a halfway

house or prison camp.

Second, Ms. Carr has put her time in prison to good use. She has availed herself

of all of the programming available to her (*see* Motion at Exhibit A-8, p.49) , including

the FPC Phoenix Parenting course (*id*. at 50), the FPC Phoenix Community Service

Project (*id*. at 51), the Foundation Program (*id*. at 52), and the Dress for Success

program (*id*. at 53). In short, there isn't much left that Ms. Carr can do to further her

rehabilitation or "to protect the public from further crimes of the defendant." 18 U.S.C. §

3553(a)(2)(C) and (D).

Finally, as discussed above, the policy statements the Court must consider now

include § 1B1.13 of the Sentencing Guidelines. Even if Ms. Carr's Motion does not fit

---

[3] As identified on the BOP's online database, available here:
https://www.bop.gov/inmateloc/ (accessed November 23, 2019 at 10:54 A.M.).
[4] As the lesser of 6 months of 10% of her sentence imposed. *See* 18 U.S.C. §
3624(c)(2).

neatly into one of the BOP's pre-approved basis for compassionate release, the Court must make its own determination about what constitutes "extraordinary and compelling reasons."

## V.    Motion for Compassionate Release

For the reasons stated herein and in her Motion, Ms. Carr believes her circumstances present "extraordinary and compelling reasons" justifying the use of the Court's discretionary power to modify her sentence under § 603(b) of the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A). Significantly, Ms. Carr is not asking that the Court diminish her sentence temporally, but to modify her sentence to allow for a term of home confinement in which she can be present for, and provide care to, her minor children.

Though most district courts across the country have yet to hear motions like Ms. Carr's, district courts have granted numerous defendants compassionate relief under the FSA for "extraordinary and compelling reasons." *See*, *e.g., United States v. Walker*, *supra* (N.D. Ohio, October 17, 2019) (Citing Note 1(D)'s "other reasons" and granting defendant compassionate release to care for mother's failing health); *United States v. Jones*, 16-CR-00166, Doc. No. 97 (S.D. Ohio, August 23, 2019) (Order of J. Watson) (Finding "extraordinary and compelling reasons" due to BOP's failure to adequately treat defendant's breast cancer and reducing her sentence to time served while imposing a term of supervised release for the time remaining on defendant's original sentence with a condition of home detention for 180 days).

The government is correct that, on its face, "extraordinary and compelling

reasons" are a rarity. But the case it cites for this proposition, *White v. United States*,

378 F.Supp.3d 784 (W.D. Mo., May 9, 2019), itself cites two pre-FSA cases in which

compassionate release was granted *upon motion of the Director of the Bureau of*

*Prisons* (emphasis added). Why else then would Congress expand the ability of

defendants to seek compassionate release if not to make such cases less rare? In fact,

as of November 19, 2019, 109 federal inmates have been granted compassionate

release under the First Step Act. (*See* Testimony of Dr. Kathleen Hawk Sawyer,

Director, Federal Bureau of Prisons, November 19, 2019, at p. 7.)[5] It is unclear from the

testimony what percentage of these inmates were granted compassionate release

pursuant to § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons" and what

percentage were granted under § 3582(c)(1)(A)(ii) for eligible inmates over the age of

70.

* * *

For the reasons stated herein and in her Motion for Compassionate Release, Ms.

Carr asks that the Court find that she has exhausted her administrative rights and grant

her an evidentiary hearing on her Motion..

Dated this 25th day of November, 2019.

/s/   Jason D. Schall
Jason D. Schall
Schall Law LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@schalljd.com
Attorney for Defendant Heather Carr

---

[5] Dr. Hawk Sawyer's written testimony is available here:
https://www.judiciary.senate.gov/imo/media/doc/Hawk%20Sawyer%20Testimony.pdf
(accessed November 20, 2019 at 8:40 A.M.).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

I hereby certify that on November 25, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

> AUSA Paul Farley
> AUSA Martha Paluch
> AUSA Bryan Fields
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Paul.Farley@usdoj.gov
> Martha.Paluch@usdoj.gov
> Bryan.Fields3@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following

participant in the manner indicated below:

> Ms. Heather Carr (USM# 89751-083)
> 96 Federal Prisoner Satellite Camp
> 37930 North 45th Avenue
> Phoenix, AZ 85086

> _____ /s/   Jason D. Schall _____
> Jason D. Schall
> Schall Law LLC
> 7350 E Progress Pl Ste 100
> Greenwood Village, CO 80111
> Telephone: (720) 505-3861
> E-mail: jason@schalljd.com
> Attorney for Defendant Heather Carr