2255,APPEAL,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: <u>1:16–cr–00054–WJM</u>–1

Case title: USA v. Carr et al

Related  Case:  1:18–cv–01681–WJM

Date Filed: 02/08/2016

Date Terminated: 01/10/2018

Assigned to: Judge William J. Martinez

Appeals court case numbers: 18–1021 Tenth Circuit, 20–1152 Tenth Circuit

### <u>Defendant (1)</u>

**Heather Carr**
*TERMINATED: 01/10/2018*

represented by **Heather Carr**
#89751–083
96 Federal Prisoner Satelite Camp
37930 North 45th Avenue
Phoenix, AZ 85086
PRO SE

**Jason Dale Schall**
Schall Law LLC
7350 East Progress Place
Suite 100
Greenwood Village, CO 80111
720–505–3861
Email: jason@schalljd.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Mary Virginia Butterton**
Federal Public Defender's Office–Denver
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–7002
Email: mary_butterton@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Meredith Bartlett Esser**
Federal Public Defender's Office–Denver
633 17th Street
Suite 1000

Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: meredith_esser@fd.org
*TERMINATED: 11/04/2019*
*Designation: Public Defender or Community*
*Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:286.F Conspiracy to Defraud the Government with Respect to Claims<br>(1) | Incarceration: 57 months; Supervised Release: three years; Special Assessment: $100; Restitution: $562,487.85, jointly and severally with co–Defendants Mercedes Diaz, Marcelle Green and Trammel Thomas –– ORDERED by Judge William J. Martinez on 1/10/2018 at Doc. No. 294 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1343.F Wire Fraud<br>(2–13) | Dismissed. |
| 18:1341.F Mail Fraud<br>(14–26) | Dismissed. |
| 18:1028A.F Aggravated Identity Theft<br>(27–29) | Dismissed. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Plaintiff**

| **USA** | represented by | **Daniel Edward Burrows** |
| --- | --- | --- |
| | | U.S. Attorney's Office–Denver |
| | | 1801 California Street |
| | | Suite 1600 |
| | | Denver, CO 80202 |
| | | 303–454–0201 |
| | | Email: daniel.burrows@usdoj.gov |
| | | *TERMINATED: 10/06/2016* |

2

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Martha Ann Paluch**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: Martha.Paluch@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Beth N. Gibson**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0406
Email: Beth.Gibson@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Bryan David Fields**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: bryan.fields3@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Paul Farley**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0361
Email: paul.farley2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/08/2016 | 1 | 17 | INDICTMENT as to Heather Carr (1) count(s) 1, 2–13, 14–26, 27–29, Trammel Thomas (2) count(s) 1, 2–13, 14–26, Mercedes Diaz (3) count(s) 1, |

| | | | |
|---|---|---|---|
| | | | 20–21. (Attachments: # 1 Criminal Information Sheet, # 2 Criminal Information Sheet, # 3 Criminal Information Sheet) (cthom, ) (Entered: 02/09/2016) |
| 02/08/2016 | 2 | | RESTRICTED DOCUMENT – Level 4: as to Heather Carr, Trammel Thomas, Mercedes Diaz. (cthom, ) (Entered: 02/09/2016) |
| 02/08/2016 | 3 | | Arrest Warrant Issued in case as to Heather Carr. (cthom, ) (Entered: 02/09/2016) |
| 03/16/2016 | 12 | 36 | Rule 5(c)(3) Documents Received as to Heather Carr from the Eastern District of Virginia. Defendant to appear in Denver on March 22, 2016 at 2:00 PM, before Magistrate Judge Tafoya, in Courtroom C201. (nmarb, ) (Entered: 03/16/2016) |
| 03/22/2016 | 13 | | COURTROOM MINUTES FOR Initial Appearance as to Heather Carr held on 3/22/2016 Magistrate Judge Kathleen M. Tafoya. Defendant present on bond and advised. Federal Public Defender appointed. Arraignment and Discovery hearings set for 3/24/2016 10:00 AM in Courtroom C201 before Magistrate Judge Kathleen M. Tafoya. Defendant's bond continued. (Total time: 10 mins, Hearing time: 236–246)<br><br>**APPEARANCES**: Michelle Korver on behalf of the Government, Angela Ledesma on behalf of pretrial. FTR: KMT C201. (sgrim) Text Only Entry (Entered: 03/22/2016) |
| 03/22/2016 | 14 | | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Heather Carr by Magistrate Judge Kathleen M. Tafoya on 3/22/16. Text Only Entry (sgrim) (Entered: 03/22/2016) |
| 03/22/2016 | 15 | | CJA 23 Financial Affidavit by Heather Carr. (sgrim, ) (Entered: 03/22/2016) |
| 03/22/2016 | 18 | | WAIVER of Presence for Arraignment and Discovery Conference by Heather Carr. (sgrim) (Entered: 03/24/2016) |
| 03/23/2016 | 16 | | NOTICE OF ATTORNEY APPEARANCE: Mary Virginia Butterton appearing for Heather CarrAttorney Mary Virginia Butterton added to party Heather Carr(pty:dft) (Butterton, Mary) (Entered: 03/23/2016) |
| 03/24/2016 | 17 | | COURTROOM MINUTES for Arraignment and Discovery hearings as to Heather Carr held on 3/24/2016 before Magistrate Judge Kathleen M. Tafoya. Defendant not present. Ms. Butterton tenders a waiver for Defendant's right to appear, the waiver is accepted. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed. Counsel is directed to chambers for further dates. Defendant's bond continued. (Total time: 2 mins, Hearing time: 1019–1021)<br><br>**APPEARANCES**: Kurt Bohn on behalf of the Government, Mary Butterton on behalf of the defendant, Angela Ledesma on behalf of pretrial. FTR: KMT C201. (sgrim) Text Only Entry (Entered: 03/24/2016) |
| 03/24/2016 | 19 | | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Heather Carr by Magistrate Judge Kathleen M. Tafoya on 3/24/16. (sgrim, ) (Entered: 03/24/2016) |
| 03/31/2016 | 30 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Disclose Grand Jury Material to Defendant by USA as to Heather Carr, Trammel Thomas, Mercedes Diaz. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 03/31/2016) |
| 03/31/2016 | 33 | 47 | ORDER granting 30 Motion to Disclose Grand Jury Material as to Heather Carr (1), Trammel Thomas (2), Mercedes Diaz (3) by Judge William J. Martinez on 03/31/2016. (cthom, ) (Entered: 03/31/2016) |
| 03/31/2016 | 34 | | Unopposed MOTION for Protective Order *Regarding Grand Jury Material and Personal Identifying Information of Third Parties* by USA as to Heather Carr, Trammel Thomas, Mercedes Diaz. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 03/31/2016) |
| 04/01/2016 | 35 | | ORDER Setting Trial Date and Related Deadlines as to Heather Carr, Trammel Thomas, Mercedes Diaz: Motions due by 5/3/2016. Responses due by 5/13/2016. 6 day Jury Trial set for 5/31/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Trial Preparation Conference set for 5/24/2016 at 03:00 PM in Courtroom A 801 before Judge William J. Martinez. ORDERED by Judge William J. Martinez on 04/01/2016. (cthom, ) (Entered: 04/01/2016) |
| 04/01/2016 | 36 | | ORDER granting 34 Motion for Stipulated Protective Order as to Heather Carr (1), Trammel Thomas (2), Mercedes Diaz (3) by Judge William J. Martinez on 04/01/2016. (cthom, ) (Entered: 04/01/2016) |
| 04/01/2016 | 37 | | ORDER on Procedures as to Heather Carr, Trammel Thomas, Mercedes Diaz, by Judge William J. Martinez on 04/01/2016. (cthom, ) (Entered: 04/01/2016) |
| 04/01/2016 | 38 | | ORDER Regarding Joint Defense Agreement Disclosures as to Heather Carr, Trammel Thomas, Mercedes Diaz, by Judge William J. Martinez on 04/01/2016. (cthom, ) (Entered: 04/01/2016) |
| 04/01/2016 | 39 | | Utility Setting/Resetting Deadlines/Hearings pursuant to 35 as to Heather Carr, Trammel Thomas, Mercedes Diaz: Text Only Entry Motions due by 5/3/2016. Responses due by 5/13/2016. 6 day Jury Trial set for 5/31/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Trial Preparation Conference set for 5/24/2016 at 03:00 PM in Courtroom A 801 before Judge William J. Martinez. (cthom, ) (Entered: 04/04/2016) |
| 04/18/2016 | 44 | | Unopposed MOTION to Exclude *90 Days From The Requirements Of The Speedy Trial Act* by Heather Carr. (Butterton, Mary) (Entered: 04/18/2016) |
| 04/19/2016 | 45 | | ORDER granting 44 Motion to Exclude as to Heather Carr (1). All days from today, to and including July 18, 2016, shall be excluded from the Speedy Trial Clock as to **ALL Defendants** ; The 6–day Jury Trial set to commence on May 31, 2016 and the Final Trial Preparation Conference set for May 24, 2016 at 3:00 p.m. are hereby **VACATED as to ALL Defendants**. The Court will enter a separate Order resetting the Trial date and related deadlines. ORDERED by Judge William J. Martinez on 04/19/2016. (cthom, ) (Entered: 04/19/2016) |
| 04/19/2016 | 46 | | ORDER Resetting Trial Date and Related Deadlines as to Heather Carr, Trammel Thomas, Mercedes Diaz: Motions due by 8/1/2016. Responses due by 8/11/2016. 6 day Jury Trial set for 8/29/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Trial Preparation Conference set for |

| | | | |
|---|---|---|---|
| | | | 8/19/2016 at 04:00 PM in Courtroom A 801 before Judge William J. Martinez. Ordered by Judge William J. Martinez on 04/19/2016. (cthom, ) (Entered: 04/19/2016) |
| 04/20/2016 | 48 | | RESTRICTED DOCUMENT – Level 3: by Heather Carr. (Butterton, Mary) (Entered: 04/20/2016) |
| 05/02/2016 | 55 | | ORDER granting 54 Motion to Exclude as to Trammel Thomas (2). All days from September 4, 2016, to and including November 3, 2016, shall be excluded from the Speedy Trial Clock as to **ALL Defendants** ; The 6–day Jury Trial set to commence on August 29, 2016 and the Final Trial Preparation Conference set for August 19, 2016 are hereby VACATED as to **ALL Defendants**. ORDERED by Judge William J. Martinez on 05/02/2016. (cthom, ) (Entered: 05/02/2016) |
| 05/11/2016 | 57 | | ORDER Resetting Trial Dates and Related Deadlines as to Heather Carr, Trammel Thomas, Mercedes Diaz: Motions due by 9/23/2016. Responses due by 10/3/2016. 6 day Jury Trial set for 10/24/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Trial Preparation Conference set for 10/17/2016 at 02:00 PM in Courtroom A 801 before Judge William J. Martinez. There will be no trial day on Friday October 28th, accordingly, the trial will extend to November 1st. ORDERED by Judge William J. Martinez on 05/11/2016. (cthom, ) Modified on 5/11/2016 (cthom, ). (Entered: 05/11/2016) |
| 05/11/2016 | 58 | | Utility Setting/Resetting Deadlines/Hearings as to Heather Carr, Trammel Thomas, Mercedes Diaz: Text Only Entry Jury Trial set for 10/24/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Jury Trial set for 10/25/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Jury Trial set for 10/26/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Jury Trial set for 10/27/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Jury Trial set for 10/31/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Jury Trial set for 11/1/2016 08:30 AM in Courtroom A 801 before Judge William J. Martinez. (cthom, ) (Entered: 05/11/2016) |
| 08/30/2016 | 73 | | ORDER granting 71 Motion to Exclude as to Trammel Thomas (2); Denying as moot 72 Motion to Continue as to Trammel Thomas (2). **All days from November 4, 2016, to and including February 2, 2017, shall be excluded from the Speedy Trial Clock as to ALL Defendants**. The 6–day Jury Trial set to commence on October 24, 2016 and the Final Trial Preparation Conference set for October 17, 2016 are hereby **VACATED as to ALL Defendants**. ORDERED by Judge William J. Martinez on 08/30/2016. (cthom, ) Modified to add text on 8/30/2016 (cthom, ). (Entered: 08/30/2016) |
| 08/31/2016 | 74 | | ORDER Re–setting Trial Date and Related Deadlines as to Heather Carr, Trammel Thomas. Motions due by 1/2/2017. Responses due by 1/12/2017. 6 day Jury Trial set for 1/30/2017 08:30 AM in Courtroom A 801 before Judge William J. Martinez; the trial will conclude on Tuesday, February 7, 2017, with no trial being held on Friday, February 3, 2017. Trial Preparation Conference set for 1/23/2017 at 10:30 AM in Courtroom A 801 before Judge William J. Martinez. ORDERED by Judge William J. Martinez on 08/31/2016. (cthom, ) (Entered: 08/31/2016) |

| 10/05/2016 | 77 | | NOTICE OF ATTORNEY APPEARANCE Beth N. Gibson appearing for USA. Attorney Beth N. Gibson added to party USA(pty:pla) (Gibson, Beth) (Entered: 10/05/2016) |
|---|---|---|---|
| 10/05/2016 | 78 | | MOTION to Withdraw as Attorney by Daniel E. Burrows by USA as to Heather Carr, Trammel Thomas, Mercedes Diaz. (Attachments: # 1 Proposed Order (PDF Only))(Burrows, Daniel) (Entered: 10/05/2016) |
| 10/06/2016 | 79 | | ORDER as to **Heather Carr (1), Trammel Thomas (2), and Mercedes Diaz (3)** granting the Motion to Withdraw 78 : The Motion is GRANTED for good cause shown. Daniel Burrows is hereby granted leave to withdraw from this case. The Clerk shall terminate all further CM/ECF notifications to Mr. Burrows in this case. SO ORDERED by Judge William J. Martinez on 10/06/2016. Text Only Entry (wjmsec, ) (Entered: 10/06/2016) |
| 11/10/2016 | 83 | | NOTICE of Disposition by Heather Carr (Butterton, Mary) (Entered: 11/10/2016) |
| 11/10/2016 | 85 | | ORDER Setting Change of Plea Hearing as to **Heather Carr (1)**: Pursuant to the Notice of Disposition 83 filed by the Defendant Carr, a **Change of Plea Hearing is hereby set for December 5, 2016 at 1:45 p.m. in Courtroom A801. The dates set for the Final Trial Preparation Conference and Trial are hereby VACATED as to this Defendant ONLY.** Counsel for the parties shall e–mail to Chambers courtesy copies of the "Statement by Defendant In Advance of Change of Plea" and the "Plea Agreement and Statement of Facts" no later than **12:00 p.m. on November 28, 2016**. If these documents are not timely submitted, the hearing may be vacated. The signed original and one copy of these documents must also be given to the courtroom deputy at the time of the hearing, pursuant to D.C.COLO.LCrR 11.1E. It is FURTHER ORDERED that defense counsel who reviewed and advised Defendant regarding the plea agreement must attend this Change of Plea Hearing. Pursuant to WJM Revised Practice Standard IX.1.1.c the AUSA assigned to this matter must also be present at the hearing. If that AUSA cannot attend in person, s/he must be present by phone and a fully–briefed substitute AUSA must be physically present in the courtroom at the time of the hearing. SO ORDERED by Judge William J. Martinez on 11/10/2016. Text Only Entry (wjmsec, ) (Entered: 11/10/2016) |
| 11/28/2016 | 91 | | ORDER as to **Heather Carr (1)**: At the Change of Plea Hearing set for December 5, 2016, the parties should be prepared to discuss whether, pursuant to 18 U.S.C. § 3143, Defendant Carr should remain on pretrial release pending imposition of her sentence, or whether her bond should be revoked and she should be remanded at the conclusion of the Change of Plea Hearing. SO ORDERED by Judge William J. Martinez on 11/28/2016. Text Only Entry (wjmsec, ) (Entered: 11/28/2016) |
| 12/05/2016 | 93 | 49 | MINUTE ENTRY for proceedings held before Judge William J. Martinez: Change of Plea Hearing as to Defendant 1. Heather Carr held on 12/5/2016. Defendant pleads guilty to Count One of the Indictment and admits to the forfeiture allegation. Sentencing set for 4/28/2017 at 10:30 AM in Courtroom A801 before Judge William J. Martinez. Defendant's bond is continued.Court Reporter: Mary George. (dhans, ) (Entered: 12/05/2016) |
| 12/05/2016 | 94 | 52 | PLEA AGREEMENT as to Heather Carr (dhans, ) (Entered: 12/05/2016) |

| 12/05/2016 | 95 | 67 | STATEMENT IN ADVANCE OF PLEA OF GUILTY by Defendant Heather Carr (dhans, ) (Entered: 12/05/2016) |
|---|---|---|---|
| 01/03/2017 | 103 | | Unopposed MOTION to Continue *Sentencing* by Mercedes Diaz as to Heather Carr, Trammel Thomas, Mercedes Diaz. (Rathod, Siddhartha) (Entered: 01/03/2017) |
| 02/01/2017 | 113 | | NOTICE of Change of Address/Contact Information (Paluch, Martha) (Entered: 02/01/2017) |
| 02/01/2017 | 114 | | NOTICE of Change of Address/Contact Information (Burrows, Daniel) (Entered: 02/01/2017) |
| 02/28/2017 | 117 | | Unopposed MOTION to Continue *Sentencing Hearing* by Heather Carr. (Butterton, Mary) (Entered: 02/28/2017) |
| 03/03/2017 | 120 | | ORDER as to **Heather Carr (1)** granting the Defendant's Unopposed Motion to Continue Sentencing Hearing 117 . The Defendant's Motion is GRANTED for good cause shown. The Sentencing Hearing set for April 28, 2017 is hereby **VACATED and RESET to September 15, 2017 at 11:00 a.m.** in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards with regard to the deadlines for filing sentencing–related motions. SO ORDERED by Judge William J. Martinez on 3/3/2017. Text Only Entry (wjmsec, ) (Entered: 03/03/2017) |
| 07/20/2017 | 155 | 75 | Joint MOTION to Continue *Defendant's September 15, 2017 Sentencing Hearing* by USA as to Heather Carr. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 07/20/2017) |
| 07/20/2017 | 161 | | ORDER as to **Heather Carr (1)** granting the Parties' Joint Motion to Reschedule Defendant's September 15, 2017 Sentencing Hearing 155 . The Parties' Motion is GRANTED for good cause shown. The Sentencing Hearing set for September 15, 2017 is hereby **VACATED and RESET to January 4, 2018 at 2:00 p.m.** in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards with regard to the deadlines for filing sentencing–related motions. SO ORDERED by Judge William J. Martinez on 7/20/2017. Text Only Entry (wjmsec, ) (Entered: 07/20/2017) |
| 08/25/2017 | 166 | | NOTICE OF ATTORNEY APPEARANCE Bryan David Fields appearing for USA. Attorney Bryan David Fields added to party USA(pty:pla) (Fields, Bryan) (Entered: 08/25/2017) |
| 11/30/2017 | 222 | | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Heather Carr (aarag, ) (Entered: 11/30/2017) |
| 12/11/2017 | 236 | | ORDER as to **Heather Carr (1)**: Given the recent developments in this case affecting Defendant Carr, the Court hereby sets a Status Conference to discuss these developments for **December 14, 2017 at 10:00 a.m.** in Courtroom A801. Should she wish to, given her residence outside of Colorado, Defendant Carr may waive her appearance at the Status Conference. SO ORDERED by Judge William J. Martinez on 12/11/2017. Text Only Entry (wjmsec, ) (Entered: 12/11/2017) |
| 12/12/2017 | 237 | 79 | RESPONSE by USA as to Heather Carr re: 222 Restricted Presentence Report – Attorney Disclosure (Paluch, Martha) (Entered: 12/12/2017) |

| 12/12/2017 | 238 | 82 | MOTION to Dismiss Counts *with Prejudice* by USA as to Heather Carr. (Paluch, Martha) (Entered: 12/12/2017) |
| 12/12/2017 | 239 | 84 | MOTION for Decrease for Acceptance of Responsibility by USA as to Heather Carr. (Paluch, Martha) (Entered: 12/12/2017) |
| 12/13/2017 | 240 | | ORDER as to **Heather Carr (1)**: This matter is before the Court on the Status Conference set for December 14, 2017 at 10:00 a.m. Given the filing of the Government's Response to Presentence Report (ECF 22) 237 , Motion to Dismiss Counts with Prejudice 238 and Motion to Grant the Defendant an Additional One–Level Decrease Pursuant to U.S.S.G. § 3E1.1(b) 239 , the Court has concluded there remains no need for a Status Conference. As a result, the Status Conference set for December 14, 2017 at 10:00 a.m. is hereby **VACATED**. Defendant's Sentencing Hearing remains set for **January 4, 2018 at 2:00 p.m.** SO ORDERED by Judge William J. Martinez on 12/13/2017. Text Only Entry (wjmsec, ) (Entered: 12/13/2017) |
| 12/14/2017 | 243 | 86 | OBJECTION/RESPONSE to Presentence Report 222 by Heather Carr (Butterton, Mary) (Entered: 12/14/2017) |
| 12/15/2017 | 245 | | ORDER as to **Heather Carr (1)**: This matter is before the Court on Defendant's Objections and Responses to Presentence Investigation Report 243 . The Government is DIRECTED to file a Response to Defendant's Objections on or before **December 26, 2017**. No Reply will be permitted. SO ORDERED by Judge William J. Martinez on 12/15/2017. Text Only Entry (wjmsec, ) (Entered: 12/15/2017) |
| 12/15/2017 | 246 | 92 | OBJECTION/RESPONSE to Presentence Report 243 by USA as to Heather Carr (Paluch, Martha) (Entered: 12/15/2017) |
| 12/21/2017 | 247 | 95 | MOTION for Non–Guideline Sentence *and Sentencing Statement* by Heather Carr. (Butterton, Mary) (Entered: 12/21/2017) |
| 12/21/2017 | 248 | | ORDER as to **Heather Carr (1)**: This matter is before the Court on Defendant's Motion for Variant Sentence and Sentencing Statement 247 . The Government is DIRECTED to file a Response to Defendant's Motion on or before **12:00 noon on Thursday, December 28, 2017**. No Reply will be permitted. SO ORDERED by Judge William J. Martinez on 12/21/2017. Text Only Entry (wjmsec, ) (Entered: 12/21/2017) |
| 12/21/2017 | 249 | | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant's Motion for Variant Sentence and Sentencing Statement* by USA as to Heather Carr. (Fields, Bryan) (Entered: 12/21/2017) |
| 12/22/2017 | 250 | | RESTRICTED PRESENTENCE REPORT as to Heather Carr (Attachments: # 1 Exhibit A, # 2 Exhibit B)(aarag, ) (Entered: 12/22/2017) |
| 12/22/2017 | 251 | | RESTRICTED ADDENDUM to Presentence Report 250 as to Heather Carr (aarag, ) (Entered: 12/22/2017) |
| 12/22/2017 | 252 | | ORDER as to **Heather Carr (1)** granting 249 Government's Unopposed Motion for Extension of Time to Respond to Defendant's Motion for Variant Sentence and Sentencing Statement (ECF No. 247). The Government's Motion is GRANTED IN PART for good cause shown. The Government's deadline to file its Response to Defendant's Motion for Variant Sentence and Sentencing Statement is extended up to and including **January 2, 2018 at 10:00 a.m.** SO |

| | | | |
|---|---|---|---|
| | | | ORDERED by Judge William J. Martinez on 12/22/2017. Text Only Entry (wjmsec, ) (Entered: 12/22/2017) |
| 12/28/2017 | 254 | | RESTRICTED SECOND ADDENDUM to Presentence Report 250 as to Heather Carr (Attachments: # 1 Exhibit A)(aarag, ) (Entered: 12/28/2017) |
| 01/02/2018 | 264 | 101 | RESPONSE in Opposition by USA as to Heather Carr re 247 MOTION for Non–Guideline Sentence *and Sentencing Statement* (Paluch, Martha) (Entered: 01/02/2018) |
| 01/02/2018 | 265 | 112 | SUPPLEMENT to 264 Response in Opposition by USA as to Heather Carr (Paluch, Martha) (Entered: 01/02/2018) |
| 01/04/2018 | 272 | 114 | MINUTE ENTRY for proceedings held before Judge William J. Martinez: Sentencing held on 1/4/2018 as to Defendant 1. Heather Carr. Defendant sentenced as reflected on the record. ORDERED that the defendant, Heather Carr, surrender at the institution designated by the Bureau of Prisons on February 8th, 2018, at 12:00 noon. In the interim, the defendant's bond is continued and all conditions set forth in the Magistrate Judge's Order Setting Conditions Of Release shall continue to apply. Court Reporter: Mary George. (dhans, ) (Entered: 01/04/2018) |
| 01/09/2018 | 287 | | MOTION to Amend/Correct *Order of Restitution Pursuant to Fed. R. Crim. P. 35(a)* by USA as to Heather Carr. (Paluch, Martha) (Entered: 01/09/2018) |
| 01/10/2018 | 294 | | ORDER as to **Heather Carr (1)** granting the Government's Motion to Amend Order of Restitution 287 . The Government's Motion is GRANTED for good cause shown. The Probation Officer is DIRECTED to prepare a judgment of conviction for this Defendant which sets forth that she is ordered to pay restitution in the total amount of 562,487.85 jointly and severally with co–Defendants Mercedes Diaz, Marcelle Green and Trammel Thomas. SO ORDERED by Judge William J. Martinez on 1/10/2018. Text Only Entry (wjmsec, ) (Entered: 01/10/2018) |
| 01/10/2018 | 296 | 119 | JUDGMENT as to Defendant 1. Heather Carr. Counts 2 through 29 are dismissed.Count 1 of the Indictment: Incarceration: 57 months; Supervised Release: three years; Special Assessment: $100; Restitution (as ORDERED by Judge William J. Martinez on 1/10/2018 at Doc. No. 294): $562,487.85, jointly and severally with co–Defendants Mercedes Diaz, Marcelle Green and Trammel Thomas, by Judge William J. Martinez on 1/10/2018. (dhans, ) (Entered: 01/10/2018) |
| 01/10/2018 | 297 | | STATEMENT OF REASONS as to Heather Carr. (dhans, ) (Entered: 01/10/2018) |
| 01/10/2018 | 298 | 127 | NOTICE OF APPEAL as to 296 Judgment, by Heather Carr. (Butterton, Mary) (Entered: 01/10/2018) |
| 01/10/2018 | 299 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 298 Notice of Appeal as to Heather Carr to the U.S. Court of Appeals. ( FPD, Fee not paid,) (Attachments: # 1 Docket Sheet and Preliminary Record)(angar, ) (Entered: 01/11/2018) |
| 01/12/2018 | 300 | | MOTION for Leave to Restrict by USA as to Heather Carr. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 01/12/2018) |

| 01/12/2018 | 301 | | RESTRICTED DOCUMENT – Level 2: as to Heather Carr. (Paluch, Martha) (Entered: 01/12/2018) |
|---|---|---|---|
| 01/12/2018 | 302 | | RESTRICTED DOCUMENT – Level 2: as to Heather Carr. (Paluch, Martha) (Entered: 01/12/2018) |
| 01/12/2018 | 303 | 129 | MOTION to Amend/Correct 296 Judgment, by USA as to Heather Carr. (Paluch, Martha) (Entered: 01/12/2018) |
| 01/16/2018 | 305 | | ORDER as to **Heather Carr (1)** granting the Government's Motion to Restrict Document 300 . The Government's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 301 and 302 shall remain RESTRICTED at RESTRICTION LEVEL 2 (viewable only by Selected Parties and the Court). SO ORDERED by Judge William J. Martinez on 1/16/2018. Text Only Entry (wjmsec, ) (Entered: 01/16/2018) |
| 01/16/2018 | 306 | | **DUPLICTAE** ORDER as to **Heather Carr (1)** granting the Government's Motion to Restrict Document 300 . The Government's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 301 and 302 shall remain RESTRICTED at RESTRICTION LEVEL 2 (viewable only by Selected Parties and the Court). SO ORDERED by Judge William J. Martinez on 1/16/2018. Text Only Entry (wjmsec, ) Modified on 1/17/2018 to show as duplicate entry please see 305 Order (angar, ). (Entered: 01/16/2018) |
| 01/16/2018 | 307 | | RESTRICTED DOCUMENT – Level 2: as to Heather Carr. (angar, ) (Entered: 01/16/2018) |
| 01/16/2018 | 308 | | ORDER to Surrender as to Heather Carr; Defendant to surrender to Federal Correctional institution Phoenix – Satellite Camp in Phoenix, Arizona on Februrary 8, 2018 at 12:00 noon and will travel at their own expense, by Judge William J. Martinez on 01/16/2018. (angar, ) (Entered: 01/16/2018) |
| 01/17/2018 | 309 | | ORDER as to **Heather Carr (1)** granting the Government's Motion to Amend Judgment of Conviction Pursuant to Fed. R. Crim. P. 35(a) 303 . The Government's Motion is GRANTED for good cause shown. The Probation Office is DIRECTED to prepare, on or before **January 18, 2018**, an Amended Judgment reflecting the dismissal of Counts 2–29 of the Indictment. The Court will then forthwith enter the Amended Judgment, no later than required by Fed. R. Crim. P. 35(a). SO ORDERED by Judge William J. Martinez on 1/17/2018. Text Only Entry (wjmsec, ) (Entered: 01/17/2018) |
| 01/17/2018 | 310 | | USCA Case Number as to Heather Carr 18–1021 for 298 Notice of Appeal filed by Heather Carr. (angar, ) (Entered: 01/18/2018) |
| 01/18/2018 | 313 | 131 | AMENDED JUDGMENT as to Defendant 1. Heather Carr, by Judge William J. Martinez on 1/18/2018. (dhans, ) (Entered: 01/19/2018) |
| 01/18/2018 | 314 | | AMENDED STATEMENT OF REASONS as to Heather Carr. (dhans, ) (Entered: 01/19/2018) |
| 01/23/2018 | 315 | | DESIGNATION OF RECORD ON APPEAL re 298 Notice of Appeal by Heather Carr. (Attachments: # 1 Docket Sheet)(Sanderford, Oliver) (Entered: 01/23/2018) |
| 01/23/2018 | 316 | | TRANSCRIPT ORDER FORM re 298 Notice of Appeal by Heather Carr. (Attachments: # 1 Attachment)(Sanderford, Oliver) (Entered: 01/23/2018) |

| 01/24/2018 | 317 | | ORDER of USCA as to Heather Carr re 298 Notice of Appeal. (USCA Case No. 18–1021) (angar, ) (Entered: 01/24/2018) |
|---|---|---|---|
| 01/30/2018 | 319 | | REPORTER TRANSCRIPT ORDER FORM filed by Mary George re 298 Notice of Appeal. Transcript due by 2/28/2018. (nrich) (Entered: 01/30/2018) |
| 02/14/2018 | 321 | | TRANSCRIPT of Sentencing Hearing as to Heather Carr held on January 4, 2018 before Judge Martinez. Pages: 1–65. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 02/14/2018) |
| 02/14/2018 | 322 | | TRANSCRIPT of Change of Plea as to Heather Carr held on December 5, 2016 before Judge Martinez. Pages: 1–25. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 02/14/2018) |
| 03/13/2018 | 345 | | Passport Receipt as to Heather Carr. Surrender of passport re Bond Conditions; Passport Number 532811942 issued by United States of America (angar, ) (Entered: 03/14/2018) |
| 03/20/2018 | 347 | | TRANSMITTAL OF RECORD ON APPEAL as to Heather Carr to the U.S. Court of Appeals for the Tenth Circuit as to 298 Notice of Appeal filed by Heather Carr. Volume I – Pleadings;Volume II – Transcripts; Volume III – Restricted Documents; (USCA Case No. 18–1021). Text Only Entry (angar, ) (Entered: 03/20/2018) |
| 04/05/2018 | 364 | 139 | USCA Order and Judgment as to Heather Carr re 298 Notice of Appeal : (USCA Case No. 18–1021) (This document is not the Mandate) (angar, ) (Entered: 04/06/2018) |
| 04/09/2018 | 378 | | Receipt for 345 as to Heather Carr (angar, ) (Entered: 04/13/2018) |
| 04/13/2018 | 380 | | Unopposed MOTION for Leave to Restrict by Heather Carr. (Butterton, Mary) (Entered: 04/13/2018) |
| 04/13/2018 | 381 | | RESTRICTED DOCUMENT – Level 2: as to Heather Carr. (Butterton, Mary) (Entered: 04/13/2018) |
| 04/13/2018 | 382 | | |

| | | | RESTRICTED DOCUMENT – Level 2: as to Heather Carr. (Butterton, Mary) (Entered: 04/13/2018) |
|---|---|---|---|
| 04/16/2018 | 384 | | ORDER as to **Heather Carr (1)** granting the Defendant's Unopposed Motion to Restrict Access 380 . Defendant's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 381 and 382 shall remain RESTRICTED at RESTRICTION LEVEL 2 (viewable only by Selected Parties and the Court). SO ORDERED by Judge William J. Martinez on 4/16/2018. Text Only Entry (wjmsec, ) (Entered: 04/16/2018) |
| 04/27/2018 | 398 | | MANDATE of USCA as to Heather Carr re 298 Notice of Appeal. (USCA Case No. 18−1021) (angar, ) (Entered: 04/30/2018) |
| 06/29/2018 | 423 | 143 | MOTION to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, by Heather Carr. (angar, ) Civil case 1:18−cv−01681 opened. (Entered: 07/03/2018) |
| 06/29/2018 | 424 | | Letter re: MOTION to Appoint Counsel, by Heather Carr. (angar, ) (Entered: 07/03/2018) |
| 07/05/2018 | 425 | | ORDER as to Heather Carr. The United States Attorney on or before August 6,2018, shall file an answer or other pleading directed to the motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, by Judge William J. Martinez on 7/5/2018. (angar, ) (Entered: 07/05/2018) |
| 07/09/2018 | 426 | | NOTICE OF ATTORNEY APPEARANCE Paul Farley appearing for USA. Attorney Paul Farley added to party USA(pty:pla) (Farley, Paul) (Entered: 07/09/2018) |
| 07/11/2018 | 427 | | ORDER as to Heather Carr (1). The Motion for Appointment of Counsel (ECF No. 424 ) is DENIED at this time, by Judge William J. Martinez on 7/11/2018. (angar, ) (Entered: 07/11/2018) |
| 07/23/2018 | 432 | 161 | RESPONSE to Motion by USA as to Heather Carr re 423 MOTION to Vacate under 28 U.S.C. 2255 (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Attachment C)(Farley, Paul) (Entered: 07/23/2018) |
| 10/22/2018 | 451 | 273 | REPLY TO RESPONSE to Motion by Heather Carr re 423 MOTION to Vacate under 28 U.S.C. 2255 (sphil, ) (Entered: 10/22/2018) |
| 10/22/2018 | 452 | 282 | MOTION to Amend/Correct with additional claim 423 MOTION to Vacate under 28 U.S.C. 2255 filed by Heather Carr. (sphil, ) (Entered: 10/22/2018) |
| 10/22/2018 | 469 | | Letter re: MOTION to Appoint Counsel, by Heather Carr. (angar, ) (Entered: 05/09/2019) |
| 10/22/2018 | 470 | | Letter re: MOTION for Order, by Heather Carr. (angar, ) (Entered: 05/09/2019) |
| 10/24/2018 | 453 | | ORDER as to **Heather Carr (1)**: This matter is before the Court on Ms. Carr's Motion to Amend 2255 Motion with Additional Claim 452 . The Government is DIRECTED to file a Response to Ms. Carr's Motion on or before **November 7, 2018**. No Reply will be permitted. SO ORDERED by Judge William J. Martinez on 10/24/2018. Text Only Entry (wjmsec, ) (Entered: 10/24/2018) |
| 11/07/2018 | 454 | 290 | |

|  |  |  | RESPONSE to Motion by USA as to Heather Carr re 452 MOTION to Amend/Correct 423 MOTION to Vacate under 28 U.S.C. 2255 filed by Heather Carr (Farley, Paul) (Entered: 11/07/2018) |
|---|---|---|---|
| 11/07/2018 | 455 | 297 | AMENDED RESPONSE by USA as to Heather Carr Amendment to 454 Response to Motion filed by USA (Farley, Paul) Modified on 11/8/2018 to correct title. (sphil, ). (Entered: 11/07/2018) |
| 04/01/2019 | 461 | 304 | Letter by Heather Carr (angar, ) Modified on 4/9/2019 to correct event (angar, ). (Entered: 04/03/2019) |
| 04/09/2019 | 462 |  | ORDER as to **Heather Carr (1)**: This matter is before the Court on the 461 Letter received from the Defendant dated April 1, 2019, which the Court construes as a Motion to Reconsider Sentence. As so construed, the Government is DIRECTED to file a Response to the Motion on or before **April 30, 2019**. No reply will be permitted. SO ORDERED by Judge William J. Martinez on 4/9/2019. Text Only Entry (wjmsec, ) (Entered: 04/09/2019) |
| 04/15/2019 | 463 | 324 | RESPONSE to Motion by USA as to Heather Carr re 461 MOTION for Order (Farley, Paul) (Entered: 04/15/2019) |
| 05/15/2019 | 471 | 331 | ORDER Denying 461 Motion to Reconsider Sentence as to Heather Carr (1). ORDERED by Judge William J. Martinez on 5/15/2019. (angar, ) (Entered: 05/15/2019) |
| 05/28/2019 | 472 |  | ORDER Resolving Pending Motions and Denying 423 Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 as to Heather Carr (1). Petitioner's Renewed Motion for Appointment of Counsel (ECF No. 469 ) is DENIED; Petitioner's Motion for Leave to File a Reply Out of Time (ECF No. 470 ) is DENIED; Petitioner's Motion to Amend 2255 Motion with Additional Claim (ECF No. 452 ) is DENIED. ORDERED by Judge William J. Martinez on 5/28/2019. (angar, )<br>Civil Case 1:18−cv−01681−WJM closed. (Entered: 05/28/2019) |
| 09/12/2019 | 508 | 335 | Defendant's Motion requesting Relief under Compassionate Release Pursuant to 18 U.S.C. 3582(c)(1)(A), by Heather Carr. (angar, ) Modified on 9/17/2019 to correct event (angar, ). (Entered: 09/13/2019) |
| 10/09/2019 | 512 |  | ORDER as to (1) Heather Carr: This matter is before the Court on Defendant Carr's 508 Motion Requesting Compassionate Release. The Government is DIRECTED to file a response to the Motion on or before **October 23, 2019**. No reply will be permitted without prior leave or order of Court. by Judge William J. Martinez on 10/9/2019. Text Only Entry (wjmlc2) (Entered: 10/09/2019) |
| 10/10/2019 | 513 | 394 | RESPONSE to Motion by USA as to Heather Carr re 508 MOTION to Reduce Sentence pursuant to First Step Act of 2018 (Farley, Paul) (Entered: 10/10/2019) |
| 10/21/2019 | 516 |  | NOTICE OF ATTORNEY APPEARANCE: Meredith Bartlett Esser appearing for Heather CarrAttorney Meredith Bartlett Esser added to party Heather Carr(pty:dft) (Esser, Meredith) (Entered: 10/21/2019) |
| 10/21/2019 | 517 |  | MOTION to Withdraw as Attorney by Meredith B. Esser by Heather Carr. (Esser, Meredith) (Entered: 10/21/2019) |

| 10/22/2019 | 518 | | ORDER as to **Heather Carr (1)**: This matter is before the Court on Defendant's *pro se* Motion Requesting Relief under Compassionate Release Pursuant to 18 U.S.C. 3582(c)(1)(A) 508 . The Office of the Federal Public Defender ("FPD") is DIRECTED to file a Reply to the Government's Response 513 on or before **November 5, 2019**. The Court DEFERS ruling on the FPD's Motion to Withdraw as Attorney 517 until such time as it has had the opportunity to consider the relevant filings. SO ORDERED by Judge William J. Martinez on 10/22/2019. Text Only Entry (wjmsec, ) (Entered: 10/22/2019) |
| --- | --- | --- | --- |
| 10/31/2019 | 519 | | Amended MOTION to Withdraw as Attorney by Meredith B. Esser by Heather Carr. (Esser, Meredith) (Entered: 10/31/2019) |
| 11/04/2019 | 520 | | ORDER as to Heather Carr (1). This matter is before the Court on 519 Amended Motion to Withdraw as Attorney submitted by Assistant Federal Public Defender Meredith Esser. The Motion is GRANTED for good cause shown. AFPD Meredith Esser is hereby granted leave to withdraw from this case. The Clerk shall terminate all further CM/ECF notifications to Ms. Esser in this case. It is FUTHER ORDERED that new counsel from the CJA Panel be appointed for Defendant Carr as soon as practicable. It is FURTHER ORDERED that new CJA counsel shall enter his or her appearance within five days of appointment, and thereafter respond to 508 consistent with the Courts prior order 518 within 21 days of entering his or her appearance. Finally, given the disposition of the Amended Motion, 517 Motion to Withdraw is DENIED AS MOOT. SO ORDERED by Judge William J. Martinez on 11/4/2019. Text Only Entry (wjmlc2) (Entered: 11/04/2019) |
| 11/05/2019 | 521 | | NOTICE OF ATTORNEY APPEARANCE: Jason Dale Schall appearing for Heather CarrAttorney Jason Dale Schall added to party Heather Carr(pty:dft) (Schall, Jason) (Entered: 11/05/2019) |
| 11/25/2019 | 524 | 416 | REPLY TO RESPONSE to Motion by Heather Carr re 508 MOTION to Reduce Sentence pursuant to First Step Act of 2018 (Schall, Jason) (Entered: 11/25/2019) |
| 03/20/2020 | 526 | 429 | SUPPLEMENT *in Support of Defendant's Motion for Compassionate Release* by Heather Carr (Attachments: # 1 Exhibit Exhibits A,B, and C)(Schall, Jason) (Entered: 03/20/2020) |
| 03/20/2020 | 527 | 438 | MOTION to Expedite *Ruling* by Heather Carr. (Schall, Jason) (Entered: 03/20/2020) |
| 04/10/2020 | 530 | 441 | ORDER Denying 508 Motion for Compassionate Release Heather Carr (1). Defendant Heather Carr's Motion to Expedite Ruling (ECF No. 527 ) is DENIED AS MOOT. ORDERED by Judge William J. Martinez on 4/10/2020. (angar, ) (Entered: 04/10/2020) |
| 04/16/2020 | 531 | 450 | NOTICE OF APPEAL as to 530 Order On Motion to Reduce Sentence Pursuant to First Step Act of 2018, Order on Motion to Expedite by Heather Carr. (Schall, Jason) (Entered: 04/16/2020) |
| 04/17/2020 | 532 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 531 Notice of Appeal as to Heather Carr to the U.S. Court of Appeals. ( CJA,) (Attachments: # 1 Preliminary Record and Docket Sheet)(angar, ) (Entered: 04/17/2020) |

| 04/17/2020 | 533 | | USCA Case Number as to Heather Carr 20–1152 for 531 Notice of Appeal filed by Heather Carr. (angar, ) (Entered: 04/20/2020) |
| 04/27/2020 | 534 | | ORDER of USCA as to Heather Carr re 531 Notice of Appeal. (USCA Case No. 20–1152) (angar, ) (Entered: 04/29/2020) |
| 05/21/2020 | 535 | | Statement regarding Transcripts as to Heather Carr re 531 Notice of Appeal. (USCA Case No. 20–1152) (angar, ) (Entered: 05/22/2020) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.    16-cr-54-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  HEATHER CARR,
2.  TRAMMEL THOMAS,
3.  MERCEDES DIAZ,

      Defendants.

---

## INDICTMENT

Count 1:  18 U.S.C. § 286
Conspiracy to Defraud the Government with Respect to Claims

Counts 2-13:  18 U.S.C. § 1343
Wire Fraud

Counts 14-26:  18 U.S.C. § 1341
Mail Fraud

Counts 27-29:  18 U.S.C. § 1028A(a)(1)
Aggravated Identity Theft

FORFEITURE ALLEGATION
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

---

The Grand Jury charges:

## Count 1
## Conspiracy to Defraud the Government with Respect to Claims

1.     At all times relevant to this Indictment:

     a.     The United States Department of Education (the Department) was an

agency of the United States government. The Department's responsibilities

included overseeing the administration of federal student assistance programs, including financial aid programs designed to assist qualified students with paying for college. These financial aid programs included both grant and loan programs.

b.      In order to qualify as recipients/borrowers for these financial aid programs, students needed to, among other things, certify that the funds borrowed would be used for authorized educational purposes.

c.      Students generally began the process of applying for federal financial aid by completing and submitting the Free Application for Federal Student Aid (FAFSA). The FAFSA required identifying information such as a student's name, date of birth, address, Social Security number, telephone number, and e-mail address. After processing, the information from the FAFSA was sent to the schools designated by the applicant.

d.      Once awarded financial aid, and after a student enrolled at a particular school, financial aid funds were disbursed from the Department to the school in the student's name. Those funds were applied to tuition, fees, and other educational expenses the student owed to the school. Any funds in excess of the amount owed were then "refunded" to the student.

e.      The Department and community colleges within the State and District of Colorado worked with a company called Higher One to deliver "refunds" of federal financial aid to students. Refund amounts were placed into accounts in the students' names maintained by Higher One. Students accessed these refunds through the accounts and debit cards issued and mailed to them by Higher One.

f.      The Colorado Community College System (CCCS) includes several different schools, including but not limited to Pikes Peak Community College, Red Rocks Community College, and Pueblo Community College. CCCS operates a website at www.ccconline.org that is sometimes referred to as "Colorado Community Colleges Online." This website allows a prospective student to create

an online account by entering information such as his or her name, address, e-mail address, telephone number, and Social Security number. He or she can then use that information to apply to the various schools in the CCCS. The schools within the CCCS are "open enrollment" colleges, which means that any person who meets certain minimum criteria (e.g., having a high school diploma or GED) may enroll and attend classes.

g.     After a student enrolls at a particular CCCS school, the student can then use Colorado Community Colleges Online to take various online distance learning courses offered by that particular school.

h.     A company called LexisNexis maintains an electronic database called "Accurint," which contains personally identifiable information for individuals throughout the country, including Social Security numbers. The Accurint database is a subscription service that is accessed via a username and password assigned to a particular user.

i.     Several state departments of corrections maintain publicly accessible inmate locator websites. Through these websites, one can search for individuals held in the custody of the particular department whose website is being searched. The search can be conducted using the inmate's name, or a portion thereof. At the time of the events described in this indictment, some inmate locator websites also displayed the inmate's birthday.

2.     Beginning in or about August 2010, and continuing until in or about October 2012, in the State and District of Colorado and elsewhere, Defendants Heather Carr, Trammel Thomas, and Mercedes Diaz (collectively, "the conspirators"), knowingly agreed, combined, and conspired with each other to defraud an agency of the United States by obtaining and aiding to obtain the payment and allowance of false and fraudulent claims by submitting false claims for federal student aid to the U.S. Department of Education.

3.    The conspiracy was accomplished, in part, through the following manner and means:

a.    Defendant Carr obtained names and dates of birth for inmates by searching inmate locator websites for common last names such as "Jones" and "Smith." Once she had the names and dates of birth of inmates, she searched the Accurint database to obtain further personally identifiable information for these people, such as their Social Security numbers. Defendant Carr had access to this database through her employment in Arizona, and used her assigned LexisNexis username, "heathercarr1," in performing these searches.

b.    After Defendant Carr obtained Social Security numbers and other personally identifiable information from the Accurint and inmate locater databases, Defendants Carr and Thomas used this information to apply for federal student assistance funds in the names of the people whose identifying information Defendant Carr had gathered. These applications for federal student assistance funds contained materially false representations about the identity of the person submitting the application and the purported applicant's intent to attend educational institutions. These false representations supported improper determinations by the Department that the purported applicants were eligible to receive federal student assistance funds.

c.    Defendants Carr and Thomas also applied for admission to schools within the CCCS and elsewhere, using the identities of the same persons in whose name they had applied for federal student assistance funds.

d.    Defendant Diaz agreed to receive mail in the names of purported students at her place of residence and at private mailbox addresses she rented in the name of another person, and then provided that mail to Defendants Carr and Thomas.  Defendants Carr and Thomas also convinced other individuals, both known and unknown to the Grand Jury, to receive mail in the names of purported

students and then cause that mail to be delivered to Defendants Carr and Thomas. Both the applications for federal student assistance funds and the applications for enrollment in the community colleges submitted by the conspirators contained false information regarding the purported applicants' mailing addresses: instead of listing the purported applicant's actual address, the applications typically gave one of three types of addresses: 1) private mailboxes opened by Diaz; 2) addresses of those individuals who had agreed to receive mail for the conspirators; or 3) the actual address of one of the conspirators.

e.     Higher One accounts were created in the names of the purported applicants after financial aid funds were disbursed to the community colleges in the purported applicants' names. Funds were deposited into these accounts and Higher One debit cards intended for the purported applicants were then mailed to the false addresses submitted by Defendants Carr and Thomas. The conspirators then, through the debit cards and associated Higher One accounts, used the funds for their own purposes.

f.     Often, schools would not release financial aid refunds without some confirmation that the student was attending classes. In such cases, Defendant Carr would sign into online courses as the purported student. Defendant Carr had obtained the student identification number assigned to a particular purported student by applying and enrolling at a college in that student's name.  Defendant Carr then used that student identification number to log into the Colorado Community Colleges Online learning management system and register the student's attendance in a course or courses in which that student was enrolled. She did so with the intent of thereby obtaining financial aid funds meant for that purported student.

4.     During the course of the conspiracy, the conspirators were involved in submitting over 150 false FASFAs to the Department, resulting in the disbursement of

over $500,000 in federal financial aid funds.  Of this amount, the conspirators received over $200,000 in refunds deposited in Higher One accounts and on debit cards.

## Counts 2-13
## Wire Fraud

5.      Paragraphs 1 and 3 (including the subparagraphs) are incorporated herein as if fully set forth.

6.      Beginning in or about August 2010, and continuing until in or about October 2012, the defendants devised and intended to devise a scheme and artifice to defraud the U.S. Department of Education as set forth in Paragraph 3 above ("the scheme") by obtaining money by means of false and fraudulent pretenses, representations, and promises in connection with applications for federal financial aid.

7.      On or about the date listed below for each count, in the State and District of Colorado, having devised and intending to devise the scheme, and for the purpose of executing the scheme, Defendants Carr and Thomas transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, to wit, online wire transmissions from Arizona to Colorado, which wire transmissions had the effect of registering attendance for a purported student in an online course hosted by Colorado Community Colleges Online so that a Higher One debit card would be issued in the purported student's name listed below:

| Count | Date | Purported Student |
|-------|------|-------------------|
| 2 | Oct. 17, 2011 | M.E. |
| 3 | Oct. 17, 2011 | E.J. |
| 4 | Oct. 18, 2011 | L.E. |
| 5 | Oct. 19, 2011 | L.E. |
| 6 | Oct. 19, 2011 | M.E. |

| Count | Date | Purported Student |
|-------|------|-------------------|
| 7 | Oct. 20, 2011 | E.J. |
| 8 | Oct. 22, 2011 | E.J. |
| 9 | Oct. 23, 2011 | E.J. |
| 10 | Oct. 29, 2011 | L.E. |
| 11 | Oct. 30, 2011 | L.E. |
| 12 | June 7, 2012 | D.M. |
| 13 | Aug. 28, 2012 | M.A. |

All in violation of 18 U.S.C. § 1343.

## Counts 14-26
## Mail Fraud

8.     Paragraphs 1 and 3 (including the subparagraphs) are incorporated herein as if fully set forth.

9.     Beginning in or about August 2010, and continuing until in or about October 2012, the defendants devised and intended to devise a scheme and artifice to defraud the U.S. Department of Education as set forth in Paragraph 3 above ("the scheme") by obtaining money by means of false and fraudulent pretenses, representations, and promises in connection with applications for federal financial aid.

10.     Between on or about the dates listed below for each count, in the State and District of Colorado, for the purpose of executing the scheme, the defendants named in the counts listed below knowingly caused to be delivered by United States mail to the name and address listed below, according to the direction thereon, an envelope containing a Higher One debit card:

| Defendant | Count | Dates | Card Number (Last Four Digits) | Purported Student | Address Where Sent |
|---|---|---|---|---|---|
| Carr Thomas | 14 | Feb. 8–22, 2011 | 5158 | I.O. | 3820 Radiant Dr.; Apt. 239; Colorado Springs, CO |
| Carr Thomas | 15 | July 25–Oct. 3, 2011 | 0878 | A.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 16 | Aug. 4–Oct. 3, 2011 | 2567 | L.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 17 | Aug. 4–Oct. 3, 2011 | 6964 | P.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 18 | Aug. 4–Oct. 15, 2011 | 3804 | S.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 19 | Aug. 4–Oct. 15, 2011 | 6112 | K.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas Diaz | 20 | Aug. 11–Oct. 3, 2011 | 2903 | V.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas Diaz | 21 | Aug. 11–Oct. 3, 2011 | 2749 | E.L.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 22 | Aug. 11–Oct. 3, 2011 | 8668 | R.P. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 23 | Aug. 29–Nov. 9, 2011 | 0165 | E.J. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 24 | Jan. 5–Mar. 19, 2012 | 8572 | A.R. | 1418 Rushmore Dr.; Colorado Springs, CO |
| Carr Thomas | 25 | June 26–July 7, 2012 | 7111 | D.M. | 1112 Meadow Oaks Dr.; Colorado Springs, CO |

Page | 8

| Defendant | Count | Dates | Card Number (Last Four Digits) | Purported Student | Address Where Sent |
|-----------|-------|-------|-------------------------------|-------------------|---------------------|
| Carr Thomas | 26 | July 18–26, 2012 | 6173 | M.A. | 1112 Meadow Oaks Dr.; Colorado Springs, CO |

All in violation of 18 U.S.C. § 1341.

**Counts 27-29**
**Aggravated Identity Theft**

11.    Paragraphs 1 and 3 (including the subparagraphs) are incorporated herein as if fully set forth.

12.    On or about the dates set forth in the table below, in the State and District of Colorado, Defendant Carr did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person. Specifically, she used the identified person's name and date of birth to apply for admission to Pikes Peak Community College, during and in relation to the wire fraud scheme described above in Paragraphs 5-7.

| Count | Date | Victim |
|-------|------|--------|
| 27 | Aug. 14, 2011 | E.J. |
| 28 | Aug. 15, 2011 | M.E. |
| 29 | Aug. 15, 2011 | L.E. |

All in violation of 18 U.S.C. § 1028A(a)(1).

## FORFEITURE ALLEGATION

13. The allegations contained in Counts 2 through 13 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

14. Upon conviction of the violations alleged in Counts 2 through 13 of this Indictment involving wire fraud in violation of 18 U.S.C. § 1343, Defendants HEATHER CARR and TRAMMEL THOMAS shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all of their right, title and interest in all property constituting and derived from any proceeds they obtained directly and indirectly as a result of such offense, including, but not limited to:

A money judgment in the amount of proceeds obtained by those crimes.

15.  If any of the property described in paragraph 14 above, as a result of any act or omission of Defendants HEATHER CARR and TRAMMEL THOMAS:

a)    cannot be located upon the exercise of due diligence;

b)    has been transferred or sold to, or deposited with, a third

party;

c)    has been placed beyond the jurisdiction of the Court;

d)    has been substantially diminished in value; or

e)    has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek

Page | 10

forfeiture of any other property of Defendants HEATHER CARR and TRAMMEL THOMAS up to the value of the forfeitable property.

16.  The allegations contained in Counts 14 through 26 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

17. Upon conviction of the violations alleged in Counts 14 through 26 of this Indictment involving mail fraud in violation of 18 U.S.C. § 1341, Defendants HEATHER CARR and TRAMMEL THOMAS shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all of the their right, title and interest in all property constituting and derived from any proceeds they obtained directly and indirectly as a result of such offense, including, but not limited to:

A money judgment in the amount of proceeds obtained by those crimes.

18.  If any of the property described in paragraph 17 above, as a result of any act or omission of Defendants HEATHER CARR and TRAMMEL THOMAS:

    a)    cannot be located upon the exercise of due diligence;

    b)    has been transferred or sold to, or deposited with, a third party;

    c)    has been placed beyond the jurisdiction of the Court;

    d)    has been substantially diminished in value; or

    e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of Defendants HEATHER CARR and TRAMMEL THOMAS up to the value of the forfeitable property.

19.    The allegations contained in Counts 20 and 21 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

20. Upon conviction of the violations alleged in Counts 20 and 21 of this Indictment involving mail fraud in violation of 18 U.S.C. § 1341, Defendant MERCEDES DIAZ shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all of the her right, title and interest in all property constituting and derived from any proceeds she obtained directly and indirectly as a result of such offense, including, but not limited to:

A money judgment in the amount of proceeds obtained by those crimes.

21.  If any of the property described in paragraph 20 above, as a result of any act or omission of Defendant MERCEDES DIAZ:

a)    cannot be located upon the exercise of due diligence;

b)    has been transferred or sold to, or deposited with, a third party;

c)    has been placed beyond the jurisdiction of the Court;

d)    has been substantially diminished in value; or

e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of Defendant MERCEDES DIAZ up to the value of the forfeitable property.

A TRUE BILL

s/Ink signature on file in Clerk's Office
*Foreperson*

**John F. Walsh**
United States Attorney

s/Martha A. Paluch
**Martha A. Paluch**
Assistant U.S. Attorney
1225 17th St., Suite 700
Denver, CO 80202
Telephone: (303) 454-0100
FAX: (303) 454-0409
E-mail: martha.paluch@usdoj.gov

s/Daniel E. Burrows
**Daniel E. Burrows**
Special Assistant U.S. Attorney
1225 17th St., Suite 700
Denver, CO 80202
Telephone: (303) 454-0100
FAX: (303) 454-0409
Email: daniel.burrows@usdoj.gov

DEFENDANT: HEATHER CARR

DOB: 1977

ADDRESS:

1385 Fordham Drive, No. 105
Virginia Beach, VA   23464

COMPLAINT FILED?          _____ YES    X____NO

OFFENSE:

| | | |
|---|---|---|
| **Count 1:** | 18 U.S.C. § 286 – Conspiracy to Defraud the Government with Respect to Claims |
| **Counts 2-13** | 18 U.S.C. § 1343 – Wire Fraud |
| **Counts 14-26** | 18 U.S.C. § 1341 – Mail Fraud |
| **Counts 27-29** | 18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft |

LOCATION OF OFFENSES:   El Paso and Denver Counties, Colorado

PENALTIES:

**Count 1:**  NMT 10 years imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years supervised release; and $100 Special Assessment

**Counts 2-13**  NMT 20 years of imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years of supervised release; restitution; $100 special assessment fee for each count.

**Counts 14-26**  NMT 20 years of imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years of supervised release; restitution; $100 special assessment fee for each count.

**Counts 27-29**  NMT 20 years of imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years of supervised release; restitution; $100 special assessment fee for each count, **and consecutive two-year term of imprisonment.**

AGENT:               Department of Education, Office of Inspector General Special Agent Sandra Ennis

AUTHORIZED BY:  Martha A. Paluch, Assistant U.S. Attorney

ESTIMATED TIME OF TRIAL:
_____ five days or less
\_\_\_\_\_X\_\_ over five days
_____ other

THE GOVERNMENT
_____X\_\_\_ will seek detention in this case
_____ will not seek detention in this case

The statutory presumption of detention **is not** applicable to this defendant.

OCDETF CASE:   _____   Yes        \_\_\_X\_\_\_  No

<u>DEFENDANT:</u> TRAMMEL THOMAS

<u>DOB:</u> 1979

<u>ADDRESS:</u>

6818 South 40th Drive
Phoenix, AZ   85041

<u>COMPLAINT FILED?</u>        _____ YES   <u>X   </u> NO

<u>OFFENSES:</u>

| | | |
|---|---|---|
| **Count 1:** | 18 U.S.C. § 286 – Conspiracy to Defraud the Government with Respect to Claims |
| **Counts 2-13** | 18 U.S.C. § 1343 – Wire Fraud |
| **Counts 14-26** | 18 U.S.C. § 1341 – Mail Fraud |

<u>LOCATION OF OFFENSES:</u>      El Paso and Denver Counties, Colorado

<u>PENALTIES:</u>

| | |
|---|---|
| **Count 1:** | NMT 10 years imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years supervised release; and $100 Special Assessment |
| **Counts 2-13** | NMT 20 years of imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years of supervised release; restitution; $100 special assessment fee for each count. |
| **Counts 14-26** | NMT 20 years of imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years of supervised release; restitution; $100 special assessment fee for each count. |

<u>AGENT:</u>      Department of Education, Office of Inspector General Special Agent Sandra Ennis

<u>AUTHORIZED BY:</u> Martha A. Paluch, Assistant U.S. Attorney

ESTIMATED TIME OF TRIAL:
_____ five days or less
_____X___ over five days
_____ other

THE GOVERNMENT
_____X_____ will seek detention in this case
_____ will not seek detention in this case

The statutory presumption of detention **is not** applicable to this defendant.

OCDETF CASE:   _____ Yes          __X___ No

DEFENDANT: MERCEDES DIAZ

DOB: 1989

ADDRESS:

Arizona State Prison Complex-Perryville
Inmate No. 280050
2105 North Citrus Road
Goodyear, AZ   85395

COMPLAINT FILED?          _____ YES    X    NO

OFFENSES:

| | | |
|---|---|---|
| **Count 1:** | 18 U.S.C. § 286 – Conspiracy to Defraud the Government with Respect to Claims | |
| **Counts 20-21** | 18 U.S.C. § 1341 – Mail Fraud | |

LOCATION OF OFFENSES:     El Paso and Denver Counties, Colorado

PENALTIES:

**Count 1:**          NMT 10 years imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years supervised release; and $100 Special Assessment

**Counts 20-21**     NMT 20 years of imprisonment; a fine of NMT twice the financial gain, or $250,000, whichever is greater; NMT 3 years of supervised release; restitution; $100 special assessment fee for each count.

AGENT:          Department of Education, Office of Inspector General Special Agent Sandra Ennis

AUTHORIZED BY: Martha A. Paluch, Assistant U.S. Attorney

ESTIMATED TIME OF TRIAL:
_____ five days or less
____X__ over five days
_____ other

<u>THE GOVERNMENT</u>
_____X____ will seek detention in this case
_____ will not seek detention in this case

The statutory presumption of detention **is not** applicable to this defendant.

<u>OCDETF CASE:</u>   _____   Yes      ___X____ No

AO 199A (Rev. 12/11) Order Setting Conditions of Release          Page 1 of 3

**FILED**

MAR - 8 2016

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )    Case No.   2:16mj117 |
| Heather Carr | ) |
| *Defendant* | ) |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

(3)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

       The defendant must appear at:   **United States District Court, Byron Rogers Courthouse, 1929 Stout Street, Denver, CO before Magistrate Judge Pafoya in Courtroom C201** on   **March 22, 2016 at 2:00 p.m.**
                                          *Date and Time*

IT IS FURTHER ORDERED that the defendant be released on condition that:

(✓)   (5)    The defendant promises to appear in court as required and surrender to serve sentence imposed.

(✓)   (6)    The defendant executes a ($   5,000.00      ) Unsecured Bond binding the defendant to pay to the United States for failure to appear as required or surrender to serve any sentence imposed.

AO 199B (Rev. 12/11)  Additional Conditions of Release                                                                Page 2 of 3

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ) (6)   The defendant is placed in the custody of:
          Person or organization _____
          Address *(only if above is an organization)* _____
          City and state _____ Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____    _____
                    *Custodian*                              *Date*

( ) (7)   The defendant must:
( X )   (a)   submit to supervision by and report for supervision to the   United States Probation Office _____,
              telephone number 757-222-7400, no later than *(date of release)* _____.
( X )   (b)   continue or actively seek employment.
( X )   (c)   surrender any passport to:  Probation by 5:00 p.m. on 3/10/16 _____
( )   (d)   not obtain a passport or other international travel document.
( X )(e)   abide by the following restrictions on personal association, residence, or travel: restricted to the state of Virginia and Denver,
              Colorado  unless prior approval received from Probation _____
( X )   (f)   avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
              including: Co-defendants.  Not to discuss aspects of the case with co-def children's father. _____
( )   (g)   maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
              necessary.
( )   (h)  not possess a firearm, destructive device, or other weapon.
( )   (i)   not use alcohol ( ) at all ( ) excessively.
( )   (j)   not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
              medical practitioner.
              medical practitioner.
( )   (k)   submit to testing for a prohibited substance if required by the pretrial services office or supervising officer.  Testing may be used with
              random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of
              prohibited substance screening or testing.  The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy
              of prohibited substance screening or testing.
( )   (l)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
              supervising officer.
( )   (m)   participate in one of the following location restriction programs and comply with its requirements as directed.
              ( )   (i)   Curfew.  You are restricted to your residence every day ( ) from _____ to _____, or ( ) as
                          directed by the pretrial services office or supervising officer; or
              ( )   (ii)   Home Detention.  You are restricted to your residence at all times except for employment; education; religious services;
                          medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities
                          approved in advance by the pretrial services office or supervising officer; or
              ( )   (iii)   Home Incarceration.  You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court
                          appearances or other activities specifically approved by the court.
( )   (n)   submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program
              requirements and instructions provided.
              ( )   You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or
              supervising officer.
( )   (o)   report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including
              arrests, questioning, or traffic stops.
( X )   (p)   Def  directed to provide any requested financial information as directed by
              P.O. _____
( X )   (q)   Defendant shall notify current or future employers of charged offense. _____
( X )   (r)   Defendant shall not engage in employment in which def has access to credit information or credit accounts of others. _____
( X )   (s)   Defendant to remove firearm from residence by 5:00 pm on 3/10/16. _____
( )   (t)   _____
( )   (u)   _____
( )   (v)   _____
( )   (w)   _____
( )   (x)   _____
( )   (y)   _____
( )   (z)   _____

Case No. Case:16-05490054-WDW-Documents36 11 2Filed06/23/26/16SPage3of410 pg 38 of
451
Case 2:16-mj-00117-RJK   Document 5   Filed 03/08/16   Page 3 of 3 PageID# 25

AO 199C (Rev. 09/08)  Advice of Penalties                                          Page 3 of 3

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Defendant's Signature

_____
City and State

## Directions to the United States Marshal

( ) The defendant is ORDERED released after processing.

( ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:  March 7, 2016

_____
Robert J. Krask
**United States Magistrate Judge**
*Judicial Officer's Signature*

UNITED STATES MAGISTRATE JUDGE
*Title*

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

CR. Form No. 17 - Adapted (7/99)
Appearance Bond (Unsecured)

```
                    ┌─────────────────────┐
                    │       FILED         │
                    │  ┌───────────────┐  │
                    │  │  MAR - 7 2016 │  │
                    │  └───────────────┘  │
                    │ CLERK, U.S. DISTRICT COURT │
                    │      NORFOLK, VA    │
                    └─────────────────────┘
```

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

UNITED STATES OF AMERICA

     v.                          Criminal No.   2:16mj117

HEATHER CARR

I, the undersigned defendant, acknowledge that I and my personal representatives are bound to pay the United States of America the sum of **FIVE THOUSAND DOLLARS ($5,000.00).**

The conditions of this bond are that the defendant is to appear in the United States District Court for the District of Colorado at Byron Rogers Courthouse, 1929 Stout Street, Denver, Colorado on **March 22, 2016 at 2:00 p.m.** and at such other times and places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the United States District Court for the Eastern District of Virginia or any other United States District Court to which the defendant may be removed or the cause transferred.

That the defendant is to abide any judgment entered in such matter by surrendering herself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe.

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above-entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount stated above, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned is duly exonerated.

By entering into this bond, the obligor submits to the jurisdiction of this court and appoints the clerk of the court as her agent upon whom papers affecting her liability may be served. The defendant agrees to notify the court promptly in the event of a change of address.

This bond is signed on the _____ day of _____, 2016, pursuant to order of this court entered March 7, 2016.

_____
Heather Carr, Defendant

Signed and acknowledged before me this 7th day of _____March_____, 2016.

_____
Deputy Clerk

AO 466A (Rev. 12/09) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   2:16mj117 |
| | ) | |
| Heather Carr | ) | Charging District's Case No.   16-cr54-WJM |
| _Defendant_ | ) | |

MAR - 7 2016

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the _(name of other court)_   District of Colorado

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☐     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:   _3/7/2016_          X _____
                                _Defendant's signature_

                                _____
                                _Signature of defendant's attorney_

                                _____
                                _Printed name of defendant's attorney_

**INITIAL APPEARANCE MINUTES:**

Time set:   **2:30 p.m.**
Start Time:  **2:44**
End Time:   **2:58**

Split Time  ( )

Date:    **3/7/2016**
Presiding Judge:  Robert J. Krask
Courtroom Deputy:  L. Woodcock
Reporter:  FTR
U.S. Attorney:  Melissa O'Boyle, AUSA
Defense Counsel:
( ) Retained ( ) Court appointed ( ) AFPD
Interpreter:

Case Number: 2:16mj117
USA v. Heather Carr

( x ) Deft. Present ( x ) custody ( ) not in custody
( x ) Initial Appearance ( ) Indictment ( ) Probation Violation Petition ( ) Supervised Release Petition
    ( ) Criminal Information ( x ) Rule 5 arrest ( ) Rule 32 arrest ( ) Criminal Complaint
( x ) Deft. advised of rights, charges and right to counsel
( ) Counsel desired ( ) Defendant to retain: _____
( ) Defendant's motion to substitute counsel
( ) Order to substitute counsel executed and filed in open court
( ) Financial Affidavit filed in open Court
( ) Court ( ) Directed ( ) Denied appointment of counsel
( ) Court directed defendant to reimburse govt. at rate of $_____ per month. Payments to begin and
    continue each month thereafter until paid in full.
( ) Defendant waived ( ) Removal ( ) Preliminary hearing (In this District only)
( ) Defendant executed Waiver of Removal Hearing ( X) Waiver of Identity Hearing (In this District only)
( ) Waiver of Detention Hearing (In this District only)
( ) Commitment to Another District entered and filed in open court
( ) ( ) Preliminary ( ) Removal Hearing set for _____ at _____ before
    _____ U.S. Magistrate Judge in _____.
( ) Preliminary Hearing _____ ( ) Held ( ) Waived. ( ) Defendant stipulated to probable cause
( ) Court finds probable cause ( ) Defendant held for Grand Jury ( ) Defendant remanded to custody of
    U.S. Marshal for removal to charging district
( ) Government motion for Detention
( ) Government motion to withdraw motion for detention and set bond ( ) Granted    ( ) Denied
( ) Detention Hearing scheduled for _____ at _____ before _____
( ) Detention Hearing ( ) Held ( ) Waived in _____
( ) Temporary Detention Order entered and filed ( ) Detention Ordered Pending Trial
( X) Bond set at $ 5000 U/S
( X) Special Conditions of Release: (See Page 2)
( ) Deft. remanded to custody of U. S. Marshal
( ) Warrant returned executed and filed in open court
( ) Defendant is directed to appear on 3/22/16 at 2pm for
    ( ) Arraignment ( ) SRVH ( ) PVH ( ) Bench Mag. Judge Pafoya Courtroom C301
    Trial
    ( ) Norfolk ( ) Newport News Byron Rogers Courthouse
( ) _____ 1929 Stout Street
( ) _____ Denver, Co.
    80294-0101

## STANDARD CONDITIONS OF RELEASE

1)  Deft's. travel is restricted to the State of Virginia.
2)  Deft is directed to refrain from excessive use of alcohol.
3)  Deft. is directed to refrain from any use or unlawful possession of a narcotic drug and other controlled substances defined in 21 U.S.C. 802 unless prescribed by a licensed medical practitioner.
4)  Deft. is directed to surrender any passport to the Probation Office.
5)  Deft. is prohibited from obtaining any passport
6)  Defendant shall report as soon as possible, to the probation officer or supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.
7)  Defendant is prohibited from possessing a firearm, destructive device, or other dangerous weapon.
8)  Defendant shall submit to method of testing required by the probation officer or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and or any form of prohibited substance screening or testing.
9)  Defendant shall participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the probation officer or supervising officer.
(X10)  Report to the U.S. Probation Office.

### SPECIAL CONDITIONS OF RELEASE

(X)  Travel is restricted to: _EDVA – Denver, Co. w/ advanced notice to Probation_
(✓) with travel between the two for purposes of court appearances and meetings with counsel by the most direct route.

( )  Deft. is directed to maintain residence at :_____

( )  _____ is directed to serve as third-party custodian.

(X)  Deft. is directed to seek and maintain verifiable employment as directed by the Probation Office.

( )  Deft. is directed to undergo substance abuse testing/treatment at the expense of the defendant as directed by the U.S. Probation Office.

( )  Deft. is directed to submit to electronic monitoring ( ) with ( ) without GPS ( ) with ( ) without time outs as directed by the U.S. Probation Office, at the expense of the defendant.

(X)  Deft. is directed to avoid all contact with alleged victims/potential witnesses or co-conspirators: _____
_Not to discuss any aspect of case_ w/ Children's father (X) Co-defendants charged in the Indictment

( )  Deft. is prohibited from committing any offense in violation of federal, state or local law

( )  Deft. is directed to cooperate with their Court-appointed counsel in the preparation of their defense.

(X)  Deft. is directed to provide any requested financial information as directed by the Probation Office.

( )  Deft. is prohibited from opening any new lines of credit or bank accounts without permission of the U.S. Probation Office.

(X)  Defendant shall notify current or future employers of charged offense.

(X)  Defendant shall not engage in employment in which the defendant has access to credit information or credit accounts of others.

( )  Defendant shall not have any contact with children under the age of 18 years old unless in the presence of an informed adult.

( )  Defendant shall not have possess or access any computer or internet, bulletin board, or chat room.

( )  Defendant shall comply with a specified curfew from _____ to _____ or as specified by the U.S. Probation Office.

( )  The defendant shall submit to mental health evaluation and treatment as directed by the U.S. Probation Office.

(X)  _Remove firearm from residence by 5 pm 3-10-16_
(X)  _Passport to be submitted to Prob by 5 pm 3-10-16_
( )  _____

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Colorado

FILED

MAR – 7 2016

CLERK, U.S. DISTRICT COURT
LYN... K. VA

| United States of America | ) |
| v. | ) |
| HEATHER CARR | ) |  Case No.   16-cr-54-WJM |
| | ) |
| | ) |  2:16 mj 117 |
| | ) |
| *Defendant* | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    HEATHER CARR                                                                ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Defraud the Government with Respect to Claims- 18 U.S.C. § 286
Wire Fraud- 18 U.S.C. § 1343
Mail Fraud- 18 U.S.C. § 1341
Aggravated Identity Theft- 18 U.S.C. § 1028A(a)(1)

Date:   02/08/2016

City and state:   Denver, Colorado

s/C. Thompson Deputy Clerk
*Issuing officer's signature*

Jeffrey P. Colwell Clerk of Court
*Printed name and title*

| Return | |
|---|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . | |
| Date: _____ | |
| | *Arresting officer's signature* |
| | *Printed name and title* |

# U.S. District Court
## Eastern District of Virginia - (Norfolk)
## CRIMINAL DOCKET FOR CASE #: 2:16-mj-00117-RJK-1

Case title: USA v. Carr                          Date Filed: 03/07/2016
Other court case number: 16-cr-54-WJM USDC
                         District of Colorado

Assigned to: Magistrate Judge
Robert J. Krask

**Defendant (1)**

**Heather Carr**                    represented by  **Heather Carr**
                                                    PRO SE

**Pending Counts**                               **Disposition**
None

**Highest Offense Level
(Opening)**
None

**Terminated Counts**                            **Disposition**
None

**Highest Offense Level
(Terminated)**
None

**Complaints**                                   **Disposition**
None

**Plaintiff**
**USA**

Case No.Case 1:16-cr-00054-WJM Document 586-1 Filed 06/23/20 USDC Colorado pg 46 of
451
CM/ECF - vaed                                                                   Page 2 of 2

| Date Filed | # | Docket Text |
|---|---|---|
| 03/07/2016 | 1 | Arrest of Heather Carr in EDVA Norfolk Division on warrant out of District of Colorado. (cdod, ) (Entered: 03/07/2016) |
| 03/07/2016 | | Set Hearings as to Heather Carr: Initial Appearance - Rule 5(c)(3)set for 3/7/2016 at 02:30 PM in Norfolk Mag Courtroom 2 before Magistrate Judge Robert J. Krask. (cdod, ) (Entered: 03/07/2016) |
| 03/07/2016 | 2 | Minute Entry for Initial Appearance in Rule 5(c)(3) Proceedings as to Heather Carr held on 3/7/2016 before Magistrate Judge Robert J. Krask. Melissa O'Boyle, AUSA, appeared on behalf of govt. Defendant present, in custody and advised of rights and charges. Defendant waived identity hearing and production of the warrant. Defendant released on $5000 U/S bond with special conditions including to report to USDC Denver, CO on March 22, 2016 at 2:00 pm. Defendant remanded until bond prepared. (Court Reporter FTR.) (lwoo) (Entered: 03/07/2016) |
| 03/07/2016 | 3 | WAIVER of Rule 5 Hearings by Heather Carr filed in open court. (lwoo) (Entered: 03/07/2016) |
| 03/07/2016 | 4 | Unsecured Bond Entered as to Heather Carr in amount of $ $5000. (lwoo) (Entered: 03/07/2016) |
| 03/08/2016 | 5 | ORDER Setting Conditions of Release as to Heather Carr (1) $5,000 unsecured as to Heather Carr. Signed by Magistrate Judge Robert J. Krask on 3/7/16 and filed 3/8/16. (lwoo) (Entered: 03/09/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/16/2016 13:01:24 | | | |
| PACER Login: | home14_son | Client Code: | nmarble |
| Description: | Docket Report | Search Criteria: | 2:16-mj-00117-RJK |
| Billable Pages: | 1 | Cost: | 0.10 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 16-cr-054-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**1.     HEATHER CARR**,
**2.     TRAMMEL THOMAS,**
**3.     MERCEDES DIAZ,**

     Defendants.

---

### ORDER REGARDING DISCLOSURE OF GRAND JURY MATERIALS

---

     Upon consideration of the Government's Motion to Disclose Copies of Grand Jury Materials under Specified Conditions to the Attorneys for the Defendants Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i), it is

     ORDERED that a copy of the transcript of testimony given before the Grand Jury and related exhibits be disclosed to the attorneys for the Defendants for preparation for trial.

     IT IS FURTHER ORDERED THAT:

     1.  Defense counsel make only such copies as are necessary to prepare a defense of this criminal case;

     2.  Defense counsel keep a written record concerning how many copies were made, to whom those copies were delivered, and the date of delivery, and that defense counsel deliver a copy of this Order allowing disclosure with the materials;

3.  Defense counsel provide the Defendants with reasonable access to the Grand Jury materials, but that defense counsel not allow the Defendants to retain copies of any grand jury materials;

4.  No person, other than defense counsel, make any copy of the Grand Jury materials for any purpose; and

5.  At the conclusion of the case in this Court, by entry of the Court's judgment, defense counsel collect all such copies and return them to the Government within ten days.

Dated this 31st day of March, 2016.

BY THE COURT:

_____

William J. Martínez
United States District Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

_____

Courtroom Deputy:   Deborah Hansen          Date:  December 5, 2016
Court Reporter:       Mary George             Time:  twenty-nine minutes

_____

Criminal Action No.  16-cr-00054-WJM          _Counsel:_

UNITED STATES OF AMERICA,                Martha Paluch

     Plaintiff,

v.

1.  HEATHER CARR,                          Mary Butterton

     Defendant.

_____

**COURTROOM MINUTES**
_____

CHANGE OF PLEA HEARING

01:47 p.m.     Court in Session

Appearances

Defendant is present and on bond.

Oath administered to the defendant.

Defendant advised of maximum penalties.

Ms. Butterton states for the record the extent and scope of the limited waiver of the defendant's appeal and collateral challenge rights contained in the Plea Agreement.

Colloquy between the Court and the defendant

The defendant confirms that she understands and agrees to the limitations contained in the Plea Agreement and her right to appeal the sentence the Court will impose.

Defendant's right to trial to jury and other constitutional rights explained.

Count One of the Indictment read to the defendant.

Defendant pleads guilty to Count One of the Indictment and admits to the forfeiture allegation.

**ORDERED:** **Court Exhibit 1 - Plea Agreement;  Court Exhibit 2 - Statement by Defendant in Advance of Plea of Guilty are RECEIVED into evidence.**

**ORDERED:** **Defendant's plea of guilty is ACCEPTED.**

**ORDERED:** **The U.S. Probation Office shall prepare a Presentence Investigation Report and Sentencing Statement. In accordance with this Court's Revised Practice Standards, all motions for a sentencing departure, for a statutory variant sentence outside the advisory guideline range, for a change in offense level, to dismiss counts or the indictment, or for acceptance of responsibility, MUST be filed no later than 14 days prior to the date of the sentencing hearing. Proposed orders on such motions must be provided to the Chambers e-mail address at the same time. Responses to such motions must be filed at least 7 days prior to the date of the sentencing hearing. Sentencing-related filings not in compliance with these deadlines may result in a continuance of the sentencing hearing.**

**ORDERED:** **Sentencing is set for Friday, April 28, 2017 at 10:30 a.m.**

**ORDERED:** **All hearings and settings in this case other than the Sentencing date are hereby VACATED.  Any pending motions are hereby DENIED as moot.**

The Court addresses the application of § 3143 with regard to immediate remand.

Statement by Ms. Paluch

Statement by Ms. Butterton

The Court enters findings on the record.

**The Court finds by clear and convincing evidence that the defendant's conditions of release reasonably assure that he will not flee or pose a danger to the safety of the community, and that conditions within the meaning of 18 U.S.C. § 3143 have been met.  Therefore,**

**IT IS ORDERED that the defendant is permitted to remain free on bond subject to the conditions of release as set forth in the Order Setting Conditions of Release.**

02:16 p.m.     Court in Recess
               Hearing Concluded

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.      HEATHER CARR,

        Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Robert C. Troyer, Acting United States Attorney for the District of Colorado, and Martha Paluch and Beth Gibson, Assistant United States Attorneys, the defendant, Heather Carr, personally and by counsel, Mary Butterton, Assistant Federal Defender, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I.    PLEA AGREEMENT

### A. Defendant's Obligations

The defendant agrees to plead guilty to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 286, Conspiracy to Defraud the Government with Respect to Claims.  The defendant agrees to the appellate waiver, set forth fully below.  The defendant agrees to pay restitution payable to the United States Department of Education and to a number of community colleges, the names and amounts of which will be specified by the government prior to sentencing, which amount will not exceed



Court Exhibit 7

$562,487.85.  The defendant also admits the forfeiture allegation as set forth in the Indictment and agrees that the forfeiture described therein is not excessive.  The defendant agrees to provide complete and truthful information pursuant to the terms set forth more fully below.  Finally, the defendant agrees to not seek a sentence of less than 24 months—the mandatory minimum that would have applied to the aggravated identity theft counts in the Indictment.

### B.  The Government's Obligations

In exchange for the defendant's plea of guilty and waiver of certain appellate rights, the United States Attorney's Office for the District of Colorado ("the government") agrees to move at sentencing for dismissal of the remaining counts in the Indictment against this defendant only.  The government also agrees to not file any additional charges in the District of Colorado against the defendant based on the information presently known to the government as outlined in the statement of facts below.   In addition, provided the defendant does nothing inconsistent with accepting responsibility between the date of the plea hearing and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility.  The government is not bound to seek any particular sentence.  The government's agreement with respect to cooperation is set forth below.

### C.  The Defendant's Waiver of Appellate Rights

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the

-2-

defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 23; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

### D.    The Defendant's Cooperation Agreement

The defendant agrees to provide truthful, complete and accurate information, and agrees to cooperate fully with the government. Deliberate falsehoods or misinformation provided during her cooperation with the government would be grounds for rescission of this plea agreement as well as possible further prosecution for perjury or false statements. This cooperation will include, but is not limited to, the following:

-3-

a.      The defendant agrees to be fully debriefed, and to attend all meetings at which her presence is requested, concerning her participation in, and knowledge of, all criminal activities.

b.      The defendant agrees to furnish to the government all documents and other material that may be relevant to the investigation into fraud upon the federal government and that are in the defendant's possession or control.

c.      The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government. This extends to providing testimony about all information the defendant knows, not merely about the facts outlined in the statement of facts below.

d.      The defendant agrees she will at all times give complete, truthful and accurate information and testimony and will fully and truthfully disclose all information with respect to the activities of herself and others concerning all matters about which the government inquires.

e.      The defendant consents to postponements of her sentencing, as requested by the government and as approved by the Court. Should the defendant be required to provide testimony at a time subsequent to her sentencing in this case and should the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to re-charge her on any and all counts which were dismissed as part of this Plea Agreement or which the government agreed not to pursue based on this Plea Agreement. The defendant specifically waives any statute of limitations defense in

the event she violates the terms of this Plea Agreement so the government could pursue the Aggravated Identity theft and all other counts dismissed.

It is understood that the government's determination of whether the defendant has cooperated fully and provided substantial assistance, and the government's assessment of the value, truthfulness, completeness and accuracy of the cooperation, are within the government's sole discretion. Moreover, the defendant shall not be entitled to withdraw her plea if the government determines that she has not fully cooperated.

The defendant's full cooperation, including truthful testimony - if required, has not yet been completed. However, in light of defendant's substantial assistance to date, the United States Attorney anticipates that, pursuant to U.S.S.G. § 5K1.1, it will file a timely motion for downward departure at the time of sentencing. The Court has the sole discretion to grant such a motion. The nature and extent of the defendant's cooperation, as well as the final requested departure, will be set forth in the government's § 5K1.1 motion. The parties understand and agree that the determination of whether or not the defendant has fully cooperated in compliance with the terms of this plea agreement is entirely within the discretion of the government. The United States agrees to consider the totality of the circumstances, including but not limited to, the following factors, in determining whether, in the sole discretion of the United States Attorney, the defendant has provided substantial assistance which would merit a motion by the United States for a downward departure from the applicable Guideline:

-5-

a.      The United States' evaluation of the significance and usefulness of the defendant's assistance;

b.      The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

c.      The nature and extent of the defendant's assistance;

d.      Any harm or risk of harm to the defendant or the defendant's family resulting from the defendant's assistance; and

e.      The timeliness of the Defendant's assistance.

The parties recognize that any sentence requested by the government will be a recommendation to the Court and that the defendant's ultimate sentence will rest solely within the discretion of the sentencing Court.

The defendant also acknowledges that she will not be able to withdraw her guilty plea in the event that the Court elects not to grant any downward departure pursuant to the request made by the government or rejects the amount of the departure requested by the government.

The defendant may not contest the government's ultimate determination as to whether a § 5K1.1 motion is appropriate in this case.  The government has not promised a reduction or the amount of any reduction.  Again, the defendant understands she will not receive any reduction if she refuses to provide complete and true information to the government and to testify truthfully in any proceeding.

## II.      ELEMENTS OF THE OFFENSE

In order to be convicted of a violation of 18 U.S.C. § 286, Conspiracy to Defraud

the Government with Respect to Claims, the government would have to prove the

following elements beyond a reasonable doubt:

First, the defendant agreed with at least one other person to obtain or aid in

obtaining the payment or allowance of any false, fictitious, or fraudulent claim;

Second, the defendant knew the essential objective of the conspiracy;

Third, the defendant knowingly and voluntarily participated; and

Fourth, there was interdependence among the members of the conspiracy; that is,

the members, in some way or manner, intended to act together for their shared mutual

benefit within the scope of the conspiracy charged.

*Tenth Circuit Pattern Jury Instructions (Criminal Cases)*, § 2.19 (2011 ed.) (modified for § 286 and to remove overt act requirement); *United States v. Dedman*, 527 F.3d 577, 594 n.7 (6th Cir. 2008) (holding that § 286 has no overt act requirement); *United States v. Lanier*, 920 F.2d 887, 892 (11th Cir. 1991) (same).

## I.     STATUTORY PENALTIES

The maximum statutory penalty for a conviction of 18 U.S.C. § 286, is as follows:

Not more than 10 years of imprisonment; a fine of not more than $250,000.00, or both;

not more than 3 years of supervised release; and a $100.00 special assessment fee.  If

probation or supervised release is imposed, a violation of any condition of probation or

supervised release may result in a separate prison sentence and additional supervision.

## II.     COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not

limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

### III.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in August 2010.  The parties agree and stipulate to the following facts.  Beginning in approximately August 2010, and continuing until approximately October 2012, in the State and District of Colorado and elsewhere, the defendant and her co-defendants, Mercedes Diaz and Trammel Thomas, knowingly agreed and conspired with each other to defraud the Department of Education (the Department) by submitting false claims for federal student aid to the Department and in fact did receive payment on certain of these false claims from the Department and shared in the proceeds.  The Department is an agency of the United States government responsible for overseeing the

-8-

administration of federal student assistance programs, including financial aid programs designed to assist qualified students with paying for college.

In short, the conspirators stole the names, dates of birth, and social security numbers of more than 150 inmates, used that information to apply for federal financial aid and for college admission in the name of the inmates, and profited from the federal funds intended for the named applicants.  The scheme affected the credit reports of the inmates and the spouses of those inmates.  Only one of the inmates knew of or participated in the fraud committed by the defendant and her conspirators.

The defendant, using access she had to databases through her employment and with the assistance of her co-conspirators, obtained names, birth dates, and social security numbers of inmates and used this information to apply for federal student assistance funds in the names of the inmates (purported applicants or students).  The applications, known as the Free Application for Federal Student Aid (FASFA), contained materially false representations about the identity of the person submitting the application and the purported applicant's intent to attend educational institutions.  These false representations supported improper determinations by the Department that the purported applicants were eligible to receive federal student assistance funds when they were not.  The defendant and her conspirators used the funds disbursed by the Department for their own financial benefit.

The defendant and her conspirators recruited people to receive mail in the names of purported students at their homes and to rent commercial mailbox addresses so the conspirators could receive mail in the names of purported students at those addresses.

Many of the mailing addresses used were in Colorado, particularly in Colorado Springs. Others collected the mail and provided it to the defendant and her co-conspirators. The mail included correspondence about the college application and financial aid process. Most significantly, the mail included debit cards loaded with financial aid for the purported student. The defendant and her conspirators routinely submitted applications for admission to Pikes Peak Community College, along with other community colleges in Colorado and some in Arizona.

On August 30, 2012, after stopping co-defendant Thomas for crossing the line delineating the lanes of traffic, Tempe police officers saw in plain view a bag containing more than 50 debit cards intended for the purported students. All but one of the debit cards was in the name of an inmate whose identity had been stolen and used to apply for and obtain federal financial aid. In addition to the debit cards he had in a bag, co-defendant Trammel also had a debit card of "M.A." in his wallet. Officers also seized a computer.

Approximately three months after co-defendant Thomas was found with those debit cards, federal agents, along with local police, executed a search warrant at the defendant's residence in Chandler, Arizona. The defendant resided there with her co-defendant, Thomas. Both were home when agents knocked to announce their presence. More than ten minutes passed between the agents' announcement and their entry into the home. During the search, agents found community college enrollment documents for several inmates and a fax transmission sheet used to send documents to Pikes Peak Community College in furtherance of the conspiracy. Agents also found torn pieces of paper in the toilet. When agents pieced together the scraps from the toilet,

-10-

they determined someone had torn a handwritten note with words such as "FAFSA" and the name of one of the inmate victims. Agents also found the co-defendant Thomas's cell phone, which appeared to have been deliberately broken. Agents could not obtain much information from the broken phone, although they did find a text message from co-defendant Thomas related to the scheme. This led agents to conclude a search of the phone would have yielded additional evidence of the crime if the phone had not been destroyed.

Agents also seized and searched electronic devices pursuant to lawfully issued warrants. Analysis of the devices, including the computer seized from co-defendant Thomas in the car in August, showed evidence of searches for the names of numerous inmates who had been identified as victims of the fraud scheme and visits to websites for state departments of corrections.

During the course of the conspiracy, the defendant and her co-defendants were involved in submitting more than 150 false FASFAs to the Department seeking approximately $1.3 million in federal financial aid funds. The Department disbursed $562,487.85 as a result of the defendant's and her co-defendants' false claims. Of this amount, the defendant and her co-defendants received $418,672.05 in refunds deposited in the accounts of purported students and on debit cards. The defendant and her co-defendants shared in these proceeds.

## IV.     <u>SENTENCING COMPUTATION AND 3553 ADVISEMENT</u>

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.     The base offense level is 6 pursuant to § 2B1.1(a)(2).

B.     A 14-level increase applies pursuant to § 2B1.1(b)(1)(H) because the loss was more than $550,000 but less than $1,500,000.

C.     A 2-level increase applies based on the use of a means of identification (the personal identifying information and social security numbers) to obtain another means of identification (the student ID numbers and debit cards). *See* § 2B1.1(b)(11)(C)(i)-(ii).

D.     A 4-level increase applies because the fraud scheme involved a large number of inmates, who are vulnerable victims. *See* § 3A1.1(b)(1) and (2) and *United States v. Pierre*, 825 F.3d 1183 (11th Cir. 2016).

E.     The parties agree no role in the offense adjustment applies. *See* § 3B1.1.

F.     The adjusted offense level is therefore 26.

G.     Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of the plea hearing and the date of sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility. The resulting total offense level would be 23.

H.     The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court.

-12-

The information known to the parties shows that the defendant has no prior criminal history.  The defendant's criminal history category is tentatively estimated to be Category I.

I.  Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

J.  The guideline range resulting from the government's estimated total offense level of 23, and the tentative Criminal History Category I, is 46-57 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI).

K.  Pursuant to guideline § 5E1.2, assuming the parties' estimated offense level of 23 is accurate, the fine range for this offense would be between $20,000 and $200,000, plus applicable interest and penalties.

L.  Pursuant to § 5D1.2(a)(2), if the court imposes a term of supervised release, that term shall be at least one but not more than three years.

M.  The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

N.  The defendant agrees to pay restitution to the United States Department of Education and to a number of community colleges, the names and amounts of

which will be specified by the government prior to sentencing, but which amount will not exceed $562,487.85.

O.    The defendant agrees that an order of forfeiture shall issue in the form of a money judgment in an amount not to exceed $562,487.85.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## V.    ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

-14-

Date: 12/5/16 _____

Heather Carr
Defendant

Date: 12/5/16 _____

Mary Butterton
Attorney for Defendant

Date: 12/5/16 _____

Martha A. Paluch
Assistant U.S. Attorney

Date: _____

Beth Gibson
Assistant U.S. Attorney

-15-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  HEATHER CARR,

      Defendant.

---

### STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY

---

I acknowledge and certify that I have been advised of and understand the following facts and rights, that all representations contained in this document are true and correct, and that my attorney has assisted me as I have reviewed and completed this document.

1.     The nature of the charge(s) against me has/have been explained to me by my attorney.  I have had an opportunity to discuss with my attorney both the nature of the charge(s) and the elements which the government is required to prove.

2.     I know that when the Court sentences me, the Court will consider many factors. These factors are listed in 18 U.S.C. § 3553 and include (a) the nature and circumstances of the offense and my personal history and characteristics, (b) the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public, and provide me with needed training, care or correctional treatment in the most effective manner, (c) the kinds of sentences available to the court, (d) the advisory sentencing guidelines



established by the U.S. Sentencing Commission, (e) the pertinent policy statements of the U.S. Sentencing Commission, (f) the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct, and (g) the need to provide restitution. No single factor is controlling or determinative.  I recognize that it is possible that the Court could, after considering these factors, impose any sentence in my case, including one which is as severe as the maximum term of imprisonment, the maximum fine, full restitution (if applicable), the maximum term of supervised release, and a special assessment, all as set out in paragraph 3 below.

       3.      I know that the following penalties may be imposed as a result of my guilty plea(s):

**Count One of the Indictment, charging a violation of 18 U.S.C. § 286, Conspiracy to Defraud the Government with Respect to Claims.**

    a.     Imprisonment for a term of not more than 10 years;

    b.     A term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583;

    c.     A fine of not more than $250,000.00, pursuant to the statute that I admit I violated and/or the alternative fine schedule set out at 18 U.S.C. § 3571;

    d.     Restitution to the victim(s) of my crime(s) of not more than $N/A, pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664;

    e.     A special assessment of $100.00, pursuant to 18 U.S.C. § 3013;

       4.      I know that if I am convicted of more than one count, the sentences imposed may be either concurrent (served at the same time) or consecutive (served separately or back-to-back) unless the statutory penalty for an offense of conviction expressly requires that a sentence be imposed to run consecutively.

5.      I know that in addition to any punishment that the Court may impose, there are collateral consequences to pleading guilty to a crime.  These consequences are neither imposed nor controlled by the Court.  For example, pleading guilty may result in a loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.  And, if I am not a citizen of the United States, these consequences may include deportation from the United States or indefinite confinement if there is no country to which I may be deported, denial of the right to enter the United States in the future, and denial of citizenship.

6.      I know that if I am given a term of supervised release as a part of my sentence, that supervised release will only begin to run upon my release from custody on all terms of imprisonment imposed by this and any other courts. I understand that any violation of the conditions of that supervised release during its term may lead to an additional prison sentence and additional supervised release being imposed.

7.      I know that there is no parole in the federal system and that I will be required to serve the entire sentence of imprisonment which may be imposed in my case, reduced only by such good time and/or program allowances as may be set by Congress and applied by the Bureau of Prisons.

8.      I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay interest on any amount in excess of $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment or unless interest is waived by the Court.

9.      I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay it in a timely manner. Failure to do so may trigger monetary

3

penalties, collection efforts by the government, potential revocation of any probation or supervised release, and/or exposure to prosecution for "Criminal Default" under 18 U.S.C. § 3615.

10.    I know that I can be represented by an attorney at every stage of the proceedings in this matter, and I know that, if I cannot afford an attorney, one will be appointed to represent me at no cost or expense to me.

11.    I know that I have a right to plead "not guilty;" and I know that if I do plead "not guilty," I can persist in that plea and demand a trial.

12.    I know that I have a right to and can demand a trial by jury, and I know that if I choose to stand trial:

      a.    I have a right to the assistance of an attorney at every stage of the proceeding;

      b.    I have a right to see and observe the witnesses who testify against me;

      c.    My attorney can cross-examine all witnesses who testify against me;

      d.    I can call and present such relevant witnesses and evidence as I desire, and I can obtain subpoenas to require the attendance and testimony of those witnesses;

      e.    If I cannot afford to pay witness fees and expenses, the government will pay those fees and expenses, including mileage and travel expenses, and including reasonable fees charged by expert witnesses;

      f.    I cannot be forced to incriminate myself and I do not have to testify at any trial;

      g.    However, I can testify at my trial if I choose to, and I do not have to decide whether or not to testify until after I have heard the government's evidence against me;

4

h.    If I decide that I do not want to testify at trial, the jury will be told that no guilt or inference adverse to me may be drawn from my decision not to testify;

i.    In order for me to be convicted, the government must prove each and every element of the offense(s) with which I am charged, beyond a reasonable doubt;

j.    In order for me to be convicted, the jury must reach a unanimous verdict of guilty, meaning all jurors must agree that I am guilty; and

k.    If I were to be convicted, I could appeal both my conviction and whatever sentence the Court later imposed, and if I could not afford an appeal, the government would pay the cost of the appeal, including the cost of an appointed attorney.

13.    I know that if I plead guilty, there will not be a trial of any kind.

14.    I know that if I plead guilty, there will be no appellate review of the question of whether or not I am guilt of the offense(s) to which I have pled guilty.

15.    I know that the terms of my plea agreement with the government contain a waiver of my right to appeal or to collaterally attack the sentence. Specifically, I have agreed to waive my appeal under the conditions set forth in the Plea Agreement. Because of this, I know that I cannot seek appellate review of the sentence imposed by the Court in this case, except in the limited circumstances, if any, permitted by my plea agreement.

16.    No agreements have been reached and no representations have been made to me as to what the sentence in this case will be, except those which are explicitly detailed in the document entitled "Plea Agreement" which I and the government have signed.  I further understand that any sentencing agreements and stipulations in the document entitled  "Plea Agreement" are binding on the Court only if the parties ask the Court in that document to be so bound pursuant to Rule 11(c)(1)(C)

5

and only if the Court agrees to be so bound when it accepts my guilty plea(s).

17.     The only plea agreement which has been entered into with the government is that which is set out in the document entitled "Plea Agreement" which has been signed by the government and me and which I incorporate herein by reference.

18.     I understand that the Court will make no decision as to what my sentence will be until a Presentence Report has been prepared by the Probation Department and received and reviewed by the Court.

19.     I know that when I enter my plea(s) of guilty, the Court may ask me questions under oath about the offense(s) to which I have pled guilty.  Such questions, if asked of me on the record and in the presence of my attorney, must be answered by me, and if I give false answers, I can be prosecuted for perjury.

20.     I know that I have the right to ask the Court any questions that I have concerning my rights, these proceedings, and my plea(s) to the charge(s).

21.     I am _____ years of age.  My education consists of _____. I [can] [cannot] understand the English language.  (Circle either "can" or "cannot.")  I am not taking any medications which interfere with my ability to understand the proceedings in this matter or which impact or affect my ability to choose whether to plead guilty.

22.     Other than the promises of the government set out in the document entitled "Plea Agreement," no promises and no threats of any sort have been made to me by anyone to induce me or to persuade me to enter my plea(s) in this case.

23.     No one has promised me that I will receive probation, home confinement or any other specific sentence desired by me because of my plea(s) of guilty.

6

24.     I have had sufficient opportunity to discuss this case and my intended plea(s) of guilty with my attorney.  I do not wish to consult with my attorney any further before I enter my plea(s) of guilty.

25.     I am satisfied with my attorney.  I believe that I have been represented effectively and competently in this case.

26.     My decision to enter the plea(s) of guilty is made after full and careful thought, with the advice of my attorney, and with full understanding of my rights, the facts and circumstances of the case, and the potential consequences of my plea(s) of guilty.  I was not under the influence of any drugs, medication, or intoxicants which affect my decision-making ability when I made the decision to enter my guilty plea(s).  I am not now under the influence of any such drugs, medication or intoxicants.

27.     I want to plead guilty and have no mental reservations about my decision.

28.     Insofar as it shows my conduct, the summary of facts set out in the document entitled "Plea Agreement" is true and correct, except as I have indicated in that document.

29.     I know that I am free to change or delete anything contained in this document and that I am free to list my objections and my disagreements with anything contained in the document entitled "Plea Agreement."  I accept both documents as they are currently drafted.

30.     I wish to plead guilty to the following charge(s): **Count One of the Indictment, charging a violation of 18 U.S.C. § 286, Conspiracy to Defraud the Government with Respect to Claims.**

7

Dated this _____ day of December, 2016.

_____
HEATHER CARR
Defendant


I certify that I have discussed this statement and the document entitled "Plea Agreement" with the defendant.  I certify that I have fully explained the defendant's rights to him or her and have assisted him or her in completing this form.  I believe that the defendant understands his or her rights and these statements.

Dated this ___5___ day of December, 2016.

_____
MARY V. BUTTERTON
Attorney for Defendant

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

          Plaintiff,

v.

     1.   HEATHER CARR,

          Defendant.

---

## PARTIES' JOINT MOTION TO RESCHEDULE DEFENDANT'S SEPTEMBER 15, 2017 SENTENCING HEARING

---

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney, and the defendant Heather Carr, through her counsel Assistant Federal Public Defender Mary Butterton, hereby respectfully request that the Court reschedule the defendant's September 15, 2017 sentencing hearing, for the following reasons:

1)  The defendant's sentencing hearing is currently scheduled for September 15, 2017, at 11:00 a.m.

2)  As set forth in her plea agreement, the defendant agreed to cooperate with the government and provide substantial assistance in the investigation and prosecution of other persons, namely, her co-defendants in this case.

3)  One of the terms of the defendant's cooperation is that she testify at trial against Defendant Trammel Thomas.  The grand jury returned a Superseding Indictment on

1

April 11, 2017, which indictment added charges against co-conspirator Marcelle Green.

Defendant Carr has indicated she will also testify at trial against Defendant Green.

4)  The trial against Defendants Thomas and Green is scheduled to commence on

November 27, 2017.

5)  Government counsel cannot determine the level of departure to request for the

defendant until all of her co-conspirators have been tried and/or are sentenced.  For this

reason, the parties cannot proceed to sentencing on September 15, 2017.

6)  Ms. Butterton has discussed this motion with her client, and represents that

her client is in agreement with a continuance of this matter.

7)  The parties therefore request that the September 15, 2017 sentencing hearing in

this case be vacated.  The parties also respectfully request the Court's permission to

jointly call chambers to reschedule the hearing.


Respectfully submitted,

s/ Martha A. Paluch
Martha A. Paluch
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO  80202
(303) 454-0100
Martha.paluch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following e-mail address:


Mary Virginia Butterton
Counsel for Heather Carr
mary_butterton@fd.org

Daniel T. Smith
Counsel for Trammel Thomas
danieltsmith@qwestoffice.net


Siddhartha H. Rathod
Counsel for Mercedes Diaz
sr@rmlawyers.com

Jeralyn Merritt
Counsel for Marcelle Green
jeralynm@gmail.com


                                        s/ Mariah Hill
                                        MARIAH HILL
                                        Legal Assistant
                                        U.S. Attorney's Office
                                        1801 California Street, Ste 1600
                                        Denver, CO  80202
                                        Telephone:  (303) 454-0100
                                        Fax:  (303) 454-0401
                                        E -mail: Mariah.Hill@usdoj.gov

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

            Plaintiff,

v.

    1.  HEATHER CARR,

            Defendant.

---

**ORDER ON THE PARTIES' JOINT MOTION TO RESCHEDULE DEFENDANT'S
SEPTEMBER 15, 2017 SENTENCING HEARING**

---

        THIS MATTER comes before the Court upon the Parties' Joint Motion to

Reschedule Defendant's September 15, 2017 Sentencing Hearing [Doc.   ].

        The Court having considered this motion, it is hereby

        ORDERED that the Parties' Joint Motion to Reschedule Defendant's September

15, 2017 Sentencing Hearing [Doc.  ] is GRANTED.  It is further

        ORDERED that counsel for the government and the defendant shall contact

chambers to schedule a new sentencing hearing date.

DATED this _____ day of _____, 2017.


                                BY THE COURT:


                                _____
                                WILLIAM J. MARTINEZ
                                United States District Judge
                                District of Colorado

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     HEATHER CARR,

      Defendant.

---

## GOVERNMENT'S RESPONSE TO PRESENTENCE REPORT (ECF 222)

---

The United States of America, by and through Martha A. Paluch, and Bryan D. Fields, Assistant United States Attorneys, hereby responds to the Presentence Report ("PSR") filed in this case on November 30, 2017 (ECF 222).

On Page 7, Paragraph 28, the PSR references that the defendants in this case used the identities of 184 inmates.  The correct number is 181.  In addition, the total amount of money distributed to the defendants by way of debit cards is $419,218.50. The defendant's plea agreement contains the incorrect amount of $418,672.05 (ECF 94 at 11) and the presentence report states the amount distributed was over $420,000. (ECF 222 at 7, ¶ 28).  However, these discrepancies do not change the amount of restitution due in this case -- $562,487.85.  That correct amount of restitution is contained in the defendant's plea agreement (ECF 94 at 11) and in the presentence report (ECF 222 at 7, ¶ 28).

In the defendant's plea agreement, the government stated that it anticipated filing

1

a motion for a downward departure pursuant to § 5K1.1 of the Sentencing Guidelines. (ECF 94 at 5).  The filing of such motion, however, was contingent upon the defendant fulfilling her responsibilities under the agreement, which included testifying "fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government." (ECF 94 at 4).  Prior to trial, the government conducted numerous phone interviews of the defendant with her counsel and there was no indication that the defendant would not testify.  The government arranged for the defendant to fly to Denver the morning of trial and she did so.  The government was to meet with the defendant that evening.  The government relied upon the defendant's expected testimony in structuring its case and explained to the jury in its opening statement the evidence it expected to present by way of the defendant's testimony. However, upon returning to the office after the first day of trial, the government was informed that the defendant refused to testify.

The plea agreement explicitly contemplates the consequences for a defendant who decides not to testify truthfully at any proceeding:  the defendant will not receive any reduction.  (ECF 94 at 6.).  Consistent with this understanding, and as a result of the defendant's refusal to testify, the government hereby provides notice that it does not intend to file a motion pursuant to § 5K1.1.  The defendant put a major federal prosecution at risk and should be punished to the full extent allowed by the plea agreement entered into by the parties and accepted by the Court.

Respectfully submitted,

s/ Martha A. Paluch
Martha A. Paluch
Bryan D. Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO  80202
(303) 454-0100
Martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov


# CERTIFICATE OF SERVICE

I certify that on this 12th day of December, 2017, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to all counsel of record in this case.


s/ Martha A. Paluch
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     HEATHER CARR,

      Defendant.

---

## GOVERNMENT'S MOTION TO DISMISS COUNTS WITH PREJUDICE

---

     The United States of America, by and through Martha A. Paluch, and Bryan D. Fields, Assistant United States Attorneys, hereby respectfully moves the Court, after having accepted Defendant Heather Carr's plea of guilty to Count 1 of the Indictment and pursuant to the terms of the plea agreement in this case, to dismiss with prejudice Counts 2 through 29 of the Indictment and the Forfeiture Allegation with respect to Defendant Heather Carr only at the time of sentencing.[1]

                                Respectfully submitted,

                                *s/ Martha A. Paluch*
                                Martha A. Paluch
                                Bryan D. Fields
                                Assistant U.S. Attorney
                                United States Attorney's Office
                                1801 California Street, Suite 1600
                                Denver, CO  80202
                                (303) 454-0100
                                Martha.paluch@usdoj.gov
                                bryan.fields3@usdoj.gov

---

[1] Heather Carr was not charged in the Superseding Indictment (ECF 131).

1

## CERTIFICATE OF SERVICE

I certify that on this 12th day of December, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

s/ *Martha A. Paluch*_____
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No.   16-cr-00054-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.     HEATHER CARR,

     Defendant.

---

## GOVERNMENT'S MOTION TO GRANT THE DEFENDANT AN ADDITIONAL ONE-LEVEL DECREASE PURSUANT TO U.S.S.G § 3E1.1(b)

---

The United States of America, by and through Martha A. Paluch and Bryan D. Fields, Assistant United States Attorneys, at sentencing, and as a condition thereof, moves the Court for an order granting the defendant an additional one-level decrease in the offense level for acceptance of responsibility pursuant to United States Sentencing Guidelines Section 3E1.1(b).   Defendant's agreement to plead guilty and timely notice thereof permitted the government to avoid preparing for trial and permitted both the government and the Court to allocate their resources more efficiently with respect to this defendant.

1

Respectfully submitted this 12th day of December, 2017.

ROBERT C. TROYER
Acting United States Attorney


s/ Martha A. Paluch
MARTHA A. PALUCH
BRYAN D. FIELDS
Assistant U.S. Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Email: martha.paluch@usdoj.gov
Bryan.fields3a@usdoj.gov


## CERTIFICATE OF SERVICE

I certify that on this 12th day of December, 2017, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to all counsel of record in this case.


s/ Martha A. Paluch
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00054-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.     HEATHER CARR,**

      Defendant.

_____

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PRESENTENCE
INVESTIGATION REPORT**

_____

Defendant Heather Carr, by and through undersigned counsel, hereby responds to the Presentence Report (PSR) filed November 30, 2017 (Doc. 222).

## <u>OBJECTIONS AFFECTING THE GUIDELINE CALCULATION</u>

<u>Paragraph 45</u>: Ms. Carr objects to the application of USSC §3B1.3 to this case, and the allegation that she abused a position of public or private trust. Because that enhancement does not apply, her correct total offense level is 25, resulting in an advisory guideline range of 57 to 71 months.

    I.    Introduction

    United States Sentencing Guideline §3B1.3 imposes a two offense level enhancement "[i]f the defendant abused a position of public or private trust." To impose this enhancement the government must prove: (1) the person occupied a position of trust, and (2) that position was used to facilitate the offense. *United States v. Spear*, 491 F.3d 1150, 1153 (10th Cir. 2007). Ms. Carr

1

contests that the notion the scope of her employment qualifies as a "position of trust" as defined in U.S.S.G. §3B1.3. [1]

II.     Person in a Position of Trust

Two Tenth Circuit cases have examined the abuse of a position of trust enhancement: *United States v. Edwards*, 325 F.3d 1184 (10th Cir. 2003) and *United States v. Spear*, 491 F.3d 1150 (10th Cir. 2007).    In *Edwards*, the defendant worked as an hourly wage employee handling accounts receivable which involved her processing and posting payment credits to customer accounts.  325 F.3d at 1185.  While in this position, Ms. Edwards failed to post certain customer payments and re-routed numerous checks to her boyfriend's bank account.  The 10th Circuit found that despite that facts that Ms. Edwards worked with little to no oversight, had exclusive control over the accounts receivable, the company trusted Ms. Edwards, and she had access to customer's checks and other important records the position of trust enhancement did not apply. The Tenth Circuit concluded that the enhancement is applicable only when the person has "the discretionary authority to grant credits to customers" or "authority to make substantial discretionary judgments regarding company revenues or expenses." *Edwards*, 325 F.3d at 1187.

According to the *Spear* Court, when deciding whether to apply Section 3B1.3, district courts should ask "whether [an employee's] duties gave [the defendant] functional managerial or professional discretion – such as the responsibility to (1) differentiate case-by-case situations, (2) set policies and protocols, (3) diverge from policies and protocols (thereby indicating

---

[1] Ms. Carr notes that this enhancement was not anticipated in the Plea Agreement entered into by the parties (Doc. 94). The Plea Agreement explicitly states that if the parties disagreed with the guideline computation included in that document, the recitation of the anticipated calculation would identify any disputed mattes. Id. at 12. Thus, Ms. Carr does not anticipate that the Government will seek or support this enhancement.

2

managerial or professional discretion) – or whether her duties were primarily subject to non-discretionary rules (thereby indicating the ministerial or clerical nature of her work)." *Spear*, 491 F.3d at 1157.  "The proper standard asks whether [the defendant]'s duties were bounded by predetermined rules and protocols so as to be ministerial or whether she had the substantial freedom in her duties that arises from discretionary authority signifying a position of trust." *Id.* at 1158.

Here, Ms. Carr was employed by Wells Fargo to check the credit scores of customers applying for automobile loans at CarMax locations. She made an hourly wage, working from home. Her independence from a physical bank location and her access to Accurit do not rise to the level of a "position of trust;" as noted by the *Edwards* court, "[o]pportunity and access do not equate to authority, or to the kind of 'substantial discretionary judgment'" required for the § 3B1.3 enhancement. *Edwards*, 325 F.3d at 1187.  Further, it is important to note that the victims of the crime of conviction were not those to whom she owed a duty of trust; unlike a situation of, for example, an attorney stealing from client trust accounts or a caregiver diverting funds from a ward, Ms. Carr did not use her access to defraud her (or her company's) clients. Further, access to Accurint is not a "special skill" as defined by the Guidelines, as it doesn't require substantial education, training, or licensing.

Because this enhancement does not apply, the correct total offense level is 25, resulting in an advisory guideline range of 57 to 71 months.

3

## OBJECTION TO SUPERVISED RELEASE CONDITION

<u>Special Condition 11</u>: Ms. Carr objects to the special condition requiring that she submit her "person, property, house, residence, vehicles, papers, computers, […] other electronic communications or data storage devices or media or office" to search by the Probation Office. The probation officer asserts that the forgoing financial conditions "would be relatively useless without the ability to monitor the defendant's financial activity via a search condition," yet financial conditions are routinely imposed in this District without an accompanying search condition. The other recommended financial conditions put in place the necessary protections regarding Ms. Carr's financial condition without a probation officer having the right to search her home, her car, or any of her property- after all, under recommended Special Condition 3, she "must provide the probation officer access to any requested financial information and authorize the release of any financial information…" The search condition does nothing to assuage concerns regarding her financial disclosures that Special Condition 3 does not. The condition is far overbroad, unnecessary, and not narrowly tailored to Ms. Carr's case.

## OBJECTIONS NOT AFFECTING THE GUIDELINE CALCULATION

<u>Paragraph 52</u>: Ms. Carr denies the factual allegations regarding this juvenile conviction. She denies that she was the individual who caused the injuries alleged, but did provide a ride to two women involved in the altercation. At the time she plead guilty to this juvenile offense, she was 17 years old, a runaway, and pregnant with her first child. She notes that she is grateful for the services that were provided to her during the course of her court involvement as she was allowed be legally emancipated, received her GED, and had access to prenatal and medical care.

4

Paragraphs 66, 68: Ms. Carr's children are now 22, 17, 7, and 3 respectively. Ms. Carr's

youngest son, Tru Thomas, was recently diagnosed with autism and requires special schooling.

The family currently resides at 3259 Duquesne Drive in Chesapeake, Virginia, and have since July

2016 (she moved at that time from her prior address of 700 Montauk Lane, a fact that can be

verified through her supervising probation officer in the Eastern District of Virginia). As of the

date of sentencing, Ms. Carr will have moved her children back to Arizona. Her oldest daughter

and her husband (who is shortly leaving his service in the United States Navy) have relocated to

Arizona and have agreed to take custody of Ms. Carr's youngest children during the term of her

incarceration, including the intensive care of Ms. Carr's special needs son.

Additionally, Aubrey Richardson, who resides with Ms. Carr, is not a family friend. She

was adopted by Ms. Carr at age 14; now 22, she helps care for her children.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/Mary V. Butterton
MARY V. BUTTERTON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Mary.Butterton@fd.org
Attorney for Defendant

5

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2017, I electronically filed the foregoing

### DEFENDANT'S OBJECTIONS AND RESPONSES TO PRESENTENCE INVESTIGATION REPORT

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Martha A. Paluch, Assistant United States Attorney
Martha.paluch@usdoj.gov

Bryan Fields, Assistant United States Attorney
Bryan.Fields@usdj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Heather Carr (via U.S. Mail and email)
Chesapeake, VA  23320

s/Mary V. Butterton
Mary V. Butterton
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Mary_Butterton@fd.org
Attorney for Defendant

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.      HEATHER CARR,

      Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS AND RESPONSES TO THE PRESENTENCE REPORT

---

The United States of America, by and through Martha A. Paluch, and Bryan D. Fields, Assistant United States Attorneys, hereby responds to Defendant Heather Carr's Objections and Responses to the Presentence Investigation Report, ECF 243.

### 1.  Abuse of Trust Enhancement

Defendant counsel is correct that this enhancement was not included in the plea agreement reached by the parties and the government does not seek or advocate for this enhancement.  *See* ECF 243 at 2 n.1.

### 2.   Supervised Release Condition

Given the nature of the defendant's offense – stealing the names, social security numbers, and dates of birth of prison inmates in order to obtain federal student aid to which she was not entitled – the probation office has properly included the following special conditions:  that the defendant "not cause or induce anyone to conduct any financial transaction on [her] behalf or maintain funds on [her] behalf," and that the

1

defendant not "engage in an occupation, business, profession, or volunteer activity that would require or enable [her] to obtain personally identifying information of customers or other employees without the prior approval of the probation officer."  ECF 222 at R-4, ¶¶ 7 and 8.  In order to enforce these conditions and protect the public from further crimes of identity theft by this defendant, the probation office has included a special condition that requires the defendant to submit to searches of, among other things, her person, residence, vehicle, and computers, as deemed warranted by the Probation Department.  *Id.* at ¶ 11.  The defendant claims this condition "is far overbroad, unnecessary, and not narrowly tailored to Ms. Carr's case."  ECF 243 at 4.

The government disagrees and asserts that this condition is *exactly* tailored to the facts of this case.  The defendant and her co-conspirators carried out the instant scheme using computers located in their residences and analysis of those computers helped prove the crimes charged.  Evidence of their crimes was located in co-defendant Tramell Thomas's vehicle (52 debit cards), on his person (one card in his wallet), and in the Carr/Thomas residence (torn pieces of financial aid documents in the toilet and other documents related to the scheme).  Given the difficulty in preventing identity theft, the probation department must be provided with the necessary authorization to ensure that this defendant is not resorting to her old ways and using other people's identity to obtain money.

For these reasons, the government asserts that Special Condition 11 should be imposed and the defendant's objection to this condition denied.

2

Respectfully submitted,

s/ Martha A. Paluch
Martha A. Paluch
Bryan D. Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO  80202
(303) 454-0100
Martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 15th day of December, 2017, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to all counsel of record in this case.

s/ Martha A. Paluch
MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00054-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     **HEATHER CARR,**

       Defendant.

---

### MOTION FOR VARIANT SENTENCE AND SENTENCING STATEMENT

---

Defendant Heather Carr, by and through undersigned counsel, respectfully moves this court for a sentence of 24 months imprisonment. While a significant variance from the advisory guideline range, the requested sentence is appropriate in light of the sentencing factors of 18 U.S.C. §3553(a).

#### <u>Ms. Carr, the Plea Agreement, and §5K1.1</u>

Under the terms of her plea agreement, Ms. Carr pled guilty to Count 1 of the indictment, concurred with the restitution amount as outlined in that document, admitted the forfeiture allegation, agreed to waive certain appellate rights, and agreed not seek a sentence of less than 24 months. Doc. 94.  In exchange, the government agreed to dismiss the remaining counts, not file any additional charges, and move for acceptance of responsibility. *Id.* Those obligations have been fulfilled. The Plea Agreement also included language outlining terms of Ms. Carr's cooperation,

1

including that the government anticipated, but by no means promised, filing a motion for downward departure under U.S.S.G. §5K1.1. *Id.* at § D.

The government has indicated that they will not be filing the §5K1.1 motion, as Ms. Carr did not fulfill her obligation to testify against her co-defendant, Mr. Trammell Thomas. Doc. 237. The decision to not file a motion for a reduction under §5K filing is well within the government's discretion, as well-documented in the Plea Agreement; certainly, that decision is expected after Ms. Carr's choice to not testify. But the government goes on to assert that Ms. Carr "put a major federal prosecution at risk and should be punished to the full extent allowed by the plea agreement…" Doc. 237 at 2. This argument is flawed for several reasons.

First, any "risk" that the prosecution faced because of Ms. Carr's decision to not testify could have been easily mitigated if a subpoena had been issued for her to appear. She was not subpoenaed; she had no legal obligation to appear in court, despite the ease by which the government could have obtained a subpoena. Second, the "risk" was evidently small, as the government indicted Mr. Thomas well before Ms. Carr's cooperation and secured a conviction against him without her testimony. *See* Doc. 233.

Further, increased punishment by this Court is not an appropriate remedy for Ms. Carr's failure to testify. The government's remedy for Ms. Carr's failure to testify is delineated in the plea agreement: they are not obligated to file the anticipated §5K1.1 motion. While Ms. Carr may have inconvenienced the government, she was under no obligation to the Court to testify; she violated no court order nor did she violate any term of her bond. Secondly, even if the Court viewed her lack of testimony negatively, increased punishment is inappropriate as her testimony was not

2

the full scope of her cooperation. Ms. Carr provided extensive information to the government that lead to a superseding indictment implicating a fourth co-defendant, and subsequently that co-defendant's conviction. *See* Docs. 131, 178. While the government's decision to not move for a §5K1.1 reduction is well within their rights, this Court may consider her cooperation when crafting an appropriate sentence under 18 U.S.C. §3553(a). See *United States v. Doe*, 398 F.3rd 1254 (10th Cir. 2005) ("[A] a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a § 5K1.1 motion.")

### Ms. Carr's , Her History, and This Case

Ms. Carr is a 40-year-old single parent with virtually no criminal history. At 17, she was on the streets and pregnant; she pulled herself out of the terrible circumstances of her childhood and youth to obtain a GED, attend some college, and acquire a good job at Wells Fargo. She has single-handedly raised four children, including her youngest, Tru, who is autistic and requires intensive care.  At the time of her actions in this case, she had a good job and afforded much freedom. Ms. Carr wanted to provide a better lifestyle for her children than she was ever afforded; that desire drove her to participate in this scheme, and in doing so she risked (and lost) the career that she worked so hard to attain. Since her arrest on this case, she has worked to keep her family afloat, starting her own business and working as driver for Uber.

### The Requested Sentence and Statutory Factors

A 24-month sentence is sufficient, but not greater than necessary. Two years in prison reflects the seriousness of this case, particularly for a person who has no background and has never been incarcerated before. This sentence will remove Ms. Carr from her young children for a

3

significant portion of their lives; this separation will be horribly difficult for their family but is a just punishment for her actions. A two-year period of incarceration, for someone who has never been on the "inside," will have a jarring effect. Further, the sentence will deter Ms. Carr from further criminal conduct. In their 2016 study on Recidivism and Federal Sentencing Policy, the U.S. Sentencing Commission found that not only are fraud offenders the least likely to reoffend, but those in Criminal History Category I had an only 14% reincarceration rate.[1] Many of the usual risks of recidivism in a criminal case- substance abuse, mental health issues, lack of a stable support system- simply aren't present in Ms. Carr's life.

However, for the rest of her life, Ms. Carr will be a felon. The collateral consequences of a felony conviction- especially on a person who, at 40 years old, had a clean record- will be harsh. She will almost certainly never be able to work in a bank or financial institution again, thus unable to use those skills that she honed for many years. She will further lose her Second Amendment right to bear arms, loss of the ability to vote and/or serve on a jury, and lose access to many kinds of subsidized housing options.

## Conclusion

Ms. Carr has admitted her guilt in this case and taken responsibility for her actions. Her history and characteristics, as well as the statutory sentencing factors, all suggest that a guideline sentence is greater than necessary in this case. A sentence of 24 months incarceration is just

---

[1] Recidivism & Federal Sentencing Policy: Report at a Glance (March 2016), Accessed at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-recidivism-overview.pdf  on December 20, 2017.

4

punishment for her actions, affords deterrence to criminal conduct, and is a proper application of

the factors in 18 U.S.C. §3553(a).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/Mary V. Butterton
MARY V. BUTTERTON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Mary.Butterton@fd.org
Attorney for Defendant

5

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2017, I electronically filed the foregoing

### DEFENDANT'S MOTION FOR VARIANT SENTENCE
### AND SENTENCING STATEMENT

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Martha A. Paluch, Assistant United States Attorney
Martha.paluch@usdoj.gov

Bryan Fields, Assistant United States Attorney
Bryan.Fields@usdj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Heather Carr (via U.S. Mail and email)
Chesapeake, VA 23320


s/Mary V. Butterton
Mary V. Butterton
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Mary_Butterton@fd.org
Attorney for Defendant

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.   16-cr-00054-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. HEATHER CARR,

Defendant.

---

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR VARIANT SENTENCE AND SENTENCING STATEMENT [ECF No. 247].

---

The defendant seeks a variant sentence of 24 months in prison, over a 50% reduction from the estimated guideline range as anticipated by the parties in the plea agreement and approximately a 65% reduction from the 70-month sentence recommended by the probation office.   Such an extreme variance in this case would represent a manifest injustice.   It would reward the defendant's deceit and encourage guile.   The defendant deceived her employer, using their database to steal the identities of vulnerable victims.   She deceived the Department of Education (the "Department") and several community colleges by submitting fake financial aid documents that allowed her and her coconspirators to steal hundreds of thousands of dollars.   And then she deceived the Department of Justice, promising she would testify at trial and then breaking that promise at the moment of maximum damage.   Because the grounds advanced by the defendant do not warrant such a lenient sentence, the

1

United States of America, by Robert C. Troyer, United States Attorney for the District of Colorado, through Martha A. Paluch and Bryan D. Fields, Assistant United States Attorneys, hereby objects to the sentence requested in the Defendant's Motion for Variant Sentence and Sentencing Statement. ECF No. 247.   At sentencing, the government will request that the Court impose a sentence of 63 months' imprisonment, followed by three years of supervised release, an order of restitution in the amount of $562,487.85, and a special assessment of $100.

## I.   Defendant's Arguments in Support of the Requested Variance

Notably, the probation department could not identify "any factors that would warrant a variance from the applicable sentencing guideline range."   ECF 250 at 19. Defendant's attempts to provide the Court with any such factor fall far short.   Her request for a 24-month variant sentence is based upon 1) her alleged cooperation; 2) her history; and 3) the consequences she will face as a convicted felon.   None of these grounds supports the requested sentence.

### A.   Defendant's Alleged Cooperation

The defendant begins by noting that the government's decision not to file a motion pursuant to U.S.S.G. § 5K1.1 was well within the government's discretion pursuant to the clear terms of the plea agreement.   ECF 247 at 2.   However, the defendant disputes the government's assertion that the defendant's refusal to testify at the last minute placed the prosecution of Tramell Thomas at risk.   The defendant claims any such risk "could have been easily mitigated if a subpoena had been issued for [the defendant] to appear."   *Id.*   This argument completely misses the point.   The entire

2

basis for a *cooperation* agreement is that the defendant agreed to testify *without* being compelled.   Having demonstrated that she was no longer cooperating, a subpoena would simply have compelled testimony from a recalcitrant witness who, having decided to renege on her promises, just as easily could have retracted her prior statements.   In that event, while the government could have attempted to impeach the defendant with those prior statements, the jury would have been left to determine which set of statements of the defendant to believe.   Having the defendant under subpoena would not have cured the problem of the defendant refusing to provide trial testimony consistent with what she had previously told the government.

Support for this claim is found in the fact the government did not request that a trial subpoena issue for Mercedes Diaz.[1]   The government decided not to call Ms. Diaz based upon the limited direct interaction she had with Thomas.   Once Thomas's counsel was informed that the government would not call Ms. Diaz to the stand, they listed Ms. Diaz as a witness on their witness list and attempted (without success) to serve her with a subpoena.   Had Ms. Diaz been under a court-issued subpoena to appear at trial, Thomas have called her to the stand.   This defendant cannot attempt to excuse her behavior by blaming the government for not seeking a trial subpoena and instead, understandably relying on her assurances she would testify after numerous meetings prior to trial affirming she would do just that.

Next, the defendant claims that any risk suffered by the government "was

---

[1] Nor did government counsel request that a subpoena issue for Marcelle Green, but rather, relied upon assurances from Green's counsel and Green herself that in fact Green would appear at trial.

3

evidently small because the government indicted Mr. Thomas well before Ms. Carr's cooperation and secured a conviction against him without her testimony."   ECF 247 at 2.   Defendant's claim of "no harm, no foul" because Thomas was indicted and ultimately convicted should be rejected outright.   The defendant conveniently ignores the gaps left in the government's case once the defendant chose to ignore her cooperation obligations – evidence against Thomas that only she could provide. The government told the jury as much; it based the majority of its opening statement on evidence that it had every right to believe this defendant would provide.   Instead, it was left trying to admit certain of that evidence through other witnesses, and was then forced to explain in closing argument that the jury would not hear from the main witness in the case as promised.

Finally, the defendant suggests that the government's remedy should be limited to simply not filing the § 5K1.1 motion.   She is incorrect.   The defendant ignores the harm her actions caused.   She could have decided in advance of trial not to fly to Denver.   She did not have to get on the plane the morning of trial, but she did, leaving the government to believe she would fulfill her obligations under her plea agreement. There must be some sanction for the defendant's last minute reneging on her promise to testify, at a moment that caused maximum disruption to the government's case against her codefendant.

An example of the harm caused is found in the fact the government anticipated its direct examination of the defendant would last two hours, and the defense anticipated cross-examining her for three hours. At the end of the first day of trial, the

4

government notified Thomas's counsel it planned to call the defendant to the stand first thing the next morning. On Monday evening, when notified that the defendant refused to testify, the government realized it was faced with a five-hour gap in trial testimony. The government then called other witnesses that evening to move up their travel to Denver and scheduled appearances in court. The defendant's decision on Monday evening not to honor her agreement inconvenienced not only the government, as she suggests; it inconvenienced witnesses, the Court, defense counsel, and the jury, who were required to wait during delays in the presentation of the government's case.

The defendant then claims she is entitled to credit for the Superseding Indictment charging Ms. Green and Ms. Green's ultimate conviction. ECF 247 at 3. Notably, the defendant did not agree to cooperate and provide evidence against Ms. Green until *after* Ms. Diaz had debriefed and fully explained the extent of Ms. Green's involvement in the scheme. As to assistance she claims to have provided to the government, almost all of the information she had about Thomas's involvement in the scheme was useless without her trial testimony.

As noted by the defendant, the government fulfilled its obligations as set forth in the plea agreement: it moved 1) to dismiss all remaining counts in the indictment (to include aggravated identity charges); 2) for the defendant to receive all three points for acceptance of responsibility; and 3) it did not seek further charges against this defendant, even though the government believes the defendant's failure to fulfill her obligations under the plea agreement would have allowed it to withdraw from the plea agreement and seek to reinstate all charges from the original indictment. *See* Plea

5

Agreement, ECF 94 at 4 (the "defendant specifically waives any statute of limitations defense in the event she violates the terms of the Plea Agreement so the government could pursue the Aggravated Identity theft and all other counts dismissed")).[2]  In addition, while the defendant admitted to the forfeiture allegation, no order of forfeiture can issue on a conviction for Count 1 to which the defendant pled, a violation of Title 18, United States Code, Section 286, and therefore, unlike her co-conspirator Tramell Thomas, she will not be subject to an order of forfeiture.   Finally, pursuant to the calculations set forth in the plea agreement, the government will not seek or advocate in favor of an abuse of trust enhancement or two additional levels for 10 or more victims, as argued by the probation office.   In sum, the defendant received all of the benefits of the plea agreement, and at the last possible moment reneged on her obligation to testify truthfully at Thomas's trial, thereby inflicting the maximum amount of harm.   It is entirely appropriate for the Court to consider this defendant's conduct in fashioning a just sentence.   *See United States v. Turner,* 864 F.2d 1394, 1399 (7th Cir. 1989) (affirming district court's consideration of defendant's refusal to testify as required by plea agreement, noting that the defendant had not "merely" refused to testify; "he had promised to testify and then balked.   Reneging on one's promise is a basis of punishment independent of the assertion of the privilege [not to testify], a basis on which the sentence legitimately may be augmented").

---

[2]  In the interests of judicial economy, the government elected to not move to withdraw from the plea agreement, and instead proceed with sentencing and argue that the Court take into account the defendant's conduct at sentencing.

## B. Defendant's History

Apparently making $26 an hour working for Wells Fargo was not enough for this defendant. ECF 250 at 15, ¶ 76. Instead of showing her children the value of honest work, the defendant indulged her worst instincts and turned to the one course of action that could inflict the most amount of harm on them: a life of crime with the risk of prison time that would take her away from them. Despite the fact that she was "single-handedly" raising four children, she chose to engage in this scheme and risk imprisonment. The hardship her children now face does not warrant the sentence requested. If this defendant had truly been concerned about her children, she would not have engaged in the scheme to begin with.[3] Indeed, the "families of incarcerated defendants are commonly the ones who suffer most." *United States v. Sherrills,* 432 F. App'x 476, 488-89 (6th Cir. 2011); *see United States v. McClatchey,* 316 F.3d 1122, 1131 (10th Cir. 2003) ("[d]isruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration"); *United States v. Baylor,* No. 06-40090-01-RDR, 2007 WL 2407280, at *1 (D. Kan. Aug. 21, 2007) ("[t]here is little question that every family suffers when a member is incarcerated").

## C. Consequences of a Felony Conviction

Finally, the defendant cites to the consequences she will face as a convicted

---

[3] The defendant's stated concern for her family is hard to take seriously when the evidence shows that she recruited Mercedes Diaz into the scheme, despite the fact that Diaz considered Carr to be a mother figure. Furthermore, evidence gathered during the investigation showed that Carr involved at least one of her children in certain aspects of the scheme.

7

felon in support of her request for a 24-month sentence. The defendant properly notes

she will no longer be able to work in a bank or a financial institution.   This is the logical

result of the choice she made to steal the identities of other individuals through her

employment at Wells Fargo.   Without her access to the Accurint database, neither she

nor her coconspirators had access to the necessary social security numbers to commit

the crime.   *Cf. United States v. Chichitz-Martin*, 461 F. Supp. 2d 731, 735 (N.D. Ill.

2006) (noting, in a drug case, that the defendant's "key organizational role" helped to

justify a guidelines sentence).   She used her employment to target those she knew

would not readily complain:   prison inmates, and this fact should be taken into account

in fashioning an appropriate sentence.

The defendant then lists the standard collateral consequences of a felony

conviction: loss of her right to possess a firearm, to vote, serve on a jury and access to

subsidized housing options.   These are consequences each person convicted of a

felony faces and they certainly do not warrant the variant sentence requested here.

In sum, none of the grounds advanced by the defendant supports her request for

a variant sentence of 24 months.   Each ground, in fact, lends support for the 63-month

sentence sought by the government.

### D.  Deterrence Requires the Sentence Recommended by the Government

The need for deterrence also counsels in favor of a significant sentence.

Notably, this defendant was not deterred from continuing to commit the instant offenses

after Tramell Thomas was arrested and found in possession of the debit cards, nor was

the search of her home enough to cause her to stop.   Green testified at trial that the

8

scheme continued because they were waiting on delivery of certain debit cards.   *See also* ECF 94 (plea agreement referencing Thomas's arrest and the search of their home).   A significant sentence is therefore warranted to deter this defendant from future financial crimes as well as others contemplating a similar scheme.   This is all the more true when the potential rewards for would-be criminals who are *not* caught can be tens of thousands of dollars per month.   Here, this defendant and her conspirators netted over $419,000 in a short period of time.   "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment."   *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).   These are not easy schemes to uncover, investigate, or prosecute.   Here, the defendant picked victims who were unlikely to report the fraud, and worked closely with people who she didn't think would ever be willing to testify against her.   She thought she wouldn't' get caught, but was, and should receive a sentence that deters her from taking that risk again.

## II.   **CONCLUSION**

The 63-month sentence sought by the government is six months more than the top of the guideline range as calculated by the parties in the plea agreement.   ECF 94 at 13, and *see id.* at 2 (the "government is not bound to seek any particular sentence") and 14 (neither party is precluded from "asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors").   This sentence takes into account all of the sentencing directives of § 3553 as well as the multi-faceted harms caused by the defendant's scheme – the

9

identity theft, the large number of vulnerable victims, and the financial harm.    It also addresses the defendant's conduct in refusing to testify, in violation of her plea agreement, the night before she was scheduled to do so.

WHEREFORE, the Government will request at sentencing that the Court impose a sentence of 63 months in prison.

Dated this 2nd day of January, 2018.

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

*s/ Martha A. Paluch*
MARTHA A. PALUCH
BRYAN D. FIELDS
Assistant U.S. Attorneys
1801 California Street, Suite 1600
Denver, Colorado    80202
(303) 454-0100
FAX: (303) 454-0402
Email: Martha.paluch@usdoj.gov
Bryan.fields3@usdoj.gov
Attorneys for the government

10

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of January, 2018, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system that will send

notification of such filing to all counsel of record in this case.

> s/ *Martha A. Paluch*
> MARTHA A. PALUCH
> BRYAN DAVID FIELDS
> Assistant United States Attorneys
> 1801 California Street, Suite 1600
> Denver, CO 80202
> Telephone 303-454-0100
> Facsimile 303-454-0402
> martha.paluch@usdoj.gov
> bryan.fields3@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   16-cr-00054-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. HEATHER CARR,

      Defendant.

---

**GOVERNMENT'S CORRECTION TO ITS RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR VARIANT SENTENCE AND SENTENCING
STATEMENT [ECF No. 264].**

---

In its Response to Defendant's Motion For Variant Sentence and Sentencing Statement, filed this date, ECF 264, the government incorrectly stated the dates of the defendant's and Ms. Mercedes Diaz's debriefs with the government.   Specifically, on Page 5 of its Response, the government stated that the defendant did not provide evidence against co-defendant Marcelle Green until after Ms. Diaz debriefed.   This is incorrect.   While Ms. Diaz was the first defendant to plead guilty in this case, *see* ECF 80, the defendant debriefed with the government in November of 2016 and Ms. Diaz debriefed in February of 2017.

Undersigned counsel apologizes to the Court, counsel, and the defendant for this error.

1

Dated this 2nd day of January, 2018.

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

s/ Martha A. Paluch
MARTHA A. PALUCH
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado   80202
(303) 454-0100
FAX: (303) 454-0402
Email: Martha.paluch@usdoj.gov
Attorney for the government


## CERTIFICATE OF SERVICE

I certify that on this 2nd day of January, 2018, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system that will send

notification of such filing to all counsel of record in this case.

s/ Martha A. Paluch
MARTHA A. PALUCH
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

_____

Courtroom Deputy:  Deborah Hansen          Date:  January 4, 2018
Court Reporter: Mary George                Probation:  Matthew Gill
                                           Time: 1 hour and 26 minutes

_____

Criminal Action No.  16-cr-00054-WJM          _Counsel:_

UNITED STATES OF AMERICA,                     Martha Paluch
                                              Bryan Fields
          Plaintiff,

v.

1.  HEATHER CARR,                             Mary Butterton

          Defendant.

_____

**COURTROOM MINUTES**
_____

HEARING - SENTENCING

02:00 p.m.    Court in Session

Appearances

Defendant is present and on bond.

Oath administered to the defendant.

Sentencing Statement by Ms. Paluch

Sentencing Statement by Ms. Butterton

The Court addresses the objections to the Presentence Investigation Report and enters rulings on the record.

1

**ORDERED:**  The Government's Motion To Grant The Defendant An Additional One-Level Decrease Pursuant TO U.S.S.G § 3E1.1(b) [239] IS GRANTED.

**ORDERED:**  The Government's Motion To Dismiss Counts With Prejudice [238] is GRANTED.  Counts 2 through 29 of the Indictment are dismissed as to this defendant only.

The Court addresses the Defendant's Motion For Variant Sentence And Sentencing Statement [247].

Argument/Discussion

Defendant's Allocution

**ORDERED:**  The Defendant's Motion For Variant Sentence And Sentencing Statement [247] is DENIED.

---

Defendant plead guilty to Count One of the Indictment and admitted to the forfeiture allegation on December 5, 2016.

---

**ORDERED:**  Pursuant to the Sentencing Reform Act of 1984, it is the Judgment of this Court that the defendant, Heather Carr, is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 57 months.

The Court also recommends that the defendant be incarcerated at a facility appropriate to his security designation located within the District of Arizona.

**ORDERED:**  Upon release from imprisonment, the defendant shall be placed on Supervised Release for a term of three years.

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall not possess a firearm as defined in 18 U.S.C. § 921, and shall comply with the standard conditions that have been adopted by this Court in District of Colorado General Order 2016-1.

The defendant shall not unlawfully possess and she shall refrain from unlawfully using a controlled substance. The Court waives the mandatory drug testing provisions of § 3563(a)(5), because the Report indicates a low risk of future substance abuse by the defendant.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

2

**ORDERED:** Special conditions of Supervision:

1.  The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless the defendant is in compliance with the periodic payment obligations imposed pursuant to the court's judgment and sentence.

2.  As directed by the probation officer, the defendant shall apply any monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation in this case.

3.  The defendant must provide the probation officer access to any requested financial information and authorize the release of any financial information until all financial obligations imposed by the Court are paid in full.

4.  If the defendant has an outstanding financial obligation, the probation office may share any financial or employment documentation relevant to the defendant with the Asset Recovery Division of the United States Attorney's Office to assist in the collection of the obligation.

5.  The defendant shall document all income or compensation generated or received from any source and provide such information to the probation officer as requested.

6.  The defendant shall not cause or induce anyone to conduct any financial transaction on her behalf or maintain funds on her behalf.

7.  The defendant may not engage in an occupation, business, profession or volunteer activity that would require or enable the defendant to obtain personally identifying information of customers or other employees without the prior approval of the probation officer.

8.  The defendant shall not engage in any business activity unless that activity is approved by the probation officer.  Any approved business activity must operate under a formal, registered entity. For any approved business activity, the defendant shall provide the probation officer with the names of all business entities and their registered agents.

3

The defendant shall not register any new business entity, foreign or domestic, without the approval of the probation officer. The defendant shall not cause or induce others to register business entities on her behalf. For any approved business activity, the defendant shall maintain business records. The defendant shall provide all requested documentation and records to the probation officer regarding any of her business activities as requested by the probation officer.

9.  The defendant shall maintain separate personal and business finances and shall not co-mingle personal and business funds or income in any financial accounts, including but not limited to bank accounts and lines of credit.

10. The defendant shall submit her person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to such search may be grounds for revocation of Supervised Release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An Officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his Supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

**ORDERED:** The defendant is ordered to make Restitution in the total amount of $562,487.85 in the amount and to the individual victims as set forth in the table found at Paragraph 93 of the Final Presentence Investigation Report (ECF No. 250).

Interest on the Restitution amount is waived.

**ORDERED:** The defendant shall pay a Special Assessment of $100, which shall be due and payable immediately.

**ORDERED:** The Court finds that the defendant does not have the ability to pay a fine in light of the Restitution obligation imposed by this Judgment. Therefore, any fine is waived.

**ORDERED:** The Special Assessment and Restitution obligations are due immediately. Any unpaid Restitution balance upon release from incarceration shall be paid in monthly installment payments during the term of Supervised Release of not less than 10% of the defendant's gross household monthly income.

Within 15 days of release from custody, the defendant shall meet with the probation officer to develop a plan for the payment of the unpaid portion of her financial obligations under the court's judgment. This plan will be based upon the defendant's income and expenses. The Plan will be forwarded to the Court for review and approval.

The Court addresses voluntary surrender.

Statement by Ms. Butterton

Statement by Ms. Paluch

The Government does not object to voluntary surrender.

The Court finds by clear and convincing evidence that the defendant's conditions of release reasonably assure that she will not flee or pose a danger to the safety of any other person or the community.  It is therefore,

**ORDERED that the defendant, Heather Carr, surrender at the institution designated by the Bureau of Prisons on February 8th, 2018, at 12:00 noon.  In the interim, the defendant's bond is continued and all conditions set forth in the Magistrate Judge's Order Setting Conditions Of Release shall continue to apply**

Defendant advised of her right to appeal.

03:26 p.m.    Court in Recess
              Hearing concluded

5

AO 245B (Rev. 09/17)    Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

District of Colorado

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| | Case Number:  1:16-cr-00054-WJM-01 |
| HEATHER CARR | USM Number:  89751-083 |
| | Mary Virginia Butterton |
| | Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count    1 of the Indictment

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 286 | Conspiracy to Defraud the Government with Respect to Claims | 10/01/12 | 1 |

The defendant is sentenced as provided in pages 2 through        8        of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Counts    2-14, 26, 27 and 29 of the Indictment          ☒  are dismissed as to this defendant on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 4, 2018
Date of Imposition of Judgment

Signature of Judge

William J. Martinez, United States District Judge
Name and Title of Judge

10 Jan 2018
Date

AO 245B (Rev. 09/17) Judgment in Criminal Case

Judgment — Page ___2___ of ___8___

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Fifty-seven (57) months.

☒ The court makes the following recommendations to the Bureau of Prisons:
The Court recommends the defendant be designated to a facility appropriate to her security level within the District of Arizona.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒ before 12 p.m. on _____February 8, 2018_____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/17) Judgment in Criminal Case

DEFENDANT:      HEATHER CARR
CASE NUMBER:   1:16-cr-00054-WJM-01

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: three (3) years.

## MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
        ☒  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☒    You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☒    You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐    You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐    You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/17) Judgment in Criminal Case

|  | Judgment — Page 4 of 8 |
|---|---|

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 09/17) Judgment in Criminal Case

Judgment — Page 5 of 8

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## SPECIAL CONDITIONS OF SUPERVISION

1. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless you are in compliance with the periodic payment obligations imposed pursuant to the Court's judgment and sentence.
2. As directed by the probation officer, you must apply any monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation in this case.
3. You must provide the probation officer access to any requested financial information and authorize the release of any financial information until all financial obligations imposed by the court are paid in full.
4. If you have an outstanding financial obligation, the probation office may share any financial or employment documentation relevant to you with the Asset Recovery Division of the United States Attorney's Office to assist in the collection of the obligation.
5. You must document all income and compensation generated or received from any source and must provide that information to the probation officer as requested.
6. You must not cause or induce anyone to conduct any financial transaction on your behalf or maintain funds on your behalf.
7. You must not engage in an occupation, business, profession, or volunteer activity that would require or enable you to obtain personally identifying information of customers or other employment without the prior approval of the probation officer.
8. You must not engage in any business activity unless it is approved by the probation officer. All approved business activity must operate under a formal, registered entity. For any approved business activity, you must provide the probation officer with the names of all business entities and their registered agents.

   You shall not register any new business entity, foreign or domestic, without the approval of the probation officer. You shall not cause or induce others to register business entities on your behalf. For any approved business activity, you shall maintain business records. You shall provide all requested documentation and records to the probation officer regarding any of your business activities as requested by the probation officer.
9. You must maintain separate personal and business finances and must not co-mingle personal and business funds or income in any financial accounts, including but not limited to bank accounts and lines of credit.
10. You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

AO 245B (Rev. 09/17) Judgment in Criminal Case

| | Judgment — Page 6 of 8 |
|---|---|

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 562,487.85 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| United States Department of Education Bank Change & Receivable Group, Rm 6167 550 12th Street, SW, RM 6107 Washington, DC 20202-4461 | $489,947.00 | $489,947.00 | |
| Community College of Denver 800 Curtis St. Denver, CO 80204 | $1,316.00 | $1,316.00 | |
| Mesa Community College 1833 W. Southern Ave. Mesa, AZ 85202 | $34,752.00 | $34,752.00 | |
| Pikes Peak Community College 5675 S. Academy Blvd. Colorado Springs, CO 80906 | $26,050.85 | $26,050.85 | |

**ADDITIONAL NAMES OF PAYEES CONTINUED ON NEXT PAGE**

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☒ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/17) Judgment in Criminal Case

DEFENDANT:     HEATHER CARR
CASE NUMBER:   1:16-cr-00054-WJM-01

## ADDITIONAL NAMES OF PAYEES

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Phoenix Community College<br>1202 W. Thomas Rd.<br>Phoenix, AZ 85013 | $4,307.00 | $4,307.00 | |
| Red Rocks Community College<br>13300 W. 6th Ave.<br>Lakewood. CO 80228 | $6,115.00 | $6,115.00 | |
| **TOTALS** | $    562,487.85     | $    562,487.85      | |

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/17) Judgment in Criminal Case

Judgment — Page __8__ of __8__

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due

  ☐ not later than _____ , or
  ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
  _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
  _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
  term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
  imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

  The special assessment and restitution obligation are due immediately. Any unpaid monetary obligations upon release from
  incarceration shall be paid in monthly installment payments during the term of supervised release. The monthly installment
  payment will be calculated as at least 10 percent of the defendant's gross monthly income.

  Within 15 days of release from custody, the defendant shall meet with the probation officer to develop a plan for the payment of
  the unpaid portion of her financial obligations under the court's judgment. This plan will be based upon the defendant's income
  and expenses. The Plan will be forwarded to the Court for review and approval.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒ Joint and Several

  Heather Carr, 16-cr-00054-WJM-01, $562,487.85; Trammel Thomas, 16-cr-00054-WJM-02, $562,487.85;
  Mercedes Diaz, 16-cr-00054-WJM-03, $562,487.85; and Marcelle Green, 16-cr-00054-WJM-04, $562,487.85.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine
interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-054-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.  HEATHER CARR,

       Defendant.

_____

## DEFENDANT'S NOTICE OF APPEAL
_____

Defendant HEATHER CARR, through appointed counsel, Mary V. Butterton and the

Office of the Federal Public Defender, files this notice of appeal to the Tenth Circuit Court of

Appeals, and appeals the Judgment and Commitment Order that was entered on January 10, 2018.


Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/Mary Butterton
MARY BUTTERTON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
Fax:  (303) 294-1192
mary.butterton@fd.org
Attorney for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

BETH GIBSON, AUSA
Email: gibson_beth@usdoj.gov

and I hereby certify that I have mailed the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated above the non-participant's name:

HEATHER CARR
1385 Fordham Drive
Box 105185
Virginia Beach, VA 23464

s/Mary Butterton
MARY BUTTERTON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
Fax:  (303) 294-1192
mary.butterton@fd.org
Attorney for Defendant

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00054-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.     HEATHER CARR,

     Defendant.

---

## GOVERNMENT'S MOTION TO AMEND JUDGMENT OF CONVICTION PURSUANT TO FED. R. CRIM. P. 35(a)

---

The United States of America, by and through Martha A. Paluch, and Bryan D. Fields, Assistant United States Attorneys, hereby respectfully requests that the Court amend the judgment of conviction entered in this case on January 10, 2018, ECF 296, pursuant to Fed. R. Crim. P. 35(a).

The defendant pled guilty to Count 1 of the Indictment and the government moved, as part of the plea agreement, to dismiss Counts 2-29 of the Indictment.  ECF 238.  At the January 4, 2018 sentencing hearing, the Court orally granted the government's motion and dismissed Counts 2-29.  ECF 272.

The judgment issued on January 10, 2018.  ECF 296.  Page One of the judgment indicates that Counts 2-14, 26, 27 and 29 were dismissed.  The government respectfully requests that this portion of the judgment be amended to reflect that Counts 2-29 were dismissed.

1

Undersigned counsel has conferred with defendant's counsel, Assistant Federal Public Defender Mary Butterton. Ms. Butterton states she has no objection to the relief requested in this motion.

Respectfully submitted,

s/ Martha A. Paluch
Martha A. Paluch
Bryan D. Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 12th day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record in this case.

s/ Martha A. Paluch

MARTHA A. PALUCH
BRYAN DAVID FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov
bryan.fields3@usdoj.gov

2

AO 245C (Rev. 09/17)  Amended Judgment in a Criminal Case
　　　　　　　　　　Sheet 1

(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT

District of Colorado

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| HEATHER CARR | Case Number:      1:16-cr-00054-WJM-01 |
| | USM Number:      89751-083 |
| | Mary Virginia Butterton |

Date of Original Judgment:  1/10/2018
　　　　　　　　　　(Or Date of Last Amended Judgment)

Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☒ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant to
　☐ 28 U.S.C. § 2255 or　☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☒ pleaded guilty to count  1 of the Indictment

☐ pleaded nolo contendere to count(s) _____
　 which was accepted by the court.

☐ was found guilty on count(s) _____
　 after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 286 | Conspiracy to Defraud the Government with Respect to Claims | | |

　　The defendant is sentenced as provided in pages 2 through ___8___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Counts  2 through 29 of the Indictment  ☐ is  ☒ are dismissed on the motion of the United States.

　　It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 4, 2018
Date of Imposition of Judgment

_____
Signature of Judge

William J. Martinez, United States District Judge
Name and Title of Judge

Date  18 Jan 2018

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

DEFENDANT:      HEATHER CARR
CASE NUMBER:    1:16-cr-00054-WJM-01

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Fifty-seven (57) months.

☒    The court makes the following recommendations to the Bureau of Prisons:
     The Court recommends the defendant be designated to a facility appropriate to her security level within the District of Arizona

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

     ☐    at _____ ☐ a.m. ☐ p.m.  on _____ .

     ☐    as notified by the United States Marshal.

☒    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☒    before 12 p.m. on    February 8, 2018             .

     ☐    as notified by the United States Marshal.

     ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

     Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

     By _____
          DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

| | Judgment — Page 3 of 8 |
|---|---|

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: three (3) years.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☒ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

| | Judgment — Page | 4 | of | 8 |

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____ Date _____

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

| | Judgment — Page | 5 | of | 8 |

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

## SPECIAL CONDITIONS OF SUPERVISION

1. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless you are in compliance with the periodic payment obligations imposed pursuant to the Court's judgment and sentence.
2. As directed by the probation officer, you must apply any monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation in this case.
3. You must provide the probation officer access to any requested financial information and authorize the release of any financial information until all financial obligations imposed by the court are paid in full.
4. If you have an outstanding financial obligation, the probation office may share any financial or employment documentation relevant to you with the Asset Recovery Division of the United States Attorney's Office to assist in the collection of the obligation.
5. You must document all income and compensation generated or received from any source and must provide that information to the probation officer as requested.
6. You must not cause or induce anyone to conduct any financial transaction on your behalf or maintain funds on your behalf.
7. You must not engage in an occupation, business, profession, or volunteer activity that would require or enable you to obtain personally identifying information of customers or other employment without the prior approval of the probation officer.
8. You must not engage in any business activity unless it is approved by the probation officer. All approved business activity must operate under a formal, registered entity. For any approved business activity, you must provide the probation officer with the names of all business entities and their registered agents.
   You shall not register any new business entity, foreign or domestic, without the approval of the probation officer. You shall not cause or induce others to register business entities on your behalf. For any approved business activity, you shall maintain business records. You shall provide all requested documentation and records to the probation officer regarding any of your business activities as requested by the probation officer.
9. You must maintain separate personal and business finances and must not co-mingle personal and business funds or income in any financial accounts, including but not limited to bank accounts and lines of credit.
10. You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

| | | Judgment — Page 6 of 8 |
|---|---|---|

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 562,487.85 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| United States Department of Education Bank Change & Receivable Group, Rm 6167 550 12th Street, SW, RM 6107 Washington, DC 20202-4461 | $489,947.00 | $489,947.00 | |
| Community College of Denver 800 Curtis St. Denver, CO 80204 | $1,316.00 | $1,316.00 | |
| Mesa Community College 1833 W. Southern Ave. Mesa, AZ 85202 | $34,752.00 | $34,752.00 | |
| Pikes Peak Community College 5675 S. Academy Blvd. Colorado Springs, CO 80906 | $26,050.85 | $26,050.85 | |

**ADDITIONAL NAMES OF PAYEES CONTINUED ON NEXT PAGE**

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the ☐ fine ☒ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

Judgment — Page   7   of    8  

DEFENDANT:       HEATHER CARR
CASE NUMBER:    1:16-cr-00054-WJM-01

## ADDITIONAL NAMES OF PAYEES

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Phoenix Community College<br>1202 W. Thomas Rd.<br>Phoenix, AZ 85013 | $4,307.00 | $4,307.00 | |
| Red Rocks Community College<br>13300 W. 6th Ave.<br>Lakewood. CO 80228 | $6,115.00 | $6,115.00 | |
| **TOTALS** | $    562,487.85 | $    562,487.85 | |

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 09/17) Amended Judgment in Criminal Case

|  | Judgment — Page | 8 | of | 8 |

DEFENDANT: HEATHER CARR
CASE NUMBER: 1:16-cr-00054-WJM-01

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

    The special assessment and restitution obligation are due immediately. Any unpaid monetary obligations upon release from incarceration shall be paid in monthly installment payments during the term of supervised release. The monthly installment payment will be calculated as at least 10 percent of the defendant's gross monthly income.

    Within 15 days of release from custody, the defendant shall meet with the probation officer to develop a plan for the payment of the unpaid portion of her financial obligations under the court's judgment. This plan will be based upon the defendant's income and expenses. The Plan will be forwarded to the Court for review and approval.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒ Joint and Several

    Heather Carr, 16-cr-00054-WJM-01, $562,487.85; Trammel Thomas, 16-cr-00054-WJM-02, $562,487.85; Mercedes Diaz, 16-cr-00054-WJM-03, $562,487.85; and Marcelle Green, 16-cr-00054-WJM-04, $562,487.85..

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 5, 2018**

Elisabeth A. Shumaker
Clerk of Court

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HEATHER CARR,

    Defendant - Appellant.

No. 18-1021
(D.C. No. 1:16-CR-00054-WJM-1)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **O'BRIEN**, Circuit Judges.
_____

Heather Carr accepted a plea agreement and pleaded guilty to one count of

conspiracy to defraud the government with respect to claims, in violation of

18 U.S.C. § 286.  She was sentenced to 57 months of imprisonment.  Although the

plea agreement contained an appeal waiver, Ms. Carr appealed.  The government

moves to enforce the appeal waiver under *United States v. Hahn*, 359 F.3d 1315,

1328 (10th Cir. 2004) (en banc) (per curiam).

_____

[*] This panel has determined unanimously that oral argument would not
materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.
This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Under *Hahn*, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. We need not address a *Hahn* factor that the appellant does not contest. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).

In her response to the government's motion, Ms. Carr, through counsel, concedes that her appeal waiver is enforceable as to this direct appeal, and she does not contest any of the *Hahn* factors. Accordingly, the motion to enforce is granted, and this matter is terminated.

Entered for the Court
Per Curiam

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

April 05, 2018

Chris Wolpert
Chief Deputy Clerk

Mrs. Mary V. Butterton
Mr. O. Dean Sanderford
Office of the Federal Public Defender
Districts of Colorado and Wyoming
633 17th Street, Suite 1000
Denver, CO 80202

**RE:**    **18-1021, United States v. Carr**
          Dist/Ag docket: 1:16-CR-00054-WJM-1

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is
permitted unless the court enters an order requiring a response. If requesting rehearing en
banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying
all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th
Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker
Clerk of the Court

cc:      Daniel E. Burrows
            Paul Farley
            Bryan David Fields
            Beth N. Gibson
            Martha A. Paluch


EAS/sds

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JUN 29 2018**

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

(To be supplied by the court)

UNITED STATES OF AMERICA,

v.

_Heather E. Carr_____ , Movant.

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
**PURSUANT TO 28 U.S.C. § 2255**

**A. CONVICTION UNDER ATTACK**

1.  Name and location of the court that entered the judgment of conviction you are attacking: _U.S. District Court - Denver, CO_

2.  Date the judgment of conviction was entered: _January 10th, 2018_

3.  Case number: _1:16-CR-00054-WJM-1_

4.  Describe the type and length of sentence imposed: _Incarceration: 57 months w/ 3 years supervised release_

5.  Are you serving a sentence that was imposed for a conviction other than the conviction you are attacking in this application?    ___ Yes  ☒ No  (CHECK ONE)

(Rev. 4/15/02)

6. Nature of the offenses with which you were charged: (all counts)

Conspiracy to Defraud the Government
Wire Fraud
Mail Fraud
Aggravated Identity Theft

7. On which counts were you convicted?

Conspiracy to Defraud the Government

8. What was your plea?

24 months

9. If you pled guilty pursuant to a plea bargain, describe the terms and conditions of the plea:

Plead Guilty to Count 1 and I would get 24 months which was the mandatory minimum on the dropped Aggravated Identity Theft charge.

10. Kind of trial: ___ Jury ___ Judge only (CHECK ONE) N/a

11. Did you testify at trial? ___ Yes _X_ No (CHECK ONE)

## B. DIRECT APPEAL

1. Did you file a direct appeal? _X_ Yes ___ No (CHECK ONE)

2. Date and result of 10th Circuit decision (attach a copy of the decision if available):

April 5th 2018 - Dismissed

3. Date and result of any appeal to the United States Supreme Court (attach a copy of the decision if available):

N/a

4. List the claims raised on direct appeal:

None. My old lawyer Mary Butterton filed and my appeal lawyer Dean Sanderford just stated it was dismissed. Neither lawyers raised any claims. ?

(Rev. 4/15/02)                    2

5. If you did not file a direct appeal,
   explain why: _____

   _____

   _____

## C. POSTCONVICTION PROCEEDINGS

1. Other than a direct appeal, have you initiated any
   postconviction proceedings with respect to the
   judgment under attack?

   ___ Yes ⨉ No  (CHECK ONE)

2. If you answered "Yes" to question 1., give the following information for each
   postconviction proceeding.  If you have initiated more than one postconviction
   proceeding, use extra paper to list each proceeding using the format below.

   A. Name and location of court: _____

   B. Type of proceeding: _____

   C. Date filed: _____

   D. List the claims raised: _____

   _____

   _____

   E. Date and result (attach a copy of
      the decision if available): _____

   F. Did you appeal?                    ___ Yes ___ No  (CHECK ONE)

   G. Date and result on appeal (attach a
      copy of the decision if available): _____

(Rev. 4/15/02)                    3

3. If the instant application is a second or successive
application, have you obtained authorization from
the United States Court of Appeals for the Tenth
Circuit for this court to consider the application?     ___ Yes ___ No  (CHECK ONE)

*N/a*

## D. CLAIMS

State concisely every claim that you wish to assert in this action. For each claim, specify the
right that allegedly has been violated and state all supporting facts that you consider important.
You do not need to cite specific cases to support your claim(s). If you need additional space to
describe any claim or to assert additional claims, use extra paper to continue the claim or to
assert the additional claims. Identify clearly any additional pages that you attach to this form.

1. Did you raise on direct appeal or in a prior action
any of the claims you are asserting in this motion?     ___ Yes ✗ No  (CHECK ONE)

2. If you answered "Yes" to question 1., state which claims previously were raised and
explain why those claims are being raised again:

_____

_____

_____

3. If you answered "No" to question 1., state which claims were not raised previously and
explain why those claims were not raised on direct appeal or in a prior action:

*Ineffective assistance of counsel and prosecutorial*
*misconduct. These claims were not raised on direct*
*appeal because appeal lawyer said he could not on a direct*
*appeal.*

4. Claim One:     *Ineffective assistance of counsel*

A. Supporting facts: *My lawyer said my plea bargain was 24 months.*
*In my plea agreement it even says 24 months because that's the*
*mandatory minimum that would have applied to the aggravated identity*
*theft counts. (see email labeled Claim 1, email 1) Also my lawyer told me*
*There are a TON of legal terms in my plea agreement + don't read too much*
*into it (see email labeled Claim 1 email 2). My PSI interview was done*
*over 1 year prior to sentencing and I didn't recieve it until*
*the Wednesday after I was set to testify. I asked for PSI multiple times*
*(see Claim 1 email 3) + Did not recieve PSI until day after I was scheduled to*
*testify + it came in 4 points higher than I signed my plea for (23 vs. 2 points)*
*I asked my lawyer multiple times when no MOT was done regarding my*

(Rev. 4/15/02)

information about one of their witnesses Christine Duncan who stole my identity & did FAFSA's in my name & used my identity in a prior case in 2011 regarding her & Tramell Thomas. (See claim 1 email 4+5) My lawyer kept ignoring multiple requests about this & said she didn't know and Martha Paluch didn't want to include in an MOI. When I went to lawyers office the day of trial she still had no MOI, no explanation of why prosecution wouldn't document anything I had said about Christine Duncan and could not now guarantee or put in writing anything about 24 months guaranteed if I testify as she had promised for the past year. She said I was not supeena or required by law to testify and I could withdraw my guilty plea & go to trial on all charges. She said she would withdraw my guilty plea that Friday + be in touch. She then was forwarding blank messages from prosecutor + probation officers & I had text messages asking her if she was setting me up. That Friday she called + said if I don't go to trial the prosecutor would still honor the plea. She told me guideline ranges don't matter and we are still asking for 24 months (See claim 1, email 6) I would never have signed the plea ~~that she wouldn't~~ unless it was 24 months - this was the number I was told all along and I feel strongly the lawyer was working for the prosecution and not me.

5. Claim Two: ___Prosecutorial Misconduct___

A. Supporting Facts: The prosecution withheld information that I told them and did not document in MOI's or let defense know or put any record of specific information I told them. Bryan Fields yelled + threatened me saying he was "ripping up my deal and putting me in jail for a very long time." Prosecution was also aware that Christine Duncan stole my identity + prosecutors even spoke with her in multiple interviews & she said she had never met me + didn't know me. But prosecutors lied in a sentencing statement 1 week prior to my sentencing that I was involved in a prior case with Ms Duncan in 2011 where I refused to testify. I was not involved in that case + they knew this was a case where Ms Duncan stole my identity. (See email Claim) I had only 1 interview with prosecutors in 2016 and they did not contact me for 1 year until the month of Mr. Thomas trial. When they were asking me questions that they didn't like the answers to Mr Fields would yell + threaten me. My lawyer had to terminate the phone call + said he was being completely unprofessional + out of line. Mrs Paluch said she was so sorry I would never have to deal with him again & it was inappropriate for him to threaten me. The next call he was on and they asked me my understanding of the plea + I said 24 months and Mr. Fields laughed. He said well we will see how you answer the questions on the stand. Mrs Paluch said I can't say anything about Christine Duncan because there were too many "landmines in this case + we sure don't want a mistrial do we Heather". She said I couldn't mention anything about prostitution charge, Tramell ever being in jail or Christine doing Fafsa's in my name. It was very strange, made me suspicious of them of why they were preventing me from giving important information that I'm sure would be brought up in trial & was important. (See emails labeled Claim 2)

(Rev. 4/15/02)

The prosecutors also put in court documents they want to "punish me" for refusing to testify.

6. Claim Three: _Conviction obtained by the Unconstitutional failure of the prosecution to disclose evidence favorable to the defendant._

(see email labeled Claim 3)

A. Supporting facts:

The prosecution was aware that one of their witnesses - Christine Duncan stole my identity in 2011 and was using my name and date of birth in a prostitution arrest in 2011. She had submitted a FAFSA in my name in 2010 from the same IP address she admitted she submitted her own FAFSA from. She gave statements to prosecutors that she did not know who I was & had never met me but the prosecution knowingly and maliciously lied in a sentencing statement 1 week prior to my sentencing that I was involved in Ms. Duncan & Mr. Thomas' 2011 arrest and I refused to testify in that case. I was not in any way involved in that case & was in AZ with a 3 week old newborn. I had never ever seen Ms. Duncan before much less be in a hotel room in CO with her. The prosecution was fully aware of this, did not disclose this in any MOI's, knew Ms. Duncan stole my identity + submitted FAFSA's. The prosecution gave false information to sway the judge's sentencing & failed to disclose numerous facts & evidence.

7. Claim Four: _Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with the understanding of the nature of the charge or consequences of the plea._

A. Supporting facts:

My lawyer assured me multiple times that by doing the plea agreement & not going to trial that I would receive a 24 month sentence plus 1 year probation. She said the prosecution would ask for 31 months and the judge usually goes with a sentence in between but wouldn't go below 24 months. I never heard from the prosecution for 1 year after I signed my plea agreement they only contacted me the month of Ms. Thomas' trial. 1 week before trial they said they were asking me my understanding of the plea on the stand and I said 24 months and they said "well it just depends how you do" - this came sarcastically from the **@** Bryan Fields who 1 week prior told me he was "ripping up my deal & sending me to jail for a very long time". I would have never signed a deal with no promised numbers and the possibility of a 57 month sentence and 3 years probation. My lawyer on multiple occasions told me that guideline ranges are just suggestions & not important + points don't matter & the judge will go with own suggestions because 24 months is an appropriate sentence in this case due to me having no criminal history & giving them the information they needed on who was doing all of the FAFSA's - Marcelle Green. That's why there was a superseding indictment for her.

(Rev. 4/15/02)

(see email labeled Claim 4, email 6

148

## E. OTHER CONVICTIONS

1. Do you have any concurrent or future sentence(s)
   to be served after you complete the sentence
   imposed as a result of the conviction under attack?

   ___ Yes  ☒ No  (CHECK ONE)

2. If you answered "Yes" to question 1., give the following information for each sentence:

   A. Name and location of the court: _____

   B. Case number: _____

   C. Type and length of sentence: _____

## F. LEGAL REPRESENTATION

1. List the names and address, if known, of each attorney who has represented you in
   proceedings regarding the conviction under attack:

   A. Preliminary hearing: _Mary Butterton_ _Denver Federal Public Defender 1633 17th St #1000 Denver, CO 80202_

   B. Arraignment and plea: _Mary Butterton_

   C. Trial: _4a_

   D. Sentencing: _Mary Butterton_

   E. Appeal: _Dean Sanderford_ _Denver Federal Public Defender 1633 17th St #1000 Denver, CO 80202_

   F. Postconviction proceedings: _____

   G. Appeal from any adverse ruling
      in postconviction proceedings: _____

## G. REQUEST FOR RELIEF

(Rev. 4/15/02)                    7

I request the following relief: To have sentence vacated and be resentenced with a reduction in sentence. I was sentenced the maximum time in the guideline range of my plea and have never been in trouble before this charge. My children are now in the foster care system in the State of Arizona and I will lose all parental rights and they will be adopted if myself or their father are not out in 24 months. Any possible home confinement sentence or any sentence over 24 months if that is possible. Anything less than 57 months. My kids are my life and I can't lose them. My lawyer stated all along I would get 24 months. Thank you for your consideration.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the movant in this action, that I have read this motion, and that the information in this motion is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___June 21st, 2018___
(Date)

_____
(Movant's Original Signature)

Movant's prisoner identification number and complete mailing address:

Heather Carr #89751-083

Phoenix Satellite Camp

37930 N. 45th Ave

Phoenix, AZ 85086

(Rev. 4/15/02)                8



Fw: Tramell's sentencing statement falsely accused me on 12/29 prior to my sentencing date - need this added to appeal

That Good Ish
to:
Dean Sanderford
02/08/2018 12:19 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>



**From:** That Good Ish
**Sent:** Sunday, January 14, 2018 4:59 PM
**To:** Mary Butterton
**Subject:** Tramell's sentencing statement falsely accused me on 12/29 prior to my sentencing date - need this added to appeal

I'm so mad right now. So I'm reading this sentencing statement of Tramell's on Pacer dated 12/29 - 1 WEEK BEFORE I get sentenced. So the judge obviously read this and the prosecutor puts this false bullshit in his head and this may have factored in his unreasonable decision on my sentencing. I know you don't listen to half the shit I say but PLEASE listen to this and actually follow up on this. There is merit to what I'm saying so listen...

On page 10 of his sentencing statement it states:

"Two other women were found by CSPD in the hotel room next to Victim 2's. One of those women was Heather Carr. Just as in this case, Carr refused to testify against the defendant. Victim 2, and others, also refused to testify. As a result, the charges against the defendant were dropped."

As I have REPEATEDLY stated to you and to the prosecutors - I WAS NOT THERE. Christine Duncan stole my identity! I was at home in Arizona with a newborn and had no idea that shit even happened until he was arrested!!! If you read the detectives description of "Heather Carr" it is clearly not me (by over 100 pounds and several inches in height) and the detectives also stated that they verified the girls in the hotel were the same girls off the backpage ad - which they have pictures of!! Clearly it's not me! PLEASE CALL THE DETECTIVES TO VERIFY THIS and show them a picture of me so we can clear this up once and for all and also please ask them what was used to verify Heather Carr - was it verbal from the girl with Christine or did they have an ID in my name? And the prosecutor said "just as in this case Carr refused to testify" - I never was even involved in that case in any way shape or form and never asked to testify, never was contacted. So the prosecutor basically just put it in the judges head that I refused to testify before? NEVER have I EVER been in any position to testify EVER before in my life. I never was even contacted regarding that case or involved in that case!!!!! And I didn't refuse to testify for this student loan case - I did not show up due to their prosecutor's threats.

And on a side note - Christine is a damn stalker. I could go all the way into it - but currently right now and at the time of her testimony she LIVES with Tramell's ex-business partner who she made a point to

find when stalking me and him trying to track us down and she hustled this guy into giving him information about us. All the bullshit she said in her MOI's is bullshit. Even in her MOI Christine supposedly said she had no idea who the baby mom of Tramell is - then how the hell are they accusing me of being in a damn hotel with her refusing to testify with her? They are continuously lying and it's bullshit they put that in the statement prior to my sentencing. IT'S NOT TRUE and I told them this!!! It would be easy to verify with the police officers there! The way they are lying is really starting to piss me off and is going to be a whole other issue. They stopped me from saying anything about Christine and never did an new MOI with the new information I gave them on that phone call which was really · strange at the time but now looking back I can see why. They play dirty.

AND it was also strange the probation officer doing my PSR had not contacted me for A YEAR but all of a sudden emailed the prosecutor the day before I was set to testify (instead of emailing my lawyer) and then mysteriously the day after I was supposed to testify A PSR was filed recommending 27 points.

There are several issues here and I look forward to hearing about the appeal and various motions. I will contact the detective in the case from 2011 myself if you refuse too - but this NEEDS to be verified that it wasn't me as I stated to the prosecutor multiple times and this needs to be amended and off the damn record because it irritates my SOUL because IT WASN'T ME I WAS NOT THERE - CHRISTINE STOLE MY IDENTITY. I was not there and now a judge read that and took that into consideration like it was a pattern of mine not testifying. And I know no one cared but Christine submitted Fafsa's in my name - did any of this shit make it in MOI's? Does anyone hear me when I talk. It's so irritating.

PLEASE follow up, fix this, file corrections - whatever you gotta do. Because this is bullshit.



Fw: Carr
That Good Ish
to:
Dean Sanderford
02/08/2018 12:30 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>



1 Attachment



Carr Plea Agreement 11 4 2016.pdf

My lawyer telling me that there are a TON of legal terms so don't look too much into my plea agreement!!!!

**From:** Mary Butterton <Mary_Butterton@fd.org>
**Sent:** Monday, November 7, 2016 5:43 PM
**To:** That Good Ish
**Cc:** Jessica Leto
**Subject:** Fw: Carr

Hi Heather,

Please find attached the proposed plea agreement from the prosecutors. There are a TON of legal terms in there so don't read too much into until we fully go over it. I'm traveling a bit over the next few days- are you available to talk tomorrow at 3pm or Wednesday at 4pm?

Let us know!

Thanks,
Mary

Mary V. Butterton
Assistant Federal Public Defender, Trial Division
Office of the Federal Public Defender, District of Colorado
633 17th Street, Suite 1000
Denver, CO 80202
(303) 294-7002
mary_butterton@fd.org

—— Forwarded by Mary Butterton/COF/10/FDO on 11/07/2016 03:42 PM ——

From: "Paluch, Martha (USACO)" <Martha.Paluch@usdoj.gov>
To: "Mary Butterton (Mary_Butterton@fd.org)" <Mary_Butterton@fd.org>
Cc: "Gibson, Beth (USACO)" <Beth.Gibson@usdoj.gov>
Date: 11/04/2016 03:32 PM
Subject: Carr

Talk to you soon, Mary.

*(See attached file: Carr Plea Agreement 11 4 2016.pdf)*



Fw: plea agreement updated
That Good Ish
to:
Dean Sanderford
02/08/2018 12:34 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>
History: This message has been replied to.



My understanding of the plea and communication with my lawyer about the time in my plea

---

From: That Good Ish
Sent: Monday, November 14, 2016 10:12 PM
To: Mary Butterton
Subject: Re: plea agreement updated

LMAO. ok cool :)

On Nov 14, 2016, at 10:09 PM, Mary Butterton <Mary_Butterton@fd.org> wrote:

November 29 right after thanksgiving. Don't worry about changing it- I see no need to move it up. I told them to f* off- in a totally professional lawyer way of course 🙂

Sent from my iPhone

On Nov 14, 2016, at 7:51 PM, That Good Ish <Heather@thatgoodish.com> wrote:

I did book it but it's Southwest so they let me change dates....but it may be more expensive because of the holiday week that falls in - they want November 29th or December 29th?

On Nov 14, 2016, at 4:34 PM, Mary Butterton <Mary_Butterton@fd.org> wrote:

Hi Heather,

I'm working to draft you a long-form answer to your questions (I'm at a seminar so I'm not in the office this week) but quick question- Do you already have a flight to be in court on December 5? The US Atty is asking if we can move it to the 29th. I'm inclined to tell them to take a hike, but I'll leave that up to you.

Mary V. Butterton
Assistant Federal Public Defender, Trial Division
Office of the Federal Public Defender, District of Colorado
633 17th Street, Suite 1000
Denver, CO 80202
(303) 294-7002
mary_butterton@fd.org

Show details for That Good Ish —11/10/2016 12:22:07 PM—Hi I just wanted to make sure that the part that reads "the government agrees not to file additional

That Good Ish —11/10/2016 12:22:07 PM—Hi I just wanted to make sure that the part that reads "the government agrees not to file additional

Hide details for That Good Ish —11/10/2016 12:22:07 PM—Hi I just wanted to make sure that the part that reads "the government agrees not to file additional

hat Good Ish —11/10/2016 12:22:07 PM—Hi I just wanted to make sure that the part that reads "the government agrees not to file additional

From: That Good Ish <Heather@thatgoodish.com>
To: Mary Butterton <Mary_Butterton@fd.org>
Date: 11/10/2016 12:22 PM
Subject: Re: plea agreement updated

---

Hi I just wanted to make sure that the part that reads "the government agrees not to file additional charges in the District of Colorado" doesn't mean that they are going to file in any other state where there were student loans. So it doesn't mean they are going to recharge in Arizona?

And the part that says - The defendant agrees to furnish to the government all documents and other material that may be relevant to the investigation into fraud upon the federal government and that are in the defendant's possession or control.  What are they talking about? What am I supposed to be giving them?

And will I have to turn in my car or anything like a forfeit situation?

And just to be clear we are asking for 24 months plus 1 year probation and I could get up to 31 months most likely if the judge goes with their recommendation - right? So in theory if the judge went for 24 months I would do 20 months on good time. Would I get out any earlier to a halfway house at all?



Fw: Activity in Case 1:16-cr-00054-WJM USA v. Carr et al Order on Motion to Continue
That Good Ish
to:
Dean Sanderford
02/08/2018 12:27 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>

Me asking where PSR was - didn't get it until day after I was set to testify (at 27 points)

---

**From:** That Good Ish
**Sent:** Sunday, March 5, 2017 5:34 PM
**To:** Mary Butterton
**Subject:** Re: Activity in Case 1:16-cr-00054-WJM USA v. Carr et al Order on Motion to Continue

LOL ok…. and no PSR yet? Do you think that's weird?

On Mar 3, 2017, at 2:41 PM, Mary Butterton <Mary_Butterton@fd.org> wrote:

Well we are all moved back until September!

Mary V. Butterton
Assistant Federal Public Defender, Trial Division
Office of the Federal Public Defender, District of Colorado
633 17th Street, Suite 1000
Denver, CO 80202
(303) 294-7002
mary_butterton@fd.org

----- Forwarded by Mary Butterton/COF/10/FDO on 03/03/2017 12:41 PM -----

From: COD_ENotice@cod.uscourts.gov
To: COD_NEF@cod.uscourts.gov
Date: 03/03/2017 12:08 PM
Subject: Activity in Case 1:16-cr-00054-WJM USA v. Carr et al Order on Motion to Continue

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended. ***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**



Fw: Activity in Case 1:16-cr-00054-WJM USA v. Carr et al Order on Motion to Suppress
That Good Ish
to:
Dean Sanderford
02/08/2018 12:25 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>

Me referencing prosecutor refusing to hear anything about Christine Duncan that I was trying to tell them...

---

**From:** That Good Ish
**Sent:** Wednesday, November 15, 2017 11:18 PM
**To:** Mary Butterton
**Cc:** Jessica Leto
**Subject:** Re: Activity in Case 1:16-cr-00054-WJM USA v. Carr et al Order on Motion to Suppress

Monday is fine... could you please also pull the forensic report they have me listed on too. I'm trying to figure out what he's doing because the lettered exhibits are requested by defense right? Ill figure it out I just have to see what he's thinking.

And on our last phone call Marty didn't seem like she wanted to hear anything about Christine so I want to make sure that's not going to be a problem if I get cross examined on stuff having to do with her. I don't know why he is calling his old lawyer as a witness but I think it may have to do with Christine trying to contact her and then me asking about if a letter notorized by Christine would help dismiss his old case and then her getting that letter? I don't know... ? Its just weird that he's calling her.

---

**From:** Mary Butterton <Mary_Butterton@fd.org>
**Sent:** Wednesday, November 15, 2017 9:56:11 PM
**To:** That Good Ish
**Cc:** Jessica Leto
**Subject:** Re: Activity in Case 1:16-cr-00054-WJM USA v. Carr et al Order on Motion to Suppress

Hey Heather-

We are in the process of pulling all of these exhibits for you - i should be able to get them to you by Friday. I want to look through them too, obviously, so we can prep you to answer any and every question they could throw at you!

Marty wants one more phone prep call. Are you around Monday at 5pm your time?

Mary V. Butterton
Assistant Federal Public Defender, Trial Division
Office of the Federal Public Defender, District of Colorado
633 17th Street, Suite 1000
Denver, CO 80202



Fw: question
That Good Ish
to:
Dean Sanderford
02/08/2018 12:24 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>

My lawyer never responded to this

---

**From:** That Good Ish
**Sent:** Wednesday, November 22, 2017 6:00 PM
**To:** Mary Butterton
**Subject:** Re: question

And I had a question whenever you have time .. why is there no updated MOI with the new info about Christine and why did Marty not even want to hear anything abut that? Seems like a reason "they could rip up my deal and put me in jail for a very long time" after they get me to testify.

---

**From:** That Good Ish
**Sent:** Wednesday, November 22, 2017 5:53:19 PM
**To:** Mary Butterton
**Subject:** Re: question

?? If he was using more than one username on his computer in his office then that's news to me. I have no idea? I just know he had a computer in his office - all this multiple username stuff I don't even understand or would even know how to do?

---

**From:** Mary Butterton <Mary_Butterton@fd.org>
**Sent:** Wednesday, November 22, 2017 5:10:49 PM
**To:** That Good Ish
**Subject:** Fwd: question

Hi heather, see below!


Sent from my iPhone

Begin forwarded message:

> **From:** "Paluch, Martha (USACO)" <Martha.Paluch@usdoj.gov>
> **Date:** November 22, 2017 at 1:26:10 PM CST
> **To:** "Mary Butterton (Mary_Butterton@fd.org)" <Mary_Butterton@fd.org>
> **Subject:** question
>
> Mary – all of the searches on the Room J computer – which was Thomas's office – were done under the Smart username. None of the searches were done under the King username. We think defense is going to argue Thomas's username was King. Only way they can get that in is through Carr's testimony. Can you ask her about these usernames and whose they are? Thanks much



Fw: Heather Carr
That Good Ish
to:
Dean Sanderford
02/08/2018 12:23 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>

Day of trial my lawyer just forwarding blank messages from prosecutor where PSR PO contacted prosecutor looking for me

---

**From:** That Good Ish
**Sent:** Tuesday, November 28, 2017 3:51 AM
**To:** Mary Butterton
**Subject:** Re: Heather Carr

He called Friday afternoon I didn't even have a missed call or would even know the number I haven't talked to him in a year. I actually saw a voicemail from him and called back Saturday and left a message. He called me back yesterday at 10:10 am from his office and said to call back - I was on a plane so I called him back right when I told you about it - I called him back at 1:28 p.m. He hasn't called back? Mary what's going on???

---

**From:** That Good Ish
**Sent:** Tuesday, November 28, 2017 12:45:33 AM
**To:** Mary Butterton
**Subject:** Re: Heather Carr

Sooooo what's going on?

---

**From:** Mary Butterton <Mary_Butterton@fd.org>
**Sent:** Monday, November 27, 2017 9:44:26 PM
**To:** That Good Ish
**Subject:** Fwd: Heather Carr


Sent from my iPhone

Begin forwarded message:

> **From:** "Paluch, Martha (USACO)" <Martha.Paluch@usdoj.gov>
> **Date:** November 27, 2017 at 7:41:59 PM MST
> **To:** "Matthew_Gill@cod.uscourts.gov" <Matthew_Gill@cod.uscourts.gov>
> **Cc:** "Mary Butterton" <Mary_Butterton@fd.org>
> **Subject: Re: Heather Carr**

Mary please see below

Sent from my iPhone

On Nov 27, 2017, at 10:35 AM,
"Matthew_Gill@cod.uscourts.gov<mailto:Matthew_Gill@cod.uscourts.gov>"
<Matthew_Gill@cod.uscourts.gov<mailto:Matthew_Gill@cod.uscourts.gov>> wrote:

Hey Marty, I know you are super busy with the trial, but if you happen to see this, would
you mind telling Carr to give me a call asap?  I have been trying to get a hold of her since
last week.  720-589-0107.  It's urgent.

Thanks and good luck!


<mime-attachment.gif>



**Matthew J. Gill**
**U.S. Probation Officer**
District of Colorado
1929 Stout Street, Suite C-120
Denver, Colorado  80294-0101
Phone: 303-335-2499
Fax: 303-335-2424



Fw: PSR objection
That Good Ish
to:
Dean Sanderford
02/08/2018 12:20 AM
Hide Details
From: That Good Ish <Heather@thatgoodish.com>
To: Dean Sanderford <Dean_Sanderford@fd.org>



**From:** That Good Ish
**Sent:** Friday, December 15, 2017 10:26 AM
**To:** Mary Butterton
**Cc:** Jessica Leto
**Subject:** Re: PSR objection

Oh ok - I didn't know there was another sentencing statement that was due I thought this was the final thing for the judge to look at. And I still need to know why you said I can't write letters to the judge and I need to know if my kids are allowed to? I do need him to know that everything changed after Bryan threatened me as well as some other things that I need to say. So I would love to write a letter but if I really can't then I will save it for sentencing.

And I will be available whenever you call - talk to you soon

**From:** Mary Butterton <Mary_Butterton@fd.org>
**Sent:** Friday, December 15, 2017 9:36:10 AM
**To:** That Good Ish
**Cc:** Jessica Leto
**Subject:** Re: PSR objection

Hi Heather,

A couple of points of clarification.

1. The PSR is just our response to that report, it is NOT our final sentencing request (which is due next Thursday). You plea agreement did calculate your range to be 46 to 51. The PSR (written by the probation officer, not the government) added two extra enhancements that the government didn't originally anticipate: +2 for more than 10 victims, and +2 for you being in a position of trust. I simply don't have any arguments that the +10 victims doesn't apply. I hoped they wouldn't catch it, they did, and there's no reasonable argument against it. The "position of trust" enhancement, however, does have some solid caselaw in your favor, which is why i objected to that (among other things) in our filing yesterday- which was filed.

2. So: the advisory guideline range (hopefully, if the judge sustains our objection to "position of trust") will be 57 to 71 months. But frankly, it's less important what the range is, because we are going to be asking for well under that range anyway (24 months). The range, whether it's 46 to 51 or 57 to 71 or 70 to 87 is advisory -meaning, it's a suggestion, but not binding on the judge. The sentencing statement will include the arguments re marcy, the 5K, your kids, and all the reasons that 24 months is an appropriate sentence.

3. Call today- Trammel's attorneys have contacted me and want to interview you. They heard (presumably

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1
(Civil Action No. 18-cv-01681-WJM)

**UNITED STATES OF AMERICA**,

     Plaintiff-Respondent,

v.

**HEATHER CARR,**

     Defendant-Movant.

---

## RESPONSE TO MOTION TO VACATE,
## SET ASIDE, OR CORRECT SENTENCE

Pursuant to the Court's Order, the government responds to Carr's motion for relief under 28 U.S.C. § 2255.  Doc. 423.  The motion should be denied.

### STATED GROUNDS FOR RELIEF

The Motion to Vacate presents four claims:  (1) Carr's trial counsel was ineffective for leading Carr to sign a Plea Agreement permitting Carr to receive a sentence greater than 24 months; (2) prosecutors "withheld information [Carr] told them" and "lied in a sentencing statement" regarding Carr's previous criminal activity; (3) relatedly, "the prosecution knowingly and maliciously lied in a sentencing statement" that Carr was involved in a 2011 arrest relating to prostitution; and (4) she did not knowingly and

1

voluntarily enter into the Plea Agreement, because Carr "would have <u>never</u> signed a deal with no promised number and the possibility of a 57 month sentence[.]" Doc. 423 at 4-6 (emphasis in original)

For relief, Carr seeks to be resentenced to a term of 24 months. She does not seek to have her Plea Agreement set aside, nor does she wish to go to trial on the charges originally presented in the Indictment. Doc. 423 at 8.

## RULE 5 STATEMENT

Pursuant to Rule 5(b) of the Rules Governing § 2255 Proceedings, the government states that (1) it is aware of no other post-conviction motion filed by the Defendant; (2) no evidentiary hearing has been held on the allegations made in the Motion to Vacate; and (3) the Motion is timely.

A § 2255 motion ordinarily must be filed within one year after judgment becomes final. 28 U.S.C. § 2255(f). The Amended Judgment was entered on January 18, 2018. Doc. 313. Carr filed a timely Notice of Appeal, Doc. 298, but the Court of Appeals subsequently dismissed the case on the basis of the appellate waiver in Carr's Plea Agreement. *See United States v. Carr*, No. 18-1021 (10th Cir. Apr. 5, 2018) (Attachment C). Carr filed the instant motion on June 29, 2018. Doc. 423.

"Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). The circuit courts squarely addressing the question have concluded that *Clay* applies even where a defendant's

2

direct appeal was dismissed based upon an appellate waiver. *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009) (citing *Clay*); *Latham v. United States*, 527 F.3d 651, 653 (7th Cir. 2008) (following *Clay*); *see also Stewart v. United States*, 646 F.3d 856, 857 (11th Cir. 2011) (concluding no finality until the time to petition for certiorari had expired). *Cf. Mark v. Thaler*, 646 F.3d 191, 196 (5th Cir. 2011) (holding that state prisoner's time runs from the end of the time permitted to seek discretionary review in state court).

The Tenth Circuit has not definitively ruled upon the question, but two panels seem to have assumed without deciding that finality occurs earlier, when an appeal is dismissed. *See United States v. Rojas-Alvarado*, 707 F. App'x 525, 526 (10th Cir. 2017) (unpublished); *United States v. Shine*, 173 F.3d 865 (Table), 1999 WL 157433, *2 (10th Cir. Mar. 23, 1999) (unpublished). But under either approach, Carr's § 2255 motion is timely.

## BACKGROUND

From August 2010 until October 2012, Carr and her co-conspirators, Mercedes Diaz, Marcelle Green, and Tramel Thomas, conspired to defraud the U.S. Department of Education. Doc. 94 at 8. With the assistance of her co-conspirators, Carr accessed databases through her employment to obtain names, birth dates, and social security numbers of more than 150 inmates. *Id.* at 9-11. Carr and her co-conspirators then used this information to submit more than 150 false Free Applications for Federal Student Aid (FASFA) to the Department, seeking approximately $1.3 million in federal financial aid funds. *Id.* The conspirators then recruited people to receive mail in the names of the inmates, while others collected the mail, which included debit cards loaded with financial aid.

3

*Id.* at 9-10. The Department disbursed $562,487.85 as a result of the false claims, of which Carr and her co-conspirators received $418,672.05. *Id.* at 11.

Carr entered into a Plea Agreement, in which she agreed to: (1) plead guilty to one count of conspiracy to defraud the government, in violation of 18 U.S.C. § 286; (2) waive appellate and collateral review, with certain exceptions; (3) pay restitution; (4) admit the forfeiture allegation in the Indictment; (5) provide complete and truthful information; and (6) not seek a sentence of less than 24 months. Doc. 94 at 1-2.

With respect to the disclosure of information, Carr committed to fully cooperating with the government. Doc. 94 at 3. In particular, she agreed "to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government," and to "fully and truthfully disclose all information with respect to the activities of herself and others concerning all matters about which the government inquires." *Id.* at 4. "Moreover, the defendant shall not be entitled to withdraw her plea if the government determines that she has not fully cooperated." *Id.* at 5. And, "[t]he government has not promised a reduction or the amount of any reduction. Again, the defendant understands she will not receive any reduction if she refuses to provide complete and true information to the government and to testify truthfully in any proceeding." *Id.* at 6. In return, the government agreed to dismiss 28 other felony counts against Carr, and provisionally agreed to recommend the maximum reduction for acceptance of responsibility. Doc. 94 at 2.

The Plea Agreement noted that the statutory penalty for a violation of 18 U.S.C. § 286 is not more than 10 years of imprisonment, while the offense level under the

Sentencing Guidelines was estimated to be 26, with the possibility of a reduction of up to three additional levels to 23. Doc. 94 at 7, 12. With a total offense level of 23 and a criminal history category of I, the estimated sentencing range was 46 to 57 months. *Id.* at 13. But "[t]he parties recognize that any sentence requested by the government will be a recommendation to the Court and that the defendant's ultimate sentence will rest solely within the discretion of the sentencing Court." *Id.* at 6.

Carr agreed to testify on the second day of the trial of her co-conspirator Tramel Thomas. Tr., Sentencing Hearing (Jan. 4, 2018) at 46 (Attachment B). But when prosecutors returned to their office after the first day, they learned that she had suddenly decided *not* to testify. *Id.* at 23. The Court found that "Carr received all the benefits of the plea agreement and at the last possible moment she reneged on her obligation to testify truthfully at Mr. Thomas' jury trial. And that by doing so, she inflicted the maximum amount of potential harm to the Government's case against Mr. Thomas." *Id.* at 48. The Court explained, "reneging on one's promise is a basis of punishment independent of the assertion of the privilege not to testify and is a basis on which the sentence legitimately may be augmented." *Id.* (citing *United States v. Turner*, 864 F.2d 1394, 1399 (7th Cir. 1989)).

In addition to the offense level of 23 estimated in the Plea Agreement, the probation office believed that two additional enhancements applied. First, two levels were added under U.S.S.G. § 3A1.1(b)(2), because the offense involved a large number of vulnerable victims. Doc. 222 at 11. The defense did not object to this because there was "no reasonable argument against it." Doc. 423 at 18. Second, two levels were added under U.S.S.G. § 3B1.3

5

(abuse of a position of public or private trust, or use of a special skill). Doc. 222 at 11. Carr objected to this enhancement, saying that the proper offense level was 25, Doc. 243, and the Court sustained that objection. Tr., Sentencing Hearing (Jan. 4, 2018) at 7.

With a total offense level of 25 and a criminal history category of I, the result was an advisory guideline sentencing range of 57 to 71 months. *Id.* at 9. The Court sentenced Carr at the bottom of the range. *Id.* at 54, 57; Doc. 313.

## ARGUMENT

### I. CARR PROCEDURALLY DEFAULTED HER CHALLENGE TO HER PLEA AGREEMENT.

Carr claims that her guilty plea "was unlawfully induced or not made voluntarily with the understanding of the nature of the change or consequences of the plea." Doc. 423 at 6. She insists that she "would have <u>never</u> signed a deal with no promised number and the possibility of a 57 month sentence and 3 years probation." *Id.* (emphasis in original). Such assertions are both procedurally defaulted and belied by the record.

Carr has never before suggested her guilty plea was not knowing and voluntary. But "a § 2255 petition is not an appropriate vehicle to raise issues that should have been raised on direct appeal." *United States v. Bolden*, 472 F.3d 750, 751 (10th Cir. 2006) (citation omitted). *See also Bousley v. United States*, 523 U.S. 614, 621 (1998) (relief under § 2255 "will not be allowed to do service for an appeal"). "Not having raised such a claim on direct appeal, it is procedurally defaulted unless [the defendant] can show cause and prejudice, or a fundamental miscarriage of justice." *United States v. Tisdale*, 127 F. App'x 438, 440 (10th Cir.

6

2005) (unpublished) (citing *Bousley*, 523 U.S. at 621-22). In this regard, that her appeal was dismissed on account of the appellate waiver in her Plea Agreement is of no moment. *See Ellis v. Mullin*, 56 F. App'x 858, 864 (10th Cir. 2003) (unpublished).

Carr does not argue cause and prejudice, but the record forecloses any claim that either her attorney or the Court misled her regarding her potential sentence under the Plea Agreement. The document itself began by noting that the maximum statutory sentence was 10 years. Doc. 94 at 7. Then it estimated the advisory Guideline range to be 46-57 months, but cautioned that, "in order to be as accurate as possible, … the estimated offense level could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI)." *Id.* at 13. Finally, the agreement stressed that, "[t]here are no other promises, agreements (or 'side agreements'), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement." *Id.* at 14.

Carr's Statement in Advance of Plea reiterated her understanding that she could receive up to 10 years to imprisonment. Doc. 95 at 2. She averred that, "[n]o agreements have been reached and no representations have been made to me as to what the sentence in this case will be, except those which are explicitly detailed in the document entitled 'Plea Agreement' which I and the government have signed." *Id.* at 5. She elaborated that "no promises and no threats of any sort have been made to me by anyone to induce me or to persuade me to enter my plea(s) in this case", and "[n]o one has promised me that I will

receive probation, home confinement or any other specific sentence desired by me because of my plea(s) of guilty." *Id.* at 6.

Carr also asserted that "I have had sufficient opportunity to discuss this case and my intended plea(s) of guilty with my attorney", "I am satisfied with my attorney", and "I believe that I have been represented effectively and competently in this case." *Id.* at 7. Carr summarized that her "decision to enter the plea(s) of guilty is made after full and careful thought, with the advice of my attorney, and with full understanding of my rights, the facts and circumstances of the case, and the potential consequences of my plea(s) of guilty." *Id.*

At the Change of Plea hearing, the Court thoroughly explained the Plea Agreement to Carr, who affirmed that she well understood the document and its consequences:

> THE COURT: … Ms. Carr, do you understand that I can impose a sentence that is more severe or less severe than that set forth in your plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that if your – even if you're disappointed with the sentence that I do impose, that will not be a basis for you to withdraw your guilty plea?
>
> THE DEFENDANT: Yes, sir.
>
> * * *
>
> THE COURT: Having in mind all that we have discussed regarding your plea of guilty, your rights you will be giving up, and the maximum sentence you may receive, do you still wish to plead guilty?
>
> THE DEFENDANT: Yes, sir.

Tr., Change of Plea Hearing (Dec. 5, 2016) at 18, 20 (Attachment A).

8

When a defendant pleads guilty, her "statements on the record, 'as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.'" *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). *See also United States v. Gauger*, 534 F. App'x 758, 762 (10th Cir. 2013) (unpublished) ("At the plea hearing the court questioned Mr. Gauger as to his willingness to enter his plea and had the opportunity to observe his demeanor."). Thus, the Supreme Court views after-the-fact claims of lack of understanding with a jaundiced eye. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Here, the Court ensured that Carr's attorney had fully reviewed and discussed her plea, answering all of her questions. Tr., Change of Plea Hearing (Dec. 5, 2016) at 8-9. Carr told the Court she was "absolutely" satisfied with her attorney and that she freely and voluntarily signed the Plea Agreement. *Id.* at 8-9, 20.

Based upon its inquiry and Carr's own representations, the Court found and concluded that "the defendant's fully competent of entering an informed plea and she's aware of the nature of the charge and the consequences of that plea." Tr., Change of Plea Hearing (Dec. 5, 2016) at 21. Specifically, the Court found that Carr had read and understood each term of her plea agreement, and knowingly and voluntarily signed both that agreement and the Statement in Advance of Plea. *Id.* at 22. Furthermore:

The defendant's guilty plea is not the result of mistake or coercion. The defendant's guilty plea is not the result of any representations or promises made to her by anyone except as to those matters disclosed in open court or included in her plea agreement. The defendant understands each of her legal rights in this case. The defendant understands that the Court is not bound by any sentence recommended in the plea agreement and that if the Court does not follow any such recommendation, the defendant may not withdraw her guilty plea.

The defendant understands the maximum sentence of imprisonment, maximum fine, and terms of supervised release the Court may impose under the terms of her plea agreement.

*Id.* at 22-23.

Carr's unsupported allegations fail to overcome these findings, and are at odds with her own sworn statements before the Court. Moreover, although she claims her guilty plea was unknowing and involuntary, she does not ask for the Plea Agreement to be set aside. Indeed, if it were, she would face trial and the possibility of conviction not just on the one count to which she pled, but also on the *twenty-eight* other felony counts that were dismissed. *See* Doc. 94 at 4 ("[S]hould the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to re-charge her on any and all counts which were dismissed as part of this Plea Agreement or which the government agreed not to pursue based on this Plea Agreement." *Accord* Tr., Sentencing Hearing (Jan. 4, 2018) at 47 ("[I]in my view the defendant's failure to fulfill her obligations under the plea agreement gave the Government the option, had it chosen to exercise it, to withdraw from the plea agreement and seek to reinstate all the charges from the original indictment against Ms. Carr.").

Instead, Carr wants to have her cake as well as eat it – keeping all of the benefits of

the agreement while jettisoning the rest. *But see, e.g., United States v. Bunner*, 134 F.3d 1000, 1005 (10th Cir. 1998) ("[A]lthough the parties were technically able to perform according to the letter of the agreement, Defendant's performance, for all practical purposes, became worthless to the government. … Therefore, no obligation remained which prohibited the government from reinstating the previously dismissed charges."); *United States v. Lewis*, 138 F.3d 840, 843 (10th Cir. 1998) (It is appropriate "to put [the defendant] in the position he was in before he entered into the plea agreement" … "where the government agreed to drop some charges brought in the original indictment in exchange for the petitioner's agreement to plead to others.") (internal quotation and citation omitted).

Carr has procedurally defaulted her claim that she did not knowingly and voluntarily enter her plea of guilty. Moreover, she has not argued, much less shown, cause and prejudice excusing her default.

## II. CARR PROCEDURALLY DEFAULTED HER PROSECUTORIAL MISCONDUCT CLAIMS.

Carr claims that "[t]he prosecution withheld information that I told them," and didn't document her statements in a memorandum of interview (MOI). Doc. 423 at 5-6. Specifically, she alleges that the Court wasn't told that Christine Duncan, a witness in her co-conspirator's trial, had stolen her identity, and that under that guise, Duncan had submitted one or more FAFSAs. *Id.* This was never raised before this Court or the Tenth Circuit, and therefore has been procedurally defaulted. *See United States v. Zander*, 723 F. App'x, 617, 619-20 (10th Cir. 2018) (unpublished). As with Carr's challenge to her Plea Agreement, she has

not asserted cause and prejudice that could excuse her default. And, as before, the record demonstrates that any such assertion would be meritless.

Carr's complaint surrounds the Sentencing Statement the government filed, not in her case, but that of one of her co-conspirators. *See United States v. Thomas*, No. 16-cr-00054-WJM-2 (Dec. 29, 2017), Doc. 262. That document asserted, in part, that "while defrauding the Department, the defendant [Thomas] worked on the side as a pimp who used manipulation and force to profit from a commercial sex business and to rob its customers." *Id.* at 8. The government related a November 2010 incident in which "Victim 1 (a 'john') awoke to find Victim 2 (a woman prostituted by the defendant) texting on her phone." About 20 minutes later, the defendant arrived, robbed Victim 1 at gunpoint, and yelled at Victim 2 to pack up her things; then they left. *Id.* at 8-9. In January 2011, an undercover Colorado Springs Police Department detective arrested Victim 2 at a Motel 6. *Id.* at 9.

Carr's complaint appears focused upon a single passage:

> Two other women were found by CSPD in the hotel room next to Victim 2's. One of those women was Heather Carr. Just as in this case, Carr refused to testify against the defendant. Victim 2, and others, also refused to testify. As a result, the charges against the defendant were dropped.

*Id.* at 10.

Carr offers no authority requiring prosecutors to either commemorate or disclose information provided directly to them by the defendant. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (There is no *Brady* violation "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or

where the evidence is available ... from another source," because in such cases there is really

nothing for the government to disclose). *

Nor does she explain how one paragraph in a 16-page document filed in connection

with another defendant's sentencing in any way affected her case. *See* Doc. 423 at 6

(expressing concern that it might have "sway[ed] the judge's sentencing"). *But see* Tr.,

Change of Plea Hearing (Dec. 5, 2016) at 34-35 ("It's really going to be very unhelpful and

of little use for you to go into discussions you had with the Government's attorneys prior to

trial because that's not what you were indicted for."). There is no indication that the *Thomas*

Sentencing Statement had any effect upon Carr's sentence – to the contrary, the Court

credited Carr in that "this is her first felony conviction and that she has no substantial

criminal history and that those are legitimate factors in mitigation." *Id.* at 54. Moreover, that

Carr made no mention of the statement during her lengthy allocution or at any other time

before her case became final, simply underscores her procedural default.

## III.    CARR HAS FAILED TO DEMONSTRATE THAT HER COUNSEL WAS INEFFECTIVE.

A claim for ineffective assistance of counsel requires a defendant to show that: (1) her

attorney's performance was unreasonable under prevailing professional norms and (2) there

is a reasonable probability that the attorney's deficient performance prejudiced the

---

\* This Court has previously discounted Carr's unsubstantiated and irrelevant allegations of
isolated intemperance. *See* Tr., Change of Plea Hearing (Dec. 5, 2016) at 35 ("I have now seen Mr.
Fields on at least a couple of trials, Ms. Paluch on one. I find it hard to believe that they would be
abusive on the phone to you").

defendant. *Strickland v. Washington*, 466 U.S. 668, 687-97 (1984). "This court may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is the petitioner's burden to show that the alleged errors were not sound strategy under the circumstances. *Id.*

Carr's ineffective assistance claim boils down to a single point of contention: "I would never have signed the plea unless it was 24 months – this was the number I was told all along"; her counsel "could not now guarantee or put in writing anything about 24 months guaranteed if I testify as she had promised for the past year." Doc. 423 at 4-5. Carr's allegations fail both prongs of *Strickland*. The allegations that her counsel misled her regarding the content and effect of the Plea Agreement are simply belied by the document itself, the Statement in Advance of Plea, and this Court's change of plea colloquy. *See* pp. 8-12, *supra*. In particular, the record establishes that Carr's counsel ensured that she knew that 24 months was the floor, and not the ceiling, of the range of possible sentences.

Nor can Carr show prejudice, especially after she breached the Plea Agreement at the eleventh hour. Carr has the burden of showing that "but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even now, Carr doesn't claim she'd rather go to trial. *See, e.g., United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) ("Mr. Viera has not shown that, absent counsel's

alleged failure to advise him that he would be deported, he would have gone to trial.");

*United States v. Peppers*, 273 F. App'x 155, 159 (3d Cir. 2008) (unpublished) ("Peppers has

made no contention that he would not have entered his plea and would have insisted on

going to trial if his counsel had advised him that the ACCA arguably may not have

applied."). And for good reason: if she wants to undo her Plea Agreement, Carr will face

trial on 29 felony counts, with the prospect of a great deal more than 24 months of

imprisonment. *See, e.g., United States v. Noble*, 350 F. App'x 305, 306-07 (10th Cir. 2009)

(unpublished) (There was no prejudice because "[i]f Appellant had gone to trial and been

convicted, he would have faced a guideline range of 262-327 months' imprisonment, a

significant increase from the 188 month guideline sentence he actually received. Moreover,

Appellant pled guilty after being informed by the court that its final calculation of his

sentence might differ from any calculation made by his attorney.").

Carr's claim "plainly founders" "for failure to demonstrate a 'reasonable probability'

– or indeed, *any* probability – 'that, but for counsel's unprofessional error(s), the result of the

proceeding … would have been different." *United States v. Peña*, 566 F. App'x 645, 650 (10th

Cir. 2014) (unpublished) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003))

(emphasis in original). She does not explain how a different course of conduct might have

led her to (1) not plead guilty; (2) be acquitted rather than convicted at trial; or (3) receive a

less onerous sentence. *Id.* "Ultimately, it is beyond cavil that conclusory allegations" such as

we have here fall far short of the necessary showing. *Id.*

15

# CONCLUSION

The Motion to Vacate should be denied.

Respectfully Submitted,
Robert C. Troyer
Acting United States Attorney

*s/ Paul Farley*
Paul Farley
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303.454.0100
USACO.ECFAppellate@usdoj.gov
Attorneys for Plaintiff-Respondent

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/Colorado)**

I hereby certify that on <u>July 23, 2018</u>, I electronically filed the foregoing document

with Clerk of Court using the CM/ECF system and certify that a copy will be placed in the

U.S. Mail, postage pre-paid and addressed to the following:

Heather Carr
#89751-083
Federal Prisoner Satelite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

*s/ Amanda Bell*
Amanda Bell
United States Attorney's Office
Denver, Colorado

17

**ATTACHMENT A**

1

1          IN THE UNITED STATES DISTRICT COURT.

2               FOR THE DISTRICT OF COLORADO

3    Criminal Action No. 16-cr-0054-WJM-1

4    UNITED STATES OF AMERICA,

5    Plaintiff,

6    vs.

7    HEATHER CARR,

8    Defendant.

9    -----------------------------------------------------------

10                    REPORTER'S TRANSCRIPT
                      (Change of Plea)
11   -----------------------------------------------------------

12

13       Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

14   Judge, United States District Court for the District of

15   Colorado, commencing at 1:51 p.m., on the 5th day of

16   December, 2016, in Courtroom A801, United States

17   Courthouse, Denver, Colorado.

18                          APPEARANCES

19       MARTHA A. PALUCH, Assistant U.S. Attorney, 1801
20   California Street, Suite 1600, Denver, Colorado 80202,
     appearing for the plaintiff.
21
         MARY BUTTERTON, Office of the Federal Public Defender,
22   633 Seventeenth Street, Suite 1000, Denver, Colorado 80202,
     appearing for the defendant.
23

24               MARY J. GEORGE, FCRR, CRR, RMR
              901 19th Street, Denver, Colorado 80294
25        Proceedings Reported by Mechanical Stenography
              Transcription Produced via Computer

```
 1              P R O C E E D I N G S

 2         (Call to order of the court at 1:51 p.m.)

 3              THE COURT:  We're on the record in criminal case

 4    No. 16 cr 54, defendant No. 1, United States of America

 5    versus Heather Carr.

 6              I'll take appearances of counsel.

 7              MS. PALUCH:  Good afternoon, Your Honor.  Martha

 8    Paluch, appearing on behalf of the United States.  With me

 9    at counsel table is Special Agent Sandra Ennis.

10              THE COURT:  Good afternoon.

11              MS. BUTTERTON:  Good afternoon, Your Honor.  Mary

12    Butterton on behalf of Ms. Carr.  She joins me at counsel

13    table, she's currently on bond, and is to my left.

14              THE COURT:  All right.  Good afternoon to the two

15    of you.  All right.  Ms. Butterton, will you and your

16    client please approach the lectern.

17              Ms. Hansen, please administer the oath to the

18    defendant.

19              COURTROOM DEPUTY:  Please raise your right hand.

20         (Defendant sworn in)

21              THE COURT:  All right.  Before we get going on

22    this, I want -- Ms. Paluch, let me ask you, Ms. Hansen told

23    me something about a discussion of a fourth defendant in

24    this case.

25              MS. PALUCH:  There is that possibility, Your
```

1    Honor, but it would not be a superseding indictment, it
2    would be a separate indictment.
3            THE COURT:  Separate indictment.
4            MS. PALUCH:  Correct.
5            THE COURT:  But in this case as opposed to a
6    separate case.
7            MS. PALUCH:  Correct.
8            THE COURT:  Okay.  All right.  Is that something
9    we can expect soon?
10            MS. PALUCH:  Relatively speaking.
11            THE COURT:  Okay.
12            MS. PALUCH:  Yeah.
13            THE COURT:  Thank you.  All right.  The record
14    reflects that Ms. Carr was charged by an indictment dated
15    the 8th of February of this year.  She was arraigned on the
16    24th of March of this year at which time she entered a plea
17    of not guilty to Count 1, and she denied the criminal
18    forfeiture allegation in the indictment.
19            On the 10th of November of this year, the
20    defendant filed with this Court a notice of disposition and
21    she requested that this matter be set for a change of plea
22    hearing.  According to the plea agreement reached between
23    the parties, the defendant wishes to enter a guilty plea to
24    Count 1 of the indictment charging a violation of 18 United
25    States Code Section 286.  In addition, the defendant agrees

4

1    to admit the forfeiture allegation in the indictment and

2    confess forfeiture of all items the Government has in its

3    possession and as to which she could make any claim.

4          I have before me the plea agreement of the parties

5    which is Court Exhibit 1.  The plea agreement has been

6    dated and signed by the defendant, the defendant's

7    attorney, as well as the Assistant United States Attorney.

8          Also before me is Court Exhibit 2, the Statement

9    by Defendant in Advance of Plea of Guilty.  Exhibit 2 has

10    been dated and signed by the defendant as well as her

11    attorney.

12          All right.  Ms. Carr, do you understand that you

13    are under oath and that if you answer any of my questions

14    falsely, your answers may later be used against you in a

15    separate prosecution for perjury?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand you have the right

18    to remain silent and not to answer any of my questions?

19          THE DEFENDANT:  Yeah.

20          THE COURT:  Do you give up your right to remain

21    silent in order to answer the questions I need to ask you

22    at this hearing?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  What is your true, correct, and full

25    name?

5

1          THE DEFENDANT:  Heather Elizabeth Carr.

2          THE COURT:  How old are you?

3          THE DEFENDANT:  39.

4          THE COURT:  What level of schooling have you

5    completed?

6          THE DEFENDANT:  GED and some college.

7          THE COURT:  All right.  Can you read and write in

8    the English language?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Are you now under the influence of any

11   medication, drug, or alcohol?

12         THE DEFENDANT:  No.

13         THE COURT:  Is there anything about the way you

14   feel right now that prevents you from understanding what's

15   happening at this hearing?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  All right.  Based on the statements of

18   the defendant and my observations, I find she is competent

19   to proceed with this hearing.

20         Now, Ms. Carr, have you read and discussed the

21   charge to which you will be pleading guilty with your

22   lawyer?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand the charge to which

25   you will be pleading guilty?

6

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  All right.  Ms. Butterton, will you

3     please outline for the record your understanding of the

4     important terms of the plea agreement.

5          MS. BUTTERTON:  Yes, Your Honor.  In exchange for

6     Ms. Carr to plead guilty to Count 1 of the indictment, as

7     well as to a limited appellate waiver, she is also agreeing

8     to an amount of restitution which is capped by a number in

9     the plea agreement; somewhere in the neighborhood of

10    $562,000.  She is also agreeing to admit the forfeiture

11    allegation.

12         Finally -- and she is seeking -- we're agreeing to

13    not seek a term of imprisonment less than 24 months.  In

14    exchange for these concessions and the plea of guilty, the

15    United States has agreed to move for -- move at sentencing

16    for dismissal of the remaining counts against Ms. Carr.

17         THE COURT:  All right.

18         MS. BUTTERTON:  They also agree to not file any

19    additional charges in the District of Colorado based on

20    information they currently know.  They will request the

21    maximum reduction for acceptance of responsibility, which

22    at this point is anticipated to be three levels, provided

23    of course she does not engage in anything that would

24    prevent that --

25         THE COURT:  Okay.

7

 1          MS. BUTTERTON:  -- under the guidelines.  And

 2     there is an agreement with respect to cooperation, the

 3     amount of which is undetermined at this time.

 4          THE COURT:  The restitution amount is joint and

 5     several with the codefendants?

 6          MS. BUTTERTON:  It is, Your Honor.

 7          THE COURT:  All right.  One second.

 8          MS. BUTTERTON:  And I believe it's on page -- one

 9     moment.  Let's see.  I know it's on page 14, and I think

10     it's probably -- and, yes, the very top of page 2.  The

11     amount is 562,487.85.

12          THE COURT:  Okay.  First, Ms. Paluch, let me ask

13     you:  Do you have anything to add to counsel's summary?

14          MS. PALUCH:  No, I do not, Your Honor.

15          THE COURT:  All right, while you're up --

16          MS. PALUCH:  Yes, sir.

17          THE COURT:  -- let me ask you the next question.

18     With this imminent indictment of a fourth defendant, are we

19     going to be seeing motions to delay sentencing hearing

20     anticipating cooperation agreements post-trial of the

21     fourth defendant?

22          MS. PALUCH:  It is possible, Your Honor.  And we

23     have anticipated that and included language in the plea

24     agreement to encompass a continuance if the Court agrees to

25     that.  There is the chance that that matter could be

```
 1    resolved prior to the April 28th sentencing date that we
 2    received in this case.
 3             THE COURT:  All right.  This is the first
 4    defendant that has gone to change of plea; is that correct?
 5             MS. PALUCH:  No, Your Honor.  Ms. Diaz has pled
 6    guilty.
 7             THE COURT:  Oh, okay.  What did we do with her
 8    sentencing hearing?
 9             MS. PALUCH:  Well, her sentencing is January 18th,
10    I believe, but she is -- does not have a cooperation
11    agreement with the Government.
12             THE COURT:  All right.  So this is the only
13    defendant you anticipate --
14             MS. PALUCH:  As far as a cooperation agreement --
15             THE COURT:  Yeah.
16             MS. PALUCH:  -- that is correct.
17             THE COURT:  So it won't affect --
18             MS. PALUCH:  Mr. Thomas, who's scheduled to be
19    before you on December 28th.
20             THE COURT:  All right.  Thank you for that.
21             All right, Ms. Carr, back to you.  Have you read
22    Court Exhibits 1 and 2?
23             THE DEFENDANT:  Yes, sir.
24             THE COURT:  Have you discussed these documents
25    with your lawyer?
```

1           THE DEFENDANT:  Yes.

2           THE COURT:  Has your lawyer answered your

3    questions regarding Exhibits 1 and 2?

4           THE DEFENDANT:  Yes.

5           THE COURT:  When you signed Exhibits 1 and 2, did

6    you do so voluntarily?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.  Please look at your plea

9    agreement, Exhibit 1, specifically the stipulation of facts

10   that begin on page 8 and continue through page 11.  And you

11   just told me you reviewed this document before, before you

12   signed it, so this shouldn't take you too long, but I'd

13   like you to quickly review to yourself those stipulated

14   facts on those pages and let me know when you're done.

15           THE DEFENDANT:  I've read this several --

16           THE COURT:  Severals times?  So you're comfortable

17   you know what's on --

18           THE DEFENDANT:  I'm very comfortable, yeah.

19           THE COURT:  All right.  I'll take your

20   representation on that.  Now, ma'am, these are the facts

21   the Government believes it could prove at trial.  By

22   entering into this plea agreement, you're admitting these

23   facts and I will treat them as true for purposes of

24   considering your plea and for purposes of sentencing.

25   That's why I wanted to make sure you know exactly what is

1   in here.  So do you agree that the facts that are on page 8

2   through 11 of your plea agreement are true?

3            THE DEFENDANT:  Yes, they are, sir.

4            THE COURT:  Is there any inaccuracy in these facts

5   you'd like to correct at this time?

6            THE DEFENDANT:  No.

7            THE COURT:  All right.  Now, in your own words, I

8   need you to tell me what you did with respect to the count

9   you're pleading guilty to.

10           THE DEFENDANT:  I conspired with my codefendants

11  to obtain financial aid --

12           THE COURT:  Can you pull the mike closer to you.

13  Your --

14           THE DEFENDANT:  Sorry.

15           THE COURT:  Yeah.

16           THE DEFENDANT:  I conspired with my codefendants

17  to get -- submit FAFSAs and get financial aid for people

18  that were in prison.

19           THE COURT:  So FAFSAs, I know very well what that

20  acronym is for, but that's the financial aid for college

21  tuition for families, right?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  F-A-F-S-A.

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  All right.  So you with -- in

```
 1    conspiracy with your codefendants, you filled out these
 2    FAFSA applications, making fraudulent representations on
 3    those applications?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  All right.  And you did so knowingly
 6    and voluntarily?
 7              THE DEFENDANT:  Yes, sir.
 8              THE COURT:  And what was your intent doing this?
 9              THE DEFENDANT:  To receive financial aid.
10              THE COURT:  To receive the monies?
11              THE DEFENDANT:  Yes.
12              THE COURT:  All right.  Did you use the identity
13    of any known persons while doing this?
14              THE DEFENDANT:  From -- yes.  From the -- I didn't
15    know them, but I --
16              THE COURT:  But the -- in other words, to the
17    extent you used Social Security numbers, you didn't just
18    make up numbers, you used numbers of actual real human
19    beings --
20              THE DEFENDANT:  Correct.
21              THE COURT:  -- real American residents?
22              THE DEFENDANT:  Yes, sir.
23              THE COURT:  All right.  I take it the Government's
24    taken that into account when you came to your agreement
25    here?
```

12

1        MS. PALUCH:  We did, Your Honor.

2        THE COURT:  All right.  Because on the -- the

3   reason I'm making -- I'm asking this and making an issue of

4   it is this is an issue that comes up a lot in unlawful

5   reentry cases and it's a significant point to me whether

6   someone has adopted and appropriated the identity of

7   another person as opposed to just creating a number, so put

8   that out there.

9        MS. BUTTERTON:  Your Honor, I apologize, I would

10  add we did anticipate that in the plea agreement and the

11  appropriate guideline calculation that accompanies that.

12       THE COURT:  All right.  Okay.  Counsel, for the

13  factual basis, may the Court rely on the stipulated facts

14  in the plea agreement?

15       MS. PALUCH:  Your Honor, I believe so by her

16  stating that she conspired, but given the Tenth Circuit's

17  emphasis on interdependence, if we could just address her

18  reliance or dependence upon the codefendants in order to

19  achieve the objective of the conspiracy.

20       THE COURT:  All right.  You just heard the

21  prosecutor and what she said.  Do you agree that you had

22  that level of interdependence and cooperation with your

23  codefendants and taking the conspiracy to the steps that

24  you did?

25       THE DEFENDANT:  Yes, sir.  I couldn't do it alone

1    so I did conspire with them.

2              THE COURT:  I didn't hear that first part.

3              THE DEFENDANT:  I'm sorry.  I couldn't do it alone

4    so I did conspire with them.

5              THE COURT:  All right.  Is that satisfactory?

6              MS. PALUCH:  It is, Your Honor.  Thank you.

7              THE COURT:  All right.  And so your answer to my

8    question is?  May the Court rely on the stipulated facts --

9              MS. PALUCH:  Yes, Your Honor.

10             THE COURT:  -- for the factual basis?  Okay.  Ms.

11   Butterton?

12             MS. BUTTERTON:  Yes, Your Honor.

13             THE COURT:  All right.  Thank you.  All right.

14   Ms. Carr, I'm advising you you have the following

15   constitutional rights you will be giving up if you plead

16   guilty.  You have the right to plead not guilty to any

17   offense charged against you.

18             You have the right to a speedy and public trial.

19   You have the right to a trial by jury of 12 persons whose

20   verdict must be unanimous.  At trial you'd be presumed

21   innocent and the Government would have to prove your guilt

22   beyond a reasonable doubt.

23             You have the right to the assistance of legal

24   counsel for your defense throughout these proceedings even

25   if you do not enter a plea of guilty.  You have the right

14

1    with your lawyer to confront and cross-examine all

2    witnesses at trial and to challenge all evidence presented

3    against you.

4         At trial, you'd have the right to have witnesses

5    subpoenaed and compelled to come into court to testify on

6    your behalf.  At trial, you have the right to testify

7    yourself on your own behalf but you also have the privilege

8    against self-incrimination; that means you have the right

9    not to testify or incriminate yourself in any way.

10        By pleading guilty, you're giving up that right

11   and you are incriminating yourself.  If you went to trial

12   and were convicted, you'd have the right to appeal both

13   your conviction and your sentence.  Now, do you understand

14   these rights?

15        THE DEFENDANT:  I do, sir.

16        THE COURT:  Do you understand that if your plea is

17   accepted, you will be incriminating yourself, you will be

18   giving up your right to a jury trial, and most of the other

19   rights I've just described?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Do you give up those rights?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  All right.  Ms. Butterton, will you

24   please state for the record the scope of your client's

25   limited waiver of her appellate and collateral challenge

15

1    rights.

2           MS. BUTTERTON:  Yes, Your Honor.  Ms. Carr agrees

3    to waive her appellate rights in terms of sentencing with

4    certain exceptions:  Of course if the Court would sentence

5    her outside the maximum penalty under the statute, she

6    would be released from such a waiver.  Similarly she would

7    be released if the Court sentences her above a total

8    offense level of 23.  And, finally, if the Government

9    appeals, she would be released from that waiver.

10           Similarly, she also waives the right to challenge

11   her sentence on any collateral basis with the exception of

12   explicitly retroactive changes in the law, both either the

13   guidelines or the sentencing statute; if she was the -- to

14   suffer ineffective assistance of counsel; or was prejudiced

15   by prosecutorial misconduct.

16           Outside of those, I guess, three standard and

17   three collateral exceptions, she has agreed to waive her

18   right to appeal the sentence.

19           THE COURT:  All right.  Ms. Carr, let me ask you:

20   Do you understand and do you agree to the limitations

21   contained in your plea agreement on your right to appeal

22   the sentence I will impose in this case or the manner in

23   which I will determine it?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Do you understand and do you agree to

1    the limitations contained in your plea agreement on your

2    right to appeal or challenge this prosecution or your

3    conviction?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  All right.  All right, Ms. Paluch,

6    will you please inform the defendant of the charge to which

7    she will be pleading guilty.  Please state the elements of

8    the charge, the maximum sentence, and maximum fine.

9              MS. PALUCH:  Yes, sir.  Pursuant to the terms of

10   the plea agreement, the defendant has agreed to plead

11   guilty to Count 1 which charges a conspiracy to defraud the

12   Government with respect to claims in violation of Title 18

13   United States Code Section 286.

14             To prove this, the elements of this offense are:

15   First, that the defendant agreed with at least one other

16   person to obtain or aid in obtaining the payment or

17   allowance of any false, fictitious or fraudulent claim;

18   second, the defendant knew the essential objective of the

19   conspiracy; third, the defendant knowingly and voluntarily

20   participated; and, fourth, there was interdependence among

21   the members of the conspiracy, that is, the members in some

22   way or manner intended to act together for their shared

23   mutual benefit within the scope of the conspiracy charged.

24             The statutory penalties for this offense are as

25   follows:  The maximum statutory penalty for a conviction of

1    this offense is not more than 10 years of imprisonment, a

2    fine of not more than $250,000, or both; not more than

3    three years of supervised release; and a $100 special

4    assessment fee.

5         If probation or supervised release is imposed, a

6    violation of any condition or -- of probation or supervised

7    release may result in a separate prison sentence and

8    additional supervision.  In addition, as stated earlier,

9    there is a forfeiture allegation contained as well to which

10   the defendant has agreed to admit.

11        THE COURT:  All right.  Thank you.

12        Ms. Carr, do you understand the consequences of

13   your plea, including the maximum sentence that can be

14   imposed upon you in this case?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Ms. Butterton, what is the estimated

17   sentencing range you believe applies under the guidelines?

18        MS. BUTTERTON:  Without going through -- I can

19   certainly go through the entire calculation, but I believe

20   that the total offense level will result in an offense

21   level of 23.  With Criminal History Category of I, it is

22   anticipated at this time the advisory sentencing guideline

23   range would be 46 to 57 months.

24        THE COURT:  All right.  Let's see here.

25        All right.  And your agreement is to not seek a

18

1    sentence below 24 months?

2            MS. BUTTERTON:  That is correct, Your Honor.  And,

3    of course, the 46 to 57 is before any sort of motion by the

4    Government with regard to Ms. Carr's cooperation.

5            THE COURT:  Yeah, I understand.  All right.  Ms.

6    Carr, do you understand that I can impose a sentence that

7    is more severe or less severe than that set forth in your

8    plea agreement?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Do you understand that if your -- even

11   if you're disappointed with the sentence that I do impose,

12   that will not be a basis for you to withdraw your guilty

13   plea?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Do you understand that if you are sent

16   to prison -- well, you will be sent to prison because you

17   agreed not to seek a sentence below 24 months, so let me

18   rephrase this.

19           Do you understand that when you are released from

20   prison, some of the conditions of your release to which you

21   may be subject include that you may not commit any new

22   federal, state or local crime and you may not possess any

23   illegal substances?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Do you understand that if you violate

19

1   any conditions of supervised release, you may be returned

2   to prison for all or part of the remaining term of

3   supervised release?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  Are you presently on parole,

6   probation, or supervised release as the result of the

7   conviction of any other crime?

8         THE DEFENDANT:  No.

9         THE COURT:  Do you understand that you're pleading

10  guilty today to a felony offense?

11        THE DEFENDANT:  I do.

12        THE COURT:  You think you do, or you do?

13        THE DEFENDANT:  No, I do.  I understand that.

14        THE COURT:  Do you understand a conviction of a

15  felony offense may deprive you of certain civil rights,

16  including the right to possess a firearm, the right to

17  vote, the right to hold public office, and the right to

18  serve on a jury?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  Do you understand that in the federal

21  system, parole has been abolished and although you may earn

22  good time depending on your behavior, you will not be

23  released on parole?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Has anyone threatened you or your

```
 1      family in order to force you to plead guilty in this case?

 2              THE DEFENDANT:  No, sir.

 3              THE COURT:  Are you satisfied with the

 4      representation your attorney has provided to you?

 5              THE DEFENDANT:  Absolutely.

 6              THE COURT:  That's good to hear.  Have you

 7      understood everything that I have told you or asked of you

 8      today?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Having in mind all that we have

11      discussed regarding your plea of guilty, your rights you

12      will be giving up, and the maximum sentence you may

13      receive, do you still wish to plead guilty?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Other than re-arraigning the

16      defendant, do counsel agree the Court has complied with the

17      requirements of Rule 11?

18              MS. PALUCH:  We do, Your Honor.

19              MS. BUTTERTON:  Yes, Your Honor.

20              THE COURT:  Thank you, counsel.  Defendant's plea

21      of not guilty as to Count 1 of the indictment and her

22      denial of the criminal forfeiture allegation are withdrawn.

23              Ms. Paluch, will you please re-arraign the

24      defendant.

25              MS. PALUCH:  Yes, Your Honor.  On February 8th,
```

21

```
 1    2016, a grand jury, sitting in the United States District

 2    Court for the District of Colorado, returned a 29-count

 3    indictment, including a forfeiture allegation, charging

 4    three individuals, the first of which is Heather Carr.

 5              Ma'am, are you Heather Carr?

 6              THE DEFENDANT:  Yes.

 7              MS. PALUCH:  As to Count 1 of that indictment,

 8    which charges a conspiracy to defraud the Government with

 9    respect to claims in violation of Title 18 United States

10    Code Section 286, how do you plead?

11              THE DEFENDANT:  Guilty.

12              MS. PALUCH:  There is also a forfeiture allegation

13    contained in this indictment found on pages 10 through 13.

14    To that forfeiture allegation, ma'am, do you admit or deny

15    that allegation?

16              THE DEFENDANT:  I admit.

17              THE COURT:  Thank you, Ms. Paluch.  The Court

18    makes the following findings of fact and conclusions of

19    law:

20              In the matter of the United States of America

21    versus Heather Carr, case No. 16 cr 054, defendant No. 1,

22    the defendant's fully competent of entering an informed

23    plea and she's aware of the nature of the charge and the

24    consequences of that plea.

25              The defendant has thoroughly discussed her plea
```

1    agreement with her attorney.  The defendant has been

2    represented throughout the course of this case by competent

3    counsel with whom she has no objection or complaint.  The

4    defendant -- the defendant has read and she understands

5    each term of her plea agreement, including her limited

6    waiver of appeal and collateral challenge rights.  The

7    defendant has knowingly and voluntarily signed Court

8    Exhibits 1 and 2.

9            The defendant has knowingly and voluntarily

10   entered a plea of guilty to Count 1 of the indictment and

11   she has admitted the forfeiture allegation in that

12   indictment with a full understanding of the factual basis

13   and essential elements of the charge.

14           The defendant's guilty plea is not the result of

15   mistake or coercion.  The defendant's guilty plea is not

16   the result of any representations or promises made to her

17   by anyone except as to those matters disclosed in open

18   court or included in her plea agreement.  The defendant

19   understands each of her legal rights in this case.  The

20   defendant understands that the Court is not bound by any

21   sentence recommended in the plea agreement and that if the

22   Court does not follow any such recommendation, the

23   defendant may not withdraw her guilty plea.

24           The defendant understands the maximum sentence of

25   imprisonment, maximum fine, and terms of supervised release

23

1    the Court may impose under the terms of her plea agreement.

2    And the plea is supported by an independent factual basis

3    containing each of the essential elements of the offense.

4            It is therefore ordered that Court Exhibits 1 and

5    2 are accepted and admitted.  The plea as made in open

6    court today is accepted and the defendant is adjudged

7    guilty of violating 18 United States Code Section 286.  And

8    she has, as well, admitted the forfeiture allegation in the

9    indictment.

10           Sentencing hearing is hereby set for April 28th,

11   2017, at 10:30 a.m.

12           Previously at ECF 91, I entered an order directing

13   counsel to be prepared to discuss the application of

14   Section 3143 to this defendant.  Ms. Paluch.

15           MS. PALUCH:  Yes, Your Honor.  The defendant

16   resides in Virginia and she has made every court

17   appearance.  We have no basis to ask the Court to revoke

18   her bond and would agree that she should remain free on

19   bond pending sentencing.

20           THE COURT:  All right.  Ms. Butterton, do you wish

21   to be heard on this?

22           MS. BUTTERTON:  Only to re-emphasize that Ms. Carr

23   has been on bond for quite some time, with no violations

24   and no issues of any kind.  She's flown out with her own

25   expense for this hearing as well as meetings with me, and I

24

1    just don't believe that she is any kind of flight risk or

2    danger of the community of any kind.

3            THE COURT:  All right.  I've reviewed the pretrial

4    services and release status report from the probation

5    office and I find by clear and convincing evidence that the

6    defendant's conditions of release reasonably assure that

7    she will not flee nor does she pose a danger to the safety

8    of the community.  I will therefore permit the defendant to

9    remain free on bond subject to the same conditions of

10   release as the conditions set forth in the order setting

11   conditions of release entered by the magistrate judge.

12           All right.  Is there anything further from the

13   Government at this time?

14           MS. PALUCH:  No, Your Honor.  Thank you.

15           THE COURT:  Thank you.  Anything further from the

16   defendant?

17           MS. BUTTERTON:  No, Your Honor.  Thank you.

18           THE COURT:  Thank you, that will be all.

19           THE DEFENDANT:  Thank you.

20       (Proceedings concluded at 2:16 p.m.)

21              *       *       *       *       *

22                    REPORTER'S CERTIFICATE

23

24       I certify that the foregoing is a correct transcript

25   from the record of proceedings in the above-entitled

1    matter.

2         Dated at Denver, Colorado, this 14th day of February,

3    2018.

4

5

6    _Mary J. George_

7

8                    MARY J. GEORGE, FCRR, CRR, RMR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**ATTACHMENT B**

1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLORADO
 2
       Criminal Action No. 16-cr-0054-WJM-1
 3
       UNITED STATES OF AMERICA,
 4
          Plaintiff,
 5
       vs.
 6
       HEATHER CARR,
 7
          Defendant.
 8
       ------------------------------------------------------------
 9
                       REPORTER'S TRANSCRIPT
10                          (Sentencing)
11     ------------------------------------------------------------
12          Proceedings before the HONORABLE WILLIAM J. MARTINEZ,
13     Judge, United States District Court for the District of
14     Colorado, commencing at 2:02 p.m., on the 4th day of
15     January, 2018 in Courtroom A801, United States Courthouse,
16     Denver, Colorado.
17
                                APPEARANCES
18
            MARTHA PALUCH and BRYAN FIELDS, Assistant U.S.
19     Attorney, 1801 California Street, Suite 1600, Denver,
       Colorado 80202, appearing for the plaintiff.
20
            MARY BUTTERTON, Office of the Federal Public Defender,
21     633 Seventeenth Street, Suite 1000, Denver, Colorado 80202,
       appearing for the defendant.
22
23                  MARY J. GEORGE, FCRR, CRR, RMR
                     901 19th Street, Denver, Colorado 80294
24              Proceedings Reported by Mechanical Stenography
                    Transcription Produced via Computer
25
```

```
 1                    P R O C E E D I N G S

 2          (Call to order of the court at 2:02 p.m.)

 3          THE COURT:  All right, we're on the record in

 4   criminal case No. 16 cr 054, defendant No. 1, United States

 5   of America versus Heather Carr.  I'll take appearances of

 6   counsel.

 7          MS. PALUCH:  Good afternoon, Your Honor, Martha

 8   Paluch and Bryan Fields appearing on behalf of the United

 9   States.  With us at counsel table is Special Agent Sandra

10   Innis.

11          THE COURT:  Good afternoon to the three of you.

12          MS. BUTTERTON:  Good afternoon, Your Honor.  Mary

13   Butterton on behalf of Heather Carr.  Your Honor, Ms. Carr

14   is on bond and she has joined me at counsel table.

15          THE COURT:  Good afternoon to the two of you.

16          All right.  Will the probation officer please

17   identify himself for the record.

18          PROBATION OFFICER:  Good morning, Your Honor.

19   Matt Gill, U.S. Probation.

20          THE COURT:  Good afternoon, Mr. Gill.  Welcome.

21          All right, Ms. Butterton, will you and your client

22   please approach the lectern.

23          Ms. Hansen, please administer the oath to the

24   defendant.

25          COURTROOM DEPUTY:  Please raise your right hand.
```

3

 1        (Defendant sworn in)

 2            THE COURT:  Record reflects that on the 5th of

 3    December of 2016, Ms. Carr entered a plea of guilty to and

 4    she was convicted of Count 1 of the indictment, charging

 5    conspiracy to defraud the Government with respect to claims

 6    in violation of 18 United States Code Section 286.  In

 7    addition, at her change of plea hearing the defendant also

 8    admitted the forfeiture allegation in the indictment.  We

 9    are here for the sentencing of the defendant.

10            Counsel, can you briefly summarize your respective

11    sentencing recommendations.  Ms. Paluch, let's begin with

12    you.

13            MS. PALUCH:  Yes, Your Honor.  At this point, you

14    would just like the number of months that we're seeking?

15            THE COURT:  Just -- well, custody, supervised

16    release, fine, all that good stuff.

17            MS. PALUCH:  Certainly, Your Honor.  The United

18    States is seeking a sentence of 63 months in prison,

19    followed by three years of supervised release, an order of

20    restitution in the amount of $562,000 -- the approximate

21    amount is contained in the pleadings before the Court -- as

22    well as $100 special assessment fee.

23            Given that the defendant pled to the conspiracy

24    count, and the mail fraud counts were dismissed, there will

25    be no request for an order of forfeiture in this case.

4

```
1              THE COURT:  All right.  At this hearing, is the
2      Government intending to make any kind of proffer or put on
3      any evidence?
4              MS. PALUCH:  No, Your Honor.
5              THE COURT:  All right.  Thank you.
6              Ms. Butterton.
7              MS. BUTTERTON:  Thank you, Your Honor.
8      According -- consistent with our pleadings previously
9      filed, we are seeking a sentence of 24 months incarceration
10     followed by three years supervised release.  We have no
11     contest with the Government with regard to that, nor the
12     restitution amount which is outlined in the pleadings.
13             THE COURT:  All right.  So the restitution amount
14     has been stipulated to?
15             MS. BUTTERTON:  It was stipulated in the plea
16     agreement, Your Honor.
17             THE COURT:  Yeah.  All right.  Does the defendant
18     intend to make any type of proffer or put on any evidence
19     at the hearing?
20             MS. BUTTERTON:  Outside of Ms. Carr's allocution,
21     no, Your Honor.
22             THE COURT:  Okay.  Thank you.  All right.  I'll
23     turn first to the objections to the presentence report.  I
24     note for the record that no objections to the report were
25     filed by the Government.  The defendant did file objections
```

5

1    to the report at ECF 243.  The first objection was to the

2    contents of paragraph 45 of the report which referenced and

3    included in the sentencing recommendation a two-level

4    sentencing enhancement for abuse of position of private

5    trust.

6         Is there any further argument, Ms. Butterton, that

7    you wish to make on this objection?

8         MS. BUTTERTON:  Your Honor, the majority of my

9    argument is outlined in the briefing.  The only thing I

10   will add is in its response, the probation office cited a

11   footnote and I believe that that footnote would be

12   duplicative to another enhancement that Ms. Carr's already

13   receiving --

14        THE COURT:  You are referring to specifically

15   what?

16        MS. BUTTERTON:  The enhancement for use of

17   identity -- I'm sorry, let's go -- it's enhancement in the

18   base offense level.  And I will direct your attention to

19   it; hang on one second.

20        She received, and we stipulated to and agree, to a

21   two-level increase based on the use of a means of

22   identification.  That's 2B1.1b(11)(c)(1) through (2).

23   Again, that's something that has never been in dispute.

24   And I believe that the footnote referred to by probation in

25   their response, that that increase is duplicative with that

6

1  enhancement, in addition to the other reasons I delineated

2  in my briefing.

3         THE COURT:  All right.  Ms. Paluch, is the

4  Government standing on its response to the objection or do

5  you have any further argument?

6         MS. PALUCH:  I have no further argument.

7         THE COURT:  All right.  In my view there's a

8  decent argument to be made for the application of this

9  enhancement to Ms. Carr and the probation officer has done

10  a good job setting forth the legal basis for doing so in

11  his response to the defendant's objection.  But I am going

12  to sustain the defendant's objection to the two-level

13  enhancement for one important reason:  That being to give

14  Ms. Carr the benefit of the bargain she struck with the

15  Government and agreed to enter her plea of guilty to Count

16  1 of the indictment.

17         A review of the parties' agreement makes it

18  perfectly clear that neither side anticipated the

19  likelihood of the application of this enhancement.  And

20  this is reflected in the position the Government has taken

21  with respect to this objection in that it neither seeks nor

22  advocates for the application of this enhancement.

23         We will of course never know with any certainty

24  whether this defendant would still have entered into her

25  plea agreement had she known that this enhancement was

7

1   possible, but what we do know for sure is that the parties

2   struck a bargain that did not anticipate the application of

3   this enhancement and that Ms. Carr signed her agreement, at

4   least in part, in reliance on that fact in that agreement.

5          So for these reasons, the defendant's objection to

6   the two-level sentencing enhancement for abuse of position

7   of private trust in paragraph 45 of the report is

8   sustained.

9          All right.  The next objection from the defendant

10  is her objection to the special condition permitting

11  expanded searches or searches without the protection of the

12  Fourth Amendment.  Any further argument, Ms. Butterton?

13          MS. BUTTERTON:  No, Your Honor.

14          THE COURT:  All right.  For the Government?

15          MS. PALUCH:  No, Your Honor.  Thank you.

16          THE COURT:  Okay.  All right.  I'm going to

17  overrule the objection to this special search condition.  I

18  find that such a search condition is warranted under the

19  facts of this case.  Specifically I agree with the

20  Government and the probation officer that this special

21  condition is, in fact, tailored to the facts of this case.

22          Most significant in my view on this point is the

23  fact that the defendant and her co-conspirators carried out

24  the offense conduct using computers located in their

25  residences, and analysis of these computers helped prove

1    the crimes that were charged.

2         Also important and relevant here is the reality of

3    the difficulty in preventing identity theft and I agree

4    with the probation officer that -- and I agree that the

5    probation officer should be provided with the necessary

6    means to ensure that Ms. Carr does not resort to her old

7    ways, and in the future again use other people's identities

8    to commit fraud.

9         So on that basis, the objection to the special

10   search condition is overruled.

11        With respect to the defendant's remaining

12   objections to paragraphs 52, 66, and 68, I find that the

13   subject matter of these objections will not impact the

14   sentence I intend to impose or that I will not consider

15   these matters in sentencing and thus no ruling on these

16   objections is required under Rule 32 and I will make none.

17        All right.  We're done with objections.  Turning

18   to the Government's motions, first is ECF 239, motion from

19   the Government for a third-level decrease in the offense

20   level for acceptance of responsibility.  There being no

21   objection, that motion is granted.

22        Second motion from the Government is the motion to

23   dismiss Counts 1 through 29 and dismiss the forfeiture

24   allegation of the indictment, ECF 238.  Again, there being

25   no objection, the motion is granted.  I should have said

9

1    Counts 2 through 29, obviously, because we are proceeding
2    on Count 1.  Counts 2 through 29 and the forfeiture
3    allegation of the indictment are dismissed with prejudice
4    as to defendant No. 1, Carr, only.
5            Given my ruling on the Government's motions and
6    the defendant's objections, I find that the total offense
7    level in this case is 25.  The probation officer has
8    determined that the defendant's Criminal History Category
9    is I, which yields an advisory guideline sentencing range
10   of 57 to 71 months, a period of supervised release of one
11   to three years, a fine range of 20,000 to $200,000, and a
12   special assessment of $100.
13           Subject to any objection the parties may have to
14   my rulings on the defendant's objection, do counsel agree
15   the Court has correctly calculated the guideline sentencing
16   range in this case?
17           MS. PALUCH:  Yes, for the Government, Your Honor.
18           MS. BUTTERTON:  Yes, Your Honor.
19           THE COURT:  All right.  Thank you, counsel.
20           All right.  At this time, I'll take up the
21   defendant's motion for a variant sentence, ECF 24.  Ms.
22   Butterton.
23           MS. BUTTERTON:  Thank you, Your Honor.  I would be
24   brief and mainly focus on a reply to the response that the
25   Government has filed.  I would like to note that I

1    appreciate under ECF -- I believe 265, the Government's

2    correction, which I had intended to address today.  So I --

3    I believe the record is more clear about that issue.

4            THE COURT:  What specifically are you talking

5    about?

6            MS. BUTTERTON:  In its initial motion for -- in

7    their initial response to my motion, they had indicated

8    that Ms. Carr cooperated only after her codefendant

9    cooperated.  And that was simply not the order of things

10   and they filed a correction, and I appreciate that.

11          THE COURT:  Okay.

12         MS. BUTTERTON:  In fact, Ms. Carr was the first

13   codefendant to come to the table and cooperate with the

14   Government.  And I believe it's undisputed, although the

15   Government -- I'm not sure what the Government will say

16   about this, that she did -- her cooperation did lead to the

17   indictment of a fourth codefendant in this case.

18          I say that to balance the -- frankly, the elephant

19   in the room.  The majority of my pleadings, as well as the

20   Government's, has been addressing that Ms. Carr did not

21   testify in the trial of her codefendant.  All I can say

22   about that is that should be weighed with her other

23   cooperation.  Cooperation, again, I believe is undisputed

24   that led to a fourth indictment, something that is not so

25   common in cooperation cases.  It is not so common for

1    cooperation to lead to the indictment and, indeed,

2    conviction of someone for whom the Government did not have

3    sufficient evidence to charge when they initially brought

4    this indictment.  So I believe that should be weighed along

5    with Ms. Carr's failure to testify.

6         Now, do I believe that the Government could have

7    done things to ensure that?  I do.  And I've laid those out

8    in my pleadings.  I'm sure the Court's reviewed them --

9         THE COURT:  To ensure her testimony?

10        MS. BUTTERTON:  Correct.

11        THE COURT:  Well, I was going to ask you about

12   that.  How is it that you believe the Government could have

13   subpoenaed your client if she is a resident of Virginia?

14        MS. BUTTERTON:  I believe that -- well -- let me

15   say this:  My subpoena powers are different from the

16   Government's, so their procedure is completely different

17   from mine.  But I can tell you in preparing for an upcoming

18   trial I have, we have requested subpoenas through the court

19   for many people who live outside the state.  So I suppose I

20   don't know the exact answer to that question only that I'm

21   sure that it's possible.

22        THE COURT:  Okay.  I'm glad your --

23        MS. BUTTERTON:  She has --

24        THE COURT:  I'm glad you're sure; I'm not so sure.

25   But moving past that point, what about the Government's

12

1  point, which I think is the stronger, more significant one

2  here, which is as all litigators know, there's a world of

3  difference between a cooperative testifying witness and a

4  witness that has been subpoenaed against his or her will to

5  come into court and testify involuntarily?  And the latter

6  type of witness, we probably all in this room -- all the

7  lawyers in this room have had experience with such an

8  individual turning on our client, testifying in ways we

9  didn't anticipate, inconsistent with knowledge or evidence

10 that we have prepared prior to trial and otherwise

11 testifying in ways that may require the lawyer calling such

12 an uncooperative witness -- in this case, the Government,

13 in your scenario -- to then have to impeach the

14 Government's own witness because the witness has now

15 provided testimony that's contrary to the testimony the

16 Government believed was going to be coming from the witness

17 who was cooperating and being seated at the witness stand

18 voluntarily?  What about that difference?

19        MS. BUTTERTON:  Your Honor, I have to be a little

20 careful and mindful of my obligations regarding privilege

21 to Ms. Carr, but let me say this:  Any idea that she, or

22 anyone -- I'll just separate it out -- that anyone who is

23 subpoenaed would come in and say something different from

24 the -- that was previously prepared is speculation.  We

25 don't know what Ms. Carr would have said because she didn't

1    testify.  And there's no indication at all that she would

2    have not followed her oath if she was required to do so.

3            She was not required under any law at all to

4    appear in court.  Should she had been subpoenaed --

5            THE COURT:  Other than her -- her agreement with

6    the Government to do so.

7            MS. BUTTERTON:  Certainly.  And she knew the

8    consequences when she made that decision, she was fully

9    informed of those.  But those consequences were not a vow

10   to tell the truth, which she would have done if she sat in

11   that chair.  And I don't believe that the Court should

12   assume that she would have done anything but that.

13           THE COURT:  I'm not making any such assumption.  I

14   was just asking you to respond to the Government's argument

15   of distinguishing between a cooperating witness and a

16   subpoenaed witness.

17           MS. BUTTERTON:  Well, I guess I will make a

18   similar speculation and say if Ms. Carr had been required

19   under the law to appear, I would assume that she would

20   appear as required and testify as -- under oath as her

21   obligations would.

22           I don't think it's fair to assume that she would

23   have been a difficult or adverse witness.

24           THE COURT:  Okay.  Then let's move past that point

25   and I'd like you to address the cases which have -- and I

1      think circuit level cases, that have discussed the fact

2      that what your client did in entering into a plea agreement

3      which precipitated, as just happened a few minutes ago, the

4      dismissal of 28 out of 29 counts and dismissal of a

5      forfeiture allegation in the indictment, and then renege on

6      her agreement to testify, that these cases have held that

7      that is an aggravating factor I can consider under 3553(a)

8      when considering the appropriate sentence to impose.

9              MS. BUTTERTON:  Your Honor, I don't disagree with

10     the cases that it's an aggravating factor.  My point is

11     that it's -- in considering globally her cooperation, that

12     that is out- -- if not outweighed, then equal to weight in

13     the indictment and conviction that she provided to the

14     Government that they would not have gotten without her

15     cooperation.

16             So certainly -- listen, under 3553, the Court can

17     consider all nature and circumstances, her history and

18     characteristics.  And I'm certainly not arguing that the

19     Court can't consider her lack of testimony.  I can't

20     imagine a world where that -- I mean, these are pretty

21     global concepts.

22             THE COURT:  Right.

23             MS. BUTTERTON:  I expect that the Court can and

24     will consider it.  My position is that the Court should

25     also consider her other cooperation that I believe has

1    been -- well, I'm not going to say the Government has

2    downplayed it, because they're not under any obligation to

3    make such a motion before the Court.  We knew that when we

4    signed the plea agreement.  But the Court can consider it.

5           And, again, I don't think the Government's in a

6    position to not -- to deny that Ms. Carr did provide this

7    kind of very substantial cooperation that, again, led to

8    another conviction.  And --

9           THE COURT:  So it's your position -- you're

10   representing to me as an officer of the court that it's

11   your client's cooperation that resulted in the indictment

12   of Ms. Green?

13          MS. BUTTERTON:  I think that the indictment of Ms.

14   Green would not have happened without Ms. Carr.

15          THE COURT:  Okay.

16          MS. BUTTERTON:  Is it solely that?  I certainly

17   can't say that.  I am not a prosecutor and the methods

18   about which they go about their methods --

19          THE COURT:  We'll let the Government correct us if

20   we're wrong in our assumptions and inferences.

21          All right.  I don't want to be heard as thinking

22   that my sentence is going to rise and fall based on this

23   issue of her failure to testify and the breaching of her

24   plea agreement.  Obviously that's just one factor.  There's

25   a whole host of factors that I need to consider when

1    sentencing this defendant today apart from what she did or

2    didn't do in the trial for Mr. Thomas.  So can you address

3    those factors, please.

4         MS. BUTTERTON:  Thank you, Your Honor.  The nature

5    and circumstances of the offense are not in dispute and Ms.

6    Carr has accepted responsibility for those and continues to

7    do so, so I will move past that.

8         Outside of that, Your Honor, Ms. Carr is -- has no

9    criminal history.  She has none.  She -- now, I believe the

10   Government may have misconstrued my speaking about her

11   family, something I typically do in almost every sentencing

12   pleading.  That's not to say that she shouldn't be punished

13   because she has a family.  If that were true, then no --

14        THE COURT:  Then no parent could ever go to

15   jail.

16        MS. BUTTERTON:  And I am certainly not doing that,

17   and it's not my intention.  My point was to show who she is

18   as a person.  This is a woman who came from nothing.  She

19   left home at 14, was on her own, was a runaway.  At 17 was

20   pregnant, has raised that child to be a really

21   extraordinary young woman who's now in pharmacy school,

22   married, and will, in fact, be taking care of Ms. Carr's

23   younger children during the anticipated term of

24   incarceration.

25        She has three additional children, one of whom has

1   special needs.  Again, I don't say that to garner sympathy

2   for that child, I say that so the Court knows a little bit

3   about Ms. Carr and who she is.  I believe in her allocution

4   she's going to speak to some of this, and I spoke to it in

5   my variance motion.  I think the mistakes that she made and

6   the decisions she made were an effort to give her kids a

7   better life than she had and because, frankly, it couldn't

8   get much worse than what she had.

9           Again, this is her first real criminal -- she's --

10  interaction with criminal court, other than a juvenile

11  issue.  And we concede that incarceration is necessary,

12  especially given the number of victims and their vulnerable

13  positions.  But the amount of time that the Government is

14  requesting, over five years, is simply greater than

15  necessary.

16          This is a woman who's not violent, she has

17  maintained every condition of her bond to the T, and has

18  made every effort not only to take responsibility in front

19  of this Court but to make efforts in her life to make sure

20  her family is not so affected.  She just last week moved

21  her family to Arizona so her kids will have some stability

22  while she knows she's going to have to be incarcerated.

23          I will rest on my pleadings for any further

24  argument, Your Honor, and we stand by our request for 24

25  months.

1    THE COURT:  Let me ask you to address something

2    you haven't addressed, which is the seriousness of the

3    offense, which is obviously a factor I have to consider

4    under 3553(a).  Not only in my view did -- was Ms. Carr the

5    key player in this conspiracy, because without her access

6    to the Accurint database of the victim, none of the other

7    three could have done anything, so that's one thing.

8        So even though we didn't -- I didn't -- I agreed

9    with your objection to the enhancement for a betrayal of

10   position of trust, the fact remains that but for her access

11   to inside bank information about the victims, these crimes

12   never would have taken place.

13       Secondly, the amount is significant.  We're

14   talking over half a million dollars that was fraudulently

15   obtained.  And, thirdly, the vulnerability of the victims.

16   You know, we don't usually put vulnerable and incarcerated

17   victims in the same sentence in this courtroom or anywhere,

18   but in this case, they are vulnerable because they have no

19   control over what's being done with their identities.  And

20   I don't know if you took the time to read the victim

21   statements, but I did, and I was struck by the eloquence of

22   some -- of a couple of them who pointed out that

23   reintegrating back into civilian life and lawful society is

24   hard enough for any ex-con, but then to run into the

25   buzzsaw of someone having stolen your identity, there being

1   a hold on your credit history, you can't -- probably is

2   going to be -- if being a felon didn't make it difficult

3   enough to get a job after your imprisonment, if that

4   weren't enough, then on top of that, you have all these

5   credit issues.  And I think it's appropriate for me to take

6   judicial notice of the fact that most employers look at

7   credit histories when they're considering prospective

8   hirees, obtaining loans for any kind of residence they may

9   want to purchase or rent, vehicles, all that.

10          So your client intentionally -- not that any

11  victim of identity theft would be a preferable or good

12  victim, but it was pretty calculated -- the calculated way

13  in which it was determined that here is a slice of society

14  that literally cannot -- can do nothing to stop or report

15  these crimes being committed against them.  And so all of

16  those things are matters that you haven't addressed either

17  in your motion or orally right now and I'd like you to do

18  that.

19          MS. BUTTERTON:  Your Honor, I'll be honest.

20  Outside the court -- and I'm really speaking in my role as

21  a defense attorney -- I'm probably -- outside of the court

22  I'm probably the most familiar with how terrible people who

23  are incarcerated have it; on the inside and especially when

24  they come out.

25          It's something I've spoken extensively with Ms.

1    Carr about because, as I advocate for her and I believe

2    that there are elements of this that are mitigating, but I

3    have strong personal feelings about inmates and the way

4    that they are judged coming out and the difficulties they

5    face.

6           The irony is Ms. Carr is now going to be in the

7    very similar position.  She's going to come out with a

8    felony conviction, her finances are, with all due respect

9    in tatters, and will have a half million dollar judgment

10   hanging over her head.  I think that's a pretty fair and

11   equitable and due punishment.

12          There's no question that she took advantage of

13   vulnerable people.  And is there anything more just that

14   she now becomes one of them?  That's all I can really -- I

15   mean, the nature and circumstances of the offense are what

16   they are.  And I certainly understand why the Court feels

17   strongly about it, or why anyone should feel strongly about

18   it.  But that is all part of the sentence, incarceration

19   and collateral consequences that Ms. Carr is going to have

20   to face, and she's very well aware of that.

21          THE COURT:  Okay.  Anything further you wish to

22   say in support of your motion?

23          MS. BUTTERTON:  No, Your Honor.

24          THE COURT:  All right.  I'll give you an

25   opportunity, as I always do, for movants to have a brief

1    reply after we hear from the Government.

2              MS. BUTTERTON:  Thank you.

3              THE COURT:  All right.  The two of you can sit

4    down.  I'll hear from the Government in opposition to the

5    motion.  Ms. Paluch.

6              MS. PALUCH:  Thank you, Your Honor.  I'd like to

7    begin by addressing what appears to be a representation

8    that Ms. Carr alone is responsible for Marcelle Green being

9    indicted --

10             THE COURT:  I think Ms. Butterton made it clear

11   that she wasn't making that representation.

12             MS. PALUCH:  Right.

13             THE COURT:  But that she was -- that her

14   information -- that her client's information was

15   instrumental in obtaining the probable cause and the

16   indictment against Ms. Green.

17             MS. PALUCH:  And that's fair, Your Honor.  But

18   what's being overlooked is the role that Mercedes Diaz

19   provided as well.  In addition, upon her arrest in the car,

20   Marcelle Green indicated she wanted to cooperate with the

21   Government.  So I don't believe it's fair to say that that

22   indictment were -- or conviction was based entirely -- or

23   the majority of it based on this defendant's cooperation,

24   but what that does highlight is had Ms. Green gone to trial

25   and this defendant not testified, it would have made it

1    even worse.

2           If she's claiming that she's responsible in part

3    for that defendant, the information she provided, and then

4    she doesn't testify against Green, had that happened, it

5    would have made her pulling out of this case even worse,

6    and I think that's a factor for the Court that's fair to be

7    considered.

8           As to a subpoena not being issued in this case,

9    Ms. Butterton on one hand says that the Court shouldn't

10   speculate that Ms. Carr would have taken the stand and not

11   testified consistent with her prior statements.  What she's

12   saying is that we were supposed to assume the risk and that

13   we were supposed to speculate that Ms. Carr would take the

14   stand and testify consistent.

15          You know, this is at the last minute and she's

16   saying, I will not testify.  And we're supposed to assume

17   that if we had her under a subpoena, she then would have

18   taken the stand?

19          One of the cases the Court referenced that's cited

20   in our response, it's the *Turner* opinion, and it's out of

21   the Seventh Circuit.  And in that situation, there, too,

22   the defendant claimed, well, the Court wasn't ordering that

23   defendant to take the stand.  And what the circuit court

24   here held is that all cooperation means is testifying when

25   there is no legal obligation to do so.

1          That was the cooperation agreement in this case.

2     She was to come to court and cooperate and testify without

3     us being required to send out FBI agents in Virginia to

4     find her and put her under subpoena.  We had been in

5     constant contact with this defendant leading right up until

6     the day of trial.

7          THE COURT:  When did you first learn that the

8     defendant had decided not to testify in Mr. Thomas' trial?

9          MS. PALUCH:  When we returned to our office after

10    the first day of testimony.

11         THE COURT:  So Monday evening.

12         MS. PALUCH:  Correct.  She did fly to Denver; she

13    was in Denver.  We even looked into the hotel that we had

14    paid for for her to stay and she did not check into that

15    hotel.

16         THE COURT:  Okay.  And before -- just so I'm

17    totally clear in my mind, prior to that moment you had

18    every expectation that she was going to fulfill her

19    obligations under the cooperation agreement and testify?

20         MS. PALUCH:  Absolutely.

21         THE COURT:  You had not -- you had not received

22    any communications from Ms. Butterton or had any reason to

23    believe otherwise?

24         MS. PALUCH:  No, none whatsoever.  And that is the

25    only reason that the opening statement that was given in

24

1    this case outlining the testimony we expected from this

2    witness would be presented and then we were forced in

3    closing to tell the jury that even though we promised you

4    all of this evidence, you would not hear from Ms. Carr.

5           The Court asked defense counsel about the nature

6    and circumstances of the offense and the Court's very well

7    aware of those and we've set forth our arguments in

8    opposition to the variance in our pleading, but there are a

9    few points that I would like to point out in addition to

10   those already made.

11          And as to the nature and circumstances of this

12   offense, what I'd like the Court -- for me to focus on is

13   the fact that this defendant had choices.  She chose to

14   participate in the scheme for over two years.  26 months is

15   the duration of the scheme as set forth in the indictment.

16   And during that time, she chose over and over and over

17   again to steal the identity of these inmates.  181 inmates'

18   identity stolen in 26 months, and that comes out to

19   approximately seven identities stolen each month.  Seven in

20   each of the 26 months.  Every single identity stolen by

21   this defendant, not by her codefendants.

22          Any possible argument -- and I don't believe she's

23   making this -- but that Trammel Thomas was responsible for

24   her involvement, he was in prison for 10 months; he was in

25   jail for 10 months.  During those 10 months, and in

1    addition, during the 26 months at any point this defendant

2    could have said, I'm not going to do this any more.  I'm

3    not going to go online and pull off somebody's identity.

4    I'm not going to fill out the paperwork and submit it to

5    the schools.  I'm not going to keep doing all this homework

6    when I have a full-time job and I'm raising four children.

7    I'm not going to keep completing these homework assignments

8    in order to get the federal student aid.

9         She didn't do that.  She could have stopped after

10   Thomas was arrested with the debit cards; she didn't.  She

11   could have stopped after her home was searched by law

12   enforcement; she didn't.

13        THE COURT:  When was -- when was the search in

14   relation to the end date of the conspiracy as charged in

15   the indictment?

16        MS. PALUCH:  That's a good point, Your Honor.  The

17   end date in the conspiracy is in October.  The --

18        THE COURT:  Of?

19        MS. PALUCH:  Of 2012.  The search occurred in

20   November.  But the testimony from Ms. Green was they had

21   debit cards that were still in the works, that they still

22   continued with the scheme after the search.

23        THE COURT:  Okay.

24        MS. PALUCH:  You know, this is not a defendant who

25   made one bad mistake and was repentant and felt bad about

1    it.  Instead, she made 181 bad mistakes over a period of 26

2    months.  And as to her argument that she has virtually no

3    criminal history, I think that's undercut by the duration

4    that she continued over and over to engage in this fraud.

5           Now, as to the deterrence factor set forth in

6    3553(a), a significant sentence in this case, Your Honor,

7    we believe is submitted -- it's warranted not only to

8    address this defendant's conduct, but also to address and

9    to deter other defendants who may entertain such similar

10    types of schemes, in addition to address this defendant's

11    pulling out of a cooperation agreement at the last moment.

12           What this defendant did is well-known to the

13    federal defense bar, it's well-known to our office.  And

14    when --

15           THE COURT:  How do you know that?  How do you know

16    that?

17           MS. PALUCH:  I know that just through speaking to

18    the prosecutors in our office who have talked to members of

19    the defense bar; I know that from defense bar members

20    talking to me about it.

21           THE COURT:  Okay.

22           MS. PALUCH:  When the next defendant decides to

23    pull out of a cooperation agreement, defense and Government

24    counsel can point to the sentence given in this case and as

25    an example of what happens when someone reneges on a

1    cooperation agreement at the very last possible moment.

2           Another consideration for the Court is if the

3    Court were to impose the 24-month sentence here, which is

4    approximately a 60-percent reduction from the range as

5    calculated, that sentence will set the stage for the

6    remaining defendants to be sentenced in this case and we

7    will be working off that sentence for all of the other

8    defendants to be sentenced here in order to avoid

9    unwarranted sentencing disparities.

10          Now, in sum, when the Court considers the vital

11   role played by this defendant, the intended loss of 1.3

12   million, the actual loss of over $562,000, the harm caused

13   to the vulnerable victims, to the Department of Education,

14   to the community colleges, and to the justice system

15   through her failure to comply with the terms, for all of

16   those reasons we submit a sentence of 63 months in prison

17   is a just and sufficient one, Your Honor.

18          For those -- thank you for your time.

19          THE COURT:  All right.  Let me ask you a question.

20   Now I didn't see in your response, or any submission, any

21   information to provide me a framework of how these cases

22   have been sentenced by other courts previously in the

23   country, or is this the very first FAFSA fraud case that

24   DOJ has ever prosecuted?

25          MS. PALUCH:  It is not the first, Your Honor.  And

1    that is a good point.  I do not have that information for

2    you.

3           THE COURT:  All right.  So you've not researched

4    it?

5           MS. PALUCH:  I have not.

6           THE COURT:  Okay.  What about the other points

7    that were made in the motion in terms of the defendant's

8    history and characteristics and those matters?  Do you want

9    to address that at all or --

10          MS. PALUCH:  No, I think it's -- I think Ms.

11    Butterton explained very well that she's not pointing those

12    out as a basis for the variance but, rather, to just

13    explain the individual that Ms. Carr is and I think that's

14    entirely appropriate.

15          I think when you look at the case law and the case

16    law that we've cited in our response as to hardship to

17    family and all those things, I don't think there's anything

18    in the variance motion filed by the defense that warrants a

19    reduction all the way down to 24 months.

20          So absolutely the Court needs to consider all of

21    those factors, but I don't think in combination they

22    warrant such a significant variance.

23           THE COURT:  All right.  Thank you.

24           MS. PALUCH:  Thank you.

25           THE COURT:  All right.  Ms. Butterton, it's your

1     motion, I'll give you an opportunity for a brief reply.

2              MS. BUTTERTON:  May I have just one moment, Your

3     Honor?

4              THE COURT:  You may.

5              MS. BUTTERTON:  Thank you.  Your Honor, at this

6     moment I'm going to rest.  Thank you.

7              THE COURT:  Okay.  You can both stay there for the

8     time being.

9              All right.  Before I rule on the motion, I'm going

10    to consider some of the Section 3553(a) sentencing factors

11    as they apply to this defendant.  The record in this case

12    indicates that Ms. Carr is 40 years old.  She is a citizen

13    of the United States.  The defendant was born in Virginia.

14    After her parents divorced her mother remarried and Ms.

15    Carr claims she was subjected to serious abuse on the part

16    of her stepfather while she was growing up.

17             She moved with her mother and stepfather in 1983

18    from Virginia to Colorado Springs.  In 2003 she relocated

19    to Phoenix, Arizona, with her boyfriend at the time.  She

20    has had little to no contact over the past 30 years with

21    her parents or her sister, Shannon Haddox.  Ms. Carr left

22    East Junior High School in Colorado Springs in the seventh

23    grade and did not return to school.  She has a GED that she

24    earned in 1995.  And she's also earned 67 credits towards a

25    business administration associates degree at Maricopa

1    Community College in Phoenix.

2            The defendant has never been married and she's not

3    currently involved in any committed relationship.  Her last

4    relationship was with codefendant, Trammel Thomas, whom she

5    dated from 2009 to 2014.  She has two children with Mr.

6    Thomas, Miland Thomas, age 7; and Tru Thomas, age 3.

7            From a prior relationship with one Omar Jones, the

8    defendant also has two older daughters, Ayana Brown, age

9    22; and  aira Jones, age 17.  According to the defendant,

10   she and -- she enjoys an excellent relationship with all of

11   her children, and has informed the probation officer that

12   all four of them are aware of her guilty plea in this case.

13           Ms. Carr currently has custody of her three minor

14   children.  Her oldest daughter, Ayana Brown has indicated

15   that she and her husband, Demarcus Brown, wish to take

16   custody of their three full and half siblings when Ms. Carr

17   is incarcerated.

18           Presently also living with the family is an

19   individual by the name of Aubrey Richardson, age 22, whom

20   the defendant claims she adopted when Ms. Richardson was

21   14.  Probation officer has been unable to verify that this

22   legal relationship exists between these two women.

23   According to the defendant, Ms. Richardson helps to take

24   care of the younger children.

25           With regard to gainful employment, Ms. Carr was

1    working as an underwriter in Wells Fargo Auto Finance in

2    Phoenix in 2009 until she was terminated in the instant

3    offense in 2015.  Prior to that she worked as an

4    underwriter of the mortgages division of that same bank,

5    also in Phoenix.  Prior to 2003, the defendant worked as a

6    credit manager for auto loans.

7         Since being on bond on this case, she has worked

8    for a driver of both Uber and Lyft and she has run a custom

9    digital hard service.

10        Regarding to the defendant's criminal history

11   according to the presentence report, she has one juvenile

12   criminal adjudication and has been assessed zero criminal

13   history points by the probation officer and she is before

14   me on her first felony conviction.

15        Turning to the nature and circumstances of the

16   offense, given the voluminous details of the defrauding of

17   the Government perpetrated by the defendant, I incorporate

18   herein by reference the excellent summary of Ms. Carr's

19   criminal activity by the probation officer found at

20   paragraphs 8 through 15 of the report.

21        I will therefore recite right now for the record a

22   substantially abbreviated summary of this stipulated facts

23   in this case.  Ms. Carr's offense conduct stems over 26

24   months and involved the defendant, as well as her

25   codefendants, conspiring to defraud the Department of

1     Education by submitting false claims for federal student

2     aid.

3         This defendant and or her codefendant, Trammel

4     Thomas, obtained names, birth dates, and Social Security

5     numbers for a large number of incarcerated individuals --

6     181 to be exact -- and used their personal information to

7     apply for federal student aid.

8         In these circumstances, these inmates are

9     currently -- are correctly considered by the guidelines to

10     be vulnerable victims.  While the defendant and Mr. Thomas

11     devised the scheme, codefendant, Mercedes Diaz, agreed to

12     receive mail in the names of the inmates at her residence

13     and mailbox address she rented in the names of other

14     individuals.

15         During the course of the conspiracy, the defendant

16     and her codefendants were involved in submitting over 150

17     FAFSA applications, seeking approximately $1.3 million in

18     federal financial aid funds.  The Department of Education

19     disbursed over 560,000 as a result of Ms. Carr's and her

20     codefendants' false claims.  Of that amount, the defendants

21     received over $420,000 in refunds.

22         As of today, the defendant has served one day in

23     pretrial detention.

24         Mr. Gill, do you wish to make any statement at

25     this time on behalf of the probation office?

1          PROBATION OFFICER:  No, sir, Your Honor.

2          THE COURT:  All right.  Thank you.  All right, Ms.

3   Butterton -- actually before you get back up there, Ms.

4   Paluch, are there any victims in the courtroom that wish to

5   address the Court?

6          MS. PALUCH:  No, Your Honor.

7          THE COURT:  All right.  Thank you.  Now Ms.

8   Butterton, you and your client can go back to the lectern.

9          Ms. Carr, do you wish to make any statement to the

10  Court on your own behalf before I announce your sentence?

11         THE DEFENDANT:  Yes, sir.  I've been waiting a

12  long time to talk to you.

13         THE COURT:  Here's your opportunity.

14         THE DEFENDANT:  Okay.  So I gave my statement in

15  November of 2016.  I had one interview with Beth Gibson,

16  Ms. Paluch, and Sandra.  And as -- I didn't hear from them

17  at all for a year.  I gave my plea and then the month of

18  trial -- Mr. Thomas' trial, I was contacted to prep for

19  trial.

20         The first phone call -- we had a total of four

21  phone calls over the phone to do this prep.  The first

22  phone call --

23         THE COURT:  "We," is who?

24         THE DEFENDANT:  Everybody here on the first phone

25  call.  Everybody on --

1          THE COURT:  At the counsel table.  Okay.

2          THE DEFENDANT:  Yes, sir.  It was pretty much a

3    disaster because I've never -- my extent courtroom

4    experience is Law  Order.  Like I don't know how to answer

5    questions, like they were trying to prep me.  I was like

6    overexplaining everything.  They were getting really mad at

7    me.  You know, kind of saying that, Well, we can't lead you

8    to this, you have to say this.

9          And it was pretty much a disaster.  So they set up

10   a following phone call the following Monday.  That phone

11   call was a super disaster because Mr. Fields started

12   yelling at me -- okay, but let me -- let me lead up to

13   this.

14         First they asked me if Mr. Thomas had ever filled

15   out a FAFSA and I said to my knowledge, No, I had never

16   seen him fill out a FAFSA.  He started getting mad and then

17   was like, Well, if this is the way you're going to answer

18   questions you're in for a lot of trouble.

19         THE COURT:  Okay.  Ms. Carr, let me step in here.

20   Your allocution is an opportunity -- you have the -- and

21   your right to speak to me, giving me your opportunity to

22   tell me who you are and why you did what you did and give

23   me a window into, from your perspective, the criminal

24   activity that you engaged in.

25         It's really going to be very unhelpful and of

1    little use for you to go into discussions you had with the

2    Government's attorneys prior to trial because that's not

3    what you were indicted for.  All right?  What I'm

4    interested in is your discussion and explanation and your

5    opportunity to show me remorse and acceptance of

6    responsibility for your crimes.  Okay?

7            Your phone calls with the Government are -- is not

8    what's going to drive your sentence.

9            THE DEFENDANT:  Okay.

10           THE COURT:  So --

11           THE DEFENDANT:  He just told me he was --

12           THE COURT:  Hold on.  If this is all a lead-up to

13   an explanation of why you didn't testify, just give me

14   that, you know, in a 30-second summary.  Don't go into how

15   you were abused on the phone call by the prosecutors, which

16   I have now seen Mr. Fields on at least a couple of trials,

17   Ms. Paluch on one.  I find it hard to believe that they

18   would be abusive on the phone to you, but go ahead and give

19   me your version.

20           THE DEFENDANT:  Okay.  He started yelling at me.

21   He told me he was going to rip up my deal and send me to

22   prison for a very long time, to which my lawyer had to

23   terminate the phone call and hang up on them, and did not

24   call them back until the following Monday.  The following

25   Monday, they promised me I would never have any contact

36

1    with Mr. Fields.  They apologized for his actions.  They
2    said he's usually very mild-mannered.  They had no idea
3    where the outburst came from.  And they said I would never
4    have any further contact with him.  That phone call went
5    well.

6          And then our last phone call the week of -- and I
7    tried to give them more information and they never sent
8    over an MOI.  They didn't want to hear the information.  So
9    I was scared that if I got on the stand, they were refusing
10   information that I knew I was going to be cross-examined on
11   and I would be like perjured or something.  And she was
12   like, Nope, nope, I don't want to hear it.  I don't want to
13   hear it.

14         And then the last phone call --

15         THE COURT:  No one can force you to perjure
16   yourself.  If a witness perjures themselves, it's because
17   of what they choose or how they choose to answer questions:
18   truthfully or not.  I mean, there's no -- there's no way
19   the Government is going to force you to perjure yourself.
20   I think that's an absurd contention.

21         THE DEFENDANT:  Maybe I phrased it wrong, but I
22   don't know, I -- just saying something wrong because I was
23   so -- he scared me.  Like he -- I was like, He scared me.
24   I was like hysterically crying when she called me back.  He
25   said he was going to rip up my deal and send me to jail for

1    a very long time.  So, I mean, I'm already going to jail

2    for a very long time, so I didn't know what to do.  I

3    didn't think they would do this the week of Thanksgiving,

4    the week before trial.

5           And then another prep question was:  Did we

6    promise you anything?  And I said yeah, 24 months and a

7    third off the sentence for like acceptance of

8    responsibility.  They were like, No, it just depends how

9    you are in trial.

10          And Mr. Fields already hates me, and said he was

11   going to rip up my deal.  So --

12          THE COURT:  But there's no representation in your

13   plea agreement that you were promised a -- first of all,

14   the Government can only recommend to me a sentence.  I'm

15   the one that decides the sentence.

16          Secondly, there's nothing in your plea agreement

17   that tells me -- independent of what you're telling me

18   right now, but nothing in the plea agreement that the

19   Government committed itself to recommending 24 months or

20   any recommendation.  So -- but the point -- so we can wrap

21   up this portion of your allocution, you're telling me that

22   the reason you didn't testify was you were so traumatized

23   by your phone calls with Mr. Fields and the other

24   prosecutors that that's why you didn't testify.

25          THE DEFENDANT:  So I had called -- so the

1    Wednesday before the trial, I had e-mailed my lawyer:  Did

2    we ever get the MOI about the new information I had given

3    them?

4            I didn't get a response from her because it was,

5    obviously, Thanksgiving and she was probably with her

6    family.  So I went ahead and got on a plane and came out

7    here and went to her office.  And all the concerns I had I

8    went over with her and there --

9            THE COURT:  Don't go into your discussions with

10   Ms. Butterton.

11           THE DEFENDANT:  Okay.

12           THE COURT:  Those are attorney-client privileged,

13   so --

14           THE DEFENDANT:  Sorry.

15           THE COURT:  Proceed, but don't discuss what you

16   and Ms. Butterton told each other.

17           THE DEFENDANT:  So, yes, so due to the overall --

18   everything and him already telling me he was going to rip

19   up my deal and send me to jail for a very long time, I was

20   scared if I deviate anything from the M- -- the original

21   statement, which he wasn't even a part of, that meeting,

22   they were going to rip up my deal anyway, because he stated

23   he was going to rip up my deal and send me to jail for a

24   very long time.

25           THE COURT:  All right.  All right.  That's your

```
 1    explanation for why you didn't testify.

 2             THE DEFENDANT:  Yes, sir.

 3             THE COURT:  What else do you have to tell me?

 4    What else do you want to tell me that you want me to take

 5    into consideration from your view and from your perspective

 6    as I consider the sentence I will impose?

 7             THE DEFENDANT:  From -- okay, from my move

 8    there -- okay, they're saying that I -- I did all this.

 9    Yes, I had a part in it, but when I got in my discovery I

10    was shocked at amount.  Marcelle Green used to come to my

11    house to do all these things.  She was already doing this

12    with a boyfriend and she was introduced in this.  She even

13    went into my Accurint and was doing this information.  She

14    was even getting information to her house without my

15    knowledge -- all her addresses that she was using was

16    without my knowledge.  So the -- three, four, five times

17    the amount is because of Mrs. Green -- Ms. Green.

18             So yes, I went into my Accurint and I was giving

19    information, but not to that extent.  So, yes, I'm

20    responsible completely, but for the amount, I wasn't aware

21    that amount at all.

22             THE COURT:  All right.  You're telling me you

23    didn't receive, yourself, individually, personally,

24    $420,000?

25             THE DEFENDANT:  No.  And Mrs. Green obviously
```

40

1    was -- and I know this was in her -- in this trial in her

2    statements, she was transporting marijuana.  And somebody

3    also came to my home to threaten me before the trial not to

4    say anything about her involvement with transporting

5    marijuana.

6            THE COURT:  Well --

7            THE DEFENDANT:  So there -- there was just so

8    much.  And, yes, I had involvement in this and, yes, my job

9    was at home and I made a mistake by giving this information

10   to her, and I was influenced by doing this.  And, yes, I

11   did some homework, but I was not like this -- I worked from

12   9:00 a.m. to 8:00 p.m. everyday.  We had to have decisions

13   of auto loans within five minutes.  I was constantly on the

14   phone and on the computer.

15           I -- I don't have transcripts of what she actually

16   testified and I don't know if you have access to her MOIS,

17   but she said she was always over at my house doing -- this

18   is what she did all day.  So I just did not know the extent

19   of how much she had done.

20           So I -- I take full responsibility of what was

21   done because of my access to the database and what I

22   allowed -- who I allowed in my home and what I allowed to

23   come out of my work computer and my involvement in the

24   case.

25           THE COURT:  Anything else you want to say?

41

```
 1            THE DEFENDANT:  And I understand that the people
 2    have been hurt in the jail.  She had presented to me like
 3    they wouldn't know and they wouldn't be hurt, but I
 4    understand now, especially trying to rebuild life and
 5    rebuild credit, especially knowing how hard it is to
 6    rebuild credit, get stuff off.  Me, being a victim of
 7    identity theft, myself, how many people I have to call and
 8    submit papers and faxes of getting stuff off.
 9            I know what I did was wrong and I'm going to
10    impact my kids forever, you know, because I've never been
11    without my kids and now the burden is going to be on my
12    oldest daughter to raise my kids and that's going to kill
13    me.
14            And I'm just so sorry and I'm so sorry if I
15    disrespected the Court in any way.  And, I mean, I'll live
16    with this forever.  I'm sorry.
17            THE COURT:  Did you think about all this before
18    and especially -- what I'm referring to is the effect it
19    would have on your children and particularly your two
20    youngest children, before you engaged in your crimes?
21            THE DEFENDANT:  My two youngest children weren't
22    born yet.  About -- and my two oldest, no.  At the time,
23    you know, my daughter was about to be 16 and she wanted,
24    you know, stuff 16-year-olds want and . . .
25            THE COURT:  All right.
```

42

         1          THE DEFENDANT:  No.

         2          THE COURT:  Anything else you want to -- I have

         3    some questions for you, but before I ask you questions, I

         4    want to make sure you're done with your allocution.

         5          THE DEFENDANT:  Yes, sir, I'm done.

         6          THE COURT:  You are?  Okay.  Can you point to me

         7    any evidence, any text, e-mail, diary entry, that would

         8    tend to show that had you not -- had your fraud not been

         9    uncovered -- or discovered, that you would have voluntarily

        10    stopped your criminal activity before the 26, or at least

        11    not gone beyond the 26 months?

        12          THE DEFENDANT:  I -- can I point to something

        13    saying that I would have stopped?

        14          THE COURT:  No, that you made some kind of record

        15    that -- let me ask it this way:  Is there anything that you

        16    could point to me that shows that during this 26 months,

        17    you had any remorse for what you were doing and the effect

        18    it was having on your victim such that you were considering

        19    stopping your criminal activity before your fraud was

        20    uncovered?

        21          THE DEFENDANT:  Well, Trammel Thomas had moved

        22    that year.  And after he had moved in, Marcelle Green was

        23    not coming over as much.  And so I was actually trying to

        24    sever our relationship with some other stuff that happened,

        25    so without her in the picture it wouldn't have kept

1    happening.

2              THE COURT:  Well, according to the Government, you

3    stole the information -- personally identifying information

4    of 181 individuals from the Accurint database in the course

5    of discharging your duties as a bank officer.  You realize

6    that's what the Government's alleging.

7              THE DEFENDANT:  Yes, seeing the printout, yes.

8              THE COURT:  Do you deny that?

9              THE DEFENDANT:  No.  I saw the printout and it was

10   my log-in, so I --

11             THE COURT:  So as Ms. Paluch said, you heard her,

12   over 26 months, that averages seven times a month.  So 181

13   opportunities to say, you know, I'm going to stop here.

14   I'm going to stop at 93.  And I think what I'm doing is

15   wrong and I'm impacting the lives of these victims and I am

16   committing a felony, a federal crime, so I'm going to stop,

17   even though law enforcement hasn't discovered my scheme

18   yet.  Did you ever have those thoughts?

19             THE DEFENDANT:  I mean, I -- there's nothing I can

20   point out to prove to you --

21             THE COURT:  All right.  Just tell me -- just tell

22   me what you did or not.

23             THE DEFENDANT:  I didn't want to be involved in

24   it.  I wanted to start my own business and be completely

25   done with it.  I didn't like what I was doing and the

1    amount of -- it was just -- it felt like -- it obviously

2    felt wrong.  My whole life I've just been in the banking

3    industry.  I had a job, I had this, I never had to worry

4    about anything.  And being around Marcie and doing that,

5    it, of course, felt wrong, but she was over every day, so

6    it just kind of continued and it just got out of control

7    and there was -- I'm glad it happened to -- I know that

8    sounds weird, but I'm glad I got caught because I think I

9    need to go to prison because obviously I hurt people, I

10    took money that I didn't earn.  My kids need to see that,

11    you know, there's consequences for those actions.

12           I've always -- like I used to work double jobs.  I

13    mean, I have always busted my butt and so for them to know

14    that I just took money I didn't earn, just easy, and then

15    hurt people in the process, I need to go to prison.  I'm

16    not -- I'm not trying to say that I don't have remorse and

17    I don't think I should go, I absolutely think I should go

18    and I don't think it's right to keep doing it just -- she

19    was just over every day and she always, like, needed more,

20    and it was just kind of out of control.

21           I couldn't like -- I just had a hard time, like,

22    saying no.  It just kept going.  And she -- and she had no

23    job, so it was like she, you know, needed income.  She was

24    like my best friend, so I just wanted to help her.  And

25    then Mercedes didn't have a job and she was, you know, on

45

```
 1    drugs and I was trying to get her off drugs and then do
 2    like a business, and I just was trying to help people but I
 3    really hurt people.  And now they're going to prison.  And
 4    even though I don't like Marcie, like I don't -- she is
 5    going to be away from her kids.  So like if I would have
 6    never had that stupid job from home, she would have never
 7    known like this -- it would have never happened.
 8              THE COURT:  Well, you could have just told her no.
 9    I mean --
10              THE DEFENDANT:  I know.
11              THE COURT:  -- I'm not going to engage in criminal
12    fraud.
13              THE DEFENDANT:  I absolutely agree with you.
14    You're completely right.  And now I'm here and I'm going to
15    be -- the consequence is the rest of my life.  Like I'm 40
16    years old, about to have a felony.
17              My son is three and has never said a word, ever.
18    Not "no," not "mama."  We go to speech therapy three times
19    a week, he has autism and now my 22-year-old has to -- I
20    just want -- the 22-year-old, she has to be a position of a
21    mom because of my greed, because of my friend's greed.
22    It's horrible.  Like I'm a horrible person.  And that's --
23    that's not that what -- this is just like completely
24    spiralled out of control.  It's just a horrible situation.
25    And I am sorry.
```

1          And I meant no disrespect to the Court.  I just

2     didn't want to get in any more trouble saying the wrong

3     thing on the stand.

4          And I absolutely think I should go to prison and I

5     think it's in God's hands, and whatever I'm supposed to

6     have happen in prison is supposed to show me -- and whoever

7     I'm supposed to meet there, I'm supposed to meet.

8          THE COURT:  All right, ma'am.  Are you done?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right.

11          THE DEFENDANT:  I'm so sorry.  I'm crying like a

12     baby.  I -- in my head, this was not supposed to be crybaby

13     like this.  I'm so sorry.

14          THE COURT:  All right.  I'm prepared to rule on

15     the defendant's motion.  It is their initial contention the

16     defendant argues essentially there should be no adverse

17     consequences to her decision to not abide by her

18     cooperation agreement and testify at the trial of her

19     codefendant and former lover, Trammel Thomas.  I don't

20     think it would be a good use of my time here this afternoon

21     to recount the arguments and counterarguments from the

22     parties on this point.  It will suffice for me to summarize

23     my ruling on this particular point as follows:

24          I note that the Government has fulfilled all of

25     its obligations under the plea agreement.  It has moved to

1    dismiss all the remaining counts in the indictment, to

2    include the aggravated identity charges; it moved for the

3    defendant to receive all three points for acceptance of

4    responsibility; and it did not seek any further charges

5    against the defendant.

6            All of this is very significant because in my view

7    the defendant's failure to fulfill her obligations under

8    the plea agreement gave the Government the option, had it

9    chosen to exercise it, to withdraw from the plea agreement

10   and seek to reinstate all the charges from the original

11   indictment against Ms. Carr.  And, frankly, that is what I

12   had anticipated that the Government was going to do and why

13   I originally set a status conference in this case to take

14   up what I thought was coming down the pike.

15           Not only that, but even though the defendant

16   admitted to the forfeiture allegation in the indictment, no

17   order of forfeiture can now be issued on Count 1 and,

18   therefore, unlike her co-conspirator, Mr. Thomas, she will

19   not be subject to an order of forfeiture.

20           Finally, pursuant to the calculations set forth in

21   the plea agreement, the Government did not seek or advocate

22   for an abuse of trust enhancement for the two additional

23   levels for 10 or more victims as requested by the probation

24   officer.

25           In sum, I agree with the Government that Ms. Carr

48

1    received all the benefits of the plea agreement and at the
2    last possible moment she reneged on her obligation to
3    testify truthfully at Mr. Thomas' jury trial.  And that by
4    doing so, she inflicted the maximum amount of potential
5    harm to the Government's case against Mr. Thomas.  I find
6    that it is appropriate for me to consider the defendant's
7    conduct in breaching her cooperation in fashioning a just
8    sentence to impose upon her.  And I'm referring for support
9    for this position to the Seventh Circuit decision Ms.
10   Paluch referenced, *United States v. Turner*, 864 F.2d 1394
11   at 1399, a 1989 decision from that court.
12          The Tenth Circuit -- the Seventh, rather, the
13   Seventh Circuit in that court held that reneging on one's
14   promise is a basis of punishment independent of the
15   assertion of the privilege not to testify and is a basis on
16   which the sentence legitimately may be augmented.  Apart
17   from her arguments related to her failure to testify at the
18   trial of her codefendant, the defendant's motion and her
19   requested 24-month variant sentence rests primarily on
20   three grounds.
21          First, for someone who has never been in prison
22   before, a 24-month custodial sentence is more than enough
23   time to reflect the seriousness of her offense, provide
24   adequate deterrence, and protect the public from future
25   crimes.

1        Her second major argument is that her children

2    and, especially her two youngest children, need her at home

3    and will be very adversely affected by a prolonged absence

4    on her part.

5        And, lastly, that this being her first felony

6    conviction, it places her in a Criminal History Category of

7    I, which according to the Sentencing Commission data,

8    individuals in that category have a recidivism rate of

9    only, I'll use the word "only" of 14 percent and that that

10   is another mitigating factor.

11       So let me first take up grounds 1 and 2.  The

12   first argument essentially that because she has no prior

13   period of imprisonment, any period behind bars will have a

14   profound deterrent effect especially as compared to

15   defendants with several prior felony convictions and

16   periods of incarceration.  I have previously categorically

17   rejected this line of reasoning, especially in cases of

18   so-called white-collar financial crimes prosecutions like

19   the one before me today.  Taken to its extreme, the

20   argument would countenance very light sentences to

21   sentences like Bernie Madoff, who engaged in egregious and

22   protracted fraud and caused vast human and financial

23   damages merely because they were first-time offenders.

24       The defendant's related argument that as an

25   experienced bank employee, the mere fact of this conviction

1    will preclude her from working in the financial services

2    industry ever again, and by virtue of that she will never

3    again be able to use the banking experience and skills she

4    has developed over many years, these are all additional

5    burdens and losses Ms. Carr will already suffer, and as a

6    result this argues for a lower custodial sentence,

7    according to the defendant, in this case.

8           I categorically reject this argument as well.  I

9    note that the circuit courts have swiftly disposed of these

10    arguments for the very same reasons I find they have little

11    to no merit in these circumstances.  Let me quote from just

12    two appellate decisions which very clearly crystallize, in

13    my view, these issues and articulate why we as federal

14    judges must not apply one set of sentencing factors to

15    white-collar fraud defendants and a different set to the

16    so-called drug and gun class of defendants.  *United States*

17    *v. Musgrave*, 761 F.3d 602 at 604, a 2014 decision from the

18    Sixth Circuit.  The Court there considered the drastically

19    reduced sentence I just recorded imposed in the bank and

20    wire fraud case where the guideline sentencing range, like

21    it is here, was 57 to 71 months.  The Sixth Circuit stated,

22    quote, The District Court relied heavily on the fact that

23    Musgrave had already been punished extraordinarily by four

24    years of legal proceedings, legal fees, the likely loss of

25    his CPA license, and a felony conviction that will follow

1    him for the rest of his life, end quote.

2          The Sixth Circuit determined that the consequences

3    of Musgrave's prosecution and conviction were impermissible

4    factors to be considered.  The Court went on, quote, None

5    of these things are his sentence nor are they consequences

6    of his sentence.  A diminished sentence based on these

7    considerations does not reflect the seriousness of his

8    offense or effect a just punishment, end quote.

9          In a similar vein, the Seventh Circuit has even

10   more aptly stated as follows, quote, No middle class

11   sentencing discounts are authorized.  Business criminals

12   are not to be treated more leniently than members of the

13   so-called criminal class just by virtue of being regularly

14   employed or otherwise productively engaged members --

15   individuals in lawful economic activity.  It is natural for

16   judges, drawn as we are from the middle or upper middle

17   classes, to sympathize with criminals drawn from the same

18   classes, but in this instance, we must fight our nature.

19   Criminals who have the education and training that enables

20   people to make a decent living without resorting to crime

21   are more, rather than less, culpable than their desperately

22   poor and deprived brethren in crime.

23          That's from the United States -- case of *United*

24   *States v. Stefonek*, S-t-e-f-o-n-e-k, 179 F.3d 1030 at 1038,

25   a Seventh Circuit decision from 1999.

1          So I will not be varying downward in this case

2    because Ms. Carr is an experienced bank and financially --

3    financial industries employee who has never served time

4    behind bars before.

5          The second argument with respect to the

6    defendant's two young children:  In her motion the

7    defendant also argues that I should impose the dramatically

8    reduced sentence she seeks for the separate reason that her

9    two youngest children, ages 7 and 3, will be strongly and

10   adversely affected by her prolonged absence were she to be

11   sentenced within the guideline sentencing range.

12         This is an argument I hear not infrequently from

13   defendant parents, both mothers and fathers, with young

14   children in the house -- in the home.  I reject this as a

15   separate grounds for granting the motion.  My response to

16   this argument is a very simple one:  Ms. Carr should have

17   paused to consider the effect on her two young children of

18   her possible incarceration before she embarked on her

19   course of criminal conduct and not just afterwards.

20         This is -- this was a -- as Ms. Paluch pointed

21   out, and since this was not just a one-time crime like a

22   single bank robbery, but instead it's a sustained series of

23   criminal actions and fraudulent conduct undertaken 181

24   times and repeatedly over the course of 26 months, that if

25   Ms. Carr's maternal instincts had truly triggered authentic

1    concern for the future welfare of her children, Ms. Carr

2    had ample and multiple opportunities during her protracted

3    crime spree to bring her crimes to a swift end; but she did

4    not.

5            I am not unsympathetic that during -- that two

6    young children in this case will be without their mother

7    for a period of years.  At least in this case, they will

8    apparently be well taken care of by Ms. Carr's adult

9    daughter and son-in-law.

10           The last factor in aggravation I wish to discuss

11   are the victims in this case.  As I discussed earlier in

12   this context, these incarcerated victims are considered a

13   vulnerable group under the Sentencing Commission

14   Guidelines, and for good reason.  My review of their victim

15   letters has convinced me that the harm the defendant's

16   crimes has inflicted upon them is real and significant.

17           I read about the previous damages done to these

18   individuals' credit history and how some of their files

19   have been red flagged and worse, and that such -- and the

20   odds that they will be facing when they are released to

21   obtain credit or loans or educational or housing -- for

22   educational or housing purposes or for trying to get a job,

23   and that all those opportunities have now been

24   significantly diminished.

25           For a societal group which already faces severe

1    impediments to transitioning to law-abiding lives with

2    gainful employment, this added personal damage done to them

3    is, in my view, especially cruel.

4            So in conclusion, I find the defendant has failed

5    to convince me that the statutory services are best served

6    by granting her variance motion.  I specifically find that

7    the variant sentence sought by the defendant in her motion

8    fails to reflect the seriousness of the offense, fails to

9    afford adequate deterrence to future criminal conduct and

10   will, in fact, not protect the public from further crimes

11   of this defendant.  As a consequence the defendant's motion

12   for variant sentence is denied.

13           I do, however, agree with the defendant's final

14   argument in her motion, premised on the fact that this is

15   her first felony conviction and that she has no substantial

16   criminal history and that those are legitimate factors in

17   mitigation.

18           Also in mitigation I think are the very heartfelt

19   and genuine letters of support from her family that I

20   received and read.  And it is for these reasons that I

21   intend to sentence the defendant at the bottom of the

22   guideline range instead of the middle range or higher.

23           Given all the above, I intend to sentence the

24   defendant to a period of incarceration of 57 months to be

25   followed by a term of supervised release of three years.  I

55

1    also intend to order that Ms. Carr pay restitution in the

2    total amount of $562,487.85, in addition to the special

3    assessment of $100.  Imposing a fine in this case would, in

4    my view, impair Ms. Carr's ability to simultaneously pay

5    restitution.  For this reason, I intend to waive payment of

6    any fine apart from the special assessment as well as any

7    interest on the restitution amount.

8            Before I actually impose sentence, I'll give

9    counsel a final opportunity to make any record they believe

10   appropriate.  Ms. Paluch.

11           MS. PALUCH:  None, Your Honor.  Thank you.

12           THE COURT:  Ms. Butterton.

13           MS. BUTTERTON:  Your Honor, just a couple of, I

14   suppose, housekeeping matters.  First, we are seeking

15   recommendation to a facility in Arizona so Ms. Carr can be

16   close to her family.  I believe there was an FCI in

17   Phoenix; of course that's up to the Bureau of Prisons.

18           THE COURT:  Is there one -- is Arizona as lucky as

19   we are to just have one federal district?

20           MS. BUTTERTON:  I'm embarrassed that I don't know

21   the answer to that question.

22           THE COURT:  I need to recommend to a federal

23   district, not to a state.  Let me ask Mr. Gill.

24           MS. BUTTERTON:  I think it's one district because

25   of the population --

1        PROBATION OFFICER:  Your Honor, there is one
2   district of Arizona.
3        THE COURT:  There is just one district of Arizona.
4   Is there any objection from the Government?
5        MS. PALUCH:  No, Your Honor.
6        THE COURT:  Does this facility, to your knowledge,
7   Ms. Butterton -- I hope you looked into this -- house
8   female inmates?
9        MS. BUTTERTON:  That's correct, Your Honor,
10  there's a female facility.  And I don't believe that Ms.
11  Carr's going to be anything above the lowest security
12  designation.
13       THE COURT:  Okay.  So I think you've been to
14  enough sentencings in front of me to know that I don't
15  recommend to a particular facility, just that a facility
16  within a particular district that's appropriate to the
17  security designation of the defendant.
18       MS. BUTTERTON:  That's fine, Your Honor.  Thank
19  you.
20       THE COURT:  Given that there's no objection from
21  the Government, I will include that in the judgment.
22       MS. BUTTERTON:  The only other housekeeping matter
23  which the Court may want to address later is the issue of
24  surrender.
25       THE COURT:  Yeah.  We'll deal with that later.

1      All right.  I find no reason to depart from the

2   guideline sentencing range as calculated by the

3   Government's motion -- let me see -- I -- I find no reason

4   to depart from the guideline sentencing range which does

5   not exceed 24 months and I will impose a sentence within

6   that range.  I find that the sentence I will impose in this

7   case reflects the seriousness of the offense, affords

8   adequate deterrence to future criminal conduct, and will

9   protect the public from further crimes of this defendant.

10      Accordingly pursuant to the Sentencing Reform Act

11   of 1984, it is the judgment of this Court that the

12   defendant, Heather Carr, be committed to the custody of the

13   Bureau of Prisons to be imprisoned for a term of 57 months.

14   The Court recommends that the defendant be incarcerated at

15   a facility appropriate to her security designation located

16   within the district of Arizona.

17      Upon release from imprisonment, the defendant

18   shall be placed on supervised release for a term of three

19   years.  While on supervised release, the defendant shall

20   not commit another federal, state or local crime; shall not

21   possess a firearm as defined in 18 United States Code

22   Section 921; and shall comply with the standard conditions

23   that have been adopted by this Court in District of

24   Colorado General Order 2016-1.

25      The defendant shall not unlawfully possess and she

1    shall refrain from unlawfully using a controlled substance.

2    The Court waives the mandatory drug testing provisions of

3    Section 3563(a)(5) because the report indicates a low risk

4    of future substance abuse by this defendant.

5           The defendant shall cooperate in the collection of

6    DNA as directed by the probation officer.

7           The Court finds that the following special

8    conditions of supervision are reasonably related to the

9    factors enumerated in Sections 3553(a) and 3583(d), and

10   they do not constitute a greater deprivation of liberty

11   than reasonably necessary to accomplish the goals of

12   sentencing.

13          Special condition No. 1, the defendant shall not

14   incur new credit charges or open initial lines of credit

15   without the approval of the probation officer unless the

16   defendant is in compliance with the periodic payment

17   obligations imposed pursuant to the Court's judgment and

18   sentence.

19          No. 2, as directed by the probation officer, the

20   defendant shall apply any monies received from income tax

21   refunds, lottery winnings, inheritances, judgments, and any

22   anticipated or unexpected financial gains to the

23   outstanding court-ordered financial obligation in this

24   case.

25          No. 3, the defendant must provide the probation

1   officer access to any requested financial information and

2   authorize the release of any financial information until

3   all financial obligations imposed by the Court are paid in

4   full.

5          No. 4, if the defendant has an outstanding

6   financial obligation, the probation office may share any

7   financial or employment documentation relevant to the

8   defendant with the Asset Recovery Division of the United

9   States Attorney's Office to assist in the collection of the

10  obligation.

11         No. 5, the defendant shall document all income or

12  compensation generated or received from any source and

13  provide such information to the probation officer as

14  requested.

15         No. 6, the defendant shall not cause or induce

16  anyone to conduct any financial transaction on her behalf

17  or maintain funds on her behalf.

18         No. 7, the defendant may not engage in any

19  occupation, business, profession, or volunteer activity

20  that would require, enable, the defendant to obtain

21  personally identifying information of customers or other

22  employees without prior approval of the probation officer.

23         No. 8, the defendant shall not engage in any

24  business activity unless that activity is approved by the

25  probation officer.  Any approved business activity must

1     operate under a formal registered entity for all -- for any

2     approved business activity.  The defendant shall provide

3     the probation officer with the names of all business

4     entities and their registered agents.  The defendant shall

5     not register any new business entity, foreign or domestic,

6     without the approval of the probation officer.  The

7     defendant shall not cause or induce others to register

8     business entities on her behalf.

9            For any approved business activity, the defendant

10    shall maintain business records.  The defendant shall

11    provide all requested documentation and records to the

12    probation officer regarding any of her business activities

13    as requested by the probation officer.

14           No. 9, the defendant shall maintain separate

15    personal and business finances and shall not commingle

16    personal and business funds or income in any financial

17    accounts including, but not limited to, bank accounts and

18    lines of credit.

19           No. 10, the defendant shall submit her person,

20    property, house, residence, vehicle, papers, and computers,

21    as defined in 18 United States Code Section 1030(e)(1),

22    other electronic communications or data storage devices or

23    media or office to a search conducted by the United States

24    probation officer.  Failure to submit to such search may be

25    grounds for revocation of supervised release.

1           The defendant shall warn any other occupants that

2     the premises may be subject to searches pursuant to this

3     condition.  An officer may conduct this search pursuant to

4     this condition only when reasonable suspicion exists that

5     the defendant has violated a condition of supervision and

6     that the areas to be searched contain evidence of this

7     violation.  Any search must be conducted at a reasonable

8     time and in a reasonable manner.

9           The defendant is ordered to make restitution in

10    the total of $562,487.85 in the amount and to the

11    individual victims as set forth in the table found at

12    paragraph 93 of the final report, ECF 250.

13       The defendant shall pay a special assessment of $100,

14    which shall be due and payable immediately.

15       The Court finds that the defendant does not have the

16    ability to pay a fine in light of the restitution

17    obligation imposed by the judgment; the Court therefore

18    waives payment of any fine other than the special

19    assessment, and for this reason payment of interest on the

20    restitution amount is also waived.

21          The special assessment and restitution obligations

22    are due immediately.  Any unpaid restitution balance, upon

23    release from incarceration, shall be paid in monthly

24    installment payments during the term of supervised release

25    of not less than 10 percent of the defendant's gross

1   household monthly income.

2          Within 15 days of release from custody, the

3   defendant shall meet with the probation officer to develop

4   a plan for the payment of an unpaid portion of his

5   obligations under the court's judgment -- of her financial

6   obligations under the court's judgment.  This plan will be

7   based on the defendant's income and expenses.  The plan

8   will be forwarded to the Court for review and approval.

9          All right.  Let me take up now the issue of

10  voluntary surrender.  Ms. Butterton, it's the defendant's

11  burden, so I'll let you go first.

12          MS. BUTTERTON:  Your Honor, the factors at play --

13  the statutory factors at play here are the same as after

14  the change of plea:  Whether she is a risk of flight,

15  danger to the community.  These all come into play.  Again

16  it's the same standard as the change of plea.  The

17  Government did not seek it then.

18          I can't respond to whether they're seeking it now,

19  but Ms. Carr has been on bond for almost a year, has had no

20  violations, has talked to the probation officer, and would

21  request the time to get her affairs in order.

22          THE COURT:  Okay.  Does the Government have any

23  objection to voluntary surrender?

24          MS. PALUCH:  We do not, Your Honor.

25          THE COURT:  I find by clear and convincing

63

1    evidence that the defendant is not likely to flee, nor does

2    she pose a danger to the safety of any other person or the

3    community.

4           It is therefore ordered that the defendant,

5    Heather Carr, surrender at the institution designated by

6    the Bureau of Prisons on February 8th, 2018, at 12:00 noon.

7    In the interim, the defendant's bond is continued and all

8    conditions set forth in the magistrate judge's order

9    setting conditions of release shall continue to apply.

10          Ms. Carr, I'm giving you five weeks from today to

11   get your affairs in order before you report to the Bureau

12   of Prisons.  Let me point out to you, ma'am, that if you

13   fail to report to the Bureau of Prisons on the 8th of

14   February to begin to serve your sentence, that such a

15   failure to report will, itself, be a new and separate

16   criminal offense.  Are we clear on that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  All right.  And, lastly, Ms. Carr,

19   pursuant to the plea agreement you entered into in this

20   case, you waive the right to appeal your conviction as well

21   as the sentence I just imposed except in very limited

22   circumstances.  Given that I did not impose upon you a

23   custodial sentence which exceeds the statutory maximum, or

24   is greater than that applicable to an offense level of 23,

25   it would appear that your right to appeal under your plea

1    agreement is nonexistent unless the Government chooses to

2    file an appeal.

3            In any event, to the extent you retain the right

4    to file an appeal, I'm advising you that should you wish to

5    file such an appeal, a notice of appeal must be filed with

6    the Clerk of the Court within 14 days after entry of

7    judgment or the right to appeal will be lost.

8            If you're unable to afford an attorney for an

9    appeal, the Court will appoint one to represent you.  If

10   you're unable to afford the fees for filing an appeal, you

11   may file a request with the Court that such fees be waived.

12           All right.  Is there anything further from the

13   Government at this time?

14           MS. PALUCH:  No, Your Honor.  Thank you.

15           THE COURT:  All right.  Anything further from the

16   defendant?

17           MS. BUTTERTON:  Just one moment, Your Honor.  I

18   just -- I believe -- no.  Nothing else.  Thank you.

19           THE COURT:  All right.  Anything further from the

20   probation officer?

21           PROBATION OFFICER:  No, sir, Your Honor.

22           THE COURT:  All right.  All right.  Thank you,

23   that will be all.

24       (Proceedings concluded at 3:27 p.m.)

25

65

```
1                    *      *      *      *      *

2                    REPORTER'S CERTIFICATE

3

4        I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled

6    matter.

7        Dated at Denver, Colorado, this 12th day of February,

8    2018.

9

10

11

12      _                                        _

13           MARY J. GEORGE, FCRR, CRR, RMR

14

15

16

17

18

19

20

21

22

23

24

25
```

**ATTACHMENT C**

FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

April 5, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

HEATHER CARR,

 Defendant - Appellant.

No. 18-1021
(D.C. No. 1:16-CR-00054-WJM-1)
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **O'BRIEN**, Circuit Judges.

 Heather Carr accepted a plea agreement and pleaded guilty to one count of

conspiracy to defraud the government with respect to claims, in violation of

18 U.S.C. § 286.  She was sentenced to 57 months of imprisonment.  Although the

plea agreement contained an appeal waiver, Ms. Carr appealed.  The government

moves to enforce the appeal waiver under *United States v. Hahn*, 359 F.3d 1315,

1328 (10th Cir. 2004) (en banc) (per curiam).

---

[*] This panel has determined unanimously that oral argument would not
materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.
This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Under *Hahn*, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. We need not address a *Hahn* factor that the appellant does not contest. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).

In her response to the government's motion, Ms. Carr, through counsel, concedes that her appeal waiver is enforceable as to this direct appeal, and she does not contest any of the *Hahn* factors. Accordingly, the motion to enforce is granted, and this matter is terminated.

Entered for the Court
Per Curiam

2

pg 1

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 22 2018

JEFFREY P. COLWELL
CLERK

In the United States District
Court for the District of Colorado

Criminal Action No: 16-CR-00054-WJM-1
Civil Action No: 18-CV-01681-WJM

United States

v.

Heather Carr-Defendant-Movant

_____

Movant's response to government's
response to motion to vacate, set aside or
correct sentence

_____

Heather Carr's motion for relief under
28 U.S.C 2255 Doc 428 Should be
approved and/or an evidentiary hearing
should be held. Prosecutor Bryan Fields
threatened, bullied and yelled at me
informing me he was "ripping up my deal
and sending me to jail for a very
long time". Mr. Fields caused doubt and
concern that I no longer had a plea
deal. The government's "response" to this
was a footnote on page 13 that states
"This court has previously discounted

Pg. 2

Carr's unsubstantiated and irrelevant allegations of isolated intemperance. See Tr., Change of Plea hearing (Dec 5, 2016) at 35 ("I have now seen Mr. Fields on at least a couple trials, Ms. Paluch on one. I find it hard to believe they would be abusive on the phone to you." First the government has the date wrong in that footnote. The judge said that at my sentencing on January 4th, 2018 - not a change of plea hearing in 2016. I never knew who Bryan Fields was until the phone call he threatened me on in November 2017. And the governments response was to repeat what the judge said at sentencing who was not present on the phone calls. To get a proper accurate response I would simply request to ask them directly at an evidentiary hearing.

On the claim for ineffective counsel there are several reasons my lawyer was ineffective. My lawyers overall conduct fell below an objective standard of reasonableness under prevailing professional norms. My lawyer Mary Butterton

Pg 3

performed contrary to my best interests in a way that a reasonable lawyer would not have. By telling me that my plea agreement was for 24 months and that the guideline range does not matter because it's just advisory - was not using reasonable professional judgement. By telling me to not read too much into my plea agreement because there are a ton of legal terms was not using reasonable professional judgement. By telling me I was not subpoenad to testify and telling me I could withdraw my plea and go to trial and then days later saying the prosecutor was still honoring the 24 month plea agreement - was not using reasonable professional judgement. Due to many circumstances regarding this case there are many identified acts and omissions by my lawyer and the prosecution that were outside the wide range of professional competant assistance. My lawyer did not investigate facts and did not follow through with evidence

pg 4

and information I gave her. My
lawyer on the prosecution did not
even research any applicable case
law regarding similiar cases. My
lawyer refused to do anything I was
requesting when I wanted to go to
trial such as saying Mr. Thomas and
I trial could not be severed because
the "10th circuit just doesn't do that."
She refused to in any way prepare
for trial and would not research any
of the information I gave her about
Christche Duncan stealing my identity
and her submitting FAFSA's. I could
not afford an attorney, so I believed
this 24 month deal was the only option.
My lawyer did not thoroughly or
accuratly explain the correct sentencing
guidelines and even said guidelines are
only advisory and it doesn't matter what
they are because my plea is 24 months.
My lawyer would not return emails
or phone calls regarding all the concerns
I had about Brian Fields threats, the
verification on the 24 month sentence

Pg 2

and the concerns that Martha Paluck
refused information and would not
document anything I said about
their "witness" Christine Duncan.
My lawyer also stated that the PSI
was just an interview with a probation
officer to give the judge an idea of who
I am. I had no idea what a PSI was
and the impact it could have. I had no
idea that a probation officer could
increase the points from the points
signed in a plea agreement. The PSI
was done over 1year before my
sentencing, did not include Marbelle
Green in it since I gave them the
information to do a superceding
indictment and the probation officer
Matthew Gil did not turn it in until
the day after I was set to testify.
Had the PSR been given to me 1year
prior when the interview was actually
done then that would have been a
huge tip off that this 24 month
plea deal was not what my lawyer
was saying it was. Even at the change

pg. 4

of plea hearing 24 months was mentioned 3 times. My lawyer said the plea was 24 months and guideline ranges do not matter. I have no knowledge of the law and relied on this lawyer. In the governments response they also briefly touched on the fact that they lied in Mr. Thomas sentencing statement 1 week prior to my sentencing. They knew I was not involved in a prior case and was never in a position to testify ever before and maliciously lied. They responded on page 13 by saying "Carr made no mention of the statement during her lengthy allocution on at any other time before her case became final, simply underscores her procedural default." Well if the prosecution would have simply looked at the date of my email where I became aware of their lie - it was January 14th, 2018. I was sentenced 10 days prior on January 4th 2018 or else I would have absolutely made the court aware of their wreckless

pg 7

and malicious statement then. They could have even verified through my Pacer log in when I viewed the document. So unfortunately mentioning this in my "lengthly allocution" or at at any other time before the case became final was impossible because I did not become aware of that until January 14th, 2018.

There are many issues that I would love to get the chance to address in an evidentiary hearing and be able to talk with a lawyer about if the court grants me appointment of counsel. Thank you for your consideration.

Sincerely,

Heather Carr

Alton Carr #89751-083
Womens Federal Prison Camp
37930 N 45th Avenue
Phoenix, AZ 85086

West ValleyP&DC
WED 17 OCT 2018 ᴾᴹ

Judge William J. Martinez
Clerk of the Court
Alfred A. Arraj U.S. Courthouse
1901 19th St Room A105
Denver, CO
80294-3589

CERTIFIED MAIL

7001 0320 0004 3581 8604





pg 1

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 22 2018

JEFFREY P. COLWELL
CLERK

Motion to amend 2255 motion with
additional claim

Case #: 1:16-CR-00054-WJM-1
Heather Carr

Claim 5: Points need to be recalculated

During the time my previous lawyer
Mary Butterton was advising me I
informed her several times that the
amount the prosecution was alleging was
a loss was completely out of the realm
I was aware of. Not only was the amount
about 5 X higher than I was aware
of but 3 people were included in this
amount that should not have been.
These people are Christine Duncan,
Vanessa Lopez and Ismael Ornez.
These people were friends of Tramell
Thomas and were not incarcerated and
went into Pikes Peak Community
College by their own free will and
applied for these loans themselves.
Their own MOI statements say they

applied for these loans themselves. The address their debit cards were sent to that had the funds loaded on them was the actual physical address of Christine Duncan in Colorado Springs. This was her residence, her friends, her loans. I even have a police report from January 29th 2011 with Christine Duncan's own statement listing that address as her residence. This date coincides with the exact time the loans were obtained and these debit cards were mailed to her address. Vanessa Lopez was Christine Duncan's friend and Vanessa Lopez statements also state she was always at that address as well. Those 3 peoples loan amounts were included in the loss amount of $562,487.85. My points were increased by 14 points because the loss amount was over $550,000. If Christine Duncan, Vanessa Lopez and Ismael Omar's loans were removed from this calculation it would be <u>under</u> $550,000.

pg 3

That would put me in a different guideline range. My lawyer never did address this or attempt to fix this even though I mentioned this several times. In previous emails I have submitted to the court my lawyer advised me points don't matter and guideline ranges are only advisory and wouldn't make a difference since my plea was 24 months. Clearly how I see that points and guideline ranges do in fact matter and this needs to be corrected and I be resentenced using the correct points and guideline range. My restitution amount would need to be corrected as well. Thank you for your consideration.

Sincerely,

Heather Carr

Renewed motion for appointment of
Counsel for Heather Carr

Case#: 1:16-CR-00054-WJM-1

I will need appointment of counsel
to properly advise me on points calculated
in my PSI due to the additional claim
added to my 2255 motion. I was not
advised properly on my case by my previous
lawyer and since that was the only lawyer
I had spoken with I would like the
opportunity to be advised correctly. I am
not a lawyer and have no knowledge of the
law and am currently incarcerated with no
way to access information I need regarding this
case. The interests of justice will require the
appointment of counsel in this case. Ruling
on this motion will require the court to
resolve factual disputes at an evidentiary
hearing which requires the appointment
of counsel.

Sincerely,

Heather Carr

Motion for leave to file a reply
Out of Time

Case#: 1:16-CR-00054-WJM-1
Heather Carr

I do not know if there is a time limit
to reply to the governments response
in July. Until recently I was unaware
I was even able to respond since no
order was issued advising me of any
timeframe to respond. I have no
lawyer to advise me on the rules
or procedures of a 2255 motion and
there is another renewed motion to appoint
counsel that is filed with this motion.
I respectfully ask that my response
to the governments response be attached and
considered with my 2255 motion.

Sincerely, Heather Carr

I hereby certify that a copy of the foregoing documents were mailed to Judge William J. Martinez / Clerk of the court at Alfred A. Arraj United States Courthouse located at 901 19th St., Room A105 in Denver, CO 80294-3589 on October 16th, 2018.

Heather Carr

Included documents:
- Motion for leave to file a reply out of time
- Movants response to governments response to vacate set aside or correct sentence motion
- Motion to amend 2255 motion with additional claim
- Renewed motion for appointment of counsel





# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1
(Civil Action No. 18-cv-01681-WJM)

**UNITED STATES OF AMERICA**,

    Plaintiff-Respondent,

v.

**HEATHER CARR,**

    Defendant-Movant.

_____

## RESPONSE TO MOTION TO AMEND MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Pursuant to the Court's Order, the government responds to Carr's Motion to Amend her motion for relief under 28 U.S.C . § 2255.  Doc. 452.  The Motion to Amend is untimely in that it was filed a full three months after the government's response to the Motion to Vacate.  Moreover, the new claims have been procedurally defaulted or are otherwise meritless.

## INTRODUCTION

The Motion to Amend appears to present two claims:  (1) that Carr's offense level is too high – based upon evidence that she had going back as far as 2011; and (2) that her

1

trial counsel was ineffective for failing to argue for a lower offense level based upon that evidence. As with the Motion to Vacate, the Motion to Amend seeks resentencing to a term of 24 months. And, as before, Carr does not ask to have her Plea Agreement set aside, nor does she wish to go to trial on the charges originally presented in the Indictment.

## ARGUMENT

The amendment of a § 2255 pleading is governed by Rule 15, Fed. R. Civ. P. *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000). That rule permits a party to amend a pleading as a matter of right:

> (A) within 21 days of serving the pleading, or
>
> (B) within 21 days of service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is served first.

Fed. R. Civ. P. 15(a)(1).

Carr's Motion to Vacate was filed on June 29, 2018. Doc. 423. The government filed its response on July 23, 2018. Doc. 432. Carr filed her Motion to Amend on October 22, 2018. Doc. 452. Therefore, she does not have a right to amend under Rule 15(a)(1). Nor has she sought or obtained the permission of the government to amend. *See* Fed. R. Civ. P. 15(a)(2). Because Carr does not have either the right to amend or the government's permission to do so, she must obtain leave from the Court. *Id.* Although a court "should freely give leave when justice so requires," *id.*, leave to amend may be

denied for undue delay or futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Carr's proffered amendment is both unduly dilatory and futile. As to the former, to the extent that Carr claims that her advisory guideline range was improperly calculated, she is barred by procedural default. *See United States v. Bolden*, 472 F.3d 750, 751 (10th Cir. 2006) ("[A] § 2255 petition is not an appropriate vehicle to raise issues that should have been raised on direct appeal.") (citation omitted). "When a defendant fails to raise an issue on direct appeal, he is barred from raising it in a § 2255 motion unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (citation and internal quotations omitted). Carr has not disputed the fact of her procedural default nor argued that it is excused by cause and prejudice, as to either her original Motion to Vacate or the proffered amendment.

Relatedly, Carr asks the Court to accept a Reply in support of the Motion to Vacate some nine weeks out of time. Doc. 452 at 5. In support, she simply says she didn't know that she could file a reply; or if she could, the applicable timeline for doing so. *Id.* But even as a pro se litigant, Carr "must abide by this court's procedural rules." *United States v. Coleman*, 660 F. App'x 657, 658 (10th Cir. 2016) (unpublished) (citing *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994)). Here, the local rules specify that "[t]he moving party may file a reply no later than 14 days after the date of service of the

response, or such lesser or greater time as the court may allow." D.C.Colo.LCivR 7.1(d). In turn, this Court has provided that motions seeking an extension of time to file a document "must be sought by way of an appropriate written motion filed as far in advance of the deadline or setting as possible," and "must clearly establish good cause for the requested extension …." WJM Revised Practice Standards § II(D)(2). Moreover, "no motion for an extension of time to file a document shall be considered unless it is filed on or before the original filing deadline date," "[a]bsent a compelling reason". *Id.*

Carr's asserted reason for her nine-week delay does not even amount to "good cause," much less a compelling reason – "even for a pro se litigant." *Quarles v. Williams*, No. 04-2101-JWL, 2004 WL 2378840, *2 (D. Kan. Oct. 21, 2004) (unpublished) (citations omitted). "The Tenth Circuit has interpreted the phrase narrowly, rejecting inadvertence, neglect, mistake of counsel, or ignorance of the rules as good cause for untimely service." *Id.* (citing *In re Kirkland*, 86 F.3d 172, 174-76 (10th Cir. 1996)). Under this Court's rules and practice standards, the out-of-time motion to file a reply nine weeks late should be denied.

To the extent Carr asserts ineffective assistance of counsel with respect to her guideline calculation, her claim fails because she cannot demonstrate prejudice. She assumes that it was improper for this Court to enhance her offense level based upon the actions of her co-conspirators. Doc. 452 at 1-2. But this misunderstands the implications of the conspiracy charge to which she pleaded guilty. "When an offense

involves jointly undertaken criminal activity, relevant conduct includes all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1251 (11th Cir. 2017). *Accord United States v. Olejiya*, 754 F.3d 986, 992 (D.C. Cir. 2014) ("The loss amount is one part of the defendant's relevant conduct that—in the case of jointly undertaken criminal activity—includes all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.") (citation and internal quotation omitted). Thus, the relevant guidelines language focuses "on what 'the offense involved' rather than the defendant's own conduct." *United States v. McDuff*, 639 F. App'x 978, 985 & n.29 (5th Cir. 2016) (unpublished) (citing U.S.S.G. § 1B1.3(a)(1)(B) and § 1B1.3, app. n.2). *See also United States v. Willis*, 476 F.3d 1121, 1129 (10th Cir. 2007) (U.S.S.G. § 1B1.3(a)(1)(B) "applies to the conduct of others 'in furtherance of the jointly undertaken criminal activity' that is reasonably foreseeable to the defendant.") (footnote omitted).

*United States v. Obaygbona*, 556 F. App'x 161 (3d Cir. 2014) (unpublished) is especially instructive. There, the defendant asserted that "much of the loss ought to be attributed to other members of the conspiracy, not to him, because his co-conspirators used the stolen information to withdraw money from more banks than Obaygbona instructed them to visit." *Id.* at 164. The Court of Appeals rejected the defendant's attempt to distance himself from his co-conspirators. "Having provided fake identities to his co-conspirators for the purpose that they use them to make unauthorized bank

5

withdrawals, however, Obaygbona cannot disclaim responsibility when his collaborators used the same tactics at other banks." *Id.* Carr's proffered amendment likewise seeks to compartmentalize her liability. *See* Doc. 425 at 1 (asserting that her co-conspirators acted "by their own free will and applied for these loans themselves."). Thus, the amendment would be futile because it is meritless as a matter of law.

## CONCLUSION

Both the Motion to Amend and the accompanying out-of-time Motion for Leave to File a Reply to should be denied.

Respectfully Submitted,

Jason R. Dunn
United States Attorney

*s/ Paul Farley*
Paul Farley
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303.454.0100
USACO.ECFAppellate@usdoj.gov

Attorneys for Plaintiff-Respondent

6

**<u>UNITED STATES DISTRICT COURT</u>**
**<u>FOR THE DISTRICT OF COLORADO</u>**
**<u>CERTIFICATE OF SERVICE (CM/Colorado)</u>**

I hereby certify that on <u>November 7, 2018</u>, I electronically filed the foregoing

document with Clerk of Court using the CM/ECF system and certify that a copy will be

placed in the U.S. Mail, postage pre-paid and addressed to the following:

Heather Carr
#89751-083
Federal Prisoner Satelite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

<u>s/ Amanda Bell</u>
Amanda Bell
United States Attorney's Office
Denver, Colorado

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1
(Civil Action No. 18-cv-01681-WJM)

**UNITED STATES OF AMERICA**,

    Plaintiff-Respondent,

v.

**HEATHER CARR,**

    Defendant-Movant.

_____

## AMENDED RESPONSE TO MOTION TO AMEND MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

_____

Pursuant to the Court's Order, the government responds to Carr's Motion to Amend her motion for relief under 28 U.S.C . § 2255.  Doc. 452.  The Motion to Amend was filed a full three months after the government's response to the Motion to Vacate. Moreover, the new claims have been procedurally defaulted or are otherwise meritless.

### INTRODUCTION

The Motion to Amend appears to present two claims:  (1) that Carr's offense level is too high – based upon evidence that she had going back as far as 2011; and (2) that her trial counsel was ineffective for failing to argue for a lower offense level based upon that

1

evidence.  As with the Motion to Vacate, the Motion to Amend seeks resentencing to a term of 24 months.  And, as before, Carr does not ask to have her Plea Agreement set aside, nor does she wish to go to trial on the charges originally presented in the Indictment.

## ARGUMENT

The amendment of a § 2255 pleading is governed by Rule 15, Fed. R. Civ. P. *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000).  That rule permits a party to amend a pleading as a matter of right:

    (A) within 21 days of serving the pleading, or

    (B)  within 21 days of service of a responsive pleading or a motion under
        Rule 12(b), (e), or (f), whichever is served first.

Fed. R. Civ. P. 15(a)(1).

Carr's Motion to Vacate was filed on June 29, 2018.  Doc. 423.  The government filed its response on July 23, 2018.  Doc. 432.  Carr filed her Motion to Amend on October 22, 2018.  Doc. 452.  Therefore, she does not have a right to amend under Rule 15(a)(1).  Nor has she sought or obtained the permission of the government to amend. *See* Fed. R. Civ. P. 15(a)(2).  Because Carr does not have either the right to amend or the government's permission to do so, she must obtain leave from the Court.  *Id.*  Although a court "should freely give leave when justice so requires," *id.*, leave to amend may be denied for undue delay or futility.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

2

Here, Carr's proffered amendment is both unduly dilatory and futile. As to the former, to the extent that Carr claims that her advisory guideline range was improperly calculated, she is barred by procedural default. *See United States v. Bolden*, 472 F.3d 750, 751 (10th Cir. 2006) ("[A] § 2255 petition is not an appropriate vehicle to raise issues that should have been raised on direct appeal.") (citation omitted). "When a defendant fails to raise an issue on direct appeal, he is barred from raising it in a § 2255 motion unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (citation and internal quotations omitted). Carr has not disputed the fact of her procedural default nor argued that it is excused by cause and prejudice, as to either her original Motion to Vacate or the proffered amendment.

Relatedly, Carr asks the Court to accept a Reply in support of the Motion to Vacate some nine weeks out of time. Doc. 452 at 5. In support, she simply says she didn't know that she could file a reply; or if she could, the applicable timeline for doing so. *Id.* But even as a pro se litigant, Carr "must abide by this court's procedural rules." *United States v. Coleman*, 660 F. App'x 657, 658 (10th Cir. 2016) (unpublished) (citing *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994)). Here, the local rules specify that "[t]he moving party may file a reply no later than 14 days after the date of service of the response, or such lesser or greater time as the court may allow." D.C.Colo.LCivR 7.1(d).

3

In turn, this Court has provided that motions seeking an extension of time to file a document "must be sought by way of an appropriate written motion filed as far in advance of the deadline or setting as possible," and "must clearly establish good cause for the requested extension …." WJM Revised Practice Standards § II(D)(2). Moreover, "no motion for an extension of time to file a document shall be considered unless it is filed on or before the original filing deadline date," "[a]bsent a compelling reason". *Id.*

Carr's asserted reason for her nine-week delay does not even amount to "good cause," much less a compelling reason – "even for a pro se litigant." *Quarles v. Williams*, No. 04-2101-JWL, 2004 WL 2378840, *2 (D. Kan. Oct. 21, 2004) (unpublished) (citations omitted). "The Tenth Circuit has interpreted the phrase narrowly, rejecting inadvertence, neglect, mistake of counsel, or ignorance of the rules as good cause for untimely service." *Id.* (citing *In re Kirkland*, 86 F.3d 172, 174-76 (10th Cir. 1996)). Under this Court's rules and practice standards, the out-of-time motion to file a reply nine weeks late should be denied.

To the extent Carr asserts ineffective assistance of counsel with respect to her guideline calculation, her claim fails because she cannot demonstrate prejudice. She assumes that it was improper for this Court to enhance her offense level based upon the actions of her co-conspirators. Doc. 452 at 1-2. But this misunderstands the implications of the conspiracy charge to which she pleaded guilty. "When an offense involves jointly undertaken criminal activity, relevant conduct includes all reasonably

4

foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1251 (11th Cir. 2017). *Accord United States v. Olejiya*, 754 F.3d 986, 992 (D.C. Cir. 2014) ("The loss amount is one part of the defendant's relevant conduct that—in the case of jointly undertaken criminal activity—includes all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.") (citation and internal quotation omitted). Thus, the relevant guidelines language focuses "on what 'the offense involved' rather than the defendant's own conduct." *United States v. McDuff*, 639 F. App'x 978, 985 & n.29 (5th Cir. 2016) (unpublished) (citing U.S.S.G. § 1B1.3(a)(1)(B) and § 1B1.3, app. n.2). *See also United States v. Willis*, 476 F.3d 1121, 1129 (10th Cir. 2007) (U.S.S.G. § 1B1.3(a)(1)(B) "applies to the conduct of others 'in furtherance of the jointly undertaken criminal activity' that is reasonably foreseeable to the defendant.") (footnote omitted).

*United States v. Obaygbona*, 556 F. App'x 161 (3d Cir. 2014) (unpublished) is especially instructive. There, the defendant asserted that "much of the loss ought to be attributed to other members of the conspiracy, not to him, because his co-conspirators used the stolen information to withdraw money from more banks than Obaygbona instructed them to visit." *Id.* at 164. The Court of Appeals rejected the defendant's attempt to distance himself from his co-conspirators. "Having provided fake identities to his co-conspirators for the purpose that they use them to make unauthorized bank withdrawals, however, Obaygbona cannot disclaim responsibility when his collaborators

5

used the same tactics at other banks." *Id.* Carr's proffered amendment likewise seeks to compartmentalize her liability. *See* Doc. 425 at 1 (asserting that her co-conspirators acted "by their own free will and applied for these loans themselves."). Thus, the amendment would be futile because it is meritless as a matter of law.

## CONCLUSION

Both the Motion to Amend and the accompanying out-of-time Motion for Leave to File a Reply to should be denied.

Respectfully Submitted,

Jason R. Dunn
United States Attorney

*s/ Paul Farley*
Paul Farley
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303.454.0100
USACO.ECFAppellate@usdoj.gov

Attorneys for Plaintiff-Respondent

6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/Colorado)**

      I hereby certify that on <u>November 7, 2018</u>, I electronically filed the foregoing **AMENDED RESPONSE TO MOTION TO AMEND MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** with Clerk of Court using the CM/ECF system and certify that a copy will be placed in the U.S. Mail, postage pre-paid and addressed to the following:

Heather Carr
#89751-083
Federal Prisoner Satelite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

<u>s/ Amanda Bell</u>
Amanda Bell
United States Attorney's Office
Denver, Colorado

Judge William J. Martinez
Clerk of the Court
901 19th St Room A105
Denver, CO 80294

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR -1 2019

JEFFREY P. COLWELL
CLERK

Re: Case #: 1:16-CR-00054-WJM-1

Dear Judge Martinez,

Hello, my name is Heather Carr and I am writing this letter as a follow up to my 2255 motion filed June 29th, 2018. While awaiting the next step forward in my appeal process I would like to update the court on current and factual events and allow this letter to be taken into consideration. To date I have served 14 months of my 57 month sentence being served at the Phoenix Federal Prison Camp. Since being here I have completed over 30 Re-Entry preperation and continued education classes. I have had a lead role and been productive in my work detail. I work on myself everyday and exhaust all of my opportunities

while here and attempt daily to make the absolute best of my circumstances.

The last 14 months have been a transition since I have never experienced any jail or prison before and since I had never spent a single day without my children. I understand that my time here is a needed deterrent to my past actions that I strongly regret. I am truly focused on being a productive member of this institution, and a positive example through leadership and steady progression.

My unstable family dynamics are what consumed my thoughts and is heartbreaking. My children are now wards of the court and my oldest daughter Ayanna has temporary custody of Tru (age 4) and Milan (age 8). My daughter has done the best that she can holding our family together for the past 14 months but has come to the end of her emotional and financial means. My son Tru has autism and a sensory processing

disorder. He is severely developmentally delayed and is still non-verbal. He has not progressed at all in the 14 months I have been here and has actually regressed. He has been kicked out of 10 daycares in the past year due to him escaping out of the daycares and other issues associated with his autism. Daycares will no longer take him due to the liability unless he has a full-time aid with him. The State of Arizona will not approve an aid for him because he is not "medically fragile." My daughter has missed so much work because of the daycare situation that she is now in danger of losing her job. Without a daycare she can't work and without work she can not take care of her siblings or bills.

According to the State of Arizona, children must be adopted if parental reunification is not possible within 24 months. My daughter does not want them in a foster home because

They will be adopted, birth certificates will be changed and I will lose all parental rights. But unfortunately this is what we are facing bec. she can no longer take care of them and we have absolutely no other family.

I respectfully ask that you reconsider my sentence. At the time of my sentencing my family and I was led to believe it would be doing 24 months of incarceration. We were terribly unprepared for a sentence over that. My children are trying their best to stick together while I am in here but they are facing challenges far beyond my reach and aide. Their fragile stability and all of the issues with my son has been an unforeseen conflict. My daughter does not want to fail her young siblings by giving them to a system that will inherently cause more damage and separation that I have already caused. Writing these words are heartbreaking in itself and I am humbly reaching

out to the court to plead for
consideration.

I feel very strongly that I have
more to offer my community by once
again becoming a productive citizen.
I am involved with the Dress for Success
program and look forward to volunteering
there upon my release. I have now seen
first hand how incarceration effects
children and family and all of the
challenges we face in here and when
we re-enter society. I strongly feel I
can be an asset to organizations
focused on re-entry efforts and I
look forward to the opportunity to
serve my community, be back with my
children, fulfill my obligation to
the court and become a committed,
active and productive citizen and
mother. Any happiness or future I
will have will now be enhanced by
this experience and by being able
to look beyond myself and to the
well-being of others.

In closing, I humbly ask for

true consideration on my 2255 motion.
Please reconsider my sentence and
impose a sentence that is sufficient
but not greater than necessary. Please
consider my history and all of the
factors in this case and find a remedy
that will be graciously bestowed upon
me and my family that will save
further suffering. I have included
a letter from my daughter also and
several documents regarding my son.
Thank you so much for your time
in reading this.

Respectfully,

Heather Carr.
inmate # 89751-083

To whom it may concern;

I am writing to you regarding my mother Heather Carr who is currently incarcerated at FPC-Phoenix. My name is Ayanna Brown and I am the oldest out of her four children. I took custody of my youngest siblings, Milani (age 8) and Tru (age 4). We have no other family members or people willing to care for my brother and sister. Therefore, I stepped up and quit going to college. I was supposed to start at Midwestern University in June of 2018 to begin their 4-year program to obtain my doctorate of pharmacy degree, but there were more pressing issues to take care of. Thus, I took a job as pharmacy technician at the VA hospital to support them and I have had them since February 2018. Their father is my mother's co-defendant and is in federal custody as well. He gets sentenced January 14th ~~April 30th~~ and is facing 10 years in prison. My mother was sentenced 57 months and she is almost at the year mark since she has been incarcerated. My mother has never been in trouble before, has never done drugs, and has always provided a nurturing, loving and stable environment and life for all of us. Without her here our family has been in a downward spiral.

My now 4-year-old brother Tru has been diagnosed with autism and is non-verbal. He also has been diagnosed with SPD (Sensory Processing Disorder), and is not potty trained due to difficulties communicating. With all these circumstances comes several challenges. Due to his sensory issues he can't process the environment or his surroundings properly. When there is too much noise he constantly tries to escape to find a quiet place. We have put a "band aid" on this situation at home by installing higher locks that he cannot reach so he won't escape. On the other hand, he still tries to run out at daycare and they legally cannot lock the kids in the classrooms, so now he is getting kicked out of daycares because they cannot properly care for him while trying to attend to the other children. He has been through 5 daycares in the past 11 months. I keep having to leave work because they are constantly calling me to come pick him up, and now my job is on the line because I'm on a year probation until June because I'm still a new employee until then. I was able to talk one of the daycares into letting him stay but they said they would accept him only if he has an AID with him. I cannot afford to get him an aid and I'm having a really hard time to get the state of Arizona's developmental disability program to accept him into the program to provide these services for him.

As much as it pains me to say this, I can no longer be the guardian of my siblings because I have no way to properly care for my brother to get him all the help he most definitely needs. Without daycare I cannot work, and without working I cannot pay the bills. We need our mother home or the children will be adopted and the court will sever my mother's parental rights. I am the temporary guardian but the children will be going into foster care and since my mother's sentence is over 24 months Department of child safety said they will need to be adopted this year, and the odds of someone adopting them in pairs is very low. I cannot care for them any longer.

I do not want to lose my siblings to a random family because we are all we have. Please let my mother out on compassionate release or home confinement, she will be able to work

and then come home to take care of my siblings so we don't lose them to adoption. Please take her history and character under consideration and please review all documents included in this letter. I have included a letter from the most recent daycare that won't take my brother without an aid, as well as court documents about severing parental rights as well as my brother's psychiatric evaluation regarding his autism diagnosis. Thank you for your time and consideration.

Sincerely,

Ayanna Brown

You can contact me at 480-720-9055 with any questions and/or write to:

Ayanna Brown

4101 S. 183rd Dr.

Goodyear, AZ 85338



**Jewish Family & Children's Service**

**PSYCHIATRIC EVALUATION**

---

**PATIENT:** Tru Thomas
**DATE OF BIRTH:** 12/27/2014
**MRN:** 000000042617
**ENCOUNTER DATE:** 8/24/2018
**PROGRAM:** Behavioral Health

---

## Individuals Present

**Contact Type:** Onsite meeting
Individual present
**Others present:** Sister and brother in- law

## General

New Patient
**Historian:** sister and brother in Law

## Reason for Visit

This 3 year 7 month old male presents for ASD and ADHD.

**History of Present Illness:**

1. ASD

The symptoms are reported as being moderate. He states the symptoms are chronic and are poorly controlled. He is non verbal. He does not make eye contact. school reports indicates he plays by himself. Most of the time he does not have any facial expression. He does not start any communication. He never points at things he needs. He does not like to show and tell.
He lines up the cars and if they do not line up he takes away the tires of the cars to line them up. They have to be in a straight line.
He covers his eras when it is loud. He escapes from the daycare if it is too loud. Guardian says he has hyposensitivity to pain. he runs on the rocks barefoot. He runs to the street in summer wwhen the pavement is hot and does not feel it.
He does not like change in routine. If they go through the front door, not the garage door ( they usually go through garage door ) he gets upset. he watches the same moves or same part of the movie again and again. The favorite part of a movie is credits.
he spins sometimes and keeps on spinning. He also rocks from side to side. He likes rotating lights from his night light.
If another kid wants to play with him he moves away.
He goes to other people's drink and drink that. He does not care for meat. He loves granola bars.

2. ADHD

Quality of life: behaviors create problems at home and behaviors create problems at school. The problem is with no change. Context behaviors persist > 6 months and behaviors began before age 7. Associated symptoms include fidgeting/squirming, restlessness, short attention span and unable to follow directions.

# PARENT COMMUNICATION FORM

Sunrise Preschools

*Friday*

Date: 11/30/18    Time:    Parent's Name

Child's name    Tru Thomas

Regarding

Tru ran out of the classroom at different times during the day.

| | | |
|---|---|---|
| 9:30 a.m | 11:45 a.m | 3:00 p.m |
| 9:40 a.m | 12:30 p.m | 5:10 p.m |
| 9:50 a.m | 12:45 p.m | 5:20 p.m |
| 11:10 a.m | 2:00 p.m | 5:25 p.m |
| 11:30 a.m | 2:30 p.m | 5:30 p.m |

**Sunrise Preschools**

# PARENT COMMUNICATION FORM

Date: 12/6/18  Time: 5:00 PM  Parent's Name: MR & MRS Thomas.

Child's name: Tru Thomas.

Regarding

Today In the afternoon Tru was having a rough moment attempting to run out of his classroom. I came to assist the teachers. Tru did run out of the classroom and made it to the schoolAge playground. I brought Tru to the front desk with me, he was still trying to run out the front door. I feed him thinking he was hungry and maybe he would calm down. He ate and still run down the hallway. I chased him, and brought him with me again. I was really afraid he could run out.

Ms Elizabeth
Assistant Director.



# PARENT COMMUNICATION FORM

Sunrise Preschools



Date: 12/7/18    Time:    Parent's Name: Mom or Dad

Child's name: Tru Thomas

Regarding

Tru ran/attempted to run out the
classroom 8 times today. Myself
and other teachers were with him
throughout the day.

Miss Aaliyah



12/11/2018

Aubrey Richardson


RE: Tru Thomas

Dear Aubrey,

Thank you for your interest and patience in working with us to enroll Tru in our Ahwatukee KinderCare.

After discussing Tru's individual care needs with you and as well as caring for Tru during a free trial day, we welcome Tru's enrollment with the provision of a 1-to-1 Personal Care Assistant, either at your own cost or through community resources that may be available to you, to provide Tru with the 1-to-1 care that we feel he needs. The fundamental nature of our center is that of a group program, and we believe we are unable to safely care for Tru in our group care ratio of 1-to-8 at this time.

Feel free to contact me with questions at 480 759 9879. If you choose not to provide a Personal Care Assistant for Tru at this time, we wish you well in finding the care he needs.

Sincerely,

Yvonne Berkhoff
Center Director


cc:
Tyreca Sylvester, Inclusion Services

CT04400 (1/16)

# PROGRESS REPORT TO THE JUVENILE COURT

**Court Case Number**   JD35718          **Date of Report**   10/03/2018

**Case Name**          CARR, HEATHER ID: 587802

**A.   Name and Date of Birth for Each Child Subject to This Court Case Number:**

3729505 THOMAS, TRU                 12/27/2014
3729504 THOMAS, MILANI              12/25/2010

**B.   Child or Children Subject to This Report If Different From Above.**

Not applicable.

**I.   REASON FOR DCS INVOLVEMENT**

   **A.   Brief statement of grounds for petition.**

   On 04/13/2018 at 2:07 PM, the Department of Child Safety (DCS) took custody of
   Tru Thomas and Milani Thomas due to concerns pertaining to incarceration and no
   caregiver willing and/or able to parent.

   On or about 01/05/2018, mother Ms. Heather Carr signed a Power of Attorney
   (POA) titled Temporary Guardianship Agreement for the children to be in the
   custody of adult sister and her significant other, Mrs. Ayanna Brown and Mr.
   Demarcus Brown for 'as long as necessary' beginning on 01/05/2018. This
   agreement will expire on 07/05/2018 as a POA cannot last for longer than six
   months under Arizona law.

   Ms. Carr became incarcerated in 02/2018 and it is unknown how long she will be
   incarcerated, but could be up to five years.

   Father, Mr. Tramell Thomas dropped Tru and Milani off with Mrs. Brown and Mr.
   Demarcus on 03/11/2018. Mrs. Brown reports that she attempted to contact Mr.
   Thomas about the children, but he ignored her phone calls. Mr. Thomas was
   arrested on a parole violation on or about 03/18/2018 and is in federal custody.

   Although Ms. Carr made temporary arrangements for the children, she has not
   ensured that their mental and behavioral health needs are met as Mrs. Brown is
   unable to provide for medical or behavioral health services for the children as she
   is unable to add them to her insurance.

   **B.   Additional safety threats or risk factors that prevent family reunification, if
   applicable.**

   Both parents remain incarcerated.

## II.   SERVICES AND SUPPORTS

### A.   If applicable, describe efforts made to locate missing parent.

Not applicable.

### B.   Describe the behavioral changes the parent or guardian must demonstrate in order to eliminate the safety threats and risk factors identified in the case plan.

Ms. Carr is encouraged to take part in any family related services while she is incarcerated. (Counseling, Parenting, Employment, Cards, Letters). Ms. Carr will be assessed for additional needs upon release.

Mr. Tramell is encouraged to take part in any family related services while he is incarcerated. (Counseling, Parenting, Employment, Cards, Letters) He will be assessed for additional needs upon release.

### C.   Services and supports provided to eliminate the need for continued out-of-home placement and the outcome and participation in those services and supports.

Not applicable, the removal was not preventable as there was no caregiver willing or able to care for the children. No documentation has been provided to the Department of any participating or completion of services while incarcerated.

### D.   Describe coordination with RBHA Behavioral Health Services.

The children both received a Rapid Response and were referred to Jewish Family and Children Services.
Tru receives case management and a birth to five assessment. Tru was assessed and qualified with DDD. Tru will be receiving Occupational Therapy.
Milani receives case management.

## III.   CASE PLAN

### A.   Case plan goal and target date (attach case plan).

Guardianship 4/03/2019

### B.   Describe efforts (including services and supports) necessary to accomplish case plan goal.

The Department will continue to provide monthly contact. Parents are encouraged to participate in any services offered to them while incarcerated.

### C.   Concurrent plan and target date (describe what activities have been initiated to implement the concurrent plan).

Severance and Adoption 4/03/2019

**D.** **Recommended permanent case plan goal and target date, if different than stated in subsection A above.**

**E.** **Reason for change in case plan goal, if applicable.**

The parents will be incarcerated for 5-15 years and Family Reunification is not a realistic goal.

## IV. CHILD'S PLACEMENT

**A.** **Identify and describe type of current placement and whether this placement is consistent with the Department's placement preferences. (State whether this placement is temporary or permanent).**

At this time, Tru and Milani are in an unlicensed kinship foster home and is consistent with the Departments placement preferences. This placement is willing to be permanent as well.

**B.** **Describe efforts to identify and assess placement with the following: all adult grandparents, all parents of a sibling of the child, where parent has legal custody of such sibling, other adult relatives of the child (including any other adult relatives suggested by the parents), or a person who has a significant relationship with the child, including the child's and/or parent's tribe if the child is or may be Native American. If the child is not placed in the home of a relative or person who has a significant relationship with the child, explain why such a placement has not been identified or is contrary to the child's best interests.**

The children are placed with their adult sister.

**C.** **Explain how the current placement ensures the safety of the child, that the child's needs are met and is the least restrictive placement.**

Placement makes sure that the children are always supervised and they are able to meet all behavioral, physical and financial needs of the children. This placement is the least restrictive placement that is available for the Department.

**D.** **Describe child's overall functioning (include medical, social and educational status).**

Tru is 4 years old. Tru is nonverbal and placement has been teaching the child sign language to say "Please" and "Thank you". Tru was attending the predevelopmental program at Liberty Elementary School, however once the school learned that it was requested that he be transported to his daycare, the school was not able to accommodate this request as it was two miles outside of their boundaries. Tru was not able to attend a closer daycare as the copay was too high even with partial DES coverage. As an alternative, Tru attends the program at Sunrise Preschool. Tru was assessed and qualifies with DDD. Tru will receive Occupational Therapy. Placement applied Tru for ALTCS but was denied and

placement is currently appealing the denial. Tru loves to play games on his tablet. Placement is potty training Tru.

Milani is 7 years old and enrolled at the school in her neighborhood. Milani is a happy and content child. Milani loves to talk and play with her friends. Milani likes to watch YouTube videos of slime. Milani interacts great with Tru, she is able to interact and play with him.

**E.**  **Describe how the reasonable and prudent parent standard is being implemented to allow the child to participate in age and developmentally appropriate extracurricular, enrichment, cultural, and social activities.**

The children are able to participate in activities should the occasion arise and placement is willing to facilitate.

**F.**  **If the child has a sibling in out-of-home placement, describe what efforts have been made to place siblings together and, if not placed together, state the specific reason why this did not occur or reasons why this would be contrary to the child's or sibling's safety or wellbeing.**

Not applicable as Tru and Milani are placed together.

**G.**  **Describe results of visits with the parents/guardians/custodians which have occurred since removal (include proposed visitation in the case plan).**

Placement takes the children to visit their mother frequently, Ms. Carr and they write letter to each other. Mr. Tramell is incarcerated in a different state so placement is not able to provide frequent contact. Mr. Tramell has wrote the children letters, however Milani has not wrote back.

**H.**  **If placement with sibling(s) is not possible, describe efforts to facilitate frequent visitation or contact with siblings. If frequent visitation or contact with siblings is not recommended, state reasons why this would be contrary to the child's or a sibling's safety or wellbeing.**

Not applicable.

**I.**  **Describe contact and any reason for restricted contact between the child and child's parents, relatives, family members, friends, and any former foster parents. State whether contact is in the child's best interest.**

There is restricted contact with both parents due to incarceration. Ms. Carr is incarcerated in Arizona and placement is willing and able to facilitate frequent visits. Mr. Tramell is incarcerated out of state which prevents placements from providing any visitation with the children.

**J.**  **History of placements (include the length of time the child has been in out-of-home care, the number of placements, and the length of each placement).**

Tru Thomas

4/13/2018-Present: Unlicensed kinship, adult sibling

Milani Thomas
4/13/2018-Present: Unlicensed kinship, adult sibling

**K.     Services and supports provided to address the child's placement/special needs and to support the out-of-home caregiver (include in the case plan).**

CMDP, Standard Allowances, CFT's with RHBA provider, monthly contacts.

**L.     If applicable, state why the out-of-state placement continues to be appropriate and in the best interest of the child (include ICPC and/or out-of-state visitation status).**

Not applicable.

**M.     If the child is 16 or older with a case plan goal of Independent Living, describe services and supports provided to prepare the child for Independent Living.**

Not applicable.

**N.     If the child is an Indian Child, describe active efforts to provide culturally appropriate remedial services and rehabilitative programs, and efforts to place the child within the placement preferences.**

Not applicable.

## V.     CHILD SAFETY SPECIALIST'S CONCLUSIONS

It is the conclusion of this case manager that temporary custody is necessary due to the incarceration of both parents, however, it should be noted that the children did not disclose any type of maltreatment or neglect while in their parents' care. It should also be noted that Ms. Carr signed a POA allowing the children to be cared for by Mrs. Brown for 'as long as necessary', but it expired on 07/05/2018 due to Arizona law.

It is recommended the change of case plan in order to provide permanency and stability for the children.

## VI.     RECOMMENDATIONS

**A.     Agency**

**It is respectfully recommended that** Tru and Milani Thomas **remain a ward(s) of the court, committed to the care, custody and control of the Arizona Department of Child Safety.**

**It is further respectfully recommended that** Tru and Milani **be placed in the physical custody of** Ayanna Brown **with appropriate medical, social, and educational authorizations.**





# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**HEATHER CARR,**

    Defendant.

---

## RESPONSE TO LETTER CONSTRUED AS
## MOTION TO RECONSIDER SENTENCE

---

The government responds to Carr's letter of April 1, 2019, which the Court has construed as a motion to reconsider sentence. Docs. 461, 462. Because the Court lacks jurisdiction to entertain it, the motion should be dismissed.

Carr postures her letter as "a followup to [her] 2255 motion," seeking "true consideration" of the pending Motion to Vacate. Doc. 461 at 1, 6. She asks the Court to "reconsider my sentence. At the time of my sentencing my

1

family and I was led to believe I would be doing 24 months of incarceration."

Doc. 6 at 4. [1]

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *United States v. Hutching*, 743 F. App'x 898, 900 (10th Cir. 2018) (unpublished) (quoting *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997)). *Accord United States v. Price*, 438 F.3d 1005, 1007 (10th Cir. 2006) ("A district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."). "Where a motion for sentence modification is not a direct appeal or a collateral attack under 28 U.S.C. § 2255, 'the viability of [the] motion depends entirely on 18 U.S.C. § 3582(c).'" *Smartt*, 129 F.3d at 540 (quoting *United States v. Trujeque*, 100 F.3d 869, 870 (10th Cir. 1996)). "Unless the motion asserts a 'basis for resentencing [that] falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction' to consider the sentencing

---

[1] As a factual matter, this assertion is belied by her Plea Agreement, Statement in Advance of Plea, and representations at the Change of Plea Hearing. *See* Response to Motion to Vacate, Doc. 432 at 7-10.

2

modification request." *Hutching*, 743 F. App'x at 900 (quoting *Smartt*, 129 F.3d
at 541).

Under 18 U.S.C. § 3582(c), courts are authorized to modify a previously
imposed sentence in only three limited circumstances: (1) upon motion of the
Director of the Bureau of Prisons; (2) if such modification is otherwise expressly
permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure;
or (3) if the defendant's sentencing range has subsequently been lowered by the
United States Sentencing Commission. *Smartt*, 129 F.3d at 540-41.

None of these three circumstances are applicable here: (1) the Director of
the Bureau of Prisons has not moved to reduce Carr's sentence; (2) no statute,
nor Rule 35 of the Federal Rules of Criminal Procedure, authorizes the
reduction in sentence that Carr seeks; [2] and (3) Carr does not suggest that her
sentencing range has been lowered by the Sentencing Commission.

Whatever Carr's post-sentencing conduct or current circumstances, they
provide no basis for reconsideration of her sentence. *See*, *e.g.*, *United States v.*

---

[2] The 14-day time limit in Rule 35(a) for correcting arithmetical, technical or
clear errors is itself jurisdictional. *United States v. McGaughy*, 670 F.3d 1149, 1151,
1157-58 (10th Cir. 2012).

3

*Anderson*, 133 F.3d 933, 1998 WL 8234, *1-2 (10th Cir. Jan. 12, 1998) (Table) (unpublished) (Section 2255(a) does not permit the Court "to revisit the sentencing determination based on events that occurred after sentencing."); *United States v. Jones*, 515 F. App'x 783, 783 (10th Cir. 2013) (unpublished) (district court lacked jurisdiction to resentence under 18 U.S.C. § 3582(c) based on the defendant's "postsentencing rehabilitation efforts"); *United States v. Garcia-Emanuel*, 112 F. App'x 713, 715 (10th Cir. 2004) (unpublished) ("Mr. Garcia-Emanuel's request for modification of his sentence based on post-sentence rehabilitation lacks merit, as it is not a factor considered for modification under 18 U.S.C. § 3582(c)") (unpublished).

In the absence of jurisdiction under 18 U.S.C. § 3582(c), Carr may only invoke 28 U.S.C. § 2255. *But see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("Although we liberally construe pro se filings, we do not assume the role of advocate.") (internal quotations and citations omitted). Even so, the Court entered its Amended Judgment almost 15 months ago, and her initial Motion to Vacate has been pending for over nine months. *See* Docs. 313, 423.

Moreover, the instant Motion cannot be deemed a further attempt to amend the Motion to Vacate since it wasn't filed within 21 days after the either

the initial Motion or the government's initial response was served, nor has either the government consented or leave been granted. *See* Rule 15, Fed. R. Civ. P.; *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000). *See also* Doc. 455 (opposition to prior Motion to Amend). And, if the instant Motion were regarded as being made pursuant to § 2255, it would have to be authorized by the Court of Appeals before this Court could consider it. *United States v. Springer*, 875 F.3d 968, 972 (10th Cir. 2017) ("When a district court is confronted with an unauthorized motion, it does not even have jurisdiction to deny the relief sought in the pleading. Instead, the court has only two options: it must either dismiss the motion or, if it is in the interests of justice, transfer the motion to the circuit court for authorization.") (citations and internal quotation omitted), *cert. denied*, 138 S. Ct. 2002 (2018).

Finally, although Carr has not invoked Fed. R. Civ. P. 60(b), it also would afford no basis for entertaining the motion, because: (1) as civil rule, it has no applicability to this criminal proceeding, *United States v. McCalister*, 601 F.3d 1086, 1088 (10th Cir. 2010); and (2) as the motion alleges no defect in the integrity of earlier § 2255 proceedings, at most it would amount to a second-or-successive § 2255 motion. *Hutching*, 743 F. App'x at 901.

5

## CONCLUSION

There is no jurisdictional basis for the Court to entertain Carr's motion.

The motion to reconsider sentence should be dismissed for lack of jurisdiction.

Respectfully Submitted,

Jason R. Dunn
United States Attorney

*s/ Paul Farley*
Paul Farley
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone:  303.454.0100
USACO.ECFAppellate@usdoj.gov
Attorneys for Plaintiff

6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/Colorado)**

    I hereby certify that on <u>April 15, 2019,</u> I electronically filed the foregoing document with Clerk of Court using the CM/ECF system and certify that a copy will be placed in the U.S. Mail, postage pre-paid and addressed to the following:

Heather Carr
#89751-083
96 Federal Prisoner Satelite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

<u>*s/ Ma-Linda La-Follette*</u>
Ma-Linda La-Follette
United States Attorney's Office
Denver, Colorado

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Criminal Case No. 16-cr-054-WJM-1

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

1.    **HEATHER CARR**,

       Defendant.

---

## ORDER DENYING MOTION TO RECONSIDER SENTENCE

---

       This matter is before the Court on the Defendant Heather Carr's letter received by the Court on April 1, 2019, which the Court construed as a Motion to Reconsider Sentence (the "Motion"). (ECF Nos. 461 & 462.) In response, the Government argued that the Motion should be denied because there is no jurisdictional basis for the Court to entertain Carr's Motion. For the reasons discussed below, the Court agrees and denies the Motion.

### I. BACKGROUND

       Carr plead guilty to conspiracy to defraud the government, a violation of 18 U.S.C. § 286, for her role in a scheme of obtaining payments and submitting false claims for federal student aid to the U.S. Department of Education. (ECF Nos. 1 & 94.) On January 4, 2018, the undersigned sentenced Carr to 57 months of incarceration, and three years of supervised release after imprisonment. (ECF No. 272 at 2; ECF No. 313.)

On April 1, 2019, the Court received a letter from Carr asking the Court to
reconsider her 57 month sentence.  (ECF No. 461 at 4.)  She detailed how her
incarceration has impacted her family, and explained the possibility that she will lose
custody of her children as a result of her incarceration.  She also emphasized that she
"was led to believe [she] would be doing 24 months of incarceration" and that she was
"terribly unprepared for a sentence over that."  (*Id.*)  Carr included a letter from her
oldest daughter and documentation of her youngest son's medical issues.  (*Id.* at 7–18.)

## II. DISCUSSION

The Court does not independently have inherent authority to resentence a
defendant.  *United States v. Blackwell*, 81 F.3d 945, 949 (10th Cir. 1996).  A federal
district court may modify a defendant's sentence only where Congress has expressly
authorized it to do so.  *See* 18 U.S.C. § 3582(c); *Blackwell*, 81 F.3d at 947.  Congress
has set forth three limited circumstances in which a court may modify a sentence:

1.  Pursuant to 18 U.S.C. § 3582(c)(1)(A), through a proceeding initiated
    by a motion from the Director of the Bureau of Prisons,

2.  Pursuant to 18 U.S.C. § 3582(c)(1)(B), where otherwise provided by
    statute or Federal Rule of Criminal Procedure 35, or

3.  Pursuant to 18 U.S.C. § 3582(c)(2), where the defendant has been
    sentenced based on a sentencing range subsequently lowered by the
    Sentencing Commission.

18 U.S.C. § 3582(c)(1),(2); *see Blackwell,* 81 F.3d at 947–48.

The first and third circumstances clearly do not apply here, as there is no motion
from the Bureau of Prisons or any indication that the Sentencing Commission has
lowered the sentencing range.  Nor has Carr cited any federal statute that would allow

2

the Court to modify her sentence. The only way in which Carr's sentence could possibly be modified is if modification is permitted by Rule 35.

Rule 35(a) states that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Rule 35(c) defines "sentencing" as "the oral announcement of the sentence." Rule 35(a)'s 14-day timeframe is jurisdictional, and so not waivable. *See United States v. McGaughy*, 670 F.3d 1149, 1155–59 (10th Cir. 2012). Here, the Motion was filed 16 months after the oral announcement of Carr's sentence, and thus the Court lacks jurisdiction to consider the Motion. Moreover, Carr does not argue that her sentence resulted from an arithmetical, technical, or other clear error, and the Court, reviewing the record, finds no such error. *See United States v. Harris*, 358 F. Supp. 3d 1202, 1205 (D. Colo. 2019) ("'clear error,' whatever else it means, does not appear to include the results of re-weighing the § 3553(a) factors"). Thus, Rule 35 does not authorize a substantive modification of Carr's sentence at this time.

The Court understands that Carr and her family are at a significant crossroads in their lives with respect to custody of Carr's youngest children, and acknowledges the difficulties that incarceration imposes on a family, particularly when both parents are subject to federal custody. Nonetheless, even if the Court were inclined to modify Carr's sentence, which it imposed over sixteen months ago, the Court lacks jurisdiction to modify or reconsider Carr's sentence under the circumstances.

### III. CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's construed Motion to Reconsider Sentence (ECF No. 461) for lack of jurisdiction.

3

Dated this 15th day of May, 2019.

BY THE COURT:

_____

William J. Martínez
United States District Judge

4

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 12 2019

JEFFREY P. COLWELL
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

UNITED STATES OF AMERICA,          :

     Plaintiff,                 :

                               : CASE NUMBER: 1:16-CR-00054-WJM-1

vs.                                :

                               : JUDGE WILLIAM J. MARTINEZ
                               : U.S. MAGISTRATE JUDGE

HEATHER CARR                       :

     Defendant.                 :

## DEFENDANT'S MOTION REQUESTING RELIEF UNDER COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582 (c)(1)(A)

Pursuant To 18 U.S.C. 3582(C)(1)(A), Defendant Heather Carr hereby moves this Court for an order both releasing her from custody of the Bureau of Prisons and allowing her to complete the balance of her 57 month sentence on home confinement.

## MEMORANDUM

### I. Procedural Background

On January 4, 2018, Heather Carr was sentenced to serve 57 months of imprisonment for her conviction of Conspiracy to Defraud the U.S. Government in a violation of 18 U.S.C. 286. Heather self-surrendered and reported to the Federal Correctional Institute Phoenix Camp on February 8, 2018. Restitution in the amount of $562,487.85 was also imposed to be paid joint and several by Heather Carr and her co-defendants Tramell Thomas, Mercedes Diaz, and Marcelle Green. Three (3) years of supervised release was also imposed.

As of the date of this pro se motion, Heather has served 19 months in federal custody at the Phoenix Federal Prison Camp. Her projected release date is March 28, 2022 with a projected home confinement date of October 7, 2021 (see Exhibit A-1, Computation Data Sheet).

1

## II. Application of the Liberal Construction Doctrine

As a pro se inmate, Heather Carr has no benefit of formal training as an attorney and no access to a proper law library or computer. As the result of her pro se status, this motion must be held to less stringent standards than those drafted by attorneys. (Haines v. Kerner, 404 U.S. 519 (1972)).

## III. Compassionate Release Eligibility

For decades only the Bureau of Prisons (BOP) Director and the United States Attorney's Office could seek a sentence reduction after criminal judgement was filed. However, that changed with the passage of the First Step Act of 2018. In addition to the BOP Director and the United States Attorney's Office, after December 21, 2018 the defendant in limited circumstances , also has a voice in reducing her sentence based on Compassionate Release 18 U.S.C. 3582 (c)(1)(A).

The First Step Act sets forth the following eligibility criteria for an inmate seeking compassionate release: (1) Seek BOP assistance in filing a motion, (2) set forth the relevant 3553 (a) factors to support the motion and demonstrate why the reduction is "consistent" with the applicable policy statements issued by the Sentencing Commission; and (3) set forth the "extraordinary and compelling" reasons warranting the reduction.

### (a) Heather Carr fully exhausted her administrative rights

Title 18 U.S.C. 3582 (c)(1)(A) requires Heather to exhaust her "administrative rights" with the BOP before she files a motion. Consistent with this requirement, Heather sought compassionate release from the Warden at the Phoenix Camp which was denied on February 8, 2019, the Regional Director denied on March 14, 2019, and the final denial from the Central Office on June 15, 2019. Pursuant to the First Step Act of 2018 section 603 (b) as it pertains to the request for Compassionate Release, inmates may file directly to the Court of Jurisdiction after exhaustion of all administrative appeals (see Exhibit A-2, Exhausted Administrative Appeals).

2

Under the new and expanded policy for Compassionate Release, Heather brings
forth extraordinary and compelling circumstances that warrant consideration. The
original request for Compassionate Release was denied by the Warden William Lothrop.
Noted in the denial was that Heather's adult daughter can no longer care for her
minor children. Heather requested relief based on "Non-Medical Circumstances - Death
or Incapacitation of the Family Member Caregiver". (See #5 of Exhibit A-3, Federal
Bureau of Prisons Compassionate Release/Reduction in Sentence Procedures for
Implementation of 18 U.S.C. 3582 and 4205 (g)). But because the Bureau of Prisons
interprets "incapacitation" as only "death, an auto accident or cancer", Heather's
request was denied. However, according to Merriam Webster's Dictionary the word
incapacitation means " the lack of sufficient ability, power or means." Incapacitation
would then apply to the family circumstances of Heathers young children and their
caregiver.

Heather's adult daughter (Ayanna Brown-age 23) took temporary custody of
Heather's younger children (Milani, age 8 and Tru, age 4) when their father Tramell
Thomas (Heather's co-defendant on this case) was arrested for a bond violation, in
March of 2018, Heather had already started her prison sentence and was incarcerated
at the time. (See Exhibit A-4, Social Services Case Report). This was a huge
responsibility for Ayanna because Heather's son Tru has severe autism, is non-verbal
and has a sensory processing disorder. (See Exhibit A-5, Tru's psychiatric evaluation).
Tru has been through 8 daycares in the the past year. No daycare will keep him without
a full-time nurses aid. The State of Arizona won't approve a full-time aid because
he is not "medically fragile." (See Exhibit A-6, Letters and Notes from several of
the daycares that Tru has been kicked out of). Ayanna has missed so much work having
to constantly pick him up early and is continuously faced with the problem of what
to do with Tru while she goes to work. (see Exhibit A-7 Letter from Ayanna Brown).
Due to the enormous pressures and responsibilities regarding Tru, Ayanna is now
seperated from her husband and is getting a divorce. Ayanna's husband, DeMarcus

3

Brown, kicked her, Milani and Tru out of the home they shared in July 2019. Ayanna was forced to get a small apartment for herself, Milani and Tru. To make matters even more incapacitating, the state assisted daycare payments will stop at the end of the year going from a $0 co-pay to a $1,000 a month for Tru's care. The end of the state assisted daycare coupled with being a single family home means Ayanna will not be able to afford daycare for Tru. She has limited income as a pharmacy technician.

Ayanna has to work and with no other family to help or other options will have to put the children in foster care. Heather was always the sole provider and caretaker of the children. Since Heather's sentencing, her co-defendant and children's father Tramell Thomas, was also sentenced to a lengthy prison term and is unable to care for the children. As verified in Heathers PSI there are no other family members available. There is just Heather and her children.

Prior to Heather's incarceration, her history and characteristics were exemplary. She had long-term employment with no prior criminal history. Heather never had any issues with drugs or alcohol, was involved in her community and was an active and engaged single parent of 4 children. The case Heather is incarcerated for is from 2010, before her young children were born. When Heather was sentenced she was a true first time offender having never been in any trouble. She was sentenced to the maximum of her guideline range even though based on all the monograms prepared by the Sentencing Commissions she posed a low risk of recidivism and thus a below guideline range would not pose any danger to the public.

The Sentencing Commission has also found those benefiting from retroactive sentence reductions as well as sentence reductions due to the Compassionate Release Program do not pose a higher risk of recidivism. (United States v. Beck, No. 1:13-CR-186-6). Consequently, if a term of home confinement that Heather serves and/or supervised release were substituted for the imprisonment that Heather still faces she would not pose a danger to the public.

4

The First Step Act gives Courts independent authority to grant motions for Compassionate Release and says nothing about deference to the BOP, thus establishing that Congress wants Courts to take a de novo look at Compassionate Release motions.

### (b) Sentencing Commission Policy Statements

There are no policy statements the Sentencing Commission has promulgated to apply to inmate generated Compassionate Release motions. Additionally this guidance is unlikely to come anytime soon as the Commission does not have a quorum to conduct it's business. Consequently, there will be no guideline amendments promulgated for the November 1, 2019 amendment cycle.

However, Courts confronting inmate generated Compassionate Release motions have found that applying the USSG 1B1.13, which was drafted to guide the motions filed by the Warden, would be inappropriate. Instead the Courts should consider the 1B1.13 policy statement, it's application notes as well as 3553(a) factors in the adjudicating motions. The application notes to 1B1.13 read as a whole, suggest, "flexible approach which considers all relevant circumstances."

### (c) Extraordinary and Compelling Reasons and 3553 (a) Factors

Under 18 U.S.C. 3553 (a), the key requirement is that the sentence in each case be "sufficient, but not greater than necessary".

(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,

(b) to afford adequate deterrence to criminal conduct,

(c) to protect the public from further crimes of the defendant; and

(d) to provide the defendant with needed education or vocational training; medical care or other correctional treatment in the most effective manner.

Heather's education, treatment and medical needs would be better served by a sentence that permits the offender to remain in the community.

Title 18 U.S.C. 3553 (a)(7) directs the Courts to consider "the need to provide the restitution to any victims of the offense." Imposing a sentence of no or only

5

a short term of imprisonment will best accomplish this goal by allowing Heather to
work so that she can begin to pay back the Department of Education, the victim in
this case.

In one of the earliest post-Booker decisions, Judge Lynn Adelman of the Eastern
District of Wisconsin noted that in cases in which a defendant's history and characteristics
are positive, consideration of all the 3553 (a) factors might call for a sentence
outside the guideline range. Judge Adelman concluded in that case that a sentence
below the sentencing guidelines was justified. The defendant, a bank employee, had
pleaded guilty to misapplication of bank funds by a bank officer. The defendants
guideline ~~range~~ range was 37-46 months, after upward adjustments for loss, more than
minimum planning and abuse of position of trust. However, after considering all of
the relevant factors, Judge Adelman imposed a sentence of one year and one day. In
concluding that such a sentence was appropriate, Judge Adelman considered the defendant's
motive for offense, his responsibility for providing care of his elderly parents,
and his history and character, which were exemplary before the offense conduct. Also
in cases in which a defendants history and character are positive on where the defendant's
history contains significant mitigating factors, such as abusive relationships and
chaotic and neglectful childhood, an appropriate sentence may be one outside the
guideline range.

### IV. Nature and Circumstances of Heather's Offense

The nature and circumstances of the offenses implicated in this case are serious.
The essence of the scheme was that during a two-year period from 2010 to 2012, Heather
Carr, Tramell Thomas, Marcelle Green and Mercedes Diaz submitted approximately 181
student loan applications (FAFSA's) resulting in an actual loss amount of $562,487.85.
The FAFSA's were submitted by using personal identification information (dates of
birth, names and social security numbers) of individuals in prison. When the conspiracy
was formed in 2010, Heather was a single parent, pregnant, behind on all of her bills
and her vehicle had just broken down. Marcelle Green, who was a friend at the time,

6

said she would give her half of the proceeds from student loans from people in prison if she would help Marcelle get information, submit FAFSA's and help do homework. Heather's other co-defendants were brought on as well to help with the scheme. The breadth of the conspiracy, as well as the loss amount, grew to an amount Heather was unaware of. Marcelle Green did not inform Heather of how many loans were being submitted. However, Heather takes full responsibility for the total amount and expressed great remorse at sentencing.

Even though the offenses are very serious, at the time this motion is filed Heather has served 19 months of a 57 month imposed sentence. This is a sufficient punishment for a person like Heather who has never been in trouble before. (United States v. Beck, No. 1:13-CR-186-6). Heather's history and characteristics demonstrate that Compassionate Release would not pose a danger to the community. She has no disciplinary history while housed at the Phoenix Camp. Also noteworthy, she has been enrolled in all educational programs available and has completed over 40 classes including Parenting, Life Skills, Beating the Odds, Assert Yourself, Foundations for Women, Small Business and every class offered at the Phoenix Camp. (See Exhibit A-8 Certificates of Completion and Sentry Class Credit Printout). She has also completed the "Dress for Success" program where she was invited back to volunteer upon her release. She has also done community service projects while incarcerated such as making mats for homeless veterans and crocheting baby blankets for the Children's Hospital.

United States Attorney General, William Barr, was quoted in an article after touring a Federal Prison. He said,"...he felt the time was right to identify and free inmates who no longer constituted a safety risk." He told the New York Times in a July 20, 2019 interview, "after someone has been in prison for a substantial period of time, and you can really access whether they continue to pose a threat to the community. Then obviously you're more inclined to modify the sentence or strike the balance in favor of some kind of monitoring that doesn't involve heavy cost and

7

the isolation of this kind of prison system." According to both the BOP and the new initial PATTERN Assessment, Heather poses no risks.

Heather is in custody at a minimum level camp with no fences. She has a 0 risk rating which is the lowest rating possible. (see Exhibit A-9, Custody Classification Form). The BOPs rating of Heather is a status that is earned. Further based on the initial draft of new PATTERN Assessment Tool created for the First Step Act of 2018 to determine risk and recidivism levels for earning time credits for home confinement or supervised release as currently posted on the Department of Justice site, Heather has a -24 rating. (See Exhibit A-12 PATTERN Assessment Draft).

Heather has never used drugs and because there was no mention of alcohol or drug abuse to the probation officer Matthew Gil on Heather's PSR, she does not qualify for the Residential Drug Abuse Program (RDAP). (See Exhibit A-10, Notice of RDAP Qualification Denial). If Heather would have qualified for the RDAP program, she would have received a year off of her sentence and would have been released on home confinement in June 2020. Heather would like the same opportunity and consideration as a RDAP participant for the significant recidivism reduction programming she has taken and be able to go home and care for her children. There are no additional programs Heather qualifies for.

Ultimately in this instant case, Heather has received punishment for her crimes via 19 months on imprisonment. She has received rehabilitation through diligence and exhausting available programming. Now she is being warehoused which is one of the core themes of the narrative behind Criminal Justice reform. Not only does Heather's warehousing cost taxpayers unduly, sending her children to foster care further exacerbates those costs today and with high probability in the future.

On August 3, 2017 12 United States Senators wrote a letter to then Acting Director of the BOP Dr. Thomas R. Kane. The Letter expressed concern over the BOPs use of Compassionate Release. They commented on the intent of Compassionate Release set by the Commissions which allows the BOP to, "seek the release of certain elderly

8

and terminally ill inmates, as well as those with special family circumstances, before the end of their prison sentences rather than keep those inmates in prison when they are no longer a significant risk to the community and they ~~they~~ are draining away substantial and valuable BOP resources." The BOP's budget request for FY 2018 represented 29.9% of the DOJ's overall budget.

In 28 U.S.C. 994 (j), Congress gave the Sentencing Commission the following directive:

"the Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than the imprisonment in cases in which the defendant is a first-time offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in a serious bodily injury."

Additionally, under section 602 of the First Step Act of 2018, Congress amended 18 U.S.C. 3624 (c)(2) to direct the Bureau of Prisons: "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."

Thus 994 (j) embodies Congress' judgment that individuals convicted of non-predatory offenses presenting a low-risk of recidivism, like Heather, should be sentenced to alternatives to incarceration. For those defendants who are already serving a term of imprisonment but also exhibit a low likelihood of recidivating, the First Step Act directs the BOP to place them in an alternative to incarceration for the maximum amount of time possible.

There are multiple reasons for this policy changes in the First Step Act of 2018. These policy changes include: the targeted defendants don't pose a risk of danger to the public, home confinement with location monitoring is an effective method of punishment, and home confinement with location monitoring is a more cost effective means of punishment than simply incarcerating those who don't present a danger to the public.

9

Further evidence of this shift in policy by congress and the Sentencing Commission is evident in the November 1, 2018 amendment to USSG 5f1.2, comment, (n.1) (amendment 811). In the commentary to this guideline, the Commission noted that "electronic monitoring is an appropriate means of surveillance for home detention." After holding the requisite public hearings on this proposed amendment, the Commission articulated the following reason for the amendment to 5F1.2: "The goal of this change is to increase the use of probation with home detention as an alternative to incarceration." Alternatives to Incarceration for Non-Violent First Offenders, April 30, 2018, https://www.USSG.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/ 20180430RF.pdf p.74)

Heather's minor children, Milani and Tru Thomas, have both their parents incarcerated because of this case. The children's father Tramell Thomas, is Heather's co-defendant. Tramell is serving a 120 month sentence at the FCI Victorville in California. The children have never been without Heather and their father was an active parent in their lives. Children of incarcerated parents face profound and complex threats to their emotional, physical, educational and financial well-being. Family members of incarcerated individuals are often referred to as "hidden victims", victims of the criminal justice system who are neither acknowledged nor given a platform to be heard. A study found that children of incarcerated parents systemically face a host of disadvantages if the parent(s) were a strong support in the child's life, which Heather was. The disruption of the child-parent relationship will lead to or exacerbate many of the issues, risk factors and threats mentioned above. (https://www.nij.gov/journals/278/pages/impact-of-incarceration-on-dependant-children.aspx.)

Heather is a great mother who needs to be home with her children for the greater benefit of all. Her children are suffering mentally, developmentally, emotionally, physically and financially. This suffering has ripple effects beyond Heather and her family. Heather has been held in a trusted status while incarcerated and has showcased that institutional standards can be met and followed inside and outside

10

of the facility. Heather obtained her inmate drivers license and was trusted driving
all vehicles alone on the federal compound including the Warden's vehicle. Heather
has never had any issues while incarcerated or on her 2 years of pre-trial release.
The only issue Heather has ever had was this federal case that is 9 years old. Heather
is not a risk to her community and just needs to work and take care of her children,
rebuild her life and start paying back her restitution. In accordance with 18 U.S.C.
3582 (c)(1)(a), Heather has included a proposed release plan. (see Exhibit A-11,
Proposed Release Plan).

### V. CONCLUSION

Heather Carr understands the Court has to consider the need for the sentence
to reflect the seriousness of her offense and is not requesting a lower sentence.
She is requesting the Court to order home confinement for the remainder of her sentence.
In exacting this alternative, it would not absolve Heather from her crimes or any
other portions of her imposed punishments. This alternative would specifically adhere
to its intent as a viable alternative for low risk offenders. Heather would be allowed
to work, support her children, start paying restitution all while adhering to the
strict rules of home confinement. Heather's special needs son would receive that
attention, love, care and therapy he desperately needs from her, versus placing him
in foster care, creating various ripple affects on all. She would also be afforded
the opportunity to take him to speech and occupational therapy and his special needs
preschool.

Georgetown Law Professor Shon Hopwood published an article recently arguing
that, "there is a viable argument for why federal district court judges can use the
compassionate release statute as amended by the First Step Act of 2018, as a second
look provision to reduce a sentence for people in prison if 'extraordinary and compelling'
reasons are present." His article also argues why federal judges can and should give
sentence reductions in cases where people in federal prisons have demonstrated a
record of rehabilitation in addition to compelling reasons why they were sentenced
too harshly.

11

Since the passage of the First Step Act last December, 18 U.S.C. 3582 (c)(1)(a),
it is a critical and valuable new mechanism to reduce prison sentences in a case
where a defendant presents "extraordinary and compelling" reasons supporting reductions.
In June 2019 there were two notable examples of judges finding reasons sufficient
to reduce a sentence. These cases make it clear that the new First Step Act allows
a judge broad authority to determine whether any extraordinary or compelling reasons
justified a reduction in prison term even when the BOP fails to bring forth the motion
on the defendants behalf. (See United States v. Cantu No. 1:05-CR-458-1 S.D. Texas
June 17, 2019) — finding where government urged release to home confinement. (see
also United States v. Beck No 1:13-CR-186-6) — where 3553 (a) factors supported a
sentence reduction to time served and the motion for compassionate release was granted.
There is another case this month where compassionate release was granted for the
remainder of the sentence to be served on home confinement — (see United States v.
Jones No 2:16 CR-166) — (S.D. Ohio Eastern Division).

Further, based on the current criminal justice reform pursuant to the First
Step Act of 2018, sentence reduction programs are planned for low-risk inmates. Based
on the ability to earn time credits these low-risk inmates could serve less than
50% of their sentences in normal circumstances. It is understandable that deterrence
is a key factor in 3553 (a). When considering both 3553 (a) and the First Step Act
act in this instant case the relief that Heather requesting this honorable Court
to exact is reasonable. For illustrative purposes, if Jane Doe inmate committed
Heather's crime and was sentenced to 57 months like Heather, since the First Step
Act was implemented, with no extinuating circumstances Jane would serve approximately
28 months. The net ask for Heather's extinuating circumstances that are extraordinary
and compelling are reasonable thus affording adequate deterrance and respect for
the law.

The Court is in a unique position to determine whether Heather's other circumstances
warrant a reduction (and if so, the amount and manner of the reduction) after considering

12

the factors set forth by U.S.C. 3553 (a) and the criteria set forth in the policy statement such as Heather's family circumstances and whether Heather is a danger to the safety of any other person or the community.

Based on Heather's circumstances, she humbly presents to the Court this motion that's within reasonable standard to impose the remainder of her sentence to be served on home confinement. In granting Heather's request for Compassionate Release, she can assure the Court that jeopardizing her freedom, leaving her children in this horrible situation again, and having the huge responsibility of having anyone else raise them will never be a factor again. Heather is seeking an order from this Court granting her Compassionate Release so that she will complete the balance of the custodial sentence under home confinement after which she will be subject to a three (3) year term of supervised release.

Respectfully submitted,

Heather Carr
FCI Phoenix Camp
37930 N. 45th Ave
Phoenix, AZ 85086

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document has been mailed this ___ day of September, 2019.

Heather Carr

13

347

## EXHIBITS

A-1:     Computation Data Sheet

A-2:     All Exhausted Administrative Requests

A-3:     FBOP Compassionate Release/Reduction in Sentence Procedures

         for Implementation of 18 U.S.C. 3582 and 4205 (g).

A-4:     Social Services Case Report

A-5:     Tru Thomas' Psychiatric Evaluation

A-6:     Letters and notes from several daycares Tru has been kicked out of

A-7:     Letter from Ayanna Brown

A-8:     Certificates of Completion and Sentry Class Credit Printouts

A-9:     Custody Classification Form

A-10:    Notice of RDAP Qualification Denial

A-11:    Release Plan

A-12:    Initial PATTERN Assessment Criteria

*Pg. 1*

*Exhibit A-1 (2pgs)*

```
    PHXBD  540*23 *         SENTENCE MONITORING          *    08-28-2019
    PAGE 001         *         COMPUTATION DATA           *    13:26:45
                              AS OF 08-28-2019

    REGNO..: 89751-083 NAME: CARR, HEATHER

    FBI NO...........: 72302EB7          DATE OF BIRTH: 10-25-1977  AGE:  41
    ARS1.............: PHX/A-DES
    UNIT.............: HOPI               QUARTERS.....: C02-029L
    DETAINERS........: NO                 NOTIFICATIONS: NO

    HOME DETENTION ELIGIBILITY DATE: 10-07-2021

    THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
    THE INMATE IS PROJECTED FOR RELEASE:  03-28-2022 VIA GCT REL


    ---------------------CURRENT JUDGMENT/WARRANT NO: 010 --------------------

    COURT OF JURISDICTION...........: COLORADO
    DOCKET NUMBER............ ......: 1:16-CR-00054-WJM-01
    JUDGE................... ......: MARTINEZ
    DATE SENTENCED/PROBATION IMPOSED: 01-04-2018
    DATE COMMITTED..................: 02-08-2018
    HOW COMMITTED........... ......: US DISTRICT COURT COMMITMENT
    PROBATION IMPOSED...............: NO

                     FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
    NON-COMMITTED.: $100.00        $00.00         $00.00       $00.00

    RESTITUTION...: PROPERTY  NO  SERVICES:  NO       AMOUNT:  $562,487.85

    -----------------------CURRENT OBLIGATION NO: 010 --------------------------
    OFFENSE CODE....: 153     18:286,371 FRAUD, OTHER
    OFF/CHG: 18:286 CONSPIRACY TO DEFRAUD THE GOVERNMENT WITH RESPECT TO
             CLAIMS

    SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
    SENTENCE IMPOSED/TIME TO SERVE.:    57 MONTHS
    TERM OF SUPERVISION............:     3 YEARS
    DATE OF OFFENSE........ ......: 10-01-2012




    G0002      MORE PAGES TO FOLLOW . . .
```

```
PHXBD  540*23 *          SENTENCE MONITORING        *    08-28-2019
PAGE 002 OF 002 *          COMPUTATION DATA          *    13:26:45
                          AS OF 08-28-2019
```

*Pg. 2*

*Exhibit A-1*

REGNO..: 89751-083 NAME: CARR, HEATHER

------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-13-2018 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-08-2018 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 02-08-2018
TOTAL TERM IN EFFECT............:   57 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    4 YEARS        9 MONTHS
EARLIEST DATE OF OFFENSE........: 10-01-2012

JAIL CREDIT.............. ......:  FROM DATE      THRU DATE
                                   03-07-2016     03-07-2016

TOTAL PRIOR CREDIT TIME.........: 1
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 223
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 03-28-2022
EXPIRATION FULL TERM DATE.......: 11-06-2022
TIME SERVED.....................:    1 YEARS        6 MONTHS      22 DAYS
PERCENTAGE OF FULL TERM SERVED..: 32.7

PROJECTED SATISFACTION DATE.....: 03-28-2022
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: V/S TO PHX 2-8-18
```

```
S0055     NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

CARR, Heather      Reg. No. 89751-083      Remedy #967243-F1

*Exhibit A-2 (99)* *16 pages*

*BP 9.* *Denial*

This is in response to your Request for Administrative Remedy, received on February 7, 2019. You are requesting consideration for a Reduction in Sentence/Compassionate Release.

Consideration for your request for release, under the provisions of Title 18, United States Code, Section 3582 (c)(1)(A), and Bureau of Prisons' Program Statement 5050.50, was given careful review, which included updated case summary information. Our review indicates your request was properly denied.

Program Statement 5050.50, Compassionate Release/Reduction in Sentence, authorizes the Bureau of Prisons to seek Compassionate Release on behalf of an inmate "whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation." "For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child."

You state that your adult daughter can no longer care for your minor children because of difficulties obtaining daycare. Unfortunately, the loss of daycare is not a sufficient reason for the Bureau of Prisons to seek compassionate release on your behalf.

In addition, 18 U.S.C. § 3582(c)(1)(A) was amended by the First Step Act to allow an inmate to present a request for compassionate release directly to the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Accordingly, your Request for Administrative Remedy is denied.

If dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, 7338 Shoreline Drive, Stockton, California 95219. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

William W. Lothrop, Warden

Date 2|8|19

DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

Exhibit A-2   pg 2

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Carr Heather E.        89751-083        4001-A        FPC-PHX
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST** – I submitted a RIS request on 4/22 and it was denied on 4/29. I am a non-violent first time offender with a point calculation of 0 and camp status. My 93 year old daughter has temporary custody of my 8 year old and 4 year old since we have no other family. Their father is my co-defendant and is in custody as well. My 4 year old son has autism, is non-verbal and had a sensory processing disorder. There are no daycares that will accept him any longer because he escaped and has bowel issues where he needs a full-time aid with him that the State has denied to provide. My daughter can no longer care for my son due to not being able to work without him being in daycare. The State of Arizona will be severing my parental rights and putting him with an adoptive family since my sentence is over 24 months. I will lose my children if I am not put in 24 months. I have submitted letters from the daycares, a letter from my daughter, my son's IEP and psychiatric evaluation regarding his disorders and court paperwork regarding the juvenile court and custody issue. I have no disciplinary issues, have completed 24 classes all FRP payments I are current, I have a home to go to and have a previous job of 15 years and should have no issues obtaining employment right away. Please consider my request there is no one else to care for my children and they are all that I have. Thank you!

2/6/2019        [signature]
DATE        SIGNATURE OF REQUESTER

**Part B– RESPONSE**

BP.9

RECEIVED
FEB - 7 2019
BY:

_____        _____
DATE        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE        CASE NUMBER: _____

        CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE        RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN        PRINTED ON RECYCLED PAPER        BP-229(13)
APRIL 1982

Exhibit A-2
Page 3

967243-R1
FCI Phoenix

This is in response to your Regional Administrative Remedy Appeal of the Warden's decision dated February 8, 2019. You request to be considered for Compassionate Release. Specifically, you state you meet the criteria for Incapacitation of a Family Member Caregiver.

A thorough review of your request was completed. Utilizing Program Statement 5050.49, CN-1, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. 3582(c)(1)(A) and 4205(g), dated March 25, 2015, the Warden determined that you do meet the criteria under "Incapacitation of a Family Member Caregiver." We concur with the Warden's response.

Therefore, your request for Regional Administrative Remedy Appeal is denied. If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

_____3/14/19_____          _____
Date                      J. Baltazar, Regional Director

BP-10

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

*Exhibit A-2 pag 4*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| Carr Heather E | 89751-083 | Hopi-A | FPC-PHX |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** My 23 year old daughter has temporary custody of my 8 year old and 4 year old since we have no other family. Their father is my co-defendant and is in custody as well. My 4 year old son has autism is non-verbal and has a sensory processing disorder. There are no daycares that will accept him because of his issues and disorders. He escapes and requires a full time aid that we cant afford and the State has denied to provide. My daughter can no longer care for my son due to his autism and special needs. The State of AZ will be severing my parental rights and putting him with an adoptive family if my sentence is over 24 months. I will lose my children if I'm not out. I have previously submitted letters from my daughter, daycare providers, my son's IEP and psychiatric evaluation regarding his disorders and court paperwork regarding family court and custody issue. Mr. Wastell the CMC at FPC-PHX has scanned these in. I have no disciplinary issues, I am a non-violent first time offender with a point calculation of 8 and I am camp status. I have completed 24 classes all FRP payments are current. I have a home to go to and have a prior 15 year job stability. So obtaining employment will not be an issue. Please consider my RIS request there is no one else to care for my children and they are all I have.

2-15-2019                    Thank you!

| DATE | SIGNATURE OF REQUESTER |
|---|---|

**Part B - RESPONSE**

MAR - 4 2019

BP-10

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 967243-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

| DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|---|---|

UPN LVN                    PRINTED ON RECYCLED PAPER                    BP-230(13)
JUNE 2002

*Exhibit A-2 pages*

*BP11 Denial*

**Administrative Remedy No. 967243-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal wherein you challenge the denial of your request for a
Reduction in Sentence (RIS) based on the inability of your adult
daughter to care for your minor children, due to daycare
challenges. For relief, you request a RIS to care for your
minor children.

Title 18 of the United States Code, § 3582(c)(1)(A), allows a
sentencing court to reduce a term of imprisonment for
extraordinary and compelling reasons. Pursuant to Program
Statement No. 5050.50, Compassionate Release/Reduction in
Sentence: Procedures for Implementation of 18 U.S.C. §§
3582(c)(1)(A) and 4205(g), Section 5, consideration for a RIS
may be given to inmates whose family member caregiver for an
inmate's child is suddenly unavailable due to that caregiver's
death or incapacitation. "Incapacitation" means the family
member caregiver suffered a severe injury or suffers from a
severe illness that renders the caregiver incapable of caring
for the child.

We have carefully reviewed your request and determined that you
do not meet the criteria for the death or incapacitation of the
family member caregiver under the criteria set for in the
aforementioned Program Statement. As noted by the Warden, the
loss of daycare and challenges identifying other daycare options
are not valid bases for the Bureau of Prisons to seek a
reduction in sentence on your behalf. Additionally, we note
that there was a clerical error in the BP-10 response provided
by the Regional Director; while you note that the response
stated that you "do" meet the criteria, our review reflects that
such was a typographic error and the response should have stated
that you "do not" meet the criteria.

Accordingly, your appeal is denied.

_____
Date          6|5|19

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

*Exhibit A-2 page 6*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | Carr Heather F | 89751-083 | Hopi-A | FPC - Phoenix |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL** I received my BP-10 back and it says I do meet the criteria under "Incapacitation of a family member" for Compassionate Release but Regional concurred with the wardens decline instead. I have no family but my 23 year old daughter to care for my 8 + 4 year old children. She can no longer care for them due to many issues with my son's autism + sensory processing disorder. My son's dependant is the children's father and is in custody as well I received the maximum of my guideline range + had no prior criminal history. I don't qualify for RDAP since I've never done drugs. My point level is 0 and I am respectfully asking you to grant home confinement for the remainder of my sentence or I will not lose my children to foster care. My parental rights would be severed and I won't be able to get my children back if I am not out this year. I am submitting copies of my son's psych evaluation letters/notes from daycares that have kicked him out for swaping, court paperwork regarding the children and a letter from my daughter. I am a good mom and am a very active parent and my kids need me - I can not loose them to a foster family. I will be much more useful in the community having a job and caring for my children. I have completed over 30 classes no disciplinary issues, a steady job history no substance abuse issues and a home to go to for home confinement. Please consider my request for Compassionate Release / Home Confinement. Thank you for your time.

| 4-3-19 | Heather Carr |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

RECEIVED

APR 15 2019

Administrative Remedy Section
Federal Bureau of Prisons

BP-11
Denial

| | | |
|---|---|---|
| DATE | | GENERAL COUNSEL |

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 967 243-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| | | | |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| | |
|---|---|
| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |

USP LVN

Printed on Recycled Paper

BP-231(13)
APRIL 1982



*Exhibit A-3*
*14 pages*
*Pg. 1*

**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI          OGC/LCI
NUMBER       5050.50
DATE         January 17, 2019

# Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)

/s/
*Approved*: Hugh J. Hurwitz
Acting Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

**§571.60  Purpose and scope.**

**Under 18 U.S.C. 4205(g), a sentencing court, on motion of the Bureau of Prisons, may make an inmate with a minimum term sentence immediately eligible for parole by reducing the minimum term of the sentence to time served. Under 18 U.S.C. 3582(c)(1)(A), a sentencing court, on motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Control Act of 1984.**

**The Bureau uses 18 U.S.C. 4205(g) and 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.**

18 U.S.C. 3582 was amended by the First Step Act of 2018, revisions noted below in Summary of Changes.

For the purposes of this Program Statement, the terms "compassionate release" and "reduction in sentence" are used interchangeably.

**Federal Regulations from 28 CFR are in this type.**
Implementing information is in this type.

CAPT. HEATHER 5075102

*Exhibit A-3*  Pg. 2

In deciding whether to file a motion under either 18 U.S.C. 4205(g) or 18 U.S.C. 3582, the Bureau of Prisons (BOP) should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

Under 18 USC 3582 (d)(2)(3), the Bureau ensures that all facilities regularly and visibly post, including in prisoner handbooks, staff training materials, and facility law libraries and medical and hospice facilities, and make available to prisoners upon demand, notice of—

(i) a defendant's ability to request a sentence reduction pursuant to subsection (c)(1)(A);

(ii) the procedures and timelines for initiating and resolving requests described in clause (i); and

(iii) the right to appeal a denial of a request described in clause (i) after all administrative rights to appeal within the Bureau of Prisons have been exhausted.

### §572.40  Compassionate release under 18 U.S.C. 4205(g).

**18 U.S.C. 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date.  For inmates whose offenses occurred on or after November 1, 1987, the applicable statute is 18 U.S.C. 3582(c)(1)(A).  Procedures for compassionate release of an inmate under either provision are contained in 28 CFR part 571, subpart G.**

a. **Program Objectives.**  The expected results of this program are:

- A motion for a modification of a sentence will be made to the sentencing court only in particularly extraordinary or compelling circumstances that could not reasonably have been foreseen by the court at the time of sentencing.
- The public will be protected from undue risk by careful review of each compassionate release request.
- Compassionate release motions will be filed with the sentencing judge in accordance with the statutory requirements of 18 U.S.C. 3582 or 4205(g).

b. **Summary of Changes**

*Policy Rescinded*

P 5050.49 CN-1  Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)

CARR, HEATHER  89761083

Exhibit A-3
pg 3

The following have been added to this version of the Program Statement:

■ Requirements of section 603(b) of the First Step Act, codified at 18 USC § 3582:

➤ Requiring inmates be informed of reduction in sentence availability and process;

➤ Modifying definition of "terminally ill;"

➤ Requiring notice and assistance for terminally ill offenders;

➤ Requiring requests from terminally ill offenders to be processed within 14 days;

➤ Requiring notice and assistance for debilitated offenders; and

➤ Specifying inmates may file directly to court after exhaustion of administrative remedies, or 30 days from receipt of a request by the Warden's Office.

## 2. INITIATION OF REQUEST – EXTRAORDINARY OR COMPELLING CIRCUMSTANCES

### § 571.61 Initiation of request – extraordinary or compelling circumstances.

**a.  A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden.  Ordinarily, the request shall be in writing, and submitted by the inmate.  An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.  The inmate's request shall at a minimum contain the following information:**

**(1)  The extraordinary or compelling circumstances that the inmate believes warrant consideration.**

**(2)  Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.**

**b.  The Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request.  Staff shall refer a request received at the Central Office to the Warden of the institution where the inmate is confined.**

A request for a RIS is considered "submitted" for the purposes of 18 USC §3582 (c)(1), when received by the Warden in accordance with this section.

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.**  Implementing information: this type.    3

CARR, HEATHER 98751063



## 3. REQUESTS BASED ON MEDICAL CIRCUMSTANCES

The criteria for a reduction in sentence (RIS) request may include the following:

**a. Terminal Medical Condition**. RIS consideration may be given to inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1). The BOP's consideration should include assessment of the primary (terminal) disease, prognosis, impact of other serious medical conditions of the inmate, and degree of functional impairment (if any). Functional impairment (e.g., limitations on activities of daily living such as feeding and dressing oneself) is not required for inmates diagnosed with terminal medical conditions; however, functional impairment may be a factor when considering the inmate's ability or inability to reoffend.

Pursuant to 18 U.S.C. § 3582(d)(2)(A), in the case of a diagnosis of a terminal illness, the Bureau of Prisons shall, subject to confidentiality requirements:

> (i) not later than 72 hours after the diagnosis notify the defendant's attorney, partner, and family members of the defendant's condition and inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A);

> (ii) not later than 7 days after the date of the diagnosis, provide the defendant's partner and family members (including extended family) with an opportunity to visit the defendant in person;

> (iii) upon request from the defendant or his attorney, partner, or a family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A); and

> (iv) not later than 14 days of receipt of a request for a sentence reduction submitted on the defendant's behalf by the defendant or the defendant's attorney, partner, or family member, process the request.

The statutory time frames of section 3582(d)(2)(A), begin once the Clinical Director of an institution makes a terminal diagnosis. Once the diagnosis is made, the Clinical Director will inform the Warden and the appropriate Unit Manager as soon as possible so as to ensure requirements are met.

*Exhibit A-3*
*pg 5*

If the inmate is physically/psychologically able, the inmate should consent to notifications above using Form BP-A0192, Release of Information Consent, or equivalent written authorization.

If a visit is denied for security concerns, as reflected in 18 U.S.C. § 3582(d)(3)(J), the reasons should be documented.

The Warden will forward the information indicated in Section 8 of this policy, below, to Central Office within 14 days.

b. **Debilitated Medical Condition**. RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:

- Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
- Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function). A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

Pursuant to 18 U.S.C. § 3582(d)(2)(B), in the case of an inmate unable to submit a request for a RIS BOP institution staff shall:

(i) inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A)

(ii) accept and process a request for sentence reduction that has been prepared and submitted on the defendant's behalf by the defendant's attorney, partner, or family member under clause (i); and

(iii) upon request from the defendant or his attorney, partner, or family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A).

All RIS requests should be assessed using the factors outlined in Section 7.

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.**   Implementing information: this type.    5

*Exhibit A-3*
*page 6*

## 4. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – ELDERLY INMATES

The criteria for a RIS request may include the following:

a. **"New Law" Elderly Inmates.** Inmates sentenced for an offense that occurred on or after November 1, 1987 (e.g., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment.[1]

b. **Elderly Inmates with Medical Conditions.** Inmates who fit the following criteria:

- Age 65 and older.
- Suffer from chronic or serious medical conditions related to the aging process.
- Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
- Conventional treatment promises no substantial improvement to their mental or physical condition.
- Have served at least 50% of their sentence.

Additionally, for inmates in this category, the BOP should consider the following factors when evaluating the risk that an elderly inmate may reoffend:

- The age at which the inmate committed the current offense.
- Whether the inmate suffered from these medical conditions at the time the inmate committed the offense.
- Whether the inmate suffered from these medical conditions at the time of sentencing and whether the Presentence Investigation Report (PSR) mentions these conditions.

The BOP Medical Director will develop and issue medical criteria to help evaluate the inmate's suitability for consideration under this RIS category.

c. **Other Elderly Inmates.** Inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced.

---

[1] These criteria are different from those provided in 18 U.S.C 3582(c)(1)(a)(ii), which states that a court, upon motion of the BOP Director, may reduce a sentence term if it finds that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.** Implementing information: this type.    6

CARR, HEATHER 89751099

*Exhibit A-3*
*page 7*

Elderly inmates who were age 60 or older at the time they were sentenced ordinarily should not be considered for RIS if their current conviction is listed in the Categorization of Offenses Program Statement.

All RIS requests should be assessed using the factors outlined in Section 7.

## 5. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – DEATH OR INCAPACITATION OF THE FAMILY MEMBER CAREGIVER.

The criteria for a RIS request may include the death or incapacitation of the family member caregiver of an inmate's child, e.g., RIS requests from inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation.

For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.

In reviewing these requests, BOP should assess, based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.

a. **First Stage of the Warden's Review.** The following information should be provided by the inmate to the Warden in writing for RIS requests based on the death or incapacitation of the family member caregiver:

- A statement that explains that the inmate's family member caregiver has died or become incapacitated and that person was the caregiver for the inmate's biological or legally adopted child.
- A statement that this person was the only family member capable of caring for the inmate's child.
- The name of the deceased or incapacitated family member caregiver and the relationship of that person to the inmate (e.g., spouse, common-law spouse, mother, sister) and statement that the caregiver is a family member of the child.
- For requests based on a deceased family member caregiver, an official copy of the family member caregiver's death certificate.
- For requests based on an incapacitated family member caregiver, verifiable medical documentation of the incapacitation.
- Verifiable documentation that the inmate is the parent of the child. Acceptable documentation includes birth certificates, adoption papers, or verification of the inmate's paternity.

*Exhibit A-3*
*page 8*

- Verifiable documentation providing the name and age of the child.
- A clear statement and documentation that the inmate has a release plan, including housing, and the financial means to care for the child immediately upon the inmate's release.
- Authorization from the inmate for the BOP to obtain any information or documents from any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child.

The Warden may deny the inmate's request at the institution level of review if the Warden finds that the inmate has not provided adequate information and documentation as set forth above.

b. **Second Stage of the Warden's Review.** Even if the inmate provides adequate and sufficient information and documentation set forth above regarding the RIS request, further investigation is appropriate. At this stage, the Warden should convene a committee consisting of the inmate's unit manager, correctional counselor, and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to review supporting letters and documents before the Warden makes a recommendation to approve or deny the RIS request. The additional information and supporting documentation gathered by the committee for the Warden's review should include:

- A general description of the child's physical and mental condition.
- A description of the nature of the child's care both during the inmate's pre-arrest and pre-sentence period, and during the inmate's current incarceration.
- Letters or documentation that the deceased/incapacitated family member was and still is the only family member caregiver capable of caring for the inmate's minor child. These letters or documentation should include:

  ➤ Information indicating whether this family member was, in fact, caring for the child during the inmate's incarceration and immediately prior to the family member's death or incapacitation.
  ➤ An explanation of who has been caring for the child since the family member's death or incapacitation.
  ➤ If the child is in foster care, documentation verifying that the inmate will be able to immediately obtain custody of the child.

All RIS requests should be assessed using the factors outlined in Section 7 as well as the following factors.

- Has the inmate committed violent acts before or during the period of incarceration as reflected in the PSR, institutional disciplinary records, or other appropriate documentation?
- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child prior to incarceration?

P5050.50   1/17/2019   **Federal Regulations from 28 CFR: this type.**   Implementing information: this type.   8

*Exhibit A-3*
*page 9*

- To what degree has the inmate had contact with or cared for the child prior to arrest, pretrial or pre-sentence, and during incarceration? Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
- Is there any evidence of child abuse, neglect, or exploitation in the PSR or other documents?
- Are there any documents regarding the inmate's parenting skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse, registered partner or children, certificates for classes in anger management or other types of counseling, removal of child from the home for any reasons)?
- Are there records regarding the termination of parental rights or loss of custody of the inmate's (other) child?
- Does the inmate have a detainer as a deportable alien to a country other than where the child resides?
- Has the inmate received public funding or had a job with a living wage for any period of time prior to incarceration?
- Has the inmate engaged in programming (e.g., parenting, anger management) during incarceration that would indicate efforts to improve parenting skills or that would indicate a commitment to caring for the child upon release?

Wardens should also consider any additional reliable documentation (e.g., letters of support from family members, neighbors, doctors, hospitals, and state or local agencies). Documentation may be obtained with the assistance of the Office of Probation and Pretrial Services. Wardens should also consider whether the inmate participated in the Inmate Financial Responsibility Program and any information relating to the inmate's substance abuse treatment, physical/mental/ emotional health, and work evaluations during incarceration.

The care of a child may be requested to be a condition of the inmate's release to a supervised release term. Thus, failure to care for the child may result in a finding of a supervised release violation and return to custody.

## 6. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – INCAPACITATION OF A SPOUSE OR REGISTERED PARTNER

The criteria for a RIS request may include the incapacitation of an inmate's spouse or registered partner when the inmate would be the only available caregiver for the spouse or registered partner.

For these requests, "spouse" means an individual in a relationship with the inmate, where that relationship has been legally recognized as a marriage, including a legally-recognized common-law marriage. "Registered partner" means an individual in a relationship with the inmate, where that relationship has been legally recognized as a civil union or registered domestic partnership.

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.**  Implementing information: this type.    9

CARR, HEATHER 80751083

*Exhibit A-3*
*page 10*

The relationship should have been established before the inmate's offense date of arrest, and should be verified by information in the PSR or other administratively acceptable documentation (e.g. marriage certificate).

For these requests, "incapacitation" means the inmate's spouse or registered partner has:

- Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
- A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

a. **First Stage of the Warden's Review.** The following information should be provided by the inmate to the Warden in writing for RIS requests based on the incapacitation of the spouse or registered partner:

- Statement that explains that the inmate's spouse or registered partner has become incapacitated.
- Statement that the inmate is the only family member capable of caring for the spouse or registered partner.
- Verifiable medical documentation of the incapacitation of the spouse or registered partner.
- A clear statement and documentation of the inmate's release plan, including housing, and the financial means to care for the spouse or registered partner immediately upon release.
- Written authorization from the inmate and others (as needed) for the BOP to obtain any information or documents from any individual, medical entity or doctor, or any government agency about the inmate, the spouse or registered partner, or other family members.

The Warden may deny the inmate's request at the institution level of review if the Warden finds that the inmate has not provided adequate information and documentation as set forth above.

b. **Second Stage of the Warden's Review.** Even if the inmate provides adequate and sufficient information and documentation set forth above regarding the RIS request, further investigation is appropriate. At this stage, the Warden should convene a committee consisting of the inmate's unit manager, correctional counselor and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to

P5050.50   1/17/2019   **Federal Regulations from 28 CFR: this type.**  Implementing information: this type.   10

CARR, HEATHER 85751083

*Exhibit A-3*
*page 11*

review supporting letters and documents before the Warden makes a recommendation to approve or deny the RIS request. The information and supporting documentation gathered by the committee for the Warden's review should include:

- A general description of the spouse's or registered partner's physical and mental condition.
- A description of the nature of the spouse's or registered partner's care, as relevant, during the inmate's pre-arrest and pre-sentence period, and during the inmate's current incarceration.
- Letters or documentation indicating whether the inmate is the only family member caregiver capable of caring for the spouse or registered partner. This should include an explanation of who has been caring for the spouse or registered partner during the inmate's period of incarceration, as relevant.
- Letters or documentation indicating the spouse or registered partner is, or would be, supportive of the inmate's release, and of the inmate assuming the role of the primary caregiver.

All RIS requests should be assessed using the factors outlined in Section 7 as well as the following factors.

- Has the inmate committed violent acts before or during the period of incarceration, as reflected in the PSR, institution disciplinary records, or other appropriate documentation?
- To what extent would the inmate and spouse or registered partner be relying on publicly available resources (e.g., financial or medical) to provide care to the spouse or registered partner?
- Has the inmate ever been charged with, or convicted of, a crime of domestic violence?
- Did the inmate share a residence with the spouse or registered partner prior to the period of incarceration?
- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home shared with the spouse or registered partner prior to incarceration?
- To what degree has the inmate had contact with (or cared for) the spouse or registered partner prior to arrest, pretrial or pre-sentence, and during incarceration? Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
- Is there any evidence of abuse or neglect involving the spouse or registered partner in the PSR or other documents?
- Are there any documents regarding the inmate's custodial skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse or registered partner or children, certificates for classes in anger management or other types of counseling, removal of children from the home for any reasons)?
- Does the inmate have a detainer as a deportable alien to a country other than where the spouse or registered partner resides?
- Has the inmate received public funding or had a job with a living wage for any period of time prior to incarceration?

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.** Implementing information: this type.    11

CARA HEATHER 88791062

*Exhibit A-3 page 12*

- Has the inmate engaged in programming (e.g., anger management, financial responsibility program) during incarceration that would indicate efforts to improve custodial skills and/or that would indicate a commitment to the inmate's spouse or registered partner upon release?

Wardens should also consider any additional reliable documentation (e.g., letters of support from family members, neighbors, doctors, hospitals, and state or local agencies). Documentation may be obtained with the assistance of the Office of Probation and Pretrial Services.

The care of the spouse or registered partner may be requested to be a condition of the inmate's release to a supervised release term. Thus, failure to care for the spouse or registered partner may result in a finding of a supervised release violation and return to custody.

## 7. FACTORS AND EVALUATION OF CIRCUMSTANCES IN RIS REQUESTS

For all RIS requests, the following factors should be considered:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. This factor is considered with respect to proximity to release date or Residential Reentry Center (RRC) or home confinement date.
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

When reviewing RIS requests, these factors are neither exclusive nor weighted. These factors should be considered to assess whether the RIS request presents particularly extraordinary and compelling circumstances.

Overall, for each RIS request, the BOP should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

## 8. APPROVAL OF REQUEST

### §571.62  Approval of request.

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.**  Implementing information: this type.    12

CARR, HEATHER 89754083

*Exhibit A3*
*page 13*

**a. The Bureau of Prisons makes a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only after review of the request by the Warden, the General Counsel, and either the Medical Director for medical referrals or the Assistant Director, Correctional Programs Division for non-medical referrals, and with the approval of the Director, Bureau of Prisons.**

**(1) The Warden shall promptly review a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A). If the Warden, upon an investigation of the request determines that the request warrants approval, the Warden shall refer the matter in writing with recommendation to the Office of General Counsel.**

The Warden's referral at a minimum must include the following:

a. The Warden's written recommendation as well as any other pertinent written recommendations or comments made by staff during the institution review of the request.

b. A complete copy of Judgment and Commitment Order or Judgment in a Criminal Case and sentence computation data.

c. A progress report that is not more than 30 days old. All detainers and holds should be resolved prior to the Warden's submission of a case under 18 U.S.C. 3582 (c)(1)(A) or 4205(g). If a pending charge or detainer cannot be resolved, an explanation of the charge or conviction status is needed.

d. *All* pertinent medical records if the reason for the request involves the inmate's health. Pertinent records include, at a minimum, a Comprehensive Medical Summary by the attending physician, which should also include an estimate of life expectancy, and all relevant test results, consultations, and referral reports/opinions.

e. The referral packet must include, when available, a copy of the Presentence Investigation and Form U.S.A. 792, Report on Convicted Offender by U.S. Attorney, Custody Classification form, Notice of Action forms, Probation form 7a, information on fines, CIM Case Information Summary (BP-A0339), and any other documented information that is pertinent to the request. In the absence of a Form U.S.A. 792, the views of the prosecuting Assistant U.S. Attorney may be solicited; those views should be made part of the Warden's referral memo.

f. If the inmate is subject to the Victim and Witness Protection Act of 1982 (VWPA), confirmation of notification to the appropriate victim(s) or witness(es) must be incorporated into the Warden's referral. A summary of any comments received must also be incorporated into the referral. If the inmate is not subject to the VWPA, a statement to that effect must be in the referral.

*Exhibit A-3*
*page 14*

g. For a request under 18 U.S.C. 3582(c)(1)(A), when a term of supervised release follows the term of imprisonment, confirmation that release plans have been approved by the appropriate U.S. Probation Office must be included in the referral. If the inmate will be released to an area outside the sentencing district, the U.S. Probation Office assuming supervision must be contacted. If no supervision follows the term of imprisonment, release plans must still be developed.

h. The development of release plans must include, at a minimum, a place of residence and the method of financial support, and may require coordination with various segments of the community, such as hospices, the Department of Veterans Affairs or veterans' groups, Social Security Administration, welfare agencies, local medical organizations, or the inmate's family.

i. Because there is no final agency decision until the Director has reviewed the request, staff at any level may not contact the sentencing judge or solicit the judge's opinion through other officers of the court.

**(2) If the General Counsel determines that the request warrants approval, the General Counsel shall solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending upon the nature of the basis for the request. With this opinion, the General Counsel shall forward the entire matter to the Director, Bureau of Prisons, for final decision.**

**(3) If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 4205(g), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Bureau of Prisons to reduce the minimum term of the inmate's sentence to time served. If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 3582(c)(1)(A), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Director of the Bureau of Prisons to reduce the inmate's term of imprisonment to time served.**

**b. Upon receipt of notice that the sentencing court has entered an order granting the motion under 18 U.S.C. 4205(g), the Warden of the institution where the inmate is confined shall schedule the inmate for hearing on the earliest Parole Commission docket.**

Institution staff prepare an amended Sentence Data Summary for use at this hearing. Staff provide a copy of the most recent progress report to the Parole Commission.

**Upon receipt of notice that the sentencing court has entered an order granting the motion under 18 U.S.C. 3582(c)(1)(A), the Warden of the institution where the inmate is confined shall release the inmate forthwith.**

P5050.50    1/17/2019    **Federal Regulations from 28 CFR: this type.** Implementing information: this type.    14

CARR, HEATHER 88781363

CT04400 (1/16)

# PROGRESS REPORT TO THE JUVENILE COURT

*Pg. 1*

*Exhibit A-4*
*(5 pages)*

**Court Case Number**    JD35718                    Date of Report   10/03/2018

**Case Name**         CARR, HEATHER ID: 587802

### A.  Name and Date of Birth for Each Child Subject to This Court Case Number:

3729505 THOMAS, TRU                   12/27/2014
3729504 THOMAS, MILANI                12/25/2010

### B.  Child or Children Subject to This Report If Different From Above.

Not applicable.

## I.    REASON FOR DCS INVOLVEMENT

### A.   Brief statement of grounds for petition.

On 04/13/2018 at 2:07 PM, the Department of Child Safety (DCS) took custody of Tru Thomas and Milani Thomas due to concerns pertaining to incarceration and no caregiver willing and/or able to parent.

On or about 01/05/2018, mother Ms. Heather Carr signed a Power of Attorney (POA) titled Temporary Guardianship Agreement for the children to be in the custody of adult sister and her significant other, Mrs. Ayanna Brown and Mr. Demarcus Brown for 'as long as necessary' beginning on 01/05/2018. This agreement will expire on 07/05/2018 as a POA cannot last for longer than six months under Arizona law.

Ms. Carr became incarcerated in 02/2018 and it is unknown how long she will be incarcerated, but could be up to five years.

Father, Mr. Tramell Thomas dropped Tru and Milani off with Mrs. Brown and Mr. Demarcus on 03/11/2018. Mrs. Brown reports that she attempted to contact Mr. Thomas about the children, but he ignored her phone calls. Mr. Thomas was arrested on a parole violation on or about 03/18/2018 and is in federal custody.

Although Ms. Carr made temporary arrangements for the children, she has not ensured that their mental and behavioral health needs are met as Mrs. Brown is unable to provide for medical or behavioral health services for the children as she is unable to add them to her insurance.

### B.   Additional safety threats or risk factors that prevent family reunification, if applicable.

Both parents remain incarcerated.

*Page 2*

*Exhibit A4*

## II.    SERVICES AND SUPPORTS

**A.    If applicable, describe efforts made to locate missing parent.**

Not applicable.

**B.    Describe the behavioral changes the parent or guardian must demonstrate in order to eliminate the safety threats and risk factors identified in the case plan.**

Ms. Carr is encouraged to take part in any family related services while she is incarcerated. (Counseling, Parenting, Employment, Cards, Letters). Ms. Carr will be assessed for additional needs upon release.

Mr. Tramell is encouraged to take part in any family related services while he is incarcerated. (Counseling, Parenting, Employment, Cards, Letters) He will be assessed for additional needs upon release.

**C.    Services and supports provided to eliminate the need for continued out-of-home placement and the outcome and participation in those services and supports.**

Not applicable, the removal was not preventable as there was no caregiver willing or able to care for the children. No documentation has been provided to the Department of any participating or completion of services while incarcerated.

**D.    Describe coordination with RBHA Behavioral Health Services.**

The children both received a Rapid Response and were referred to Jewish Family and Children Services.
Tru receives case management and a birth to five assessment. Tru was assessed and qualified with DDD. Tru will be receiving Occupational Therapy.
Milani receives case management.

## III.    CASE PLAN

**A.    Case plan goal and target date (attach case plan).**

Guardianship 4/03/2019

**B.    Describe efforts (including services and supports) necessary to accomplish case plan goal.**

The Department will continue to provide monthly contact. Parents are encouraged to participate in any services offered to them while incarcerated.

**C.    Concurrent plan and target date (describe what activities have been initiated to implement the concurrent plan).**

Severance and Adoption 4/03/2019

*Exhibit A-4 page 3*

**D.    Recommended permanent case plan goal and target date, if different than stated in subsection A above.**

**E.    Reason for change in case plan goal, if applicable.**

The parents will be incarcerated for 5-15 years and Family Reunification is not a realistic goal.

## IV.  CHILD'S PLACEMENT

**A.    Identify and describe type of current placement and whether this placement is consistent with the Department's placement preferences.  (State whether this placement is temporary or permanent).**

At this time, Tru and Milani are in an unlicensed kinship foster home and is consistent with the Departments placement preferences. This placement is willing to be permanent as well.

**B.    Describe efforts to identify and assess placement with the following: all adult grandparents, all parents of a sibling of the child, where parent has legal custody of such sibling, other adult relatives of the child (including any other adult relatives suggested by the parents), or a person who has a significant relationship with the child, including the child's and/or parent's tribe if the child is or may be Native American. If the child is not placed in the home of a relative or person who has a significant relationship with the child, explain why such a placement has not been identified or is contrary to the child's best interests.**

The children are placed with their adult sister.

**C.    Explain how the current placement ensures the safety of the child, that the child's needs are met and is the least restrictive placement.**

Placement makes sure that the children are always supervised and they are able to meet all behavioral, physical and financial needs of the children. This placement is the least restrictive placement that is available for the Department.

**D.    Describe child's overall functioning (include medical, social and educational status).**

Tru is 4 years old. Tru is nonverbal and placement has been teaching the child sign language to say "Please" and "Thank you". Tru was attending the predevelopmental program at Liberty Elementary School, however once the school learned that it was requested that he be transported to his daycare, the school was not able to accommodate this request as it was two miles outside of their boundaries. Tru was not able to attend a closer daycare as the copay was too high even with partial DES coverage. As an alternative, Tru attends the program at Sunrise Preschool. Tru was assessed and qualifies with DDD. Tru will receive Occupational Therapy. Placement applied Tru for ALTCS but was denied and

*Exhibit A-4 page 4*

placement is currently appealing the denial. Tru loves to play games on his tablet. Placement is potty training Tru.

Milani is 7 years old and enrolled at the school in her neighborhood. Milani is a happy and content child. Milani loves to talk and play with her friends. Milani likes to watch YouTube videos of slime. Milani interacts great with Tru, she is able to interact and play with him.

**E.** **Describe how the reasonable and prudent parent standard is being implemented to allow the child to participate in age and developmentally appropriate extracurricular, enrichment, cultural, and social activities.**

The children are able to participate in activities should the occasion arise and placement is willing to facilitate.

**F.** **If the child has a sibling in out-of-home placement, describe what efforts have been made to place siblings together and, if not placed together, state the specific reason why this did not occur or reasons why this would be contrary to the child's or sibling's safety or wellbeing.**

Not applicable as Tru and Milani are placed together.

**G.** **Describe results of visits with the parents/guardians/custodians which have occurred since removal (include proposed visitation in the case plan).**

Placement takes the children to visit their mother frequently, Ms. Carr and they write letter to each other. Mr. Tramell is incarcerated in a different state so placement is not able to provide frequent contact. Mr. Tramell has wrote the children letters, however Milani has not wrote back.

**H.** **If placement with sibling(s) is not possible, describe efforts to facilitate frequent visitation or contact with siblings. If frequent visitation or contact with siblings is not recommended, state reasons why this would be contrary to the child's or a sibling's safety or wellbeing.**

Not applicable.

**I.** **Describe contact and any reason for restricted contact between the child and child's parents, family members, relatives, friends, and any former foster parents. State whether contact is in the child's best interest.**

There is restricted contact with both parents due to incarceration. Ms. Carr is incarcerated in Arizona and placement is willing and able to facilitate frequent visits. Mr. Tramell is incarcerated out of state which prevents placements from providing any visitation with the children.

**J.** **History of placements (include the length of time the child has been in out-of-home care, the number of placements, and the length of each placement).**

Tru Thomas

*Exhibit A-4 page 5*

4/13/2018-Present: Unlicensed kinship, adult sibling

Milani Thomas
4/13/2018-Present: Unlicensed kinship, adult sibling

**K.**     **Services and supports provided to address the child's placement/special needs and to support the out-of-home caregiver (include in the case plan).**

CMDP, Standard Allowances, CFT's with RHBA provider, monthly contacts.

**L.**     **If applicable, state why the out-of-state placement continues to be appropriate and in the best interest of the child (include ICPC and/or out-of-state visitation status).**

Not applicable.

**M.**     **If the child is 16 or older with a case plan goal of Independent Living, describe services and supports provided to prepare the child for Independent Living.**

Not applicable.

**N.**     **If the child is an Indian Child, describe active efforts to provide culturally appropriate remedial services and rehabilitative programs, and efforts to place the child within the placement preferences.**

Not applicable.

**V.     CHILD SAFETY SPECIALIST'S CONCLUSIONS**

It is the conclusion of this case manager that temporary custody is necessary due to the incarceration of both parents, however, it should be noted that the children did not disclose any type of maltreatment or neglect while in their parents' care. It should also be noted that Ms. Carr signed a POA allowing the children to be cared for by Mrs. Brown for 'as long as necessary', but it expired on 07/05/2018 due to Arizona law.

It is recommended the change of case plan in order to provide permanency and stability for the children.

**VI.     RECOMMENDATIONS**

**A.     Agency**

**It is respectfully recommended that** <u>Tru and Milani Thomas</u> **remain a ward(s) of the court, committed to the care, custody and control of the Arizona Department of Child Safety.**

**It is further respectfully recommended that** <u>Tru and Milani</u> **be placed in the physical custody of** <u>Ayanna Brown</u> **with appropriate medical, social, and educational authorizations.**

*Exhibit A-5*

*1 page*

## Jewish Family & Children's Service

## PSYCHIATRIC EVALUATION

**PATIENT:** Tru Thomas
**DATE OF BIRTH:** 12/27/2014
**MRN:** 000000042617
**ENCOUNTER DATE:** 8/24/2018
**PROGRAM:** Behavioral Health

## Individuals Present

**Contact Type:** Onsite meeting
Individual present
**Others present:** Sister and brother in-law

## General

New Patient
**Historian:** sister and brother in Law

## Reason for Visit

This 3 year 7 month old male presents for ASD and ADHD.

## History of Present Illness:

1. ASD    — *autism*

The symptoms are reported as being moderate. He states the symptoms are chronic and are poorly controlled. He is non verbal. He does not make eye contact. school reports indicates he plays by himself. Most of the time he does not have any facial expression. He does not start any communication. He never points at things he needs. He does not like to show and tell.

He lines up the cars and if they do not line up he takes away the tires of the cars to line them up. They have to be in a straight line.

He covers his eras when it is loud. He escapes from the daycare if it is too loud. Guardian says he has hyposensitivity to pain. he runs on the rocks barefoot. He runs to the street in summer wwhen the pavement is hot and does not feel it.

He does not like change in routine. If they go through the front door, not the garage door ( they usually go through garage door ) he gets upset. he watches the same moves or same part of the movie again and again. The favorite part of a movie is credits.

he spins sometimes and keeps on spinning. He also rocks from side to side. He likes rotating lights from his night light.

If another kid wants to play with him he moves away.

He goes to other people's drink and drink that. He does not care for meat. He loves granola bars.

2. ADHD

Quality of life: behaviors create problems at home and behaviors create problems at school. The problem is with no change. Context: behaviors persist > 6 months and behaviors began before age 7. Associated symptoms include fidgeting/squirming, restlessness, short attention span and unable to follow directions.





12/11/2018

Aubrey Richardson

RE: Tru Thomas

Dear Aubrey,

Thank you for your interest and patience in working with us to enroll Tru in our Ahwatukee KinderCare.

After discussing Tru's individual care needs with you and as well as caring for Tru during a free trial day, we welcome Tru's enrollment with the provision of a 1-to-1 Personal Care Assistant, either at your own cost or through community resources that may be available to you, to provide Tru with the 1-to-1 care that we feel he needs. The fundamental nature of our center  is that of a group program, and we believe we are unable to safely care for Tru  in our group care ratio of 1-to-8 at this time.

Feel free to contact me with questions at 480 759 9879.  If you choose not to provide a Personal Care Assistant for Tru at this time, we wish you well in finding the care he needs.

Sincerely,

Yvonne Berkhoff
Center Director

cc:
Tyreca Sylvester, Inclusion Services

![Sunrise Preschools logo]

## PARENT COMMUNICATION FORM

*Exhibit A6*
*pg. 2*

Date: **12/6/18**  Time: **5:00PM**  Parent's Name **MR & MRS Thomas.**

Child's name **Tru Thomas.**

Regarding

Today In the afternoon Tru was having a rough moment attempting to run out of his classroom. I came to assist the teachers. Tru did run out of the classroom and made it to the schoolAge playground. I brought Tru to the front desk with me, he was still trying to run out the front door. I feed him thinking he was hungry and maybe he would calm down. He ate and still run down the hallway, I chased him, and brought him with me again. I was really afraid he could run out.

us Elizabeth
Assistant Director.

**Exhibit HH**
**page 3**

### Sunrise Preschools
### PARENT COMMUNICATION FORM

Date: 12/7/18  Time: ___  Parent's Name: Mom or Dad

Child's name: Tru Thomas

Regarding

Tru ran/attempted to run out the
classroom 8 times today. Myself
and other teachers were with him
throughout the day.

Miss Aaliyah

*Sunrise Preschools*

## PARENT COMMUNICATION FORM

Friday

Exhibit A 6
pg.4

Date: 11/30/18    Time: _____    Parent's Name _____

Child's name **Tru Thomas**
Regarding

Tru ran out of the classroom at different times during the day.

| | | |
|---|---|---|
| 9:30 a.m | 11:45 a.m | 3:00 p.m |
| 9:40 a.m | 12:30 p.m | 5:10 p.m |
| 9:50 a.m | 12:45 p.m | 5:20 p.m |
| 11:10 a.m | 2:00 p.m | 5:25 p.m |
| 11:30 a.m | 2:30 p.m | 5:30 p.m |

*Exhibit A-7 (2 pages) pg.1*

Dear Judge Martinez,

     I am writing to you in regards to my mother, Heather Carr, who is currently incarcerated at FCI Phoenix Camp. My name is Ayanna Brown, I am 23 years old and I have custody of my younger siblings Milani (age 8) and Tru (age 4). The past 18 months that my mom has been incarcerated has been a complete nightmare. My mom was the sole person that held our family together and without her here our whole world has fallen apart. My husband Demarcus couldn't stand the pressure of having my siblings live with us and the responsibilities that come with caring for my brother who has special needs so he forced us out the home and I had to get a small apartment for myself and my siblings. I am getting a divorce now and am trying my hardest to support all of us on my limited income as a pharmacy technician.

     My brother Tru will be 5 years old in December and he has never spoken a word. He has autism, is completely non-verbal and has a sensory processing disorder. With his sensory issues he cannot process the environment appropriately when there is any type of noise. In a daycare setting he constantly is trying to hide or run to a quiet place. With the student to teacher ratio requirements at daycare they are not able to chase after him or give him the 1 on 1 attention he needs. The daycares kept requiring that he have an aide to go along with him at daycare but the state of Arizona denied him because he is not "medically fragile". We are constantly changing daycares since he is continually getting kicked out of daycares. Since the children were wards of the court a daycare subsidy was approved through the end of the year so right now there is a $0 copay. Once that ends, constantly changing daycares wont be the only issue-I wont be able to afford it! I am struggling as it is now there is no way I can afford another $1000 per month for daycare for my brother. My brother will have to go into foster care if my mom isn't home and will be adopted since he is younger than 6. I took custody of my siblings because the state of Arizona would split them up in separate foster care homes and would have been adopted out. I thought I could handle this, but I am in way over my head and there is no way I can do this on my own any longer.

     Without my mother here it has caused such an enormous void in our lives. She is all that my siblings and I have. There is absolutely no one else to help us- we

*Exhibit A-7 page 2*

have no other family. Without my mom here I feel so alone and I am completely overwhelmed and drained emotionally, physically and financially.

I have tried finding autism specific schools and they are all either at capacity or my brother would have to be 5 years old before September 1st. Since my brother won't be 5 until December, he cannot start kindergarten until august of 2020 and even then will still require daycare since I work Monday through Friday from 9am to 6 pm.

My brother was finally approved after 18 months for intensive speech and occupational therapy through DDD (department of developmental disabilities) and now I also have to start taking him to therapy 30-40 hours per week. I feel like I am drowning in all of this responsibility and I am begging the court to allow my mom out on home confinement so she can take my brother to his therapy appointments and take care of my siblings. My mother has always worked, always been responsible, and took care of us. She has never been on drugs or been in trouble with the law before. We don't just want our mom home with us; we NEED her home with us! She is an amazing person and an even better mom and I hope you can take her character and past into consideration.

If you will please allow her to serve her remaining sentence on home confinement so she can work, take care of my siblings, take my brother to therapy, pay her restitution and be at home. Our family is falling apart and I have no idea what we are going to do. Please send our mom home!

Respectfully,

Ayanna Brown

P.S. Please feel free to contact me at 480-720-9055, or AyannaxBrown@gmail.com

```
   PHXFO        *          INMATE EDUCATION DATA      *     08-28-2019
PAGE 001 OF 001 *             TRANSCRIPT              *     13:57:08


REGISTER NO: 89751-083      NAME..: CARR              FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: PHX-PHOENIX FCI
```

*PB.1*

*Exhibit A-8*

*5pages*

```
---------------------------- EDUCATION INFORMATION ----------------------------
FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
PHX  ESL HAS    ENGLISH PROFICIENT          02-27-2018 0948 CURRENT
PHX  GED HAS    COMPLETED GED OR HS DIPLOMA  02-27-2018 0948 CURRENT


---------------------------- EDUCATION COURSES ----------------------------
SUB-FACL   DESCRIPTION                      START DATE  STOP DATE EVNT AC LV  HRS
PHX SCP    ASSERT YOURSELF FEMALE OFFENDE   07-17-2019 CURRENT
PHX SCP    GREAT MONUMENTS                  06-24-2019 CURRENT
PHX SCP    SMALL BUSINESS                   06-24-2019 CURRENT
PHX SCP    NFPT WELLNESS                    08-19-2019 CURRENT
PHX SCP    CERAMIC CLASS                    06-12-2019 07-21-2019  P  C  P    8
PHX SCP    BASIC WATER COLOR CLASS          06-20-2019 07-21-2019  P  C  P    8
PHX SCP    MANAGING MONEY 01                04-01-2019 06-07-2019  P  C  P   10
PHX SCP    CARD DESIGN CLASS                04-03-2019 06-05-2019  P  C  P    8
PHX SCP    DIABETES WELLNESS CLASS          02-06-2019 04-15-2019  P  C  P    8
PHX SCP    BASIC SPANISH                    02-11-2019 03-15-2019  P  C  P   10
PHX SCP    THE STATES                       01-07-2019 03-15-2019  P  C  P   10
PHX SCP    ACCOUNTING BASIC                 01-07-2019 03-15-2019  P  C  P   10
PHX SCP    WOMEN'S 21ST CENT WRKPLC IMPC    02-11-2018 03-15-2019  P  C  P   10
PHX SCP    NATIONAL GEOGRAPHIC              01-07-2019 03-15-2019  P  C  P   10
PHX SCP    LIFE SKILLS 1                    01-07-2019 03-15-2019  P  C  P   10
PHX SCP    WOMEN'S REST BASED FITNESS       11-04-2018 01-29-2019  P  C  P    8
PHX SCP    BEATING THE ODDS                 10-15-2018 12-21-2018  P  C  P   10
PHX SCP    WILD WEST                        10-15-2018 12-21-2018  P  C  P   10
PHX SCP    CREDIT 101                       10-15-2018 12-21-2018  P  C  P   10
PHX SCP    MONEY SMARTS                     10-15-2018 12-21-2018  P  C  P   10
PHX SCP    CAMP INDEPENDENT ANGER MANAGE    10-01-2018 10-31-2018  P  C  P   10
PHX SCP    7 HABITS OF HIGHLY EFFECTIVE P   07-23-2018 09-28-2018  P  C  P   10
PHX SCP    CAMP INDEPENDENT MANAGE CAREER   09-01-2018 09-30-2018  P  C  P   10
PHX SCP    PARENTING CAMP                   07-23-2018 09-28-2018  P  C  P   10
PHX SCP    CAMP INDEPENDENT FIND A JOB      08-01-2018 08-31-2018  P  C  P   10
PHX SCP    BLUE PLANET                      04-23-2018 06-29-2018  P  C  P   10
PHX SCP    EVENT PLANNING                   04-23-2018 06-29-2018  P  C  P   10
PHX SCP    ICONS OF POWER                   04-23-2018 06-29-2018  P  C  P   10
PHX SCP    NUTRITION WELLNESS               03-28-2018 04-26-2018  P  C  P    8
PHX SCP    HUMAN ANATOMY WELLNESS           04-09-2018 05-15-2018  P  C  P    8
PHX SCP    LOST WORLD                       04-23-2018 05-25-2018  P  C  P   10
PHX SCP    CP INDEPENDENT FINANCIAL PLANN   04-01-2018 04-30-2018  P  C  P   10
```

```
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

Exhibit A-8
pg 2

# Certificate of Completion

*is hereby awarded to*

Heather Carr

*for completing FPC Phoenix Parenting*

This certificate is presented by
FPC Phoenix Education Department
September 28, 2018

D. McAnally, FPC Education Coordinator



*Exhibit A-8 page 3*

# CERTIFICATE OF COMPLETION

AWARDED TO

## Heather Carr

For completing 50 plus hours in the FPC Phoenix Community Service Project:

Homeless Veteran Sleeping Mat Project

Awarded April 4, 2018

W. Klewer, Unit Manager



Exhibit A-8 pg. 4

# CERTIFICATE OF ACHIEVEMENT

THIS CERTIFIES THAT

# HEATHER CARR

HAS SUCCESSFULLY COMPLETED THE FOUNDATION PROGRAM.
AND IS THEREFORE AWARDED THIS

**CERTIFICATE OF COMPLETION**

GIVEN THIS MOTNH OF APRIL 2019

4-16-2019
DATE

C. WILKINSON
FACILITATOR



FAST TRACK TO SUCCESS
YOU GOT THE JOB!

THIS CERTIFIES THAT

Heather Carr

has successfully completed the required curriculum approved by
Dress for Success® Phoenix, and is therefore awarded this

CERTIFICATE OF COMPLETION

Given this 27th day of June 2019

*Lisa Doronmal*
CEO/Founder

*Mary Crawford*
Director Women Service's

*Exhibit A-8 5 pg*

*Exhibit A-9 (1 page)*

```
PHXFO  606.00 *      FEMALE CUSTODY CLASSIFICATION FORM      *      08-28-2019
PAGE 001 OF 001                                                    13:56:59
```

### (A) IDENTIFYING DATA

```
REG NO..: 89751-083          FORM DATE: 07-31-2019          ORG: PHX
NAME....: CARR, HEATHER

                             MGTV: NONE
PUB SFTY: NONE               MVED:
```

### (B) BASE SCORING

```
DETAINER: (0) NONE           SEVERITY.......: (3) MODERATE
MOS REL.: 31                 CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE           VIOLENCE.......: (2) > 15 YRS SERIOUS
VOL SURR: (3) VOL SURR       AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
```

### (C) CUSTODY SCORING

```
TIME SERVED....: (4) 26-75%  PROG PARTICIPAT: (2) GOOD
LIVING SKILLS..: (2) GOOD    TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE   FAMILY/COMMUN..: (4) GOOD
```

### --- LEVEL AND CUSTODY SUMMARY ---

```
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+4   +20    -8        0        MINIMUM    N/A             OUT      DECREASE
```

```
G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

*I score a -8 so it's considered a 0 risk rating since that's the lowest possible score*

BP-A0941
JUN 10
**U.S. DEPARTMENT OF JUSTICE**

**Notice of RDAP Qualification** CDFRM *Exhibit A-10*

FEDERAL BUREAU OF PRISONS

## SECTION 1 - RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION

YOU HAVE REQUESTED PARTICIPATION IN THE BUREAU'S RESIDENTIAL DRUG ABUSE
TREATMENT PROGRAM.  MY REVIEW OF YOUR CASE INDICATES __ **DO** ✓ **DO NOT** QUALIFY
FOR THE RESIDENTIAL DRUG ABUSE PROGRAM.(comment on documentation and clinical
interview).

Comments:
You do not appear to meet the criteria for participation in RDAP based on a lack of
documentation supporting a pattern of substance abuse in the year prior to arrest.

If inmate does not qualify for the RDAP no offense review is required.

## SECTION 2 - OFFENSE REVIEW

___ A DSCC OFFENSE REVIEW HAS BEEN REQUESTED.

___ A DSCC OFFENSE REVIEW HAS **NOT** BEEN REQUESTED:

     ____ (a)  you have received a prior early release under §3621(e);

     ____ (b)  you are a contract boarder (e.g., state or military inmate);

     ____ (c)  you were sentenced under other law.

My signature indicates I have been informed of my RDAP qualification status.

| | |
|---|---|
| Inmate Name Printed<br>Carr, Heather | Staff Name Printed<br>K. Sullivan, Psy.D. |
| Inmate Signature | Staff Signature |
| Register Number<br>89751-083 | Staff Title<br>Drug Abuse Program Coordinator |
| Date 4-3-19 | Date |

| Refused to sign |
|---|
| __ Yes      __ No |

cc: Drug Abuse Treatment File Unit Team
     Unit Team (place in section 4 of inmate central file)

*PDF*

Prescribed b, P5331

## PROPOSED RELEASE PLAN

*Exhibit A-11*
*1 page*

Heather Carr has always had a stable and loving home environment with her children. She would be back home living with her children if this Court orders Heather's release pursuant to 3582 (c)(1)(A)(ii). Heather has the following plan in place:

1. Residence – 909 East Camelback Rd. #2103 Phoenix, AZ 85014

2. Other Occupants of Residence – Ayanna Brown (adult daughter), Milani Thomas (minor daughter), and Tru Thomas (minor son).

3. Employment – Phoenix, AZ has a vibrant job market and Heather is currently enrolled in a job search program at Dress for Success in downtown Phoenix where Heather visited last month with the Warden, Unit Manager and several other inmates. There are currently 8,000 job postings in Phoenix, with a majority of those being "felon-friendly." Heather has an active updated resume on file and is working with Mary Crawford, Director of Dress for Success, to find immediate employment upon release.

TRULINCS 89751083 - CARR, HEATHER - Unit: PHX-C-H

*Exhibit H-12*

*1 page*

--------------------------------------------------------------------------

FROM: Against Mm, Families
TO: 89751083
SUBJECT: update
DATE: 08/12/2019 03:21:51 PM

Dear FAMMily,

Many of you have asked over the past couple of weeks for the chart detailing point totals for the new risk and needs assessment tool, PATTERN. I apologize for not including it in my earlier email   Corrlinks does not allow the same formatting capabilities as our other email services so I was not able to include the chart in our last message. However, we have reformatted the chart into list form so that it can be shared with you. Please see below. Again, I apologize for the miscommunication and the confusion from the last email but I hope this will answer some questions!
Thank you,
Daniel Landsman
FAMM Director of Federal Legislative Affairs

FACTOR POINT TOTALS

Male General Recidivism:

Age at conviction. Less than 18: 12; 18 - less than 25: 8; 25 - less than 35: 4; 35 or older: 0.
Age at assessment. Less than 18 - 25: 30; 26 - 29: 24; 30 - 40: 18; 41 - 50: 12; 51 - 60: 6; 60+: 0.
Infraction convictions (any). More than 2: 9; 2 convictions: 6; 1 conviction: 3; 0 convictions: 0.
Infraction convictions (violent and serious). More than 2: 6; 2 convictions: 4; 1 conviction: 2; 0 convictions: 0.
Number of programs completed (any). More than 10: -12; 4 - 10: -9; 1 - 3: -6; 1: -3; 0: 0.
Number of technical or vocational courses. More than 1: 0; 1 course: -1; 0 courses: -2.
Federal Industry Employment (UNICOR). N/A.
Drug treatment while incarcerated. No need indicated: -6; Completed RDAP: -4; Completed drug treatment during incarceration: -2; Need indicated but no treatment during incarceration: 0.
Drug education while incarcerated. No: 0; Yes: -1.
Non-compliance with financial responsibility. N/A.
Instant offense violent. No: 0; Yes: 4.
Sex offender. No: 0; Yes: 1.
Criminal history points. 0 - 1 points: 0; 2 - 3 points: 6; 4 - 6 points: 12; 7 - 9 points: 18; 10 - 12 points: 24; 13+ points: 30.
History of violence. None: 0; >10 years minor: 1; >15 years serious: 2; 5-10 years minor: 3; 10-15 years serious: 4; <5 years minor: 5; 5-10 years serious: 6; <5 years serious: 7.
History of escapes. None: 0; >10 years minor: 2; 5-10 years minor: 4; <5 years minor or any serious: 6.
Voluntary surrender. Yes: -12; No: 0.

Female General Recidivism:

Age at conviction. Less than 18: 15; 18 - less than 25: 10; 25 - less than 35: 5; 35 or older: 0.
Age at assessment. Less than 18 - 25: 15; 26 - 29: 12; 30 - 40: 9; 41 - 50: 6; 51 - 60: 3; 60+: 0.
Infraction convictions (any). More than 2: 6; 2 convictions: 4; 1 conviction: 2; 0 convictions: 0.
Infraction convictions (violent and serious). More than 2: 6; 2 convictions: 4; 1 conviction: 2; 0 convictions: 0.
Number of programs completed (any). More than 10: -8; 4 - 10: -6; 1 - 3: -4; 1: -2; 0: 0.
Number of Technical or Vocational Courses. More than 1: 0; 1 course: -2; 0 courses: -4.
Federal industry employment (UNICOR) Yes: -1; No: 0.
Drug treatment while incarcerated. No need indicated: -9; Completed RDAP: -6; Completed drug treatment during incarceration: -3; Need indicated but no treatment during incarceration: 0.
Drug education while incarcerated. N/A.
Non-compliance with financial responsibility. No: 0; Yes: 3.
Instant offense violent. N/A.
Sex offender. N/A.
Criminal history points. 0 - 1 points: 0; 2 - 3 points: 6; 4 - 6 points: 12; 7 - 9 points: 18; 10 - 12 points: 24; 13+ points: 30.
History of violence. None: 0; >10 years minor: 1; >15 years serious: 2; 5-10 years minor: 3; 10-15 years serious: 4; <5 years minor: 5; 5-10 years serious: 6; <5 years serious: 7.
History of escapes. None: 0; >10 years minor: 2; 5-10 years minor: 4; <5 years minor or any serious: 6.
Voluntary surrender. Yes: -9; No: 0.



Chester Carr #97151-013
Scorpions Federal Prison
3750 N 45th Ave
Phoenix, AZ
85086

CERTIFIED MAIL

7001 0320 0004 3682 2450

Judge William J Martinez
Clerk of the Court
Alfred A. Arraj U.S. Courthouse
901 19th St. Room A105
Denver, CO
80294-3589



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00054-WJM-1

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**HEATHER CARR,**

    Defendant.

---

## RESPONSE TO MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

---

### INTRODUCTION

Heather Carr, Reg. No. 89751-083, pleaded guilty to one count of Conspiracy to Defraud the Government with Respect to Claims in violation of 18 U.S.C. § 286, and the Court sentenced her to 57 months, the bottom of the applicable advisory Sentencing Guideline range. Doc. 313. She is currently incarcerated at the Federal Correctional Institution at Phoenix, Arizona, with a projected release date of February 23, 2022. *See* Federal Bureau of Prisons, *Inmate Locator*,

1

https://www.bop.gov/inmateloc/ (last visited Oct. 9, 2019).

Carr alleges that her adult daughter, who has been acting as caregiver for her younger siblings since both parents are currently incarcerated, is no longer able to care for them. Doc. 508 at 3-4, 10. She now moves to "complete the balance of the custodial sentence under home confinement after which she will be subject to a three (3) year term of supervised release." Doc. 508 at 13. The Motion should be denied, as the Court cannot grant Carr the relief requested. Separately, the BOP properly determined that she does not qualify for compassionate release under U.S.S.G. § 1B1.13, Application Note 1.

## ARGUMENT

The First Step Act, Pub. L. 115 Pub. L. 391, 132 Stat. 5194 (Dec. 21, 2018), amended an array of federal criminal justice provisions. As relevant here, § 602 amended 18 U.S.C. § 3624(c)(2) with respect to home confinement for low-risk prisoners, while § 603(b) amended 18 U.S.C. § 3582(c)(1)(A) with respect to compassionate release. These provisions act independently, apply to different segments of the prison population, and are subject to distinct legal processes.

2

## I.   THE COURT CANNOT GRANT CARR'S REQUEST FOR HOME CONFINEMENT UNDER § 602 OF THE FIRST STEP ACT.

Section 602 of the First Step Act added a sentence at the end of 18 U.S.C.

§ 3624(c)(2), so that it now provides:

> (1) In general.  – The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.  – The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

By its terms, § 3624(c)(2) doesn't authorize a modification or reduction of a

sentence; rather, it directs the BOP, "to the extent practicable," to place low-risk

prisoners in home confinement for 10% of the term of incarceration, or the last six

months, whoever is less.  Carr has three obstacles.

*First*, it is well-established that an inmate must exhaust all administrative

remedies that are available to her before seeking judicial review of the decision.  *See*,

*e.g.*, *United States v. Wilson*, 503 U.S. 329, 335-36 (1992); *Simmat v. U.S. Bureau of Prisons*,

3

413 F.3d 1225, 1236-37 (10th Cir. 2005). The exhaustion requirement of the Prison

Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, "applies to all prisoners seeking

redress for prison circumstances or occurrences." *Porter v. Nussie*, 534 U.S. 516, 520

(2002). *See also* 28 C.F.R. § 542.10(a) (A federal prisoner must "seek formal review of

an issue which relates to any aspect of" her imprisonment.).

Indeed, the Supreme Court has unambiguously said that "unexhausted claims

cannot be brought into court." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010)

(quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "Because the prison's procedural

requirements define the steps necessary for exhaustion, an inmate may only exhaust

by properly following all of the steps laid out in the prison system's grievance

procedure." *Little*, 607 F.3d at 1249 (citing *Jones*, 549 U.S. at 218, and *Woodford v. Ngo*,

548 U.S. 81, 90 (2006)) (citation omitted). The burden of showing exhaustion rests on

the prisoner. *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981).

The BOP has established a four-tiered administrative process to address inmate

grievances, codified at 28 C.F.R. §§ 542.10-542.16. First, "an inmate shall ... present

an issue of concern informally to staff." *Id.* § 542.13(a). If this fails to satisfy the

inmate, she must submit her complaint, using Form BP-9, to the Warden within 20

days of the occurrence giving rise to the complaint. *Id.* § 542.14(a). If she is

4

dissatisfied with the response at that level, within 20 days of the Warden's response, she must appeal to the Regional Director of the Bureau of Prisons, using Form BP-10. *Id.* § 542.15(a). Finally, within 30 days of the Regional Director's response, the inmate may file a final administrative appeal to the General Counsel of the Bureau of Prisons, using Form BP-11. *Id.*

Here, Carr did not mention home confinement in her request to the warden. *See* Doc. 508 at 18 (BP-9 request dated Feb. 6, 2019). Consequently, the warden construed the request as one for compassionate release, and denied it because the unavailability of daycare doesn't qualify as an "incapacitation" of a family caregiver. *See* Doc. 508 at 17 (BP-9 decision dated Feb. 8, 2019). Carr didn't take issue with the warden's characterization of her request as one for compassionate release, and thus didn't mention home confinement in her appeal to the regional office. *See* Doc. 508 at 20 (BP-10 appeal dated Feb. 15, 2019). The regional director affirmed the warden's determination that Carr failed to meet the criteria under "Incapacitation of a Family Member Caregiver," and denied the appeal. *See* Doc. 508 at 19 (BP-10 decision dated Mar. 14, 2019).

It was only when she appealed to the national office that Carr characterized the issue as "my request for Compassionate Release/Home Confinement." *See* Doc. 508

5

at 22 (BP-11 appeal dated Apr. 3, 2019).  The administrator of national inmate appeals affirmed, again because Carr didn't "meet the criteria for the death or incapacitation of the family member caregiver under the criteria" established in BOP policy.  *See* Doc. 508 at 21 (BP-11 decision dated June 5, 2019).

To properly exhaust her administrative remedies, an inmate must raise her claim at each level of the BOP process, and may not raise an issue on appeal that was not raised in the lower filings.  28 C.F. R. § 542.15(b)(2).  Here, Carr didn't raise home confinement until her final appeal, and thus failed to exhaust that claim.  Her claim should be dismissed without reaching the merits.

*Second*, home confinement isn't a function of a *reduction* of a prisoner's sentence; it's an alternative manner and location of *serving* the existing sentence.  That is, a prisoner's claim that she should receive more time in a halfway house or home confinement is a challenge to the execution of her sentence.  *Rizzolo v. Puentes*, No. 19-CV-00290-SKOHC, 2019 WL 1229772, *2 (E.D. Cal. Mar. 15, 2019) (unpublished). *Accord Kraft v. Cruz*, No. 09-CV-1526-M, 2010 WL 882993, *2 (N.D. Tex. Mar. 9, 2010) (unpublished) (collecting cases).

As such, a home confinement claim isn't a compassionate release claim.  A home confinement claim isn't cognizable under 18 U.S.C. § 3582(c)(1)(A), which

6

applies to the modification of criminal sentences, with jurisdiction in the court that imposed the sentence. *Braswell v. Gallegos*, 82 F. App'x 633, 635 (10th Cir. 2003) (unpublished). *See also Moresco v. United States*, 982 F.2d 529, 1992 WL 372399, *2 (10th Cir. 1992) (Table) (unpublished) (18 U.S.C. § 3621(b) "authorizes the Bureau of Prisons 'to designate the place of a prisoner's imprisonment.' The term 'imprisonment' refers to any type of custody, including custody in a correctional facility or home confinement program."). Rather, the custody status of a prisoner is a civil matter subject to review under 28 U.S.C. § 2241, with jurisdiction in the district of incarceration. *Braswell*, 82 F. App'x at 635 (quoting *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)). Thus, while home confinement must be raised via § 2241, compassionate release falls under § 3582. *See Boals v. Quintana*, No. CV 5:15-335-JMH, 2015 WL 8665404, *3 (E.D. Ky. Dec. 11, 2015) (unpublished). The home confinement claim is not justiciable in this criminal proceeding.

*Third*, even if Carr had properly exhausted her home confinement claim, it's not ripe. The statute specifically limits the availability of home confinement to "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Carr's sentence is 57 months, meaning that her maximum eligibility for home confinement would be in the last five months and three weeks of

7

her sentence – at the end of August 2021.  *See* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Oct. 9, 2019) (noting Carr's projected release date is February 23, 2022).  The home confinement claim should be dismissed.

## II. CARR'S REQUEST FOR COMPASSIONATE RELEASE UNDER § 603(B) OF THE FIRST STEP ACT HAS BEEN ABANDONED, IS UNEXHAUSTED, AND IS MERITLESS.

If the Court were to construe Carr's claim as a true claim for compassionate release under § 603(b) of the First Step Act, she has now abandoned it before the Court by seeking only home confinement for relief.  *See Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 17-3569, 2018 WL 2539418, *3 (6th Cir. May 23, 2018) (unpublished); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202 n.4 (10th Cir. 2003) ("even issues designated for review are lost if they are not actually argued in the party's brief"). Even liberally construing her motion, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Shelby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotations, citations, and brackets omitted).

If a compassionate release claim hasn't been abandoned, it fails because Carr

8

did not properly exhaust her administrative remedies with respect to it. For requests based on death or incapacity of a family member caregiver, the BOP requires the inmate, among other things, to submit to the warden "verifiable medical documentation of the incapacitation," as well as "[v]erifiable documentation that the inmate is the parent of the child"; "[v]erifiable documentation providing the name and age of the child"; and "[a]uthorization from the inmate for the BOP to obtain information or documents from any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child." Program Statement 5050.50 § 5(a), at 7-8. [1]

The record contains no indication that Carr provided any of these materials to the warden. Accordingly, she hasn't properly exhausted her administrative remedies.

------

[1] A program statement is an internal agency guideline, which is not the same as "published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment." *Reno v. Koray*, 515 U.S. 50, 61 (1995) (internal citations omitted). Although not entitled to sweeping deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), a program statement warrants "some deference" "given the 'specialized experience and broader investigations and information' available to the agency." *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944)). *See also Martinez v. Flowers*, 164 F.3d 1257, 1261 (10th Cir. 1998) ("[W]e consider whether the program statement is a well reasoned interpretation of the statute which has the "'power to persuade.'") (quoting *Skidmore*, 323 U.S. at 140).

9

Moreover, without such materials, this Court would be unable to properly consider her request for compassionate release. *See United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, *2 (M.D. Fla. June 7, 2019)(unpublished), *appeal filed*, No. 19-13405 (11th Cir. Sept. 3, 2019); *United States v. Gutierrez*, No. CR 05-0217-RB, 2019 WL 1472320, *2 (D. N.M. Apr. 3, 2019) (unpublished). Carr is ineligible for compassionate release until such time as she properly exhausts her administrative remedies.

Even if the Court were to reach the merits, Carr's compassionate release claim would fall short. Under prior law, only the Director of the BOP could file a motion for compassionate release. Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A), so that now a court also may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf...." Congress's intent with § 603(b) was "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

But aside from allowing prisoners to bring motions directly, the First Step Act did not change the substance for compassionate release. The decision to grant or

10

deny remains discretionary. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). A proposed sentence reduction must be: (1) warranted by "extraordinary and compelling reasons"; and (2) consistent with "the factors set forth in section 3553(a)." Section 3582(c)(1)(A) and (A)(i).

The implementing regulation provides, in turn, that compassionate release may be applied "in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." 28 C.F.R. § 571.60. Although neither the statute nor the regulation provide further guidance, Congress has directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

The Application Notes to U.S.S.G. § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)," define "extraordinary and compelling reasons." Note 1(A) concerns the medical condition

11

of the defendant, not relevant here.  Note 1(B) concerns defendants who are 65 years

or older, also not relevant here.  To the extent Carr's motion actually seeks

compassionate release, it is governed by Note 1(C):

> (C) Family Circumstances.
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. [2]

The crux of Carr's claim is that the BOP has incorrectly applied Note 1(C)(i) to

her because the Merriam-Webster Dictionary defines "incapacitation" as "the lack of

sufficient ability, power or means."  Doc. 508 at 3.  Thus, she argues, her adult

daughter has become "incapacitated" in her ability to care for the minor children.

But in response to the passage of the First Step Act, the BOP adopted detailed

guidance concerning compassionate release.  Program Statement 5050.50,

---

[2] Note 1(D) is a general catch-all provision for situations where there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  But this provision can only apply if the Director of the BOP makes such a determination, which did not occur in this case. *See*, *e.g.*, *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, *3 (S.D. Ala. Aug. 13, 2019) (unpublished), *appeal filed*, No. 19-13239 (11th Cir. Aug 21, 2019).

12

*Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.*

*§§ 3582 and 4205(g)* (Jan. 17, 2019). [3] The Program Statement defines "incapacitation"

as "the family member caregiver suffered a severe injury (e.g., auto accident) or suffers

from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for

the child." *Id.* § 5, at 7.

Given the deference due to the BOP's responsibility and expertise, *see Moore ex*

*rel. Moore v. Reese*, 637 F.3d 1220, 35 n.26 (11th Cir. 2011), the Program Statement is

clearly a reasonable exercise of the BOP's authority. The BOP is responsible for

administering the sentences of federal offenders, and specifically for evaluating claims

of compassionate release. Its definition limiting "incapacitation" to severe injury or

severe illness is well within the realm of reasonable interpretations of the Application

Note.

For example, in *Watson v. Solis*, No. 09-CV-131, 2010 WL 3781710, *6-*8 (E.D.

Tenn. Sept. 21, 2010), *aff'd*, 693 F.3d 620 (6th Cir. 2012), the Department of Labor

interpreted "incapable of self-support" as used in Part E of the Energy Employees

---

[3] The Program Statement is available online at the Bureau of Prisons web site,
www.bop.gov/policy/progstat/5050_050_EN.pdf. It is also attached to Carr's
motion, Doc. 508 as Exh. A-3.

13

Occupational Illness Compensation Program Act of 2000, to mean "physically or mentally incapable of self-support." 2010 WL 3781710 at \*6-\*8. Relying on the Merriam-Webster Online Dictionary, the claimant contended that "incapable" would include considerations such as her age, lack of education, and domestic situation. *Id.* at \*2, \*5-\*6. The court concluded that "[t]here are too many conflicting definitions for the Court to definitively conclude that 'incapable' has an inherent mental or physical component," but "[u]nder *Skidmore,* all the Court must do is determine whether the DOL has provided a well-reasoned, persuasive justification for its interpretation," and "it is reasonable to construe the word as having such meaning." *Id.* at \*6-\*8.

Beyond this, compassionate release is appropriate "in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." 28 C.F.R. § 571.60. *Accord* Program Statement § 5050.50 § 1, at 1. Carr does not explain how her circumstances "could not reasonably have been foreseen by the court at the time of sentencing." She argued that "[t]his sentence will remove Ms. Carr from her young children for a significant portion of their lives; this separation will be horribly difficult for their family but is a just punishment for her actions." Doc. 247 at 3-4.

14

Although acknowledging that at the time her adult daughter would be caring for the children, this Court's response was –

> a very simple one: Ms. Carr should have paused to consider the effect on her two young children of her possible incarceration before she embarked on her course of criminal conduct and not just afterwards. … [T]his was not just a one-time crime like a single bank robbery, but instead it's a sustained series of criminal actions and fraudulent conduct undertaken 181 times and repeatedly over the course of 26 months, that if Ms. Carr's maternal instincts had truly triggered authentic concern for the future welfare of her children, Ms. Carr had ample and multiple opportunities during her protracted crime spree to bring her crimes to a swift end; but she did not.

Tr., Sentencing Hearing (Jan. 4, 2018), Doc. 321 at 52-53. That the daycare situation might subsequently change was reasonably foreseeable, and provides no basis for compassionate release. *Compare United States v. Casey*, No. 06-CR-00071, 2019 WL 1987311, *1-*2 (W.D. Va. May 6, 2019) (unpublished) (Prisoner suffering from multiple sclerosis, neuropathy, and diverticulitis alleged a need for medical care: "she cannot function properly, has limited mobility, and must use a walker. She alleges that the prison elevators do not operate, and she cannot climb stairs. She also alleges that her condition is worsening and will further deteriorate without additional medical care. … Although I regret that she suffers from a number of medical conditions, I find that she has not alleged facts showing that they are sufficiently serious to warrant a reduction.").

15

What remains, then, is the application of the 18 U.S.C. § 3553(a) factors. 18
U.S.C. § 3582(c)(1)(A)(i). Carr refers to her rehabilitation efforts while in prison.
Doc. 508 at 7, 10-11. But "rehabilitation of the defendant is not, by itself, an
extraordinary and compelling reason for purposes of this policy statement." U.S.S.G.
§ 1B1.13, Application Note 3. Otherwise, she reasserts arguments she made at
sentencing regarding her limited criminal history, employment history, and lack of
substance abuse, while attempting to minimize her culpability in the offense of
conviction. Doc. 508 at 4, 6-8. So there's nothing new there.

She further contends that "individuals convicted of non-predatory offenses
presenting a low-risk of recidivism, like Heather, should be sentenced to alternatives
to incarceration." Doc. 508 at 9 (citing 28 U.S.C. § 994(j)). But again, as this Court
has observed:

> I have previously categorically rejected this line of reasoning, especially
> in cases of so-called white-collar financial crimes prosecutions like the
> one before me today. Taken to its extreme, the argument would
> countenance very light sentences to sentences like Bernie Madoff, who
> engaged in egregious and protracted fraud and caused vast human and
> financial damages merely because they were first-time offenders.
>
> … [W]e as federal judges must not apply one set of sentencing
> factors to white-collar fraud defendants and a different set to the so-
> called drug and gun class of defendants.

Tr., Sentencing Hearing (Jan. 4, 2018), Doc. 321 at 49-51 (discussing with approval

16

*United States v. Musgrave*, 761 F.3d 602 (6th Cir. 2014) and *United States v. Stefonek*, 179

F.3d 1030 (7th Cir. 1999)).  Accord *United States v. Sample*, 901 F.3d 1196, 1200 (10th

Cir. 2018) ("In imposing minimal sentences on white-collar criminals, courts raise

concerns of sentencing disparities according to socio-economic status.") (internal

quotation and citation omitted), *cert. denied*, 139 S. Ct. 1545 (2019).

What Carr doesn't address are the two lynchpins of the Court's sentencing

decision.  First, she "received all the benefits of the plea agreement and at the last

possible moment she reneged on her obligation to testify truthfully at Mr. Thomas'

jury trial.  And that by doing so, she inflicted the maximum amount of potential harm

to the Government's case against Mr. Thomas."  Tr., Sentencing Hearing (Jan. 4,

2018), Doc. 321 at 47-48.  Second, with respect to the victims, the Court had –

> read about the previous damages done to these individuals' credit history
> and how some of their files have been red flagged and worse, and that
> such -- and the odds that they will be facing when they are released to
> obtain credit or loans or educational or housing – for educational or
> housing purposes or for trying to get a job, and that all those
> opportunities have now been significantly diminished.

> For a societal group which already faces severe impediments to
> transitioning to law-abiding lives with gainful employment, this added
> personal damage done to them is, in my view, especially cruel.

17

*Id.* at 53-54. [4]

In exercising discretion under § 3553(a) and the First Step Act, most courts regard compassionate release as "a rare event." *White v. United States*, 378 F.Supp.3d 784, 787 (W.D. Mo. 2019). Prisoners typically only obtain relief after serving a significant term of incarceration. *See, e.g.*, *United States v. McGraw*, No. 02-CR-00018-LJM-CMM, 2019 WL 2059488, *5 (S.D. Ind. May 9, 2019) (unpublished) (granting the motion and noting defendant already served "nearly 17 years, a significant sanction"). Here, Carr has served 20 months – a little more than one-third of her 57-month sentence. Both the shortness of her total term, and the fraction of it served to date, weigh against early release. "[T]he length of the sentence should reflect the harm done and the gravity of the defendant's conduct." *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017) (internal quotations and citation omitted). Releasing Carr at this point would minimize both the impact on her victims and the extent of her fraud. *See, e.g.*, *Rodriguez-Aguirre v. Hudgins*, 739 F. App'x 489 (10th Cir. 2018)

---

[4] Carr's assertion that releasing her now will lead to restitution for her victims, Doc. 508 at 6, is at best a red herring. Based upon her own submissions, she would have to either be a full-time caregiver, or devote the lion's share of her income to a personal care assistant for her son. Doc. 508 at 3-4, 43, 47-48.

18

(affirming the denial of compassionate release motion based on the "seriousness of defendant's offense").

Even if Carr hasn't abandoned her compassionate release claim, and has properly exhausted her administrative remedies with respect to that claim, the BOP reasonably interpreted and applied the Sentencing Guideline Application Note. If the Court reaches the merits, it should deny the motion.

19

# CONCLUSION

The motion should be dismissed without prejudice, or in the alternative denied on the merits.

Dated this 10th day of October, 2019.

Respectfully submitted,

JASON R. DUNN
United States Attorney

*s/ Paul Farley*
PAUL FARLEY
MARTHA A. PALUCH
BRYAN D. FIELDS
Assistant U.S. Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
FAX: (303) 454-0402
Email: paul.farley@usdoj.gov
Martha.paluch@usdoj.gov
Bryan.fields3@usdoj.gov
Attorneys for the government

20

## CERTIFICATE OF SERVICE

I certify that on this 10th day of October, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.  I also placed a

copy of the foregoing in the United States Mail addressed to:

Heather Carr
#89751-083
96 Federal Prisoner Satellite Camp
37930 North 45th Avenue
Phoenix, AZ 85086

s/ Erin Prall
Erin Prall
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402

21

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing

      (1) all required privacy redactions have been made;

      (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

      (3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Agent, Version 5.6.1.308, dated 10/10/19, and according to the program are free of viruses.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

                /s/ Erin Prall
                Erin Prall
                U.S. Attorney's Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  HEATHER CARR,

     Defendant.

---

## REPLY TO RESPONSE TO MOTION FOR COMPASSIONATE RELEASE

---

TO THE HONORABLE WILLIAM J. MARTINEZ, UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF COLORADO:

     In its Response to Defendant's Motion for Compassionate Release ("Response"), the government disputes Ms. Carr's eligibility for compassionate release relief under the First Step Act and maintains, in the alternative, that if the Court finds Ms. Carr is eligible, it should exercise its discretion to deny Ms. Carr the relief sought. Ms. Carr, however, has completed the administrative requirements necessary to seek relief from this Court, and her Motion is ripe for consideration. For the reasons stated in this Reply and Ms. Carr's Motion for Compassionate Release ("Motion"), the Court should grant Ms. Carr a hearing and find that her circumstances present "extraordinary and compelling reasons" that, when considered in light of the 18 U.S.C. § 3553(a) sentencing factors, support a modification of her sentence.

### I.    Legal Background

     On September 12, 2019, the U.S. District Clerk received and filed Ms. Carr's Motion titled "Defendant's Motion Requesting Relief Under Compassionate Release

Pursuant to 18 U.S.C. § 3582(c)(1)(A)." Ms. Carr researched, drafted, and filed her Motion without the benefit of legal counsel.[1] Ms. Carr has no legal training herself. Despite these limitations and an admittedly complicated bureaucratic process, Ms. Carr's Motion is complete, if overly inclusive – "everything but the kitchen sink" – in the style typical of such filings. It its Response, the government addressed each of the issues raised by Ms. Carr. As discussed in this Reply, however, the issues before the Court are relatively narrow: Did Ms. Carr sufficiently exhaust her administrative rights such that the Court can now hear her Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)? And, if so, do her circumstances present "extraordinary and compelling reasons" that, when considered in light of the 18 U.S.C. § 3553(a) sentencing factors, compel a modification of her sentence?

## II.      Factual Background

On January 4, 2018, Ms. Carr appeared before this Court on bond for sentencing. In fashioning sentence, the Court noted that Ms. Carr's oldest daughter, Ms. Ayanna Brown, would take custody of Ms. Carr's three minor children while Ms. Carr was incarcerated. *See* Doc. No. 321, Sentencing Transcript, p. 30 at lines 13-17 and p. 41 at lines 9-13. In her allocution, Ms. Carr recognized the burden she was placing on her oldest daughter by asking that she care for her autistic half-brother while his parents are incarcerated: "[S]he has to be [in] a position of a mom because of my greed, because of my friend's greed. It's horrible. Like I'm a horrible person. And that's – that's

---

[1] Undersigned counsel was appointed to represent Ms. Carr with respect to this Reply and any subsequent hearings before the Court.

not that what – this is just like completely spiraled out of control. It's just a horrible situation. And I am sorry." *Id*. at 45, lines 20-25.

After considering the 18 U.S.C. § 3553(a) sentencing factors, including Ms. Carr's plea that her children would be strongly and adversely affected if a lengthy term of incarceration were imposed (*id*. at 52, lines 5-19), the Court denied her motion for a variance and sentenced Ms. Carr to 57 months imprisonment to be followed by a three-year term of supervised release. In considering its sentence, the Court noted: "I am not unsympathetic that during – that two young children in this case will be without their mother for a period of years. At least in this case, they will apparently be well taken care of by Ms. Carr's adult daughter and son-in-law." *Id*. at 53, lines 5-9.

### III.    The First Step Act

On December 21, 2018, President Donald Trump signed the First Step Act ("FSA") into law. Pub. L. 115 Pub. L. 391, 132 Stat. 5194. Among its many provisions, § 603(b) of the FSA amended the existing procedure whereby a federal prisoner could seek "compassionate release." 18 U.S.C. § 3582(c)(1)(A). Whereas before the Bureau of Prisons' ("BOP") decision on an inmate's request was not cognizable by a district court, the FSA allows a district court to consider modification of an inmate's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id. See also United States v. Walker*, 11-CR-00270, Doc. No. 75 at p. 1 (N.D. Ohio, October 17, 2019) (Order of J. Nugent), *citing* Program Statement 1330.18 and 28 C.F.R. 542(B). As applicable here, this provision

empowers the district court to "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). The statute does not provide further guidance as to what constitutes an "extraordinary and compelling reason," but the existing Sentencing Guidelines, devised to guide the courts upon the BOP's filing of a motion of a defendant's behalf, do.

The text of 18 U.S.C. § 3582(c)(1)(A) tracks that of a Policy Statement found at § 1B1.13 of the Sentencing Guidelines. In its Response, the government incorrectly asserts that Ms. Carr's Motion is necessarily governed by Note 1(C), applicable to "Family Circumstances" (See U.S.S.G. § 1B1.13, comment. (n. 1(C).) While this may have been true of her administrative review, Ms. Carr had little choice but to argue as much in her Request because the BOP's available administrative remedies *are not as broad* as § 1B1.13 of the Sentencing Guidelines, which includes in Note 1(D), "Other Reasons":

> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id*. at n. 1(D). *See also* Program Statement 50.50 §§ 2-6, Motion at Exhibit A-3, pgs. 25-34. Prior to the FSA, which is when the most recent Sentencing Guidelines Manual was adopted (effective November 1, 2018), it was up to the Director of the BOP to determine and present such reasons. Now that the Court can hear the motion of defendants

directly, however, it is clear that Congress intended for that determination to rest with the district court.

## IV.    Argument

### 1.    Ms. Carr has exhausted the administrative remedies available to her through the Bureau of Prisons.

The Bureau of Prisons has established a four-tiered administrative process for requests such as Ms. Carr's. *See* 28 C.F.R. §§ 542.10-542.16. First, an inmate must "present an issue of concern informally to staff." *Id*. at § 542.13(a). Ms. Carr did this on January 22, 2019, and it was denied on January 29, 2019. *See* form BP-9, Motion at Exhibit A-2. p. 19.

Second, the inmate must submit her complaint, using Form BP-9, to the warden of her facility within 20 days. 28 C.F.R. § 542.14(a). Ms. Carr submitted her Request for Administrative Remedy ("Request") to her warden on February 7, 2019. *See* Motion at Exhibit A-2, p. 18. The Request was denied in writing by Warden William W. Lothrop the following day. *Id*. at 17.

Third, within 20 days of the warden's response, the inmate must appeal to the Regional Director of the BOP using Form BP-10. 28 C.F.R. § 542.15(a). Ms. Carr submitted her appeal to the BOP's Regional Director on February 15, 2019. Motion at Exhibit A-2, p.20. On March 14, 2019, this appeal was denied. *Id*. at 19.

Finally, within 30 days of the Regional Director's response, an inmate may file a final administrative appeal to the General Counsel of the BOP using form BP-11. 28 C.F.R. § 542.15(a). Ms. Carr signed and submitter her "Central Office Administrative Remedy Appeal" on April 3, 2019. Motion at Exhibit A-2, p. 22. This final administrative appeal was denied on June 5, 2019. *Id*. at 21.

Having been denied relief at each and every level of the BOP review process, Ms. Carr filed her Motion on September 12, 2019.

In its Response, the government cites Ms. Carr's failure to provide certain evidence throughout the BOP administrative review process as a basis for procedurally denying her Motion, effectively revoking the Court's broader authority under the FSA. Response at 8-14. By closing the courthouse door, the government's reading would effectively erase compassionate release for "extraordinary and compelling reasons" from the FSA unless the Bureau of Prisons specifically approved of the reason in its regulations. Yet this was the way things were *prior to* the First Step Act. What's more, the government's reading of U.S.S.G. § 1B1.13 Note 1(D), "Other Reasons," dismissed in a footnote (Response at 12, n. 2), robs the Court of its discretionary power to interpret what "extraordinary and compelling reasons" are in light of the FSA. This cannot be what Congress intended.

Even if the Court believes Ms. Carr's Request was properly rejected by the BOP under its regulations, the Court alone has the authority to interpret the FSA and determine whether Ms. Carr's circumstances satisfy the "extraordinary and compelling reasons" standard. Where regulations are in conflict with congressional intent, the Court is bound by the statute. *See, e.g., Wedelstedy v. Wiley*, 477 F.3d 1160 (10th Cir. 2007) ("[A]n agency's authority to promulgate categorical rules is limited by clear congressional intent to the contrary").

Because Ms. Carr exhausted her administrative remedies within the Bureau of Prisons, the Court must consider the facts supporting her Motion for Compassionate Release on the merits. Should the Court agree and grant Ms. Carr a hearing on her

Motion, the defendant asks that the Court set the hearing at such a time as to allow Ms. Carr and her adult daughter, Ms. Brown, to provide testimony in support of the Motion.

### 2. Ms. Carr's circumstances present "extraordinary and compelling reasons" unknown at the time of sentencing that justify a modification of her sentence.

At the time of sentencing, Ms. Carr expressed remorse about the burden she was imposing on her adult daughter. Her regret was not based upon a belief that her daughter and her then husband were not up for the task, but upon her own guilt in putting her family in that situation. At that time, the younger children's father, co-defendant Trammel Thomas, was on bond pending sentencing in his case. Mr. Thomas had been successfully on pre-trial release for just under *22 months* – April 6, 2016 to January 4, 2018. Like her own case, Ms. Carr believed that Mr. Thomas would remain on bond until sentencing or his self-report date, allowing time for him to transition the children to Ms. Brown while Ms. Carr began serving her sentence. Ms. Carr reported to FCI Phoenix Satellite Camp on February 8, 2018 to begin serving her sentence. The plan was working.

On March 11, 2018, Mr. Thomas dropped the children off with Ms. Brown, and then proceeded to ignore Ms. Brown's attempts to contact him. Mr. Thomas was arrested and detained for violating the terms of his pre-sentencing release soon thereafter, and on May 31, 2018 he was ordered detained pending sentencing. Doc. No. 431.[2] Ms. Brown, thrust into the role of primary caregiver much sooner than anticipated, tread water as long as she could, but the sudden impact of minor children in the home,

---

[2] On June 5, 2019, Mr. Thomas was sentenced to 120 months imprisonment and remanded to custody. (Doc. No. 480.)

including one with special needs, caused a rift with her husband and he kicked them out of the house. *See* Letter of Ayanna Brown, Motion at Exhibit A-7, p. 47. On April 13, 2018, the Arizona Department of Child Safety intervened. *See* Progress Report to the Juvenile Court, Motion at Exhibit A-4, p. 37. Although the children were eventually allowed to remain temporarily with Ms. Brown, they became wards of the court. Ms. Brown is now seeking a divorce and living with the children in a small apartment. *See* Letter of Ayanna Brown, Motion at Exhibit A-7, p. 47.

As wards of the court, the children's situation remains fluid. Practically speaking, Ms. Brown will be unable to meet the children's needs once the day-care subsidy she receives concludes at the end of the calendar year. If Ms. Brown cannot make ends meet, the children will be taken from her, separated, and placed into foster care. *Id*. at 48. Once removed to foster care, the children's connection to their family will be severed and it is conceivable, if not likely, that the foster parents will seek to terminate Ms. Carr's parental rights. In Arizona, one factor a court must consider in determining whether or not to terminate parental rights is whether that parent is serving a sentence "of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). It is inarguable that Ms. Carr's children already lacked a "normal home" since April 2018.

Contrary to the government's characterization of her circumstances as a change in "daycare situation" (Response at 15), Ms. Carr sees this as the potential, if not inevitable, loss of her children. For a parent, nothing could be more "extraordinary and compelling." Ms. Carr acknowledges that her claim for relief would be stronger if her children had already been placed into foster care and parental termination proceedings

initiated, but the fact that her situation could be even worse does not diminish the compelling circumstances in which Ms. Carr currently finds herself.

None of this was reasonably foreseeable at sentencing. 28 C.F.R. § 571.60. Though perhaps taboo to say, the clearest indication of this is Ms. Carr's decision prior to sentencing to not testify in Mr. Thomas' trial. Had the loss of her children been reasonable foreseeable then, it is hard to believe that Ms. Carr's actions – and potential sentence – would not have been different.

Also at the time of sentencing, the depth of Ms. Carr's son's special needs was not entirely clear. While Ms. Carr noted at the time that her 3-year-old son was autistic, had never said a word, and attended speech therapy three times per week (Sentencing Transcript, p. 45, lines 17-19), the issues that his care would later present were incomprehensible to a family without special needs experience, much less a then 22-year old soon-to-be guardian, Ms. Brown.

### 3.    Analysis of the 18 U.S.C. § 3553(a) Sentencing Factors.

Having already sentenced her once, the Court is familiar with the application of the 18 U.S.C. § 3553(a) sentencing factors in Ms. Carr's case. While the factors related to Ms. Carr's criminal conduct have not changed, there are several major differences for the Court to consider anew.

First, Ms. Carr has served a significant prison term already. As of the date of this filing, Ms. Carr has completed just over 21.5 months of her 57 month sentence. If she continues to receive full credit for good time, Ms. Carr will expect to serve 4 years and 17 days upon a sentence of 57 months, making for a potential estimated overall release

date of February 23, 2022.[3] Effectively, Ms. Carr has already served 44% of her overall

sentence, and well over half of her period of incarceration if release to a halfway house

and home confinement are also considered. Without modification of her sentence, Ms.

Carr will become eligible for home confinement during the final 5.7 months of her

sentence.[4] By both parties calculations, this means that, as is, Ms. Carr will likely be

released to home confinement as early as August 2021. Response at 8. Prior to home

confinement, however, Ms. Carr will likely be eligible for reintroduction to the community

in a halfway house in the first half of 2021. What Ms. Carr is asking then is not that the

Court dramatically reduce her sentence, but simply to accelerate and extend her period

of home confinement to include time that which would otherwise be spent in a halfway

house or prison camp.

Second, Ms. Carr has put her time in prison to good use. She has availed herself

of all of the programming available to her (*see* Motion at Exhibit A-8, p.49) , including

the FPC Phoenix Parenting course (*id*. at 50), the FPC Phoenix Community Service

Project (*id*. at 51), the Foundation Program (*id*. at 52), and the Dress for Success

program (*id*. at 53). In short, there isn't much left that Ms. Carr can do to further her

rehabilitation or "to protect the public from further crimes of the defendant." 18 U.S.C. §

3553(a)(2)(C) and (D).

Finally, as discussed above, the policy statements the Court must consider now

include § 1B1.13 of the Sentencing Guidelines. Even if Ms. Carr's Motion does not fit

---

[3] As identified on the BOP's online database, available here:
https://www.bop.gov/inmateloc/ (accessed November 23, 2019 at 10:54 A.M.).
[4] As the lesser of 6 months of 10% of her sentence imposed. *See* 18 U.S.C. §
3624(c)(2).

neatly into one of the BOP's pre-approved basis for compassionate release, the Court

must make its own determination about what constitutes "extraordinary and compelling

reasons."

**V.    Motion for Compassionate Release**

For the reasons stated herein and in her Motion, Ms. Carr believes her

circumstances present "extraordinary and compelling reasons" justifying the use of the

Court's discretionary power to modify her sentence under § 603(b) of the First Step Act.

*See* 18 U.S.C. § 3582(c)(1)(A). Significantly, Ms. Carr is not asking that the Court

diminish her sentence temporally, but to modify her sentence to allow for a term of

home confinement in which she can be present for, and provide care to, her minor

children.

Though most district courts across the country have yet to hear motions like Ms.

Carr's, district courts have granted numerous defendants compassionate relief under

the FSA for "extraordinary and compelling reasons." *See*, *e.g., United States v. Walker*,

*supra* (N.D. Ohio, October 17, 2019) (Citing Note 1(D)'s "other reasons" and granting

defendant compassionate release to care for mother's failing health); *United States v.

Jones*, 16-CR-00166, Doc. No. 97 (S.D. Ohio, August 23, 2019) (Order of J. Watson)

(Finding "extraordinary and compelling reasons" due to BOP's failure to adequately treat

defendant's breast cancer and reducing her sentence to time served while imposing a

term of supervised release for the time remaining on defendant's original sentence with

a condition of home detention for 180 days).

The government is correct that, on its face, "extraordinary and compelling

reasons" are a rarity. But the case it cites for this proposition, *White v. United States*, 378 F.Supp.3d 784 (W.D. Mo., May 9, 2019), itself cites two pre-FSA cases in which compassionate release was granted *upon motion of the Director of the Bureau of Prisons* (emphasis added). Why else then would Congress expand the ability of defendants to seek compassionate release if not to make such cases less rare? In fact, as of November 19, 2019, 109 federal inmates have been granted compassionate release under the First Step Act. (*See* Testimony of Dr. Kathleen Hawk Sawyer, Director, Federal Bureau of Prisons, November 19, 2019, at p. 7.)[5] It is unclear from the testimony what percentage of these inmates were granted compassionate release pursuant to § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons" and what percentage were granted under § 3582(c)(1)(A)(ii) for eligible inmates over the age of 70.

\* \* \*

For the reasons stated herein and in her Motion for Compassionate Release, Ms. Carr asks that the Court find that she has exhausted her administrative rights and grant her an evidentiary hearing on her Motion..

Dated this 25th day of November, 2019.

                                    _/s/   Jason D. Schall_
                                    Jason D. Schall
                                    Schall Law LLC
                                    7350 E Progress Pl Ste 100
                                    Greenwood Village, CO 80111
                                    Telephone: (720) 505-3861
                                    E-mail: jason@schalljd.com
                                    Attorney for Defendant Heather Carr

---

[5] Dr. Hawk Sawyer's written testimony is available here:
https://www.judiciary.senate.gov/imo/media/doc/Hawk%20Sawyer%20Testimony.pdf
(accessed November 20, 2019 at 8:40 A.M.).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

I hereby certify that on November 25, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

> AUSA Paul Farley
> AUSA Martha Paluch
> AUSA Bryan Fields
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Paul.Farley@usdoj.gov
> Martha.Paluch@usdoj.gov
> Bryan.Fields3@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following

participant in the manner indicated below:

> Ms. Heather Carr (USM# 89751-083)
> 96 Federal Prisoner Satellite Camp
> 37930 North 45th Avenue
> Phoenix, AZ 85086

> _____ */s/   Jason D. Schall* _____
> Jason D. Schall
> Schall Law LLC
> 7350 E Progress Pl Ste 100
> Greenwood Village, CO 80111
> Telephone: (720) 505-3861
> E-mail: jason@schalljd.com
> Attorney for Defendant Heather Carr

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. HEATHER CARR,

     Defendant.

---

## SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)

---

TO THE HONORABLE WILLIAM J. MARTINEZ, UNITED STATES DISTRICT JUDGE FOR THE DISTRICT OF COLORADO:

     Defendant Heather Carr, through counsel, respectfully submits this Supplemental Authority in Support of Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1) ("Supplement") and would show the following:

### BACKGROUND

     On September 12, 2019, the Court received and filed Ms. Carr's Motion for Compassionate Release ("Motion") (Dkt. 508.) The Motion is now briefed by both parties. (Government's Response at Dkt. 513; Defendant's Reply at Dky. 520.) Ms. Carr asks the Court to apply § 603(b) of the First Step Act and modify her remaining sentence from incarceration to home confinement to allow her to care for her minor children.

### EVOLVING CIRCUMSTANCES

     As the Court is all too aware, the global COVID-19 pandemic and the extraordinary community-wide efforts to slow the spread of the virus have forced institutions, industries, and indeed entire states and nations to shut down.

As they did at the time of her Reply, Ms. Carr's two minor children are cared for by their adult sister, Ms. Ayanna Brown. (*See* Exhibit A, Letter from Ms. Ayanna Brown, dated March 18, 2020.) Ms. Brown works as "medical staff" for a Veteran's Administration hospital in the Phoenix area, and her younger siblings attend day care while she is at work. While day cares, especially those servicing the families of medical providers, are striving to keep their doors open, closures appear increasingly inevitable. Even if her day care remains open, the supplement that Ms. Brown has received to assist with care for her special-needs brother is set to expire on Tuesday, March 31, 2020 because Ms. Brown's income exceeds program limits. (*See also* Exhibit B, letter from the Arizona Department of Child Safety.) To make matters worse, Ms. Brown has been told that her job may require "mandatory deployments to areas of need" (Ex. A at 1) as a result of the pandemic. If Ms. Brown's day care closes or her job demands additional sacrifices, Ms. Brown will be forced to choose between her family and their livelihood. Ms. Carr, meanwhile, lives with knowing that she put her family in this position, a punishment in some ways greater than that any Court could impose.

Given the immediate barriers to rapidly holding an evidentiary hearing and receiving testimony from the defendant and her daughter, Ms. Carr submits three exhibits to the Court, including her own personal plea for consideration. (*See* Exhibit C, Letter from Ms. Heather Carr, dated March 19, 2020.)  Ms. Carr asks for the Court's mercy knowing that she has not paid her debt to society, but hoping that the brunt of her remaining punishment does not have to be borne by her children.

## CONCLUSION

In light of the circumstances and evidence presented, Ms. Carr respectfully asks the Court to acknowledge the "extraordinary and compelling" reasons justifying her Motion for

Compassionate Release and grant her request to modify the remainder of her sentence to a term of home confinement. 18 U.S.C. § 3582(c)(A)(i). Contemporaneously with the filing of this Supplement, undersigned counsel will also submit a Motion to Expedite Ruling in this matter.

      Dated this 20th day of March, 2020.

                               */s/  Jason D. Schall*
                              Jason D. Schall
                              Schall Law LLC
                              7350 E Progress Pl Ste 100
                              Greenwood Village, CO 80111
                              Telephone: (720) 505-3861
                              E-mail: jason@schalljd.com
                              Attorney for Defendant Heather Carr

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

I hereby certify that on March 20, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following:

> AUSA Paul Farley
> AUSA Martha Paluch
> AUSA Bryan Fields
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Paul.Farley@usdoj.gov
> Martha.Paluch@usdoj.gov
> Bryan.Fields3@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following

participant in the manner indicated below:

> Ms. Heather Carr (USM# 89751-083)
> 96 Federal Prisoner Satellite Camp
> 37930 North 45th Avenue
> Phoenix, AZ 85086

> _____ */s/  Jason D. Schall* _____
> Jason D. Schall
> Schall Law LLC
> 7350 E Progress Pl Ste 100
> Greenwood Village, CO 80111
> Telephone: (720) 505-3861
> E-mail: jason@schalljd.com
> Attorney for Defendant Heather Carr

4

DEFENDANT'S EXHIBIT

A

3/18/2020

Dear Judge Martinez,

My name is Ayanna, the eldest daughter of Heather Carr.

Since my mother's incarceration there has been very drastic changes to my life. I have taken custody of my younger siblings Milani and Tru Thomas. Milani is 9 years old now and Tru is 5. Having to take on the sudden responsibility of two kids that are not your own is not the easiest thing, but it becomes more of a complicated dynamic from having to switch from a sister role to a mother role.

Me and my ex-husband originally took in the kids, and only after a few months of getting custody of them, he wanted me to put them in foster care because he couldn't handle the stress of it. Things eventually got abusive and out of hand, and I had to get a restraining order on him and hurry and move my siblings and I out of that house and into our own apartment. Since then we have divorced. Now it is just me providing for and taking care of the kids.

My involvement with the state of Arizona hasn't been the greatest when it comes to getting help with the kids. I've had to find a lot of things out on my own and it felt like pulling teeth to get service for my younger brother Tru who has autism. It has been very hard to find him a daycare that has been able to care for him. He was always getting kicked out of daycares because they couldn't handle him. I was luckily able to find a temporary situation at a substandard daycare covered through 3/31/20. That daycare was already an unstable situation but now that the daycare subsidy expiration date is approaching, I am not able to afford daycare and I got denied renewing his daycare coverage because I make more than 25K a year. I have been continually emailing and calling my former case manager through DCS to let her know I can't care for the kids any longer as well as calling other numbers at social services and no one will return any of my calls. I called the hotline and they said if there is not severe abuse or neglect at the home, they cannot come pick up the kids and that someone will call me back. But they never do. Not only can I not afford the daycare anymore but now with the current state of our world due to the Coronavirus - there isn't even schools, afterschool programs or places for the kids to go even if I could afford it!

Now with this Coronavirus pandemic increasing daily - I am at my breaking point. There is no help anywhere and all the schools are closed, and we have no family or anyone to help us. I work for the VA Hospital, and as a government employee I must go into work. They will not let me take any leave, even if I had any to take. We have meeting about the Coronavirus weekly and at our meeting this week they are now shipping us out on a volunteer basis to go out and help in areas in dire need of medical staff. They have told us that this situation may be switching to mandatory deployments to areas of need very soon if the situation becomes worse since I am medical staff it is my duty and is required to serve in times of need because I am labeled as essential staff in a national emergency. I literally am getting to the place where I would have to drop the kids off at the police station and not know where they will end up

because I have no one to watch them or help me. If my mom was home, she would be able to be there for them while I continue to provide a roof over our heads and food in our stomachs

I have never experienced so much heartache and stress in my life and I'm only 24. I am in dire need of what seems like a miracle, prior to this coronavirus outbreak I was already struggling, now I'm on the verge of losing my job just because I want to take care of my siblings to make things as normal as possible for them because they didn't ask for any of this. I just need my mom home to help me, and to be there for not only my siblings but me as well. My mom loves us more than anything, there has never been any history of abuse or neglect, having her home will ease the pain I am experiencing. We are all we have, and we need each other especially now with this worldwide pandemic occurring. I am desperate and don't want what we have left of our family to dissipate. Please take this under consideration and give our mom back……please.

Thank you,

Ayanna Brown

5424 CHILD CARE IRVINGTON DES
195 W IRVINGTON
TUCSON, AZ 85714

CC-370

DEFENDANT'S
EXHIBIT

B

PRIM ID: █████████
CHILD ID: ████████

AYANNA BROWN

███████████████

DCS CHILD CARE
NOTIFICATION OF REVIEW (W/O APP)

DEAR AYANNA BROWN,

YOUR AUTHORIZATION FOR CHILD CARE ASSISTANCE UNDER PROTECTIVE SERVICES
IS ENDING 03/31/2020.

IF CHILD CARE SERVICES WILL NOT BE CONTINUED BY YOUR DEPT OF CHILD SAFETY
OR TRIBAL PROTECTIVE SERVICES CASE MANAGER, AND YOU STILL NEED CHILD CARE
ASSISTANCE, YOU MUST CONTACT THE CHILD CARE SPECIALIST LISTED BELOW BY
03/05/2020 TO REQUEST AN APPLICATION.

YOU MAY BE ELIGIBLE TO CONTINUE TO RECEIVE CHILD CARE SERVICES IF YOU
SUBMIT AN APPLICATION, MEET INCOME GUIDELINES, AND NEED CHILD CARE FOR
WORK; WORK AND SCHOOL (IF YOU WORK AT LEAST 20 HOURS PER WEEK); HIGH
SCHOOL OR GED CLASSES FOR TEEN PARENTS; OR IF YOU ARE UNABLE TO CARE FOR
YOUR OWN CHILDREN FOR PART OF THE DAY DUE TO A PHYSICAL, MENTAL, OR
EMOTIONAL CONDITION; OR DUE TO PARTICIPATION IN A DRUG OR ALCOHOL
REHABILITATION PROGRAM; OR COURT ORDERED COMMUNITY SERVICE PROGRAM.

IF YOU FAIL TO CONTACT YOUR CHILD CARE SPECIALIST YOUR CHILD CARE MAY
BE STOPPED, AND YOUR CASE MAY BE CLOSED.  YOU MAY BE SUBJECT TO THE
PRIORITY WAITING LIST UPON APPLICATION.

DORA URQUIDEZ                    ██████████████      02/19/2020
SPECIALIST NAME                  PHONE NUMBER         DATE

FAIR HEARING RIGHTS ARE EXPLAINED ON THE BACK OF THIS FORM
EQUAL OPPORTUNITY EMPLOYER/PROGRAM
AVAILABLE IN ALTERNATIVE FORMAT 602-542-4248
DISPONIBLE EN ESPANOL EN LA OFICINA LOCAL

DEFENDANT'S
EXHIBIT

C

# Jason Schall

| | |
|---|---|
| **From:** | CARR HEATHER (89751083) |
| **Sent Date:** | Thursday, March 19, 2020 9:22 PM |
| **To:** | jason@schalljd.com |
| **Subject:** | Update on Heather Carr's current situation |

I am sending this email to my attorney, Jason Schall, so that it can be included as an exhibit in my supplemental filing.

To the Honorable William J. Martinez, U.S. District Court Judge:

This is a plea to the Court to please consider and rule on my pending Compassionate Release motion. My family situation is dire now in regards to the stability of my family, and the health, safety and well being of my children. As verified in my PSI, I have no other family but my children. My oldest daughter Ayanna Brown has custody of my youngest children, Milani and Tru Thomas, ages 9 and 5 years old. As of March 31st, the daycare subsidy my autistic special needs son receives will run out since he is no longer eligible because my daughter makes over 25K a year. Now with the Coronavirus (COVID-19 virus) the pandemic situation with my children has become even more incapacitating. All schools and after school programs are cancelled with nowhere for children to go while parents and caregivers have to work. Most likely this will last through the end of the school year. Another huge issue is my daughter getting to the stores early and waiting in lines to get basic necessities and food for our family before the stores shelves are cleared out every morning due to demand. She has to be to work every morning which is mandatory and they will not give her leave. My daughter is at her breaking point and has never had to deal with anything even remotely close to this pandemic or having to face the challenge of finding different people everyday willing and able to watch the kids while she goes to work since all of the schools and care facilities are closed. Finding care for my son was already an issue before this pandemic, now it is virtually impossible.

As far as the federal camp itself that I am housed at, we are without adequate medical staff, proper medical equipment, sterilization techniques, gloves, sanitizers, masks and other necessary items. The conditions of this camp are not sanitary, the living conditions are extremely close as each of the 4 housing buildings holds 75 women each in a open setting with bunkbeds with 1 bathroom upstairs and 1 bathroom downstairs. There is 1 laundry room to be shared with 300 women where all laundry is washed together in unsanitary conditions. There are 5 phones for 300 women with no sanitizer. Even the cafeteria accomodates over 100 women at a time and is regularly out of hand sanitizer and has substandard sanitary and cooking conditions. Federal "campers" as we are called are within 3 feet of each other constantly.

Throughout the Federal Bureau of Prisons the First Step Act is too slowly being implemented. I was already assessed by the PATTERN risk and needs assessment system to be a minimum risk - the lowest risk level possible and I am eligible for home confinement as soon as the First Step Act time credits are implemented. I have now completed over 50 classes and I have exhausted every possible recidivism class and option available to me since I do not qualify for any of the drug programs since I have no history of drug use.

To date, I have served 26 months of a 57 month sentence. With good time credits my actual release date is February 2022 with a home confinement date of September 7th, 2021. With additional halfway house time and/or First Step Act time credits when they take effect, I will be released into the community in the next 5-11 months. Due to the huge issues my children are facing, I am humbly pleading with the Court to PLEASE let me complete my sentence on home confinement now, at home with my children who desperately need me there. I was on pre-trial for 2 years and had no issues then or in the 26 months I have been incarcerated since I self surrendered to the Phoenix Federal Prison Camp.

Please consider my pending motion for Compassionate Release and factor in the current state of our country, the Coronavirus pandemic, and the huge effect it is having on not only my family but the entire world. This is a time when mothers need to be with their children. Especially when there is no other family to step in and help and support them. This is something that none of us has experienced in our lifetime and the days, weeks and months ahead are going to test all of our strength. I take full responsibility of my crime and I am not asking the Court to reduce the sentence imposed. I am humbly asking that the Court let me serve the remainder of my sentence at

# Jason Schall

---

home on home confinement so I do not lose my children and so that they do not have to experience this national emergency by themselves. God bless you and your family and thank you for your time and consideration.

Sincerely,

Heather Carr

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  HEATHER CARR,

      Defendant.

---

## MOTION TO EXPEDITE RULING

---

TO THE HONORABLE WILLIAM J. MARTINEZ, UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF COLORADO:

      Defendant Heather Carr, through counsel, respectfully request a ruling on her Motion for

Compassionate Release ("Motion") pursuant to the First Step Act. In support of this Motion, Ms.

Carr states:

      1.      On September 12, 2019, the Court received and filed Ms. Carr's Motion

requesting a reduction of her sentence to allow for the care of her minor children. (Dkt. 508.)

Over six months have passed since Ms. Carr filed her pro se Motion.

      2.      On October 10, 2019, the Government filed its Response to Motion for

Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Response"). (Dkt. 513.)

      3.      On November 4, 2019, the Court granted the Federal Public Defender's Motion to

Withdraw, authorized the appointment of counsel pursuant to the Criminal Justice Act ("CJA"),

and ordered new counsel to reply to the Response within 21 days of entering his or her

appearance. (Dkt. 520.)

      4.      On November 5, 2019, undersigned counsel accepted the CJA appointment as Ms.

Carr's counsel and entered his appearance. (Dkt. 521.)

5.      On November 25, 2019, undersigned counsel filed Ms. Carr's Reply to Response to Motion for Compassionate Release ("Reply"). (Dkt. 524.)

6.      Because of the global COVID-19 pandemic and the extraordinary community-wide efforts to slow the spread of the virus, institutions, industries, and indeed entire states are shutting down. Contemporaneous with this filing, counsel will file a Supplement to Ms. Carr's Motion ("Supplement") updating the "extraordinary and compelling" circumstances in which she finds herself. This includes recent letters from both Ms. Carr and her daughter, Ms. Ayanna Brown, the caretaker of Ms. Carr's minor children, detailing the situation.

7.      Given the pandemic and the machinations necessary to quickly hold an evidentiary hearing, Ms. Carr respectfully asks that the Court accept her Supplement and expedite its ruling on her Motion for Compassionate Release. As previously stated, the Government opposes Ms. Carr's Motion for Compassionate Release.

Dated this 20th day of March, 2020.

        /s/   Jason D. Schall
Jason D. Schall
Schall Law LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@schalljd.com
Attorney for Defendant Heather Carr

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

I hereby certify that on March 20, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following:

> AUSA Paul Farley
> AUSA Martha Paluch
> AUSA Bryan Fields
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Paul.Farley@usdoj.gov
> Martha.Paluch@usdoj.gov
> Bryan.Fields3@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following

participant in the manner indicated below:

> Ms. Heather Carr (USM# 89751-083)
> 96 Federal Prisoner Satellite Camp
> 37930 North 45th Avenue
> Phoenix, AZ 85086

> _____ /s/ Jason D. Schall _____
> Jason D. Schall
> Schall Law LLC
> 7350 E Progress Pl Ste 100
> Greenwood Village, CO 80111
> Telephone: (720) 505-3861
> E-mail: jason@schalljd.com
> Attorney for Defendant Heather Carr

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-1681-WJM
Criminal Case No. 16-cr-054-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

1.    **HEATHER CARR**,

      Defendant.

---

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

---

This matter is before the Court on Defendant's "Motion Requesting Relief Under Compassionate Release Pursuant to 18 U.S.C. 3582(c)(1)(A)" ("Motion"). (ECF No. 508.) For the reasons discussed below, the Court denies the Motion.

## I. BACKGROUND

On December 5, 2016, Carr pled guilty to conspiracy to defraud the government for her role in a scheme of submitting false claims for federal student aid to the U.S. Department of Education. (ECF No. 94.) On January 4, 2018, the undersigned sentenced Carr to 57 months of incarceration and three years of supervised release. (ECF No. 272 at 2; ECF No. 313.)

On April 1, 2019, Carr moved the Court to reconsider her 57-month sentence. (ECF No. 461 at 4.) The Court denied that motion for lack of jurisdiction. (ECF No. 471.)

On September 12, 2019, Carr filed the Motion *pro se* seeking home confinement

or compassionate release under Sections 602 and 603 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("FSA"). (ECF No. 508.) The Government filed a response on October 10, 2019, arguing that Carr had failed to exhaust her administrative remedies for home confinement or compassionate release, and was not eligible for either program. (ECF No. 513.) Thereafter, an attorney from the Federal Public Defender entered her appearance (ECF No. 516), but subsequently had to withdraw due to a conflict of interest (ECF No. 519). Conflict-free counsel entered an appearance, and filed a reply on November 25, 2019. (ECF No. 524.) On March 20, 2020, counsel, on behalf of Carr, filed a supplement in support of the Motion (ECF No. 526) and a motion to expedite ruling (ECF No. 527). The supplement addressed how Carr's family's circumstances have changed due to the COVID-19 pandemic. (ECF No. 526 at 1–2.)

According to the parties, if Carr continues to receive good time credit, she will serve 48 months and 17 days of her 57-month sentence, and will likely be released to home confinement as early as August 2021, approximately 16 months from the date of this Order. (ECF No. 513 at 7–8; ECF No. 524 at 10.)

## II. ANALYSIS

### A.   Home Confinement Under § 602 of the FSA

In her *pro se* Motion, Carr seeks home confinement as an alternative to serving the remainder of her sentence in custody, invoking Section 602 of the FSA, codified at 18 U.S.C. § 3624(c)(2). That provision allows the Bureau of Prisons ("BOP") to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment

2

of that prisoner or 6 months" and instructs BOP, to the extent practicable, to "place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  18 U.S.C. § 3624(c)(2).

In response, the Government argues (1) that Carr failed to exhaust her administrative remedies with respect to her home confinement claim; (2) that Carr's home confinement claim is not cognizable under 18 U.S.C. § 3582(c)(1)(A) because it seeks to challenge the conditions of her confinement, not to modify her sentence; and (3) that Carr's request for home confinement is not ripe because she is not within or near the last ten percent of her term of imprisonment.  (ECF No. 513 at 3–8.)  Carr's reply, filed by counsel, did not address the Government's arguments.  (ECF No. 524 at 2.)  Accordingly, the Court finds that Carr has effectively conceded that she is not currently eligible for home confinement under § 3634, and thus denies that portion of the Motion.  *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in a brief); *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (same); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001) (same).

## B.    Compassionate Release Under § 603 of the FSA

Section 603 of the FSA amended the procedure by which a federal prisoner could seek compassionate release.  FSA, Pub. L. No. 115-391, 132 Stat. at 5238; 18 U.S.C. § 3582(c)(1)(A).  Prior to the FSA, a court could modify a term of imprisonment for "extraordinary and compelling reasons" only on motion from the Director of BOP.  18 U.S.C. § 3582(c)(1)(A) (2017).  The FSA amended that provision

3

to allow a court to modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; FSA, Pub. L. No. 115-391, 132 Stat. 5238.

### 1. *Abandonment of Compassionate Release Claim*

The Government first contends that Carr abandoned her claim for compassionate release by seeking only home confinement in her *pro se* Motion.[1] (ECF No. 513 at 8.) The Motion repeatedly references "compassionate release" under § 3582, and asks the Court to substitute the remainder of her prison term for "home confinement . . . and/or supervised release." (ECF No. 508 at 4.) Liberally construing the Motion, the Court finds that Carr seeks a modification of her sentence and did not abandon her compassionate release claim.

### 2. *Administrative Exhaustion*

The FSA requires that a prisoner fully exhaust her administrative remedies before moving to reduce a term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). BOP has established a four-step administrative process to address inmate grievances: (1) informal resolution; (2) submission of complaint to the warden on form BP-9;

---

[1] Carr's Motion was filed *pro se* and thus she is entitled to a liberal construction of that pleading. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In other words, if the Court can "reasonably read the pleadings to state a valid claim on which [Carr] could prevail, it should do so despite [Carr's] failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, Carr must nonetheless allege sufficient facts to support her legal claim. *Id.*

(3) appeal to the Regional Director of BOP on form BP-10; and (4) final administrative appeal to the General Counsel of BOP on form BP-11.  28 C.F.R. §§ 542.13–.15.

On January 22, 2019, Carr submitted an informal request for reduction in sentence, which was denied on January 29, 2019, thus fulfilling the informal resolution requirement.  (ECF No. 508 at 18.)  On February 6, 2019, Carr submitted a written request for a reduction in sentence to the warden, which stated that she had submitted "letters from the daycares, a letter from [her] daughter, [her] son's IEP and psychiatric evaluation regarding his disorders and court paperwork regarding the juvenile court and custody issue." (*Id.*)  On February 8, 2019, the warden denied Carr's request for a reduction in sentence or compassionate release, explaining that "the loss of daycare is not a sufficient reason for the Bureau of Prisons to seek compassionate release on your behalf." (*Id.* at 17.)  On February 15, 2019, Carr appealed the warden's decision to the Regional Director of BOP, noting that she had previously submitted paperwork in support of her request. (*Id.* at 20.)  The Regional Director agreed with the warden that Carr did not meet the criteria for compassionate release. (*Id.* at 19; *id.* at 21 (noting a typographical error in the Regional Director's response and clarifying that Carr did not meet the criteria).)  On April 3, 2019, Carr further appealed to the General Counsel of BOP, and submitted copies of the paperwork outlined in her request to the warden. (*Id.* at 22.)  On June 5, 2019, BOP denied the appeal, stating that it had "carefully reviewed [Carr's] request and determined that [Carr does] not meet the criteria" for compassionate release or a reduction in sentence. (*Id.* at 21.)

The Government argues that Carr failed to exhaust her administrative remedies

5

because she failed to include certain documents when she submitted her complaint to the warden.  (ECF No. 513 at 8–10.)  The Government's position is disingenuous.  At every administrative level, Carr's request was denied on the merits, and not for lack of documentation.  (ECF No. 508 at 18–22.)  Moreover, Carr did submit documentation in support of her claim, albeit not necessarily the precise type of documentation that the Government now suggests is required.  (*See* ECF No. 513 at 9.)

The Government also suggests that without the required documentation, the "Court would be unable to properly consider [Carr's] request for compassionate release."  (ECF No. 513 at 10.)  In support, it cites two cases, both of which denied inmates' requests for compassionate release due to inadequate documentation.  (*Id.* (*citing United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) *and United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)).)  However, both courts found that the documentation submitted to the court was inadequate, not that the inmate had failed to include documentation in the administrative process.  *Gutierrez*, 2019 WL 1472320, at *2; *Heromin*, 2019 WL 2411311, at *2.  Moreover, there is evidence that Carr did submit at least some documentation in support of her claim, and certain documents attached to the Motion appear to be some of the documentation Carr submitted to the warden and General Counsel in support of her administrative requests.  (ECF No. 508 at 18, 22, 42–46.)

The Court will not exalt form over substance, and finds that Carr exhausted her administrative remedy for a reduction in sentence, consistent with the requirement of 18 U.S.C. § 3582(c)(1)(A).  The Court will therefore consider Carr's claim on the merits.

3.    *Merits of Compassionate Release Claim*

A court may reduce an inmate's sentence if "extraordinary and compelling reasons warrant such a reduction," and the reduction is consistent with the factors typically considered in imposing a sentence, as set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).  The U.S. Sentencing Commission's commentary on the "extraordinary and compelling reasons" requirement explains that a family circumstance—including "the death or incapacitation of the caregiver of the defendant's minor child or minor children"—is one such reason.  U.S.S.G. § 1B1.13, Application Note 1(C).  Application Note 1(D) suggests that there may exist "other reasons," including "an extraordinary and compelling reason other than, or in combination with, the reasons described" in the commentary, as "determined by the Director of the Bureau of Prisons."  *Id.* at Application Note 1(D); *see also United States v. Walker*, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) (granting compassionate release under § 3582 and U.S.S.G. § 1B1.13, Application Note 1(D)).

Courts, however, have recognized that the FSA amendment allowing inmates to file compassionate release motions without BOP's support allows courts, "not the Director of the Bureau of Prisons[,] to determine whether there is an 'extraordinary and compelling reason' to reduce a sentence."  *United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (recognizing that a majority of district courts to consider the question have found that the FSA provides the courts discretion to provide relief in circumstances do not directly fall within the Sentencing Commission's current policy statement); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("The First Step Act did not change the statutory criteria for compassionate release, but

7

it did change the procedures, so that the Bureau of Prisons is no longer an obstacle to a court's consideration of whether compassionate release is appropriate.").

Carr has not established that she is eligible for compassionate release and modification of her sentence under the family circumstances exception or for other reasons. *See* U.S.S.G. § 1B1.13. Carr's minor children's primary caregiver, Ms. Ayanna Brown—Carr's eldest daughter—is not incapacitated or deceased. *See id.* at Application Note 1(C). While Carr has submitted information about Ms. Brown's challenges in caring for her minor siblings in her mother's absence, the Court finds that the hardship endured by the primary caregiver is not an "extraordinary and compelling reason" justifying a modification of Carr's sentence. Ms. Brown appears to have done an admirable job at rising to the occasion, caring for her younger siblings, finding appropriate care opportunities for her siblings, and navigating the public benefits system for her autistic brother, even in the absence of any other familial support. While a letter submitted in support of the Motion suggests that Ms. Brown's child care assistance payments may cease, it appears that she may yet be eligible for continued benefits. (ECF No. 526-1 at 3.)

The Court recognizes the difficult position in which Ms. Brown now finds herself, and that the challenges are exacerbated by the COVID-19 public health crisis. Ms. Brown is "medical staff" at a Veteran's Administration hospital in the Phoenix area, and is concerned about potential "mandatory deployments" for her job and about whether daycare programs for the minor children will continue. (ECF No. 526 at 2.) However, as of the filing of the supplement, these COVID-19-related concerns are possibilities, not certainties. (ECF No. 526-1 at 1, 3–4.) While COVID-19 public health crisis has

8

added further stress to Ms. Brown's daily routine (*id.* at 1), the record does not show

that Ms. Brown is incapable of providing care to Carr's minor children.  Moreover, the

COVID-19 public health crisis and its attendant impacts on Carr's family are not

sufficient reasons to modify Carr's sentence.  *See United States v. Hays*, 2020 WL

1698778, at *3 (S.D. Ala. Apr. 7, 2020) (denying compassionate release for general

concerns about possible exposure to COVID-19).  Accordingly, the Court finds that Carr

has not stated "extraordinary and compelling reasons" warranting a modification of her

sentence.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant Heather Carr's Motion Requesting Relief Under Compassionate

       Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 508) is DENIED

       without prejudice; and

2.     Defendant Heather Carr's Motion to Expedite Ruling (ECF No. 527) is DENIED

       AS MOOT.

Dated this 10th day of April, 2020.

BY THE COURT:

William J. Martínez
United States District Judge

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-054-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. HEATHER CARR,

      Defendant.

---

## NOTICE OF APPEAL

---

Notice is hereby given that Ms. Heather Carr, in the above named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Order Denying Motion for Compassionate Release [Dkt. 530], entered in this action on the 10th day of April, 2020.

DATED this 16th day of April, 2020.

                                        /s/  Jason D. Schall
                                    Jason D. Schall
                                    Schall Law LLC
                                    7350 E Progress Pl Ste 100
                                    Greenwood Village, CO 80111
                                    Telephone: (720) 505-3861
                                    E-mail: jason@schalljd.com
                                    Attorney for Defendant Heather Carr

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

I hereby certify that on April 16, 2020, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Paul Farley
AUSA Martha Paluch
AUSA Bryan Fields
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Paul.Farley@usdoj.gov
Martha.Paluch@usdoj.gov
Bryan.Fields3@usdoj.gov

I hereby certify that I have or will submit the document to the following participant in the

manner indicated below:

Ms. Heather Carr (USM #89751-083), via U.S. Mail
FCI Phoenix
Federal Correctional Institution
Satellite Camp
37930 N. 45th Ave.
Phoenix, AZ 85086


_____/s/  Jason D. Schall_____
Jason D. Schall
Schall Law LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@schalljd.com
Attorney for Defendant Heather Carr