FILED
United States Court of Appeals
Tenth Circuit

April 14, 2021

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HEATHER CARR,

    Defendant - Appellant.

No. 20-1152
(D.C. No. 1:16-CR-00054-WJM-1)
(D. Colorado)

---

### ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

---

Heather Carr pleaded guilty to one count of conspiracy to defraud the federal government and is serving a 57-month sentence. After exhausting her administrative remedies with the Federal Bureau of Prisons ("BOP"), Ms. Carr, relying on procedures established by the First Step Act ("FSA"), filed a motion in the district court for sentence modification and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Ms. Carr contended she satisfied the "extraordinary and compelling reasons" standard and was eligible for a sentence modification based on changes in her eldest daughter's ability to care for Ms. Carr's two minor children. The district court applied United States

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Sentencing Commission, Guidelines Manual §1B1.13 (Nov. 2018), to define "extraordinary and compelling reasons" and concluded Ms. Carr was not eligible for relief. In our recent decisions in *United States v. McGee*, ___ F.3d ___, 2021 WL 1168980 (10th Cir. 2021), and *United States v. Maumau*, ___ F.3d ___, 2021 WL 1217855 (10th Cir. 2021), we held USSG §1B1.13 is not presently an "applicable" policy statement that controls the definition of "extraordinary and compelling reasons" when a prisoner initiates a § 3582(c)(1)(A) proceeding. Accordingly, we vacate the district court's order denying relief, and we remand for reconsideration in light of *McGee* and *Maumau*.

## I.   BACKGROUND

### A.   Conviction & Sentence

In 2010, Ms. Carr and two co-defendants conspired to defraud the U.S. Department of Education by submitting false claims for student loan applications. The conspiracy lasted just over two years and featured Ms. Carr and her co-defendants using the social security numbers of over 150 inmates in association with college admissions and financial aid requests. After identifying victims by way of inmate locator searches, Ms. Carr used databases available through her employment as an underwriter to obtain the inmates' social security numbers. The financial aid applications sought approximately $1.3 million in federal funds and resulted in the Department of Education disbursing $562,487.85.

In 2016, a grand jury issued a twenty-nine-count indictment, charging Ms. Carr with one count of conspiracy to defraud the federal government and

multiple counts of wire fraud, mail fraud, and aggravated identity theft. In 2018, pursuant to a written plea agreement, Ms. Carr pleaded guilty to the conspiracy to defraud the federal government charge in exchange for dismissal of the other twenty-eight counts. A presentence investigation report ("PSR") established a tentative Guidelines range of 70 to 87 months' imprisonment. As a result of the dismissal of the aggravated identify theft counts, Ms. Carr avoided a consecutive mandatory minimum sentence of 24 months' imprisonment.

After resolving objections to the PSR, the district court established a Guidelines range of 57 to 71 months' imprisonment. Citing in part Ms. Carr's last-minute refusal to testify at the trial of a co-defendant in breach of her plea agreement, the government sought a 63-month sentence. The district court sentenced Ms. Carr to 57 months' imprisonment. In selecting this sentence, the district court discussed Ms. Carr's family circumstances and the impact of the sentence on her minor children. At the time of sentencing, Ms. Carr had two young children, ages seven and three. Ms. Carr's youngest child had been diagnosed with autism and required special schooling. The childcare plan during Ms. Carr's incarceration was for her oldest daughter, who was then twenty-two and married, to take care of Ms. Carr's two youngest children.[1]

### B. 18 U.S.C. § 3582(c)(1)(A) and Ms. Carr's Motion for Compassionate Release

Following enactment of the FSA, 18 U.S.C. § 3582(c)(1)(A) reads:

---

[1] The father of Ms. Carr's two youngest children was one of Ms. Carr's co-defendants and was also facing incarceration.

> **(c) Modification of an imposed term of imprisonment**—The court may not modify a term of imprisonment once it has been imposed except that—
> **(1)** in any case—
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction
>
> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

(emphasis added). Prior to the enactment of the FSA, only the Director of the BOP could move for compassionate release on a prisoner's behalf under § 3582(c)(1)(A). *See, e.g.*, *United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997) (petitioner not eligible for compassionate release absent motion from BOP Director). As is apparent from the emphasized language, a prisoner now, after exhausting administrative remedies with the BOP, may initiate the sentencing modification process by filing a § 3582(c)(1)(A) motion in the first instance. *McGee*, 2021 WL 1168980, at *5. But the FSA did not change the requirements a prisoner must demonstrate to obtain relief: (1) "extraordinary and compelling reasons" warrant a sentence reduction; (2) the sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission"; and (3) the reduction is consistent with the district court's

consideration of the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); *see also McGee*, 2021 WL 1168980, at *5.

