**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01681-WJM
Criminal Case No. 16-cr-00054-WJM-1

**UNITED STATES OF AMERICA,**

Plaintiff,

**vs.**

**1. HEATHER CARR**,

Defendant.

---------------------------------------------------------------------------------------------------------------

**RESPONSE TO DEFENDANT'S SUPPLEMENT
IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1) (ECF No. 549)**

---------------------------------------------------------------------------------------------------------------

In accordance with this Court's Minute Order filed June 15, 2021—*see* ECF No.

548—the United States files this response to Defendant Heather Carr's supplement in

support of her motion for compassionate release.  *See* ECF No. 549.  Ms. Carr's motion

is moot or, alternatively, not ripe for review, because she has obtained the ultimate relief

she seeks, return to her home, and she may well remain there until her sentence

expires.  Accordingly, this Court lacks jurisdiction to consider her motion.  Even if the

Court determines that it possesses jurisdiction, Ms. Carr's motion should be denied

because she has not presented extraordinary and compelling reasons justifying her

requested sentence modification.  The motion should also be denied because the 18

U.S.C. § 3553(a) factors do not weigh in favor of modifying her sentence.

**BACKGROUND**

**I.      This Court's Initial Ruling**

Ms. Carr filed a motion pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking a

sentence reduction and compassionate release.  ECF No. 508.  She contended that she

demonstrated "extraordinary and compelling reasons" warranting such a reduction

based on changes in her eldest daughter's ability to care for Ms. Carr's two minor

children.

This Court denied the motion, concluding that she had not "established that she

is eligible for compassionate release and modification of her sentence under the family

circumstances exception or for other reasons."  ECF No. 530 at 8 (citing USSG

§ 1B1.13).  The Court pointed out that Ms. Carr's eldest daughter, Ayanna Brown, was

not incapacitated or deceased, as defined in the policy statement for the "extraordinary

and compelling reasons" requirement.  *Id.* (citing § 1B1.13, Application Note 1(C)).  Ms.

Carr appealed.

**II.     The Tenth Circuit's Ruling**

The Tenth Circuit ruled that, in resolving Ms. Carr's motion, this Court applied

§ 1B1.13 to define "extraordinary and compelling reasons," and concluded she was not

eligible for relief.  The circuit court noted that it had recently held in *United States v.*

*McGee*, 992 F.3d 1035 (10th Cir. 2021), and *United States v. Maumau*, 993 F.3d 821

(10th Cir. 2021), that §1B1.13 is not presently an "applicable" policy statement that

controls the definition of "extraordinary and compelling reasons" when a prisoner

initiates a § 3582(c)(1)(A) proceeding.  Accordingly, the Tenth Circuit vacated this

Court's order denying relief, and remanded for reconsideration in light of *McGee* and

*Maumau*.

### III.     Ms. Carr's Supplement in Support of Her Motion

On remand, the parties filed a Joint Status Report.  In a Minute Order, this Court

concluded that the interests of justice are best served by allowing the parties to submit

updated briefing regarding Ms. Carr's changed circumstances and an analysis of the 18

U.S.C. § 3553(a) sentencing factors in light of *McGee* and *Maumau*.  ECF No. 548.

Pursuant to the Minute Order, Ms. Carr filed her Supplement in Support of Motion for

Compassionate Release.  In that document, she correctly states that, pursuant to the

"CARES Act," Pub. L. No. 116-136, 134 Stat. 281 (2020), the Director of the Bureau of

Prisons (BOP) was authorized to place certain prisoners in home confinement during

the Act's covered emergency period as defined by the Attorney General.  She also

correctly states that, pursuant to the "CARES Act," BOP placed her on home

confinement on July 10, 2020.

Ms. Carr requests in her Supplement that this Court apply the First Step Act and

modify her remaining sentence from incarceration to either time served or home

confinement.  ECF No. 549 at 1.