In 2019, Ms. Carr asked the BOP to file a motion in district court for a sentence modification asserting she was entitled to compassionate release because her eldest daughter was experiencing difficulties caring for Ms. Carr's two youngest children. Specifically, Ms. Carr asserted her eldest daughter had separated from her husband, partially due to the strain from caring for the children, and was now experiencing financial challenges impacting her ability to continue caring for them. Ms. Carr contended her eldest daughter particularly lacked the means and ability to care for Ms. Carr's youngest child, given his special needs. The BOP denied Ms. Carr's request.

Ms. Carr, proceeding *pro se*, filed a motion in the district court under § 3582(c)(1)(A), arguing she was entitled to a sentence modification based on changed family circumstances.[2] The government opposed the motion, arguing Ms. Carr did not satisfy the "extraordinary and compelling reasons" standard for obtaining compassionate release, as that term is defined by USSG §1B1.13, because the Guidelines provision allows for compassionate release based on changed family circumstances only where a child's caretaker is "deceased" or "incapacitated."

---

[2] Ms. Carr, in her *pro se* motion, also sought a sentence modification to a term of home confinement under 18 U.S.C. § 3624(c)(2). The district court denied relief under that provision, and Ms. Carr, on appeal, does not contest this aspect of the district court's order.

Counsel entered an appearance on Ms. Carr's behalf and argued that, after passage of the FSA, the decision of whether Ms. Carr presented "extraordinary and compelling reasons" rested with the district court, not the BOP.[3]

The district court acknowledged the ongoing disagreement among district courts regarding whether USSG §1B1.13 remains an applicable policy statement controlling the definition of "extraordinary and compelling circumstances." Specifically, the district court noted the opinion of a different district court in *Maumau*, holding that USSG §1B1.13 is not an applicable policy statement controlling inmate-filed § 3582(c)(1)(A) motions. But the district court nonetheless relied exclusively on USSG §1B1.13, and that section's accompanying application notes, to define "extraordinary and compelling reasons" and "family circumstances" for purposes of resolving Ms. Carr's motion.[4] Applying that standard, the district

---

[3] Ms. Carr's counsel also raised arguments based on the COVID-19 pandemic, which the district court rejected. On appeal, Ms. Carr's briefing does not make any mention of COVID-19; thus, any arguments premised on COVID-19 available to Ms. Carr at the time of this appeal are waived for purposes of this appeal and foreclosed for purposes of the remand proceeding. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (argument not adequately raised on appeal is waived); *Estate of Cummings v. Community Health Sys., Inc.*, 881 F.3d 793, 801 (10th Cir. 2018) ("Failing to raise an issue on appeal . . . has the same consequences for that litigation as an adverse appellate ruling on that issue. Thus, the mandate rule applies not only to issues on which the higher court ruled but also forecloses litigation of issues decided by the district court but [forgone] on appeal or otherwise waived.") (quoting *Doe v. Chao*, 511 F.3d 461, 466 (4th Cir. 2007)) (alteration in original).

[4] The district court decided Ms. Carr's motion before any Tenth Circuit law existed regarding the applicability of the current version of USSG §1B1.13 post-FSA and even before any other circuit had reached the issue. Thus, the district court's seeming uncertainty regarding the applicability of USSG §1B1.13 is understandable.

court found that while Ms. Carr's eldest daughter faced more challenges providing childcare than at the time of sentencing, she had done an "admirable job" caring for the children and was not "incapacitated." ROA, Vol. I at 448. The district court therefore denied Ms. Carr's motion, without considering whether the 18 U.S.C. § 3553(a) factors favored imposition of a different sentence.