### DISCUSSION

### I.     The Matter is Moot or, Alternatively, Not Ripe for Review

In support of her motion for compassionate release, Ms. Carr states that she

"relies principally on the damage that would be done to her minor children if she is

returned to prison for even a short time."  ECF No. 549 at 4.  She acknowledges that

she was released by the BOP from incarceration on July 10, 2020, pursuant to the

CARES Act's covered emergency period, and that for more than a year now she has

been under "home confinement" and caring for her two minor children at her home.  *See*

ECF No. 549 at 2.  Her desire to continue to live at home, so that she may care for her

two minor children, will be satisfied if (1) she continues to remain in home confinement

during the CARES Act's covered emergency period; or (2) she receives home

confinement under the authority set forth in 18 U.S.C. § 3624(c)(2) once she becomes

eligible in approximately four weeks to seek such relief.

Ms. Carr correctly notes that when the CARES Act's covered emergency period

ends, the Bureau of Prisons (BOP) would be required to recall prisoners now on home

confinement under that Act to correctional facilities, unless they are otherwise eligible

for home confinement under 18 U.S.C. § 3624(c)(2).  *See* Biden-prisoners-covid ("*Biden*

*Legal Team Decides Inmates Must Return to Prison After Covid Emergency*").  *See also*

Home Confinement After Covid.  As long as the CARES Act emergency provisions are

not rescinded, Ms. Carr will remain on home confinement until she completes her

sentence.

But nothing in the record suggests that the CARES Act's covered emergency

period will end any time soon.  Indeed, with the national rate of infection from COVID-19

increasing at the present time, *see* CDC Covid data,[1] the Secretary of the Department

of Health and Human Services (HHS) has extended the CARES Act's covered

emergency period a number of times, and has advised in a letter to governors that HHS

---

[1] *See also* https://www.bop.gov/coronavirus/.

expects it to go through the end of the year, at a minimum.  *See* Health News.  *See also* Emergency Message To Governors.

"[U]nder the 'case or controversy' requirement in Article III of the Constitution, 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *City of Albuquerque v. United States Dep't of Interior*, 379 F.3d 901, 919 (10th Cir. 2004) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  "A case is moot when the issues presented are not longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  Federal courts thus have "no power to issue advisory opinions." *See North Carolina v. Rice*, 404 U.S. at 246.

Mootness may result due to events occurring after the complaint has been filed. "By definition, mootness concerns events occurring after the alleged violation." *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 729 (10th Cir. 1997).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

For a case to remain a live case or controversy under the law, it must affect the defendant's behavior towards the plaintiff.  Article III "requires that the plaintiff demonstrate a substantial likelihood that the relief requested will redress its injury in fact." *Nova Health Systems v. Gandy*, 388 F.3d 744, 753 (10th Cir. 2004) (discussing the "redressability" requirement).  "Generally, it is the settling of some dispute which affects the behavior of the defendant toward the plaintiff that distinguishes a case or

controversy from an advisory opinion." *Wirsching v. Colorado*, 360 F.3d 1191, 1196

(10th Cir. 2004) (internal quotation marks omitted).

Here, because Ms. Carr was placed on home confinement pursuant to the

CARES Act's covered emergency period, and because that covered emergency period

may well last beyond Ms. Carr's scheduled release date of February 23, 2022, any

decision by this Court regarding Ms. Carr's request to stay at home would be purely

advisory.  There is no live case or controversy at this time.

Ultimately, this case is moot for the same reasons the Central District of Illinois

found the defendant's motion for compassionate release moot in *United States v. Gunn*,

No. 1:16-CV-10024, 2021 WL 719889, at *3 (C.D. Ill. Feb. 24, 2021) (unpublished).  In

*Gunn*, the district court originally denied the motion, but the Seventh Circuit remanded

based on its finding that the district court improperly relied on § 1B1.13 of the

Guidelines.  On remand the district court found that the defendant's release to home

confinement rendered her proffered basis for compassionate release moot.

*Id*. (citing cases).  *Gunn* is factually and legally indistinguishable from this case.

This Court should similarly find that Ms. Carr's basis for compassionate release is

moot.[2]

---

[2] The government recognizes that Ms. Carr seeks in her Supplement, by way of
relief, either time served or home confinement, but because she admits what she really
wants is to stay at home and she's already received that relief, her request for relief is
moot.  Although a transfer to home confinement does not legally preclude relief under
the compassionate release statute, courts faced with similar cases have found it
dispositive.  *Gunn*, 2021 WL 719889, at *2 (citing cases).