On appeal, Ms. Carr advances three arguments. First, she argues USSG §1B1.13 is not an applicable policy statement and does not control the definition of "extraordinary and compelling reasons" because it does not reflect the FSA's changes to § 3582(c)(1)(A). Second, she contends the evidence supports that her eldest daughter is "incapacitated."[5] Third, she faults the district court for not considering the 18 U.S.C. § 3553(a) factors before denying relief. The government, as in *McGee* and *Maumau*, argues the language of 28 U.S.C. §§ 994(a)(2)(C) and (t) and 18 U.S.C. § 3582(c)(1)(A) gives the Sentencing Commission the power to define "extraordinary and compelling reasons" for purposes of compassionate release. Based on this, the government contends USSG §1B1.13 is controlling and Ms. Carr has not satisfied the definition of "family circumstances" in the application notes to that provision. In the alternative, the government asserts the district court recognized USSG §1B1.13 is not controlling yet exercised its discretion to rely upon and apply the definition of "family circumstances" from the application notes. Finally, the government contends

---

[5] Because we conclude the district court on remand is free to adopt its own interpretation of "extraordinary and compelling" that may not include the requirement the caretaker be "incapacitated," we do not consider this argument.

that once the district court concluded Ms. Carr was not eligible for relief because she had not demonstrated "extraordinary and compelling circumstances," it would have been pointless for the district court to conduct a § 3553(a) analysis.

## II.   DISCUSSION

### A.   *Standard of Review*

This court applies an overarching abuse of discretion standard to a district court's order denying relief on an 18 U.S.C. § 3582(c)(1)(A) motion. *United States v. Mannie*, 971 F.3d 1145, 1154 (10th Cir. 2020). However, to the extent the parties' arguments require us to interpret § 3582(c)(1)(A) and the scope of the district court's authority to grant relief under that provision, we apply de novo review. *McGee*, 2021 WL 1168980, at *4.

### B.  *USSG §1B1.13 is Not Presently an "Applicable" Policy Statement*

As noted earlier, for a district court to have authority to modify a sentence, a prisoner must demonstrate "extraordinary and compelling reasons" for modification, and the modification must be consistent with "applicable" policy statements in the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); *see also McGee*, 2021 WL 1168980, at *5. Congress delegated authority to the Sentencing Commission to (1) establish the criteria a district court must apply before modifying a sentence; (2) define the term "extraordinary and compelling reasons" in § 3582(c)(1)(A); and (3) provide "a list of specific examples" that qualify as "extraordinary and compelling reasons" allowing for sentence modification. 28 U.S.C. § 994(t). In response, the Sentencing Commission promulgated USSG §1B1.13, which establishes two criteria for a sentence modification, including

"extraordinary and compelling reasons" at issue in this appeal. The application notes provide four categories or examples of "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) other reasons. USSG §1B1.13 cmt. n.1.

The Sentencing Commission, however, has not amended USSG §1B1.13 since the passage of the FSA.[6] As a result, multiple aspects of USSG §1B1.13 and the application notes to that section continue to refer to the sentencing modification process as a process necessarily instituted by a motion filed by the BOP. *See* USSG §1B1.13 ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."); *see also id*. cmt. n.1(D) ("**Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Most notably, Application Note 4 states, in part, "[a] reduction under this policy statement may be granted *only upon motion by the Director of the Bureau of Prisons* pursuant to 18 U.S.C. § 3582(c)(1)(A)." *Id.* cmt. n.4 (emphasis added).

---

[6] The lack of any amendment to USSG §1B1.13 is not attributable to any dilatoriness by the Sentencing Commission. The Commission has lacked a four-member quorum to vote on and adopt any amendments since 2019, a deficiency that only the President and Senate can cure. *See United States v. McGee*, ___ F.3d ___, 2021 WL 1168980, at *11 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 282 n.6 (4th Cir. 2020). *See* 28 U.S.C. § 991(a) (establishing process for adding new members to the Sentencing Commission).

Based on USSG §1B1.13's focus on a motion filed by the BOP, four other circuits concluded the policy statement is not, in its current form, "applicable" to compassionate release motions filed by prisoners under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Brooker*, 976 F.3d 228, 235–37 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282–85 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). We recently joined these circuits, holding "the Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants." *McGee*, 2021 WL 1168980, at *12; *see also Maumau*, 2021 WL 1217855, at *12 (same). And because USSG §1B1.13 is not presently a policy statement "applicable" to § 3582(c)(1)(A) motions filed by prisoners, the district court has the authority to exercise its independent discretion to define the term "extraordinary and compelling reasons." *See McGee*, 2021 WL 1168980, at *8 (holding district courts "have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,' but that this authority is effectively circumscribed by . . . the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission"); *see also Maumau*, 2021 WL 1217855, at *9 (same quotation).