Apart from Ms. Carr's speculation about the duration of the national health emergency, she will very soon be eligible to apply for home confinement under the BOP's normal policies and procedures. In particular, she has the option of applying to the BOP in a few weeks for home confinement under 18 U.S.C. § 3624(c)(2). Eligibility for home confinement under that statute is limited to "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Ms. Carr received a sentence of 57 months, *see* ECF No. 313 at 2, ten percent of 57 months is 5.7 months, and thus Ms. Carr will be eligible for transfer to home confinement under § 3624(c)(2) approximately 5.7 months prior to the expiration of her sentence. Her anticipated "release date" is February 23, 2022. She will therefore be eligible for § 3624(c)(2) transfer to home confinement in early September, 2021.

Any request she might make in a month's time for home confinement under § 3624(c)(2) is not, however, ripe for adjudication. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985) (internal quotations omitted)). Ms. Carr must exhaust her administrative remedies and apply to the BOP for home confinement under § 3624(c)(2), and BOP might well grant her request for home confinement. Her request now in her Supplement that this Court place her on home confinement pursuant to § 3624(c)(2) is therefore not ripe, because it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all.

Moreover, should Ms. Carr seek to challenge in federal court the BOP Director's decision on her future request for home confinement under § 3624(c)(2), the Court would not have jurisdiction.  The CARES Act temporarily gives the Director discretion to lengthen the maximum amount of time the Director can place a prisoner in home confinement under § 3624(c)(2).  *See* Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) ("the Director of the Bureau may lengthen the maximum amount of time [for home confinement] ... as the Director determines appropriate.")  "Under the plain language of the statute, however, that discretion is left to the BOP."  *United States v. O'Brien*, 2020 WL 4260630, at *2 (D. Kan. 2020) (unpublished) (citing *United States v. Read-Forbes*, 2020 WL 1888856, at *5 (D. Kan. 2020) (unpublished)).  Accordingly, a federal court would lack jurisdiction to grant relief under § 3624(c)(2).  *United States v. Degarmo*, 2020 WL 5253410, at *2 (D. Kan. 2020) (unpublished) (citing *O'Brien*, 2020 WL 4260630, at *2).

## II.     Even If This Court Reaches the Merits of Ms. Carr's Motion, the Motion Should Be Denied.

The Tenth Circuit has adopted a three-step test for courts considering motions filed under § 3582(c)(1)(A).  *Maumau*, 993 F.3d at 831; *McGee*, 992 F.3d at 1042-43. At step one of the test, a district court must find whether "extraordinary and compelling reasons" warrant a sentence reduction.  At step two, a district court must find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  At step three, § 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by

steps one and two is warranted in whole or in part under the particular circumstances of

the case.  *Maumau*, 993 F.3d at 831; *McGee*, 992 F.3d at 1042-43.

**A.      This Court Should Conclude that the Application Notes to USSG § 1B1.13 Still Provide the Best Definition and Description of "Extraordinary and Compelling Reasons" Given the Circumstances of Ms. Carr's Case**

The Tenth Circuit in its Order and Judgment stated:  "[I]t was within the

district court's discretion to conclude the application notes to USSG § 1B1.13 still

provided the best definition and description of 'extraordinary and compelling reasons'

under the circumstances of Ms. Carr's case. . . ." ECF No. 541 at 10-11.  Accordingly, if

this Court, in the course of "exercis[ing] its independent authority and discretion," now

determines that "the application notes to USSG § 1B1.13 still provide[ ] the best

definition and description of 'extraordinary and compelling reasons,'" *id*., this Court can

affirm its prior decision without the need to engage in any significant additional analysis.

The government submits that the application notes to USSG § 1B1.13 do provide

the best definition and description under the circumstances in this case.  This is

because Ayanna Brown claims she is simply incapable at this time of caring for Ms.

Carr's minor children, and the application notes specifically identify the "incapacitation of

the caregiver of the defendant's minor children" as an extraordinary and compelling

reason.  *See* § 1B1.13, Commentary, App. Note 1(C)(i).

Nevertheless, as shown below, under any reasonable definition and description

of "extraordinary and compelling reasons," Ms. Carr has not set forth reasons that are

extraordinary and compelling.

### B.    Ms. Carr Has Not Presented "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction

As noted above, in claiming she has shown extraordinary and compelling reasons, Ms. Carr "relies principally on the damage that would be done to her minor children if she is returned to prison for even a short time." ECF No. 549 at 4. She asserts that her adult daughter, Ayanna Brown, would be unable to care for Ms. Carr's two minor children. *Id*. at 3-4; *see also* ECF No. 549-1 at 1-3. But the hardship Ayanna Brown alleges she would suffer if required to care for Ms. Carr's minor children, should Ms. Carr be returned to prison, are no different than those previously presented to this Court in Ms. Carr's initial motion. This Court already found that Ayanna Brown's hardship was not an "extraordinary and compelling reason" justifying a modification of Ms. Carr's sentence.

In denying Ms. Carr's initial motion, this Court found that "[w]hile Carr has submitted information about [Ayanna] Brown's challenges in caring for her minor siblings in her mother's absence, the . . . hardship endured by the primary caregiver is not an 'extraordinary and compelling reason' justifying a modification of Carr's sentence." ECF No. 530 at 8. This Court pointed out that "[Ayanna] Brown appears to have done an admirable job at rising to the occasion, caring for her younger siblings, finding appropriate care opportunities for her siblings, and navigating the public benefits system for her autistic brother, even in the absence of any other familial support." *Id*.

Ms. Carr presents no new evidence in her Supplement regarding any hardship her adult daughter might incur should her daughter again be tasked with caring for Ms. Carr's two minor children. Instead, she essentially reiterates the information she

presented in her initial motion for compassionate release.  Ms. Carr states in conclusory

fashion in her Supplement:

- "My oldest daughter Ayanna did the best she could taking care of my younger children in my absence, but now I am home and Ayanna has gone on to live her life, as she should."  ECF No. 549-1 at 1.

- "[My] autistic son is a minor, and has no one, much less a parent, to care for him if Ms. Carr is recalled to prison."  ECF No. 549 at 4.

- "No one will be able to care for my children if" Ms. Carr is returned to prison. ECF No. 549-1 at 2.

Her daughter, Ayanna, states in a letter attached to Ms. Carr's Supplement:

- The three years her mother was in prison were "rough for me."

- "I took care of my little brother and sister the best way I could and had to figure out how to survive on my own for the first time in my life."

- "My little brother has had numerous challenges and I almost lost my job due to the amount of times I had to leave work to go and pick him up.  I was literally at my breaking point for months before my mom came home."

- "I literally had no help, a global pandemic had begun and the kids were not able to go to school."

- "I had nowhere for the kids to go and no help.  We have no other family."

- "I had even reached out to social services to notify them I could no longer care for my brother and sister and was told that due to the pandemic there were just no placements available unless it was an extreme abuse or neglect case."

ECF No. 549-1 at 3.

But the problems from more than a year ago described by Ayanna Brown in the

Supplement have abated.  As for caring for Ms. Carr's minor son who is autistic, Ms.

Carr admits that he is currently attending a private autism school and is also receiving

speech therapy.  ECF No. 549-1 at 2.  Nothing in Ms. Carr's Supplement suggests that

Ms. Carr's son's ability to continue with those programs will in fact end if Ms. Carr is returned to prison and Ayanna resumes her care for Ms. Carr's two minor children.  As for caring for Ms. Carr's minor daughter, nothing in the Supplement suggests that her minor daughter will not be attending school in a few weeks, once her summer vacation has ended.  As for Ms. Brown's statement that she had reached out to social services, that occurred over a year ago before Ms. Carr was placed on home confinement.  The record does not reflect that Ayanna Brown is currently unable to care for her minor siblings, particularly given that she states she received a promotion at her job and ostensibly received a raise along with the promotion, and thus would now have additional money to pay for child care.  ECF No. 549-1 at 3.

Neither Ms. Carr nor her adult daughter states that Ayanna will not be permitted by her employer to care for Ms. Carr's two minor children for the next six and a half months or so—until February 23, 2022—if Ms. Carr is returned to prison and required to serve the remainder of her sentence at a BOP facility.

This Court noted in its initial decision denying Ms. Carr's motion that Ayanna Brown is "medical staff" at a Veteran's Administration hospital in the Phoenix area, and that she was concerned about potential "mandatory deployments" for her job.  ECF No. 530 at 8.  But in Ms. Carr's Supplement, Ms. Brown does not mention any concerns about possible job deployments, so she is apparently no longer worried about the possibility of such deployments.

Finally, Ms. Carr does not address in her Supplement the other factor that this Court relied on, in part, in initially denying her motion.  This Court pointed out that Ms.

Carr had submitted a letter in support of her initial motion suggesting that Ayanna Brown's child care assistance payments for Ms. Carr's two minor children may cease, but that it appeared from the record that Ms. Brown may yet be eligible for continued benefits.  *See* ECF No. 530 at 8 (citing ECF No. 526-1 at 3).  Nowhere in Ms. Carr's Supplement does she indicate that child care assistance payments for Ms. Carr's two minor children have ceased, or that they may cease at any time in the foreseeable future.

Ms. Carr claims her case resembles *United States v. Howell*, 2020 WL 7260740, *2 (Dec. 10, 2020) (unpublished), in which this Court found extraordinary and compelling circumstances because a mother's severe medical condition left her incapable of caring for her children.  *Howell* is distinguishable.  In that case the mother's physician confirmed that she suffered from Stage IV cancer.  She also underwent hip replacement surgery and, following the surgery, suffered from mobility issues such as walking up stairs and using the bathroom.  There was also little evidence in that case that the mother's condition would be likely to improve in the near future, if at all.  *Id*.

Here, by contrast, the record shows that Ms. Carr's son is attending a private autism school and receiving speech therapy, that her minor daughter will likely be attending school once summer vacation ends, and that Ayanna Brown recently received a promotion—and with it most likely a raise—and thus would have additional money for child care.  Notably, the record does not show that Ayanna Brown's employer will not permit her to care for Ms. Carr's two minor children for the next six and a half months or

so if Ms. Carr is returned to prison.  Unlike in *Howell*, the record here does not show

that Ayanna Brown would be incapable of caring for her minor siblings.

In sum, Ms. Carr has not presented "extraordinary and compelling reasons"

warranting a sentence reduction.

**C.     The 3553(a) Factors Do Not Weigh in Favor of Altering Ms. Carr's Sentence**

Even if this Court finds that Ms. Carr has satisfied steps one and two of the

three-step test, that is, that "extraordinary and compelling reasons" warrant a sentence

reduction, and that such reduction is consistent with applicable Sentencing Commission

policy statements, Ms. Carr cannot satisfy step three.  She has not shown that the 18

U.S.C. § 3553(a) factors weigh in favor of altering her sentence.  *See* 18 U.S.C.

§ 3582(c)(1)(A).  Particularly relevant here are the first two factors:  "(1) the nature and

circumstances of the offense and the history and characteristics of the defendant, and

(2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense; (B) to afford

adequate deterrence to criminal conduct; [and] (C) to protect the public from further

crimes of the defendant . . ."  18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (B), (C).

Ms. Carr focuses on her lack of disciplinary infractions while incarcerated, her

efforts in prison to put her time to good use, and her success in obtaining gainful

employment during her home confinement.  ECF No. 549 at 4-5.  But she does not

address in any significant way whether her release under the First Step Act would

undermine the need for a sentence that reflects the seriousness of the offense, respect

for the law, just punishment, deterrence, or protection of the public.

14

At sentencing this Court rejected Ms. Carr's argument that her offense was non-

predatory, and that because she had no prior period of imprisonment, any period behind

bars will have a profound deterrent effect:

> I have previously categorically rejected this line of reasoning, especially in
> cases of so-called white-collar financial crimes prosecutions like the one
> before me today.  Taken to its extreme, the argument would countenance
> very light sentences to sentences like Bernie Madoff, who engaged in
> egregious and protracted fraud and caused vast human and financial
> damages merely because they were first-time offenders.
> . . . [W]e as federal judges must not apply one set of sentencing factors to
> white-collar fraud defendants and a different set to the so called drug and
> gun class of defendants.

ECF No. 536-3 at 65-66.

Ms. Carr also does not address the two lynchpins of this Court's sentencing

decision.  First, she "received all the benefits of the plea agreement and at the last

possible moment she reneged on her obligation to testify truthfully at Mr. Thomas' jury

trial.  And that by doing so, she inflicted the maximum amount of potential harm to the

Government's case against Mr. Thomas."  ECF No. 536-3 at 63-64.  Second, with

respect to the victims, this Court pointed out that "it's a sustained series of criminal

actions and fraudulent conduct undertaken 181 times and repeatedly over the course of

26 months."  *Id*. at 68.  In addition, the Court stated:

> I had read about the previous damages done to these individuals' credit
> history and how some of their files have been red flagged and worse, and
> that such -- and the odds that they will be facing when they are released to
> obtain credit or loans or educational or housing – for educational or
> housing purposes or for trying to get a job, and that all those opportunities
> have now been significantly diminished.  For a societal group which
> already faces severe impediments to transitioning to law-abiding lives with
> gainful employment, this added personal damage done to them is, in my
> view, especially cruel.

15

*Id*. at 69-70.

As for Ms. Carr's claim that her sentence should be modified because she has now served approximately 85% of her sentence, this fact should not necessarily affect this Court's disposition of her motion.  The Court is clearly aware that "the length of the sentence should reflect the harm done and the gravity of the defendant's conduct," *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017) (internal quotations and citation omitted), and that reducing Ms. Carr's sentence at this point would minimize both the impact on her victims and the extent of her fraud.  *See*, *e.g.*, *Rodriguez-Aguirre v. Hudgins*, 739 F. App'x 489 (10th Cir. 2018) (unpublished).

In short, this Court should find that the § 3553(a) factors do not weigh in favor of altering Ms. Carr's sentence.

**III.    Ms. Carr's Home Confinement Request is Not Properly Before This Court**

Finally, the government notes that Ms. Carr requests in her Supplement that this Court modify her remaining sentence from incarceration to either time served or home confinement.  ECF No. 549 at 1, 5.  In her initial motion, Ms. Carr had also sought home confinement as an alternative to serving the remainder of her sentence in custody.  She invoked 18 U.S.C. § 3624(c)(2) in her initial motion, and invokes it again in her Supplement.

In the government's response to her initial motion, the government argued, among other things, that (1) Ms. Carr failed to exhaust her administrative remedies with respect to her home confinement claim; and (2) Ms. Carr's home confinement claim is not cognizable under 18 U.S.C. § 3582(c)(1)(A) because it seeks to challenge the

16

conditions of her confinement, not to modify her sentence. *See* ECF No. 513 at 3–7.

This Court denied Ms. Carr's request for home confinement on the grounds that Ms.

Carr, in her reply filed by counsel, did not address the government's home confinement

arguments. ECF No. 530 at 2-3.

Now, in her Supplement, Ms. Carr again does not address the government's

home confinement arguments in the government's response to her initial motion. *See*

ECF No. 530. For the same reasons the Court denied Ms. Carr's home confinement

request in her initial motion, the Court should deny that request again.

And, for the same reasons set forth by the government in its response to Ms.

Carr's initial motion, the Court should deny Ms. Carr's request for home confinement.

Ms. Carr failed to exhaust her administrative remedies with respect to her home

confinement claim. *See* ECF No. 513 at 3-6. Indeed, the record does not reflect that

she has, in fact, applied to the BOP for home confinement under § 3624(c)(2). Ms.

Carr's home confinement claim is also not cognizable under 18 U.S.C. § 3582(c)(1)(A)

because it seeks to challenge the conditions of her confinement, not to modify her

sentence. *Id.* at 6–7.

## CONCLUSION

Heather Carr's Motion for Compassionate Release Pursuant to 18 U.S.C.

§ 3582(c)(1)(A) should be denied.

Respectfully submitted this 29th day of July, 2021,

MATTHEW T. KIRSCH
Acting United States Attorney

*/s/ Michael C. Johnson*
MICHAEL C. JOHNSON
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado  80202
(303) 454-0100
Email: michael.johnson2@usdoj.gov

Attorneys for the United States

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF COLORADO**</u>
<u>**CERTIFICATE OF SERVICE (CM/Colorado)**</u>

I hereby certify that on <u>July 29, 2021</u>, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system.  Participants in the case who are

registered CM/ECF users will be served by the CM/ECF system.


<u>/s/ Ma-Linda La-Follette</u>
MA-LINDA LA-FOLLETTE
U.S. Attorney's Office