*McGee* and *Maumau* control here and favor Ms. Carr's position on appeal. While it is possible the district court recognized it had authority to define "extraordinary and compelling reasons," it is not apparent the district court recognized USSG §1B1.13 was no longer controlling. Although it was within the district court's discretion to conclude

10

the application notes to USSG §1B1.13 still provided the best definition and description of "extraordinary and compelling reasons" under the circumstances of Ms. Carr's case, three reasons cause us to conclude the district court did not exercise its independent authority and discretion. First, the district court decided Ms. Carr's motion prior to any circuit court addressing the issue and while district courts across the country were split on the issue. *See Brooker*, 976 F.3d at 234 (analyzing the issue at the appellate level for the first time and discussing a split among district courts on the issue). And the district court did not affirmatively state whether it believed the current version of USSG §1B1.13 continued to control the criteria for "extraordinary and compelling reasons" after the effective date of the FSA. For this reason, the district court's single citation to the district court opinion in *Maumau* does not convince us the district court knew it was free to define "extraordinary and compelling reasons" for itself. Second, the district court relied exclusively on USSG §1B1.13 to define the term without explaining why the provision provided the best or most appropriate definition. Third, the district court's lack of explanation for why it relied upon USSG §1B1.13 must be viewed against the long history of that provision controlling the definition of "extraordinary and compelling reasons" and prisoners' eligibility for resentencing through § 3582(c)(1)(A). Accordingly, we conclude it is best to permit the district court another opportunity to review Ms. Carr's motion in light of *McGee* and *Maumau*.

    C.    ***Why Remand is Appropriate Rather than Peremptorily Granting Relief***

Ms. Carr asks us to direct the district court to modify her sentence and to order her release from custody. We decline to do so. The decision of whether to modify Ms. Carr's

sentence should rest, in the first instance, with the district court. As we suggest above, it is not entirely clear from the district court's order whether the district court believed it was constrained by USSG §1B1.13. If the district court did exercise its independent authority to define "extraordinary and compelling reasons" and concluded USSG §1B1.13 provided the best definition, it should be provided an opportunity to put forth its reasoning. *Cf. McCoy*, 981 F.3d at 283 (noting USSG §1B1.13 is not necessarily in conflict with the FSA, notwithstanding that it is not controlling); *Gunn*, 980 F.3d 1180 ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons' . . . . In this way the Commission's analysis can guide discretion without being conclusive.").

Further, even if Ms. Carr satisfies the "extraordinary and compelling reasons" requirement, she still must show that a sentence modification is warranted under the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); *see also McGee*, 2021 WL 1168980, at *5. This court reviews a district court's evaluation of the § 3553(a) factors for an abuse of discretion. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1267 (10th Cir. 2014). It is not apparent how the § 3553(a) factors will break in Ms. Carr's case on remand.[7] We review a district court's ultimate determination on whether to grant a

---

[7] Although Ms. Carr faults the district court for not considering the § 3553(a) factors before denying relief, our recent decisions in *McGee* and *Maumau* clarify that a district court need not consider those factors if it concludes a prisoner is not eligible for sentence modification because she has not satisfied the "extraordinary and compelling reasons" threshold. *McGee*, 2021 WL 1168980, at *6; *see also United States v. Maumau*, ___ F.3d ___, 2021 WL 1217855, at *7 n.4 (10th Cir. 2021).

sentence modification for an abuse of discretion. *Mannie*, 971 F.3d at 1154. This deferential standard applies because of the district court's intimate knowledge of the case, including the defendant's characteristics. And, here, the same district court judge presided over Ms. Carr's initial sentencing and her § 3582(c)(1)(A) proceeding, increasing the benefit of allowing the district court to make this determination. Accordingly, we remand to the district court to weigh these factors in the first instance.

### III.   CONCLUSION

Concluding it is not apparent the district court exercised its own authority and discretion when it relied upon USSG §1B1.13 to define "extraordinary and compelling reasons," we VACATE the district court's order and REMAND for further proceedings consistent with *McGee* and *Maumau* and this order.

    Entered for the Court

    Carolyn B. McHugh
    Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

April 14, 2021

Jane K. Castro
Chief Deputy Clerk

Mr. Jason Wesoky
Darling Milligan
1331 17th Street, Suite 800
Denver, CO 80202

**RE:** 20-1152, United States v. Carr
Dist/Ag docket: 1:16-CR-00054-WJM-1

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc: Paul Farley
    Michael Conrad Johnson

CMW/